**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY
CERTAIN CRITICAL VENDOR CLAIMS AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (prevailing Central Time) on March 25, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 25, 2024, at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th Floor, 515 Rusk Street, Houston, TX 77002. Participation at the hearing will only be permitted by audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this emergency motion (the "Motion"):

## Relief Requested

1. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto (respectively, the "Interim Order" and the "Final Order"): (i) authorizing the Debtors to pay certain prepetition claims held by certain essential Critical Vendors (as defined herein), as well as to settle disputes related thereto, each in the ordinary course of business; and (ii) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363, 1107 and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas.

## Background

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code

sections 1107(a) and 1108.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

6. The Debtors and their non-Debtor affiliates (collectively, the "Company") provide consumer credit lending services across the U.S. and Canada.  In the U.S., the Company operates under several principal brands, including "Heights Finance," "Southern Finance," "Covington Credit," "Quick Credit," and "First Heritage Credit."  In Canada, the Company operates under the "Cash Money" and "LendDirect" brands.  As of the Petition Date, the Company operated approximately 400 store locations across 13 U.S. states and approximately 150 stores in eight Canadian provinces and had an online presence in eight Canadian provinces and one territory.  The Company generated approximately $672 million in total revenue for the fiscal year 2023, and, as of the Petition Date, the Company had approximately $2.1 billion in aggregate principal amount of prepetition funded debt obligations.

7. A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in the *Declaration of Douglas Clark in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

### The Debtors' Process to Identify Critical Vendors

8. The Debtors' businesses rely on continuing access to, and relationships with, a network of vendors and service providers.  Recognizing that payment of all prepetition claims of such third-party vendors outside of a plan would be extraordinary relief, the Debtors, with the

assistance of their advisors, reviewed their books and records, consulted operations management on the corporate and branch level, reviewed contracts and supply agreements and analyzed applicable laws, regulations, and historical practices to identify only those vendors that are critical to the continued and uninterrupted operation of the Debtors' ongoing projects—the loss of which could materially harm their businesses, by, among other things, reducing their enterprise value to the detriment of the Debtors and their stakeholders.  Specifically, in identifying the vendors critical to their businesses, the Debtors examined each of their vendor relationships with, among other things, the following criteria in mind:

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining services from alternative sources;

- whether a vendor is a sole-source, limited-source, or high-volume supplier of the services critical to the Debtors' business operations;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether alternative vendors are available that can provide requisite volumes of similar services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor;

- the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these Chapter 11 Cases;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to provide critical services on a postpetition basis;

- the location and nationality of the vendor;

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation; and

- whether a vendor is also a customer who could cease purchasing the Debtors' services.

9. In addition to these factors, the Debtors and their advisors examined the health of each vendor relationship, the vendor's familiarity with the chapter 11 process and the extent to which each vendor's prepetition claims could be satisfied elsewhere in the chapter 11 process.

**I.    The Critical Vendors.**

10. As a result of the foregoing review and evaluation, the Debtors have identified, and will continue to identify, a narrow subset of vendors and services that are critical to preserving the value of the Debtors' estates and ensuring a seamless transition into chapter 11 (collectively, the "Critical Vendors").  Many of the Critical Vendors identified provide services that support the core of the Debtors' businesses: approximately 550 retail locations (as of Petition Date) across 13 states and eight Canadian provinces which provide consumer lending services, all of which are leased premises that the Debtors occupy completely or for which the Debtors have a lease or license to use partially (the "Retail Locations").  Successfully operating these Retail Locations to meet the needs of the Debtors' customers on an uninterrupted basis requires, among other things, continuous access to (i) network connections and telecommunication services, and (ii) uninterrupted relationships with a broad range of vendors and service providers, such as credit report bureaus, accounting software firms, marketing service providers, financial software providers, and security service providers—both physical security for the premises and cloud security for the software.  Equally important, the Debtors also engage with various vendors to ensure the software used by the Retail Locations is properly maintained.

11. The majority of these vendors have arrangements providing services to many of the Debtors' Retail Locations under a single agreement.  Thus, failure to render payment to a provider could result in service interruptions to the Debtors' customers at multiple Retail Locations.  The

5

Company's reputation is crucial to maintaining and developing relationships with existing and potential customers and third parties with whom the Company does business. If multiple Retail Locations are unable to operate and provide lending services because of business interruptions, even if temporary, the Company's ability to attract customers and generate new business would be severely disrupted, driving potential customers to competitors. The Critical Vendors are necessary to support the Debtors' infrastructure and allow the Debtors to continue their day-to-day operations.

12.     Based on the forgoing, the Debtors seek entry of the Interim Order and the Final Order granting them authority to make payments, in their reasonable discretion and business judgment, on account of the prepetition claims held by Critical Vendors (the "Critical Vendor Claims") in an amount not to exceed $1.5 million on an interim basis and $3 million on a final basis, which amounts represent the Debtors' best estimate as to what amounts must be paid to the Critical Vendors to continue uninterrupted provision of services. The Debtors further request that the Court grant the Debtors the authority to allocate the foregoing amounts at their discretion, without prejudice to seek additional relief, and subject to an agreement (within the Debtors' discretion) to receive terms consistent with Customary Trade Terms (as defined herein) from the Critical Vendors.

13.     In the exercise of their business judgment, the Debtors have determined that continuing to receive services from the Critical Vendors is necessary to operate and continue certain ongoing projects. If granted discretion to satisfy Critical Vendor Claims as requested herein, the Debtors will assess, on a case-by-case basis, the benefits to their estates of paying the Critical Vendor Claims and pay any such claim only to the extent their estates will benefit from payment during the pendency of the Chapter 11 Cases. Without this relief, the Debtors believe

that the Critical Vendors may cease providing certain critical services and thereby take action that could harm the Debtors' estates to the detriment of their stakeholders.

14. Finally, under the proposed Plan, the Critical Vendor Claims (which are classified as General Unsecured Claims, as defined in Plan), to the extent allowed, are unimpaired, and the holders of such claims will receive payment in full upon the effective date of the Plan. As such, the Debtors seek authority to pay Critical Vendors amounts that they would be entitled to receive upon consummation of the Plan.

**II.     Customary Trade Terms.**

15. Subject to the Court's approval, the Debtors intend to pay Critical Vendor Claims only to the extent necessary to preserve the value of their estates. To that end, in return for paying Critical Vendor Claims either in full or in part, the Debtors propose that they be authorized to require that Critical Vendors provide favorable trade terms for the postpetition procurement of services.

16. Specifically, the Debtors seek authorization, to condition payment of Critical Vendor Claims upon each Critical Vendor's agreement to continue, or recommence, their trade relationship with the Debtors in accordance with trade terms (including credit limits, pricing, timing of payments, availability, and other terms) consistent with the parties' ordinary course practice or as otherwise agreed to by the Debtors in their reasonable business judgment (the "Customary Trade Terms"). The Debtors also seek authorization, but not direction, to require Critical Vendors to enter into a contractual agreement (an email agreement being sufficient) evidencing such Customary Trade Terms, a form of which is annexed hereto as **Exhibit A** (the "Trade Terms Agreement").

17. In addition, the Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter ceases to provide services in accordance with the

7

Customary Trade Terms: (a) the Debtors may take any and all appropriate steps to recover from such Critical Vendor any payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such party; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment on account thereof had not been made; and (c) if any outstanding postpetition balance is due from the Debtors to such party, (i) the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance, and (ii) such party will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims or otherwise.

### **Basis for Relief**

**I.     The Court Should Grant the Relief Requested in this Motion Pursuant to Bankruptcy Code Sections 105(a) and 363.**

18.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations, including payments to critical vendors, where necessary to protect and preserve the estate. *E.g.*, *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *In re Scotia Dev., LLC,* 2007 Bankr. LEXIS 3262, at*7-8 (Bankr. S.D. Tex. Sept. 21, 2007) (outlining the factors for when a critical vendor payment is necessary); *In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a bankruptcy court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). In so doing, these courts acknowledge that

8

several legal theories rooted in Bankruptcy Code sections 105(a) and 363(b) support the payment of prepetition claims as provided herein.

19. Pursuant to Bankruptcy Code section 363(b), payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that Bankruptcy Code section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

20. In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on Bankruptcy Code section 105(a), which codifies the Court's inherent equitable powers to "issue any order, process[] or judgment that is necessary or appropriate to carry out the provisions of this title." Under Bankruptcy Code section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825. Specifically, the Court may use its equitable power under Bankruptcy Code section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *Ionosphere Clubs*, 98 B.R. at 176. Indeed, courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *E.g.*, *CoServ*, 273 B.R. at 497 ("Cases cited by Debtors that refer to necessity of payment to preserve value imply such a rule, and this Court is prepared to apply the Doctrine of Necessity to authorize payment of prepetition claims in appropriate cases.").

21. Moreover, pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id*. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id*. The court in *CoServ* specifically noted that pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . ." *Id*.

22. The Debtors have a sound business purpose for the relief requested herein. The authority to honor unpaid, prepetition Critical Vendor Claims in the initial days of these Chapter 11 Cases, without disrupting the Debtors' ongoing operations, will maintain the integrity of the Debtors' businesses and allow the Debtors to efficiently administer these Chapter 11 Cases and maximize the value of their estates.

23. The resulting harm to the Debtors' estates far outweighs the costs associated with paying the Debtors' prepetition obligations to the Critical Vendors. Thus, the Debtors' other creditors will be no worse off, and likely fare better, if the Debtors are empowered to negotiate such payments to achieve a smooth transition into chapter 11 with minimal disruptions.

24. Finally, the Debtors anticipate that the Critical Vendor Claims would be payable in full, to the extent allowed, upon the Debtors' emergence from these Chapter 11 Cases upon the occurrence of the Effective Date of the Plan—therefore, the relief requested in this Motion simply accelerates the timing of payment for the vendors that are critical to the Debtors' continued operations in chapter 11. As such, the Debtors believe the relief sought in this Motion will not

burden the Debtors but will help maximize the value of their estates. Accordingly, for the reasons set forth herein, the Court should authorize the Debtors to satisfy the Critical Vendor Claims.

**II.     T****he Court Should Authorize the Payment of the Critical Vendor Claims.**

25.     Allowing the Debtors to pay the Critical Vendor Claims pursuant to all or some of the above-referenced Bankruptcy Code provisions is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). Here, payment of prepetition claims of certain essential vendors is, in fact, both critical to the Debtors' ability to preserve any value and maximize creditor recovery.

26.     The Debtors depend on the provision of services by the Critical Vendors. Ensuring these Critical Vendors continue to provide services is therefore vital to the ability of the Debtors to maximize the value of their estates. For the reasons set forth herein, it is appropriate for the Court to authorize the Debtors to satisfy the Critical Vendor Claims.

**Emergency Consideration**

27.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003 and Bankruptcy Local Rule 9013-1, which empower a court to grant relief within the first 21 days after the commencement of a chapter 11 case when that relief is necessary to avoid immediate and irreparable harm to the estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder their operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these Chapter 11 Cases could severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly,

the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

28. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Reservation of Rights

29. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Interim Order

12

or Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

### **Notice**

30.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed on the Debtors' petitions as holding the largest 30 unsecured claims (on a consolidated basis); (c) counsel to the Prepetition 1L Agent; (d) counsel to the Prepetition 1.5L Notes Trustee; (e) counsel to the Prepetition 2L Notes Trustee; (f) counsel to the Ad Hoc Group; (g) counsel to Atlas Securitized Products Holdings, L.P. in its capacity as Administrative Agent; (h) counsel to Midtown Madison Management LLC as Heights II Administrative Agent and Canada II Administrative Agent; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general in the states where the Debtors conduct their business operations; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms of the Interim Order and Final Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper, and equitable.

Dated: March 25, 2024
      Houston, Texas

*/s/ Sarah Link Schultz*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
       pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
       akordas@akingump.com
       orahnama@akingump.com

*Proposed Counsel to the Debtors*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                                    */s/ Sarah Link Schultz*
                                                    Sarah Link Schultz

**Certificate of Service**

I certify that on March 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                    */s/ Sarah Link Schultz*
                                                    Sarah Link Schultz