# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CURO Group Holdings Corp., *et al.*, | ) ) | Case No. 24-90165 (MI) |
| Debtors.[1] | ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

## DEBTORS' **EMERGENCY** MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO HONOR CERTAIN PREPETITION OBLIGATIONS TO CUSTOMERS AND CONTINUE CERTAIN CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; (II) DISPENSING WITH CUSTOMER NOTICING REQUIREMENTS AND (III) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (prevailing Central Time) on March 25, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 25, 2024, at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th Floor, 515 Rusk Street, Houston, TX 77002. Participation at the hearing will only be permitted by audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state the following in support of this emergency motion (the "Motion"):

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (i) authorizing the Debtors to maintain and administer their customer-related programs and honor certain prepetition cash and non-cash obligations to customers in the ordinary course of business, including the Customer Referral Program (as defined below); (ii) excusing the Debtors from providing notice of commencement of the Chapter 11 Cases to their Customers (as defined below) and (iii) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), 1107(a) and 1108 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and modified, the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas.

**BACKGROUND**

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

6. The Debtors and their non-Debtor affiliates (collectively, the "Company") provide consumer credit lending services across the U.S. and Canada. In the U.S., the Company operates under several principal brands, including "Heights Finance," "Southern Finance," "Covington Credit," "Quick Credit," and "First Heritage Credit." In Canada, the Company operates under the "Cash Money" and "LendDirect" brands. As of the Petition Date, the Company operated approximately 400 store locations across 13 U.S. states and approximately 150 stores in eight Canadian provinces and had an online presence in eight Canadian provinces and one territory. The Company generated approximately $672 million in total revenue for the fiscal year 2023, and, as of the Petition Date, the Company had approximately $2.1 billion in aggregate principal amount of prepetition funded debt obligations.

7. A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in the *Declaration of Douglas Clark in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

## CUSTOMERS AND CUSTOMER PROGRAMS

### I. The Typical Customer Transactions

8. The Debtors operate a consumer finance business offering a broad range of direct-to-consumer financial products, including installment loans, revolving lines of credit, and ancillary insurance products. The Company offers loan origination services in branch, via mobile device or over the phone to consumers (the "Customers"). When a Customer applies and gets approved for a loan, the loaned funds are transferred either via an ACH payment or a physical check (a "Customer Transaction").

9. There is an inherent delay associated with the transfer of funds by either method. The transfers occurring via ACH may not settle until one or two business days after origination, depending on the time of day the transaction is originated. Loans funded via a physical check may not be settled until days or weeks later, and the issued checks are generally valid for 30 days from the date of issuance. The check clearance may also be delayed in the event of holidays, bank closures and depending on the rules and practices of the financial institution that each customer utilizes. The daily loan origination volume varies on a day-to-day basis, but in the last 60 days on average loan origination volume exceeded $2.2 million per day. It is imperative to the Company's business operations that the Debtors and their customers can settle transactions and cash checks for loans originated prior to the Petition Date on a postpetition basis without any interruption or delay.

10. All Customer Transactions in the U.S. and Canada are funded from one of the dedicated loan origination funding accounts (the "Customer Loan Accounts"), which accounts are used for no other purpose. By this Motion, the Debtors seek authority to continue settling Customer Transactions in the ordinary course so they are unaffected by the commencement of these Chapter 11 Cases and authorization for the Debtors' banking institutions to receive, process,

honor and pay any and all checks, wire transfers, credit card payments and other instructions, and drafts payable through, or drawn or directed on the Customer Loan Accounts after the Petition Date by holders, makers or other parties entitled to issue instructions with respect thereto, irrespective of whether such checks, drafts, wires or credit card payments are dated prior to or subsequent to the Petition Date.

**II.    Insurance Products**

11.    The Debtors also offer third-party insurance products to the Customers located in the U.S. and Canada, whereby third-party insurers (the "Insurers") provide coverage where the Customer is unable to repay amounts owing from a Customer Transaction due to the occurrence of enumerated events such as job loss, disability and accidental death, among others (the "Insurance Products"). Consistent with their contracts with the Insurers and under applicable law, the Debtors collect and remit insurance premiums to the Insurers periodically as agreed upon with the applicable Insurers (the "Insurance Program").  On a monthly basis, the Debtors remit approximately $4.7 million to the Insurers.  As of the Petition Date, the Debtors estimate that approximately $3.5 million remains collected but unremitted to the Insurers on account of the Insurance Program.  The  Debtors intend to continue to offer the Insurance Products, remit the premiums to the applicable Insurers, and comply with the terms of their insurance contracts in the ordinary course so that their Customers will continue to have access to the Insurance Products. The Debtors also seek authorization to remit the amounts collected pre-petition but not yet remitted to the Insurers as of the Petition Date.

**III.    The Customer Referral Program**

12.    As referenced above, the Debtors' business generation strategy relies, in part, on referrals from existing Customers.  As a result, the Debtors maintain a customer referral program in the U.S. (the "Customer Referral Program" and, together with the Customer Transactions and

the Insurance Program, the "Customer Programs") for field branches that have Customers who refer another individual to obtain a loan with the Company. The existing Customers who successfully refer new business to the Company are awarded payment (in the form of a check or cash) upon completion of the new Customer's loan. In addition to Customer referrals, certain of the Debtors' branches provide a referral fee to local business partners who refer Customers to the Debtors. The amounts payable pursuant to the Customer Referral Program vary month to month. As of the Petition Date, the Debtors estimate that there is approximately $3,000 of outstanding payments on account of the Customer Referral Program. All payments under the Customer Referral Program flow from a single bank account.

13. The Debtors seek authorization to continue their Customer Referral Program during the pendency of these Chapter 11 Cases, to pay any outstanding amounts on account of the Customer Referral Program whether accrued pre- or post-petition and to allow post-petition clearance of pending checks and amounts payable on account of the Customer Referral Program. While the Debtors maintain that this program is a part of their ordinary course of business and thus does not need approval of this Court to be operated during these Chapter 11 Cases, the Debtors still request this relief out of an abundance of caution due the important nature of the Customer Referral Program to the Debtors' operations.

## IV. Customer Notice of Commencement

14. Additionally, by this Motion, the Debtors seek authority to dispense with the requirement to provide notices of the commencement of these Chapter 11 Cases to the Debtors' Customers to ensure uninterrupted business operations. As is more fully described in the First Day Declaration and the Debtors' filed chapter 11 plan which is supported by substantially all of the holders of the Debtors' funded corporate debt, the Debtors intend to continue ordinary course operations during the pendency of the Chapter 11 Cases and do not intend to impair their unsecured

creditors, including Customers, as part of their Chapter 11 Cases. Therefore, the Customers, to the extent they hold claims against the Debtors' estates, will be unaffected by the commencement of the Chapter 11 Cases. On the other hand, providing a large pool of Customers with a notice of a bankruptcy filing may result in significant disruptions to the Debtors' business operations. It may shake the existing Customers' confidence in the business, confuse customers, interfere with collection efforts and otherwise disrupt repeat business. Additionally, the Debtors' marketing strategy heavily relies on providing excellent consumer experience that leads to referrals from existing Customers. The Debtors are concerned that informing the existing Customers of the bankruptcy filing will disrupt the flow of referrals for new business. It may also cause a significant disruption in collection efforts, if any Customer elects to stop making loan payments as a consequence of the Debtors' bankruptcy. Finally, a wide-spread notice of the Chapter 11 Cases may trigger commencement of meritless litigation against the Debtors. For these reasons, the Debtors seek waiver of the requirement to provide notice of commencement of the Chapter 11 Cases directly to the Customers.

**BASIS FOR RELIEF**

**I.   Honoring the Customer Programs Is Warranted Under Sections 1107(a) and 1108 of the Bankruptcy Code.**

15. The Debtors, operating their businesses as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

16. The *CoServ* court has noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* That court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

17. Moreover, with respect to Insurance Program, the payments collected on behalf of the Insurers may not be property of the Debtors' estates because the Debtors are obligated to remit the insurance premiums to the Insurers. See 11 U.S.C. § 541(b).

18. Allowing the Debtors to continue honoring Customers' transactions in the ordinary course and continuing the Customer Referral Program and the Insurance Program meets each element of the *CoServ* court's standard. The Customer Programs are critical to the Debtors' ability to operate in the ordinary course. Failure to honor such obligations could harm the Debtors' reputation and brand in a highly competitive industry. Indeed, due to the short-term nature of certain obligations, the Debtors face a real risk that both current and referred customers could turn to competitors if the Debtors fail to honor ongoing Customer Programs. As a fiduciary for the bankruptcy estates, the Debtors have an obligation to minimize any reputational harm that could be caused by the filing of the Chapter 11 Cases and to maintain a business-as-usual atmosphere with its customers and potential customers. Furthermore, in accordance with the Plan currently

contemplated by the RSA, the Debtors intend to honor all general unsecured claims and to satisfy them in full upon emergence from these Chapter 11 Cases. In light of this, the potential harm and economic disadvantage that would stem from the failure to honor the Customer Programs is grossly disproportionate to the amount of such claims. Accordingly, to meet their fiduciary duties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors should be authorized to honor the Customer Programs in their business judgment.

II. **Continuing to Honor the Obligations Under the Customer Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363(b) of the Bankruptcy Code.**

19. The Court may authorize the Debtors' payment of the obligations pursuant to the Customer Programs under Section 363(b)(1) of the Bankruptcy Code.[2] Bankruptcy Code Section 363(b)(1) authorizes courts, after notice and a hearing, to permit a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances."). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business upon a finding that such use is supported by sound business reasons. *See, e.g.*, *In re BNP Petrol. Corp.*, 642 F. App'x 429, 434–35 (5th Cir. 2016) (citing *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of

---

[2] Because the Debtors engage in transactions related to the Customer Programs on a regular basis and such transactions are common among enterprises similar to the Debtors, the Debtors believe such transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and thus do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis. The continued performance of the ordinary course transactions in connection with the Customer Programs is integral to ensuring the Debtors' ability to operate their businesses as debtors in possession.

business")); *see also ASARCO, Inc. v. Elliott Mgmt. (In re ASARCO L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard. . . . The business judgment standard in section 363 is flexible and encourages discretion."). In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

20. The ability to continue administering the Customer Transactions without interruption is critical to maintaining the Debtors' relationships and goodwill with its current Customers, who are the lifeblood of the Debtors' business. Failure to continue the Customer Transactions and honor the obligations under the Customer Referral Program will place the Debtors at a significant competitive disadvantage in the marketplace, amplifying the negative effect of customer uncertainty that may arise from the Chapter 11 Cases. The relief requested herein will pay dividends with respect to the Debtors' businesses. Accordingly, the Debtors believe that a sound business purpose exists to honor the Customer Programs and satisfy the Customer Transactions, including any prepetition amounts in respect thereof, in the ordinary course of business.

### III. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.

21. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, cash on hand, and postpetition financing for which the Debtors seek approval contemporaneously herewith. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or ACH requests as relating to an authorized payment in respect of the

Customer Programs. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**IV.     Waiver of the Requirement to Provide Notice Directly to the Debtors' Customers is Appropriate.**

22.    Bankruptcy Rule 2002 requires that parties in interest be provided notice of, among other things, the commencement of the bankruptcy case and the confirmation hearing. Fed. R. Bankr. P. 2002. Bankruptcy courts have the authority to modify or waive the requirements under both rules. Fed. R. Bankr. P. 1007(a)(3) ("[U]nless the court orders otherwise, the debtor shall file . . . a list of the debtor's equity security holders . . . ."); Fed. R. Bankr. P. 2002(d) ("[U]nless otherwise ordered by the court, the clerk . . . shall in the manner and form directed by the court give notice to all equity security holders . . . ."); *see also* Fed. R. Bankr. P. 9007 ("When notice is to be given under these rules . . . the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given.").

23.    As described above, the Company's reputation is critical to maintaining ordinary course operations. The Debtors are concerned that providing notice of commencement of the Chapter 11 Cases directly to the Customers will have a direct and significantly disruptive impact on the Debtors' business operations. Because the Debtors anticipate paying all unsecured claims in full and, thus, these Chapter 11 Cases shall not affect any of the Customers' claims, the Debtors believe that waiver of the notice requirement is appropriate and warranted. To the extent the Debtors alter course and determine that their exit strategy will seek to impair or otherwise impact the rights of their Customers, the Debtors will request that this Court set a bar date to allow the Customers to assert their claims if any, against the Debtors.

## EMERGENCY CONSIDERATION

24. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003 and Bankruptcy Local Rule 9013-1, which empower a court to grant relief within the first 21 days after the commencement of a chapter 11 case when that relief is necessary to avoid immediate and irreparable harm to the estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder their operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these Chapter 11 Cases could severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND (h)

25. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

26. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim

or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## **NOTICE**

27. The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed on the Debtors' petitions as holding the largest 30 unsecured claims (on a consolidated basis); (c) counsel to the Prepetition 1L Agent; (d) counsel to the Prepetition 1.5L Notes Trustee; (e) counsel to the Prepetition 2L Notes Trustee; (f) counsel to the Ad Hoc Group; (g) counsel to Atlas Securitized Products Holdings, L.P. in its capacity as Administrative Agent; (h) counsel to Midtown Madison Management LLC as Heights II Administrative Agent and Canada II Administrative Agent; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general in the states where the Debtors conduct their business operations; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Order, substantially in the form attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: March 25, 2024
      Houston, Texas

/s/  Sarah Link Schultz
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
      pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
      akordas@akingump.com
      orahnama@akingump.com

*Proposed Counsel to the Debtors*

PRIVILEGED AND CONFIDENTIAL

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Sarah Link Schultz*
Sarah Link Schultz

## Certificate of Service

I certify that on March 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Sarah Link Schultz*
Sarah Link Schultz