**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
|  | ) |  |
| Debtors.[1] | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION**
**FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) AUTHORIZING PAYMENT OF CERTAIN**
**TAXES AND FEES AND (II) GRANTING RELATED RELIEF**

---

**Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (prevailing Central Time) on March 25, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on March 25, 2024, at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th Floor, 515 Rusk Street, Houston, TX 77002. Participation at the hearing will only be permitted by audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (the "Motion"):

**Relief Requested**

1. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto (respectively, the "Interim Order" and the "Final Order"): (i) authorizing the Debtors to pay, as applicable, Taxes and Fees (as defined herein) and certain related obligations as they come due in the ordinary course of business and (ii) granting related relief.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), 541, and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4002-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas.

**Background**

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Concurrently with the filing of this Motion, the Debtors filed a motion

requesting procedural consolidation and joint administration of these chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

6. The Debtors and their non-Debtor affiliates (collectively, the "Company") provide consumer credit lending services across the U.S. and Canada.  In the U.S., the Company operates under several principal brands, including "Heights Finance," "Southern Finance," "Covington Credit," "Quick Credit," and "First Heritage Credit".  In Canada, the Company operates under the "Cash Money" and "LendDirect" brands.  As of the Petition Date, the Company operated approximately 400 store locations across 13 U.S. states and approximately 150 stores in eight Canadian provinces and had an online presence in eight Canadian provinces and one territory.  The Company generated approximately $672 million in total revenue for the fiscal year 2023, and, as of the Petition Date, the Company had approximately $2.1 billion in aggregate principal amount of prepetition funded debt obligations.

7. A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in the *Declaration of Douglas Clark in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

**Taxes and Fees Overview**

8. In the ordinary course of conducting their business operations, the Debtors incur, collect, remit, and pay various types of taxes and assessments, as applicable, to various U.S. federal, U.S. state, U.S. local, and Canadian taxing authorities (collectively, the "Authorities").[2]

---

[2] By this Motion, the Debtors do not seek the authority to collect and remit U.S. state and federal employee-related taxes and withholdings.  Such relief is instead requested in the *Debtors' Emergency Motion for Entry of an Order*

3

A schedule identifying the Authorities is attached to the Motion, Interim Order, and Final Order as **Exhibit A**.[3] Because the Debtors operate in the U.S. and Canada, they are subject to taxes in both jurisdictions. In the U.S., the Debtors are subject to the following types of taxes (non-exhaustive list): (i) federal income taxes; (ii) state income and franchise taxes; (iii) state and local lending licensing fees; (iv) real and personal property taxes; and (v) use taxes (collectively, the "U.S. Taxes and Fees"). In Canada, the Debtors are subject to the following types of taxes (non-exhaustive list): (i) federal income taxes; (ii) provincial income taxes; and (iii) goods and services taxes/harmonized sales taxes (collectively, the "Canadian Taxes and Fees", and together with the U.S. Taxes and Fees, the "Taxes and Fees").

9. The Debtors pay the Taxes and Fees to the Authorities on a periodic basis. The frequency of such payments (*e.g.*, monthly, quarterly, biannually, or annually) varies depending on the nature of, and the jurisdiction imposing, the particular Taxes and Fees. For example, the real estate taxes are paid as they accrue either directly to the Authorities, or as additional rent paid to the landlords. The state income and franchise taxes are prepaid in installments throughout the year.

10. Additionally, the Debtors are subject to, and may become subject to further routine audit investigations on account of tax returns and/or tax obligations ("Audits") during these Chapter 11 Cases. Audits may result in additional prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, "Assessments").

---

*(I) Authorizing, But Not Directing, Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Compensation and Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

[3] Although **Exhibit A** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit A**. By this Motion, the Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit A**.

4

11. The Debtors seek authority pursuant to this Motion to make such payments where: (i) Taxes and Fees accrue or are incurred postpetition; (ii) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than actually owed; (iii) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; and (iv) Taxes and Fees incurred for prepetition periods become due after the commencement of these Chapter 11 Cases, including Assessments as a result of Audits. In addition, for the avoidance of doubt, the Debtors also seek authority to pay Taxes and Fees for so-called "straddle" periods (*i.e.*, Taxes and Fees for periods that begin prepetition and end postpetition).[4]

12. The approximate prepetition amounts owing in relation to Taxes and Fees that the Debtors are seeking authority to pay pursuant to this Motion are summarized in the following table:

---

[4] Claims for so-called "straddle" Taxes and Fees may be entitled to administrative claim treatment pursuant to Bankruptcy Code section 503(b)(1)(B). The Debtors reserve their rights with respect to the proper characterization of such "straddle" Taxes and Fees and seek authority to pay such amounts in the ordinary course of business as they become due.

| Category | Description | Estimated Amounts Owed on a Prepetition Basis (in USD) |
|---|---|---|
| *Taxes and Fees* | | |
| **U.S. Federal Income Tax** | Federal tax imposed on the Debtors' income in the U.S. The Debtors are not expecting to owe any federal income tax. | $0 |
| **Canadian Federal Income Tax** | Federal tax imposed on the Debtors' income in Canada.[5] | $9.5 million |
| **State Income and Franchise Taxes** | State taxes imposed on the Debtors' income, revenue or gross receipts and state franchise taxes assessed in connection with business operations in certain states. The Debtors typically pre-pay state taxes in advance but anticipate that a portion of the pre-petition taxes will not be paid until after the Petition Date. | $450,000 |
| **Real and Personal Property Taxes** | Taxes and obligations related to real and personal property holdings in the U.S. The Debtors remit personal property taxes directly to Authorities relating to personal property. The real estate taxes are either paid directly to the Authorities or included in the rent payments, depending on the landlord arrangement. | $2,000 |
| **Use Taxes** | Taxes imposed on use of certain goods and services. The Debtors are not required to pay sales tax in the U.S. | $0 |
| **State and Local Licensing Fees** | State and local licensing and license renewal fees. | $60,000 |
| **Canadian Provincial Income Tax** | Provincial taxes imposed on the Debtors' income assessed in connection with a permanent establishment in the Province of Alberta. | $350,000 |
| **Goods and Services Tax/Harmonized Sales Tax** | Taxes imposed on the supply of certain goods and services in Canada.[6] | $3.5 million |
| **Approximate Total Taxes** | | $13.9 million |

---

[5] For the avoidance of doubt, the Canadian Federal Income Tax for the taxable year 2023 will be payable in June 2024, when the tax return is due to be filed.

[6] These tax amounts are estimates for the Debtors' prepetition liabilities that will come due post-petition.

6

13. If the Debtors do not pay the Taxes and Fees as required, such failure could cause the Authorities to initiate audits, suspend operations, file liens, or seek to lift the automatic stay. Such actions would unnecessarily divert the Debtors' attention from the reorganization process and be detrimental to these Chapter 11 Cases. Non-payment of Taxes and Fees may also result in penalties, the accrual of interest or both, which could negatively affect the Debtors' businesses or the reorganization process. Further, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities; therefore, these funds may not constitute property of the Debtors' estates.

14. Finally, certain federal, state, and local Taxing Authorities may impose personal liability on directors and/or responsible officers of entities responsible for collecting or paying certain taxes or fees to the extent that such taxes or fees are not remitted. Thus, if any such taxes or fees remain unpaid, the Debtors' directors and responsible officers could be subject to lawsuits or even criminal prosecution on account of such nonpayment during the pendency of these Chapter 11 Cases. Such lawsuits or proceedings would constitute a significant distraction for the Debtors' directors and responsible officers at a time when they should be focused on the Debtors' efforts to stabilize their postpetition business operations and swiftly emerge from chapter 11.

15. Accordingly, the Debtors seek entry of the Interim Order and the Final Order granting them authority to pay the Taxes and Fees, including amounts related to the prepetition period, (i) in an amount not to exceed $4.5 million on an interim basis and (ii) on a final basis which prepetition amounts total approximately $13.9 million in the aggregate.[7]

---

[7] The Debtors have used commercially reasonable efforts to identify all prepetition Taxes and Fees. To the extent that, despite such efforts, additional prepetition Taxes and Fees are identified subsequent to the filing of this Motion, the Debtors seek authority pursuant to the Interim Order and Final Order to pay such amounts as they become due in the ordinary course of business.

**Basis for Relief**

**I.   Certain Taxes and Fees May Not Be Property of the Debtors' Estates.**

16.   Certain of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors. *See, e.g.,* 26 U.S.C. § 7501; Tex. Tax Code § 111.016(a) ("Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any accrued penalties and interest on the amount collected."). As such, these Taxes and Fees are not property of the Debtors' estates under Bankruptcy Code section 541. *See, e.g., Begier v. IRS*, 496 U.S. 53, 59 (1990); *In re Al Copeland Enters., Inc.*, 991 F.2d 233, 237 (5th Cir. 1993) (noting that a debtor holds state sales tax revenues in trust for the state); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) ("[C]ertain prepetition tax claims, such as sales taxes, could be trust fund claims."). Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[8]

**II.   Certain of the Taxes May Be Entitled to Secured or Priority Treatment under the Bankruptcy Code.**

17.   Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). To the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess fees, interest, and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual

---

[8]   For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

8

pecuniary loss."). Claims entitled to priority status pursuant to Bankruptcy Code section 507(a)(8) must be paid in full under a confirmable plan pursuant to Bankruptcy Code section 1129(a)(9)(C). Absent payment, certain Authorities may be able to assert a lien for unpaid taxes, which likewise must be satisfied to the extent of the collateral. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue. In addition, such payments will not unduly prejudice the rights and recoveries of junior creditors and, in fact, will avoid the imposition of fees or penalties or assertion of liens by the Authorities, which would harm the interests of the estates as well as junior creditors. *See In re Equalnet Commc'ns Corp.*, 258 B.R. at 370 ("[C]ertain types of claims enjoy a priority status in addition to being sometimes critical to the ongoing nature of the business. For instance, employee wage claims and certain tax claims are both priority claims in whole or in part. The need to pay these claims in an ordinary course of business time frame is simple common sense.").

### III. Payment of the Taxes and Fees Is a Sound Exercise of the Debtors' Business Judgment.

18. Payment of prepetition obligations is appropriate where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) ("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."). Several legal theories rooted in Bankruptcy Code sections 105(a), 363(b) and 1107(a) support the payment of prepetition claims as provided herein.

19. Bankruptcy Code section 363(b) permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to

honor prepetition claims where supported by an appropriate business justification). In addition, under Bankruptcy Code section 1107(a), a debtor in possession has, among other things, the "implied duty . . . to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEIRoofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. at 497). Moreover, under Bankruptcy Code section 105(a), "the [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); *see In re CoServ, L.L.C.*, 273 B.R. at 497 (finding that Bankruptcy Code sections 105 and 1107 provide the authority for a debtor in possession to pay prepetition claims); *see also In re Mirant Corp.*, 296 B.R. 427, 429 (Bankr. N.D. Tex. 2003) (noting that non-payment of prepetition claims may seriously damage a debtor's business). The above-referenced sections of the Bankruptcy Code therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the going-concern value of the debtor's estate, as is the case here. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. at 497 ("it is only logical that the bankruptcy court be able to use [s]ection 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate"). Further, the U.S. Trustee requires that debtors pay all tax obligations arising after the filing of the petition in full when due. *Region 7 Guidelines for Debtors-in-Possession*, at 1–2 § I ¶ C. Additionally, as described above, the Debtors' directors and officers could potentially be subject to personal liability in the event that the Taxes and Fees are not remitted or paid to the appropriate Authority.

20. Any collection action for non-payment of the Taxes and Fees, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of all parties in

interest. The dedicated and active participation of the Debtors' officers is integral to the Debtors' continued operations and essential to the orderly administration of these Chapter 11 Cases.

21. Furthermore, the Debtors' obligation to pay the Taxes and Fees ultimately may result in increased tax liability for the Debtors if interest and penalties accrue, as such amounts may also be entitled to priority treatment. *See, e.g.,* Tex. Tax Code § 111.016(a). Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to Bankruptcy Code section 507(a)(8)(C). As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. *See In re Equalnet Commc'ns Corp.,* 258 B.R. at 370 (noting that paying priority tax claim in the ordinary course of business is "simple common sense"). Accordingly, the Court should grant the Debtors authority to pay the Taxes and Fees as provided herein.

## **Emergency Consideration**

22. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003 and Bankruptcy Local Rule 9013-1, which empower a court to grant relief within the first 21 days after the commencement of a Chapter 11 Case when that relief is necessary to avoid immediate and irreparable harm to the estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder their operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these Chapter 11 Cases could severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

23. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business. Under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the relief requested herein. The Debtors request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

24. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Reservation of Rights**

25. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in

interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Interim Order or Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

26.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed on the Debtors' petitions as holding the largest 30 unsecured claims (on a consolidated basis); (c) counsel to the Prepetition 1L Agent; (d) counsel to the Prepetition 1.5L Notes Trustee; (e) counsel to the Prepetition 2L Notes Trustee; (f) counsel to the Ad Hoc Group; (g) counsel to Atlas Securitized Products Holdings, L.P. in its capacity as Administrative Agent; (h) counsel to Midtown Madison Management LLC as Heights II Administrative Agent and Canada II Administrative Agent; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general in the states where the Debtors conduct their business operations; (m) the Authorities; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors request entry of interim and final orders, substantially in the forms of the Interim Order and Final Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper, and equitable.

Dated: March 25, 2024
      Houston, Texas

*/s/ Sarah Link Schultz*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email:  sschultz@akingump.com
        pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email:  mstamer@akingump.com
        akordas@akingump.com
        orahnama@akingump.com

*Proposed Counsel to the Debtors*

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

                                                   */s/ Sarah Link Schultz*
                                                   Sarah Link Schultz

## Certificate of Service

I certify that on March 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                   */s/ Sarah Link Schulz*
                                                   Sarah Link Schultz