**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CURO Group Holdings Corp., *et al.*, | ) ) | Case No. 24-90165 (MI) |
| Debtors.[1] | ) ) ) | (Joint Administration Requested) (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO, AND (B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES; (II) AUTHORIZING CONTINUATION OF THE SURETY BOND AND <u>LETTER OF CREDIT PROGRAM; AND (III) GRANTING RELATED RELIEF</u>**

> **Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (prevailing Central Time) on March 25, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 25, 2024, at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th Floor, 515 Rusk Street, Houston, TX 77002. Participation at the hearing will only be permitted by audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (the "Motion"):

## Relief Requested

1. By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Order"): (i) authorizing the Debtors to (a) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto in the ordinary course, and (b) renew, amend, supplement, extend, or purchase insurance coverage in the ordinary course; (ii) authorizing continuation and renewal of the Surety Bond and LOC Program (as defined herein); and (iii) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 4002-1 and 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules") and the Procedures for Complex Cases in the Southern District of Texas.

## Background

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their

businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

6. The Debtors and their non-Debtor affiliates (collectively, the "Company") provide consumer credit lending services across the U.S. and Canada.  In the U.S., the Company operates under several principal brands, including "Heights Finance," "Southern Finance," "Covington Credit," "Quick Credit," and "First Heritage Credit."  In Canada, the Company operates under the "Cash Money" and "LendDirect" brands.  As of the Petition Date, the Company operated approximately 400 store locations across 13 U.S. states and approximately 150 stores in eight Canadian provinces and had an online presence in eight Canadian provinces and one territory.  The Company generated approximately $672 million in total revenue for the fiscal year 2023, and, as of the Petition Date, the Company had approximately $2.1 billion in aggregate principal amount of prepetition funded debt obligations.

7. A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in the *Declaration of Douglas Clark in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

### The Insurance Policies and Related Payment Obligations

8. The Debtors maintain a comprehensive insurance program that provides coverage to the Company for, among other things, property liability, general liability, employment practices

3

liability, crime liability, cyber liability, fiduciary liability, automobile liability, directors' and officers' liability, workers' compensation and an errors and omissions policy (in Canada only) (collectively, the "Insurance Policies"), which are administered by various third-party insurance carriers (collectively, the "Insurance Carriers"). A schedule of the Insurance Policies is attached as **Exhibit A** to this Motion and the Order.[2]

9. The Debtors are required to pay premiums and associated taxes and fees under the Insurance Policies based upon a fixed rate established and billed by each Insurance Carrier. For 2023, the aggregate annual premiums including, as applicable, taxes and surcharges, broker fees, and commissions paid by the Debtors for the Insurance Policies, was approximately $2.9 million. The Insurance Policies generally are annual in length and renew at set intervals. The Debtors believe that, as of the Petition Date, there are no material outstanding premiums due on account of the Insurance Policies. Out of an abundance of caution and to ensure uninterrupted coverage under the Insurance Policies, the Debtors seek authority to honor any prepetition amounts on account of the Insurance Policies and pay premiums and other costs related to such Insurance Policies as they come due in the ordinary course during the pendency of these Chapter 11 Cases.

10. Certain of the Insurance Policies require the Debtors to pay a per-incident deductible (collectively, "Deductibles"). Generally, if a claim is made against the Insurance Policies, the Debtors' applicable Insurance Carrier will administer the claim and make payments in connection therewith. The Deductibles, if any, are offset against such payments. The Debtors, therefore, often do not pay Deductibles directly to their Insurance Carriers, but rather are

---

[2] The descriptions of the Insurance Policies set forth in this Motion, including **Exhibit A** to the Order, are only a summary. The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this Motion. The Debtors request authority to honor obligations and renew all insurance policies, as applicable, regardless of whether the Debtors inadvertently fail to include a particular insurance policy on **Exhibit A** to the Order, and any such omitted insurance policy is hereby included in the defined term "Insurance Policies" as used herein and in the Order.

4

reimbursed by their Insurance Carriers less the amount of the applicable Deductibles.  In cases where the Debtors maintain a high deductible policy, such as the Debtors' D&O policies, claims are administered and paid by the Insurance Carriers and are reimbursed by the Debtors directly.

11. Unlike the Debtors' other insurance policies, the Debtors' prior workers compensation policy, where three claims remain outstanding, uses self-insured retention ("SIR") instead of Deductibles.  If a claim is made against such policy, the Debtors make payments to the applicable Insurance Carrier up to the limit of the SIR and, once the claim value is above the SIR amount, the Insurance Carrier will cover remaining costs.  The Insurance Carrier will administer the claim and make payments in connection therewith.  The Insurance Carrier conducts a "true-up" at the end of every month and refunds any overage of prepayment or bills the Debtors for any shortage.

12. The Debtors seek authority to continue the Deductibles and SIRs under the Insurance Policies, including honoring any payment obligations under the Deductibles and SIRs, in the ordinary course of business on a postpetition basis to ensure uninterrupted coverage thereunder.

13. Continuation of the Insurance Policies and entry into new insurance policies is essential to the Debtors' continued operations and the goals for the Chapter 11 Cases.  Moreover, in many instances, insurance coverage is required by the regulations, laws and contracts that govern the Company's commercial activities, including the requirement by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") that a debtor maintains adequate coverage.  Accordingly, the Debtors request authority to maintain their existing Insurance Policies, pay prepetition obligations related thereto, if any, and enter into new insurance policies, as applicable, in the ordinary course of business.

**The Directors' and Officers' Coverage**

14. The Insurance Policies include, among other policies: (i) one primary and five excess directors' and officers' liability policies (collectively, the "D&O Policy"); (ii) an employment practices liability policy; and (iii) a fiduciary liability policy. These Insurance Policies provide coverage to, among others, the Debtors' directors, officers, and employees. Prior to the Petition Date, the Debtors purchased a 6-year tail for the D&O Policy and paid the associated $3.4 million premium in full prior to the Petition Date.

**Surety Bond and LOC Program**

15. In the ordinary course of business, various state law licensing regulations require the Company to provide surety bonds ("Surety Bonds") as a prerequisite to obtaining the licenses necessary for business operations within the state (the "Surety Bond Program" and each surety thereunder, a "Surety"). The Hanover Insurance Company ("Hanover") and Travelers Insurance issued the Debtors' current outstanding surety bonds in the U.S. In the recent years, Hanover has requested that the Surety Bonds be collateralized. The Debtors have entered into a standby letter of credit with Wells Fargo Bank, N.A. (the "Wells Fargo LOC") to provide the necessary collateral for Hanover as the beneficiary. The percentage of each Surety Bond that needed to be collateralized varied over time. As of the Petition Date, the Wells Fargo LOC is overcollateralized at 115% due to relinquishment of certain Surety Bonds over the previous year. Additionally, the provincial authorities in Canada also require letters of credit with RBC Royal Bank of Canada, with each respective province as beneficiary (the "Canadian LOCs" and, together with the Wells Fargo LOC, the "LOCs"). The Canadian LOCs are not required to be collateralized. In 2023, the premiums for the Canadian LOCs paid to RBC Royal Bank of Canada totaled $28,795.71. The

total amount of outstanding Surety Bonds and LOCs is approximately $3,121,000.00 and $2,699,000.00, respectively.

16. The obligations secured by the Surety Bond Program and a list of the Debtors' Surety Bonds and the Canadian LOCs is set forth in **Exhibit B** attached to this Motion and the Order. The premiums for the Surety Bonds (the "Surety Premiums") and the Canadian LOCs are generally determined on an annual basis. Payment is remitted by the Debtors when the Surety Bonds and Canadian LOCs are issued and annually upon each renewal. Surety Solutions, a Gallagher Company, Fisher Brown Bottrell Insurance, Inc., and Western Surety Company assist the Debtors with administration of Surety Premiums. The Canadian LOCs are administered directly through RBC Royal Bank of Canada. The Debtors do not believe they owe any amounts on account of unpaid prepetition Surety Premiums and LOC premiums. The Debtors request authority to continue the Surety Bond Program and LOCs (collectively, the "Surety Bond and LOC Program") in the Debtors' discretion in the ordinary course of business.

## The Debtors' Broker

17. The Debtors obtain the Insurance Policies primarily through their broker, HUB International Limited ("HUB"). HUB assists the Company in (i) obtaining and maintaining, in the most cost-efficient manner, comprehensive insurance coverage, (ii) negotiating policy terms, provisions and premiums, (iii) assisting the Debtors with claims, and (iv) providing ongoing support throughout the applicable policy periods. The Debtors also use the Gallagher Company ("Gallagher" and, together with HUB, the "Insurance Brokers") to assist with the administration of the Debtors' workers compensation policy and the Surety Bond Program. The premiums that the Debtors pay for their Insurance Policies include commissions and fees to the Insurance Brokers

for services rendered (the "Broker Fees"). As of the Petition Date, the Debtors do not believe they owe any amounts to the Insurance Brokers on account of prepetition Broker Fees.

18. To the extent any such prepetition amounts are determined to remain outstanding, the Debtors seek authority to honor any Broker Fees in full, to ensure uninterrupted coverage under their Insurance Policies.

**Basis for Relief**

**I. The Debtors Must Continue the Insurance Policies to Comply with the Bankruptcy Code and Other Applicable Laws.**

19. Bankruptcy Code section 1112(b)(4)(C) provides that "failure to maintain appropriate insurance that poses a risk to the estate" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). In addition, in many instances, the coverage provided under the Insurance Policies is required by the regulations, laws and contracts that govern the Company's commercial activities. To ensure compliance with the Bankruptcy Code and other applicable laws, the Debtors believe it is essential that they (a) maintain and continue to make all payments required under their Insurance Policies and (b) have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.[3]

**II. Paying Obligations Under the Insurance Policies and the Surety Bond and LOC Program Is Warranted.**

20. The Debtors have reviewed their books and records and do not believe there are any outstanding prepetition obligations owed under the Insurance Policies or the Surety Bond and LOC Program. Out of an abundance of caution, however, the Debtors request authority to pay any

---

[3] The Debtors believe that continuation of the Insurance Policies and the ability to supplement, amend, extend, renew, or replace such Insurance Policies is authorized in the ordinary course. 11 U.S.C. § 363(c)(1). The Debtors therefore seek such relief out of an abundance of caution.

prepetition amounts due on account of the Insurance Policies, the Surety Bond and LOC Program, and the Broker Fees in acknowledgement of the importance of continued provision of insurance, surety, and letter-of-credit services to the Company's businesses and the Debtors' compliance with licensing regulations and the bankruptcy process.

21. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect the estate. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity"). In doing so, these courts acknowledge that several legal theories rooted in Bankruptcy Code sections 105(a), 363(b) and 1107(a) support the payment of prepetition claims as provided herein.

22. Further, Bankruptcy Code section 363(b) permits a debtor, subject to court approval, to pay prepetition obligations where a sound business purpose exists for doing so. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that Bankruptcy Code section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). In addition, under Bankruptcy Code section 1107(a), a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)). Moreover, under Bankruptcy Code section 105(a), "the [C]ourt may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code.]" 11 U.S.C. § 105(a). The above-referenced Bankruptcy Code sections therefore authorize the postpetition payment of prepetition claims when the payments are critical to preserving the debtor's estate. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. at 497 (noting that "it is only logical that

the bankruptcy court be able to use section 105(a) of the [Bankruptcy] Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

23.     The Debtors seek to continue, amend, supplement, and extend their existing Insurance Policies, and purchase new policies, as applicable, in the ordinary course of business. The Debtors believe that failure to timely honor any outstanding prepetition obligations on account of the Insurance Policies, to the extent there are any, could negatively affect their ability to enter into such amendments, supplements, extensions, or new policies, to the extent necessary. The continuation of the Insurance Policies is essential to preserving the Debtors' assets and minimizing exposure to risk during the pendency of these Chapter 11 Cases. Therefore, the Debtors should be authorized to pay any prepetition obligations related to such Insurance Policies.

**III.   To the Extent the Court Determines that the Surety Bonds and LOCs are a Secured Extension of Credit, Relief is Appropriate under Section 364 of the Bankruptcy Code.**

24.     Under Bankruptcy Code section 364(c), a debtor may obtain unsecured credit in the ordinary course of business or obtain secured credit (a) with priority over administrative expenses, (b) secured by a lien on unencumbered estate assets, or (c) secured by a junior lien on previously encumbered assets. 11 U.S.C. § 364(c). To satisfy the requirements of Bankruptcy Code section 364(c), a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. *Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Given the Debtors' current financial circumstances, the Debtors may not be able to obtain financial accommodations comparable to those offered by the Sureties and LOC issuers on an unsecured basis or administrative expense basis.

25.     To the extent a Surety Bond and LOC are deemed an extension of credit, Bankruptcy Code section 364 provides the Debtor ample authority to renew existing Surety Bonds

and LOCs, and procure new ones, whether on an unsecured basis or, if necessary, on a secured basis.

26. Continuing the Surety Bond and LOC Program is necessary to maintain the Debtors' current business operations. As described above, the Debtors are required to provide surety bonds and letters of credit to governmental units or other licensing agencies to secure the payment or performance of obligations related to the Debtors' licenses that are necessary for continued operations. The Debtors therefore seek authority to furnish the Sureties and LOC issuers (or any new provider of Surety Bonds and LOCs, as applicable) with collateral or new forms of credit support with respect to the Debtors' existing Surety Bonds, Surety Bond renewals, any new Surety Bonds, LOCs, LOC renewals, or any new LOCs.

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

27. The Debtors believe they have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of cash on hand and anticipated access to debtor in possession financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Insurance Policies. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. The Debtors request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## Emergency Consideration

28. The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003 and Bankruptcy Local Rule 9013-1, which empower a court to grant relief within the first 21 days after the commencement of a chapter 11 case when that relief is necessary

to avoid immediate and irreparable harm to the estate. An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder their operations and cause irreparable harm. The failure to receive the requested relief during the first 21 days of these Chapter 11 Cases could severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring. Accordingly, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

29. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

30. Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) a request or authorization to assume, adopt or reject any agreement, contract or lease pursuant to Bankruptcy Code section 365; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of the Debtors', or any other party in

interest's, rights under the Bankruptcy Code or any other applicable law; or (h) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

## Notice

31.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed on the Debtors' petitions as holding the largest 30 unsecured claims (on a consolidated basis); (c) counsel to the Prepetition 1L Agent; (d) counsel to the Prepetition 1.5L Notes Trustee; (e) counsel to the Prepetition 2L Notes Trustee; (f) counsel to the Ad Hoc Group; (g) counsel to Atlas Securitized Products Holdings, L.P. in its capacity as Administrative Agent; (h) counsel to Midtown Madison Management LLC as Heights II Administrative Agent and Canada II Administrative Agent; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general in the states where the Debtors conduct their business operations; (m) the Insurance Carriers; (n) the Insurance Brokers; (o) the Sureties; (p) the LOC issuers; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors request entry of an order, substantially in the forms of the Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper and equitable.

Dated: March 25, 2024
   Houston, Texas

/s/ Sarah Link Schultz
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
   pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
   akordas@akingump.com
   orahnama@akingump.com

*Proposed Counsel to the Debtors*

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

    */s/ Sarah Link Schultz*
    Sarah Link Schultz

**Certificate of Service**

I certify that on March 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

    */s/ Sarah Link Schultz*
    Sarah Link Schultz