**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | (Emergency Hearing Requested) |

**DEBTORS' <u>EMERGENCY</u> MOTION**
**FOR ENTRY OF INTERIM AND FINAL**
**ORDERS (I) APPROVING NOTIFICATION AND**
**HEARING PROCEDURES FOR CERTAIN TRANSFERS OF**
**BENEFICIAL OWNERSHIP AND DECLARATIONS OF WORTHLESSNESS**
**WITH RESPECT TO COMMON STOCK AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (prevailing Central Time) on March 25, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on March 25, 2024, 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th Floor, 515 Rusk Street, Houston, TX 77002. Participation at the hearing will only be permitted by audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (the "Motion"):

**Relief Requested**

1. By this Motion, the Debtors seek entry of interim and final orders, substantially in the form attached hereto (respectively, the "Interim Order" and the "Final Order"): (i) approving certain notification and hearing procedures related to certain transfers of any Beneficial Ownership (as defined below) in, or declarations of worthlessness with respect to, existing common stock of Debtor CURO Group Holdings Corp. ("CURO") or any beneficial interest therein (the "Common Stock"),[2] as set forth in **Exhibit 1** to the Interim Order (the "Procedures"); (ii) directing that any purchase, sale, other transfer of, or declaration of worthlessness with respect to Common Stock in violation of the Procedures shall be null and void *ab initio*; and (iii) granting related relief.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362, and 541 of title 11 of the United States Code (the "Bankruptcy Code"), and the Procedures for Complex Cases in the Southern District of Texas.

---

[2] The Debtors' only publicly traded entity is CURO, which is traded on the New York Stock Exchange ("NYSE") under the trading symbol "CURO." On October 16, 2023, the Company received a notice of noncompliance with the average market capitalization of the Company over a consecutive 30 trading-day period from NYSE. On October 27, 2023, the Company received an additional notice of noncompliance with the NYSE's minimum stock price requirements. As of the Petition Date, the Company intends to emerge from chapter 11 as a privately held company and will commence taking steps to delist from NYSE.

2

**Background**

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases (these "Chapter 11 Cases") pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

6. The Debtors and their non-Debtor affiliates (collectively, the "Company") provide consumer credit lending services across the U.S. and Canada. In the U.S., the Company operates under several principal brands, including "Heights Finance," "Southern Finance," "Covington Credit," "Quick Credit," and "First Heritage Credit." In Canada, the Company operates under the "Cash Money" and "LendDirect" brands. As of the Petition Date, the Company operated approximately 400 store locations across 13 U.S. states and approximately 150 stores in eight Canadian provinces and had an online presence in eight Canadian provinces and one territory. The Company generated approximately $672 million in total revenue for the fiscal year 2023, and, as of the Petition Date, the Company had approximately $2.1 billion in aggregate principal amount of prepetition funded debt obligations.

7. A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in the *Declaration of Douglas Clark in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with this Motion and incorporated by reference herein.

3

**The Tax Attributes**

8. The Debtors have two primary tax attributes: net operating losses ("NOLs") and capital loss carryforwards ("Capital Loss Carryforwards"). First, a company generates NOLs if the operating expenses it has incurred exceed the revenues it has earned during a single tax year. A company may apply, or "carry forward," NOLs to reduce future tax payments (subject to certain conditions as discussed below).[3] *See* IRC § 172. Second, a company's capital losses can be carried forward as Capital Loss Carryforwards. *See* IRC § 1212.

9. As of December 31, 2023, the Debtors estimate that they had federal consolidated NOLs in the amount of approximately $229 million and Capital Loss Carryforwards in the amount of approximately $76 million (together, the "Tax Attributes"). The Debtors may generate additional Tax Attributes in the current tax year, including during the pendency of these Chapter 11 Cases. The Tax Attributes are potentially of significant value to the Debtors and their estates because the Debtors can carry forward certain Tax Attributes to offset future taxable income generated in connection with the restructuring. Additionally, such Tax Attributes may also be utilized by the Debtors to offset any taxable income that may result from transactions consummated during these Chapter 11 Cases. Accordingly, the value of the Tax Attributes could inure to the benefit of the Debtors' creditors. Conversely, loss of the Debtors' Tax Attributes could reduce the ultimate recovery to the Debtors' creditors, and without the relief sought in this Motion, the Debtors may be unable to make use of their Tax Attributes.

---

[3] In addition, under certain circumstances, certain NOLs may be "carried back" to offset taxable income in prior years. Under U.S. federal income tax legislation, the specific rules regarding carrybacks and carryforwards depend on when a particular NOL was generated.

**I.      An "Ownership Change" May Negatively Impact the Debtors' Utilization of the Tax Attributes.**

10.     The Debtors' ability to utilize the Tax Attributes to reduce future tax liability is subject to certain potential statutory limitations. Section 382 of the Internal Revenue Code of 1986 (as amended, the "IRC") limits the amount of taxable income that can be offset by a corporation's NOLs and certain other Tax Attributes in taxable years (or a portion thereof) following an "ownership change."  Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more "5-percent shareholders" has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change.  The total percentage point increases of stock owned by one or more "5 percent" shareholders within the measuring period is generally referred to as the amount of the "ownership shift."  For example, an ownership change would occur in the following situation:

> An individual ("A") owns 50.1 percent of the stock of corporation XYZ.  A sells her 50.1 percent interest to another individual ("B"), who owns 5 percent of XYZ's stock.  Under section 382, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period.  The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5-percent shareholder and increases his ownership by more than 50 percentage points during the testing period.

11.     It is critical to understand that, under these rules, a company can be harmed because of actions by parties that are unknown to the company. As noted above, if a person unknown to a company were to acquire more than 5 percent of that company's stock (determined in accordance with the rules set forth above), that company would experience an "ownership shift" that could lead to an ownership change.  By the time that company knew who the unidentified shareholder was, the shareholder would have already purchased the shares and the harm would be done. Accordingly, for the Procedures to be effective, the Procedures must bind unknown parties.

12. An "ownership change" can also occur because of a "worthless stock deduction" claimed by any "50-percent shareholder." A 50-percent shareholder is any person that owned 50 percent or more of a corporation's stock "at any time during the 3-year period ending on the last day of the taxable year" with respect to which the worthless stock deduction is claimed. IRC § 382(g)(4)(D). If the 50-percent shareholder still owns the corporation's stock at the end of the year, section 382 of the IRC essentially treats the person as newly purchasing the stock on the first day of the next taxable year. For example, if a person with 50 percent of a corporation's stock claims a worthless stock deduction in 2024 (or with respect to the 2024 tax year) but does not sell such stock, that person is treated (i) as not having owned the stock at the end of 2024 and (ii) as having purchased the stock on the first day of the 2025 tax year. That deemed purchase would cause an ownership change because the 50-percent shareholder would be deemed to have a 50-percentage-point increase in its stock ownership. Notably, while the seminal case of *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991), *cert. denied,* 502 U.S. 821 (1991), is relied upon to support equity trading motions in general, the specific issue in *Prudential Lines* was, in fact, a worthless stock deduction.

13. If an ownership change occurs, section 382 of the IRC limits the amount of a corporation's future taxable income that may be offset by its "pre-change losses" to an annual amount equal to the fair market value of all of the stock of the corporation prior to the ownership change multiplied by the long-term tax-exempt rate that applies to the month of the ownership change.[4] *See* IRC § 382(b). Pre-change losses include the Tax Attributes, any net unrealized built-in loss (as defined in section 382(h)(3) of the IRC) and potentially, certain other deductions. A

---

[4] The applicable long-term tax-exempt rate changes from month to month. For ownership changes occurring in March 2024, the applicable long-term tax exempt rate is 3.44 percent.

6

net unrealized built-in loss is equal to the excess of the aggregate adjusted basis of all of a corporation's applicable assets over their fair market value (as determined for purposes of section 382 of the IRC) immediately prior to the ownership change.[5]  IRC § 382(h)(1)(B).  Once an NOL is limited under section 382 of the IRC, its use is generally limited forever.[6]  Thus, certain transfers or worthless stock deductions with respect to Beneficial Ownership of Common Stock effected before the effective date of the Debtors' chapter 11 plan could trigger an "ownership change" for IRC purposes, jeopardizing the Debtors' ability to utilize the Tax Attributes prior to consummating a restructuring and negatively affecting the Debtors' estates and creditors.

14.     Notably, the Debtors have limited the relief requested herein to the extent necessary to preserve estate value.  Specifically, the proposed Interim Order and Final Order will affect only (i) holders of the equivalent of 1,877,725 shares of Common Stock (representing approximately 4.5 percent of all issued and outstanding shares of Common Stock) or more of the Beneficial Ownership of outstanding Common Stock, if any, (ii) parties who are interested in purchasing sufficient Common Stock to result in such party becoming a holder of 1,877,725 shares of Common Stock (representing approximately 4.5 percent of all issued and outstanding shares of Common Stock) and (iii) any "50-percent shareholder" seeking to claim a worthless stock deduction.

---

[5] The rules relating to potential limitations on the ability to offset taxable income with so-called recognized built-in losses are complex and depend on, among other things, the extent (if any) of a debtor's "net unrealized built-in loss." A net unrealized built-in loss is equal to the excess of the aggregate adjusted basis of all of a corporation's applicable assets over their fair market value (as determined for purposes of section 382 of the IRC) immediately prior to the ownership change. 26 U.S.C. § 382(h)(3)(A)(i). Once a net unrealized built-in loss is limited under section 382 of the IRC, its use is limited for 5 years. If a corporation has a "net unrealized built-in gain" in its assets as of the time of the ownership change, the limitation under section 382 may be increased in certain circumstances. It is expected that CURO will have a net unrealized built-in gain at the effective time of the Debtors' emergence from chapter 11.

[6] Recognized built-in losses that are deducted beginning after the expiration of a five-year "recognition period" are no longer subject to limitation, but any recognized built-in losses that are deducted prior to the expiration of such period are limited forever.

15. To maximize the value of the Tax Attributes for the benefit of the Debtors' estates, the Debtors seek limited relief that will enable them to closely monitor certain transfers of Beneficial Ownership of Common Stock and certain worthless stock deductions with respect to Beneficial Ownership of Common Stock so as to be in a position to act expeditiously to prevent such transfers or worthlessness deductions, if necessary, with the purpose of preserving the Tax Attributes. By establishing and implementing such Procedures, the Debtors will be able to object to "ownership changes" that threaten their ability to preserve the value of their Tax Attributes for the benefit of the estates.

## II. Proposed Procedures for Transfers of Beneficial Ownership or Declarations of Worthlessness with Respect to Common Stock.

16. The Procedures are the mechanism by which the Debtors propose that they will monitor and, if necessary, object to certain transfers of Beneficial Ownership of Common Stock and declarations of worthlessness with respect to Beneficial Ownership of Common Stock to ensure preservation of the Tax Attributes. The Procedures, which are fully set forth in **Exhibit 1** to the Interim Order, are summarized below.[7]

Procedures for Transfers of Beneficial Ownership of Common Stock

    a. Any entity (as defined in section 101(15) of the Bankruptcy Code) that is or becomes a Substantial Shareholder (as defined herein) of Common Stock must file with the Court, and serve upon: (i) the Debtors, CURO Group Holdings Corp., 101 N. Main Street, Suite 600, Greenville, SC 29601, Attn: Rebecca Fox; (ii) proposed co-counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn: Sarah Link Schultz and One Bryant Park, New York, NY 10036 Attn: Michael S. Stamer and Anna Kordas; (iii) counsel to any statutory committee appointed in these cases; (iv) the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002; and (v) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002 (collectively,

---

[7] Capitalized terms used in this section but not otherwise defined herein shall have the meanings ascribed to them in the Procedures. To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

the "Notice Parties"), a declaration of such status, substantially in the form attached to the Procedures as **Exhibit 1A** (each, a "Declaration of Status as a Substantial Shareholder"), on or before the later of (A) 20 calendar days after the date of the Notice of Interim Order (as defined herein), or (B) ten calendar days after becoming a Substantial Shareholder; *provided*, that, for the avoidance of doubt, the other procedures set forth herein shall apply to any Substantial Shareholder even if no Declaration of Status as a Substantial Shareholder has been filed.

b.  At least 15 calendar days prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in an increase in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual becoming a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock, substantially in the form attached to the Procedures as **Exhibit 1B** (each, a "Declaration of Intent to Accumulate Common Stock").

c.  At least 15 calendar days prior to effectuating any transfer of Beneficial Ownership of Common Stock that would result in a decrease in the amount of Common Stock of which a Substantial Shareholder has Beneficial Ownership or would result in an entity or individual ceasing to be a Substantial Shareholder, the parties to such transaction must file with the Court, and serve upon the Notice Parties, an advance written declaration of the intended transfer of Common Stock, substantially in the form attached to the Procedures as **Exhibit 1C** (each, a "Declaration of Intent to Transfer Common Stock" and, together with a Declaration of Intent to Accumulate Common Stock, a "Declaration of Proposed Transfer").

d.  The Debtors shall have 15 calendar days after receipt of a Declaration of Proposed Transfer to file with the Court and serve on such Substantial Shareholder or potential Substantial Shareholder an objection to any proposed transfer of Beneficial Ownership of Common Stock described in the Declaration of Proposed Transfer on the grounds that such transfer might adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors file an objection, such transaction will remain ineffective unless such objection is withdrawn by the Debtors, or such transaction is approved by a final and non-appealable order of the Court. If the Debtors do not object within such 15-day period, such transaction can proceed solely as set forth in the Declaration of Proposed Transfer. Further transactions within the scope of this paragraph must be the subject of additional notices in accordance with the procedures set forth herein, with an additional 15-day waiting period for each Declaration of Proposed Transfer.

e.  For purposes of these Procedures: (i) a "Substantial Shareholder" is any person or entity (as such term is defined in Treasury Regulations Section

1.382-3(a)) that has direct or indirect Beneficial Ownership of at least 1,877,725 shares of Common Stock (representing approximately 4.5 percent of all issued and outstanding shares of Common Stock);[8] and (ii) "Beneficial Ownership" will be determined in accordance with the applicable rules of section 382 of the IRC, and the Treasury Regulations thereunder (other than Treasury Regulations Section 1.382-2T(h)(2)(i)(A)), and includes direct, indirect and constructive ownership (*e.g.*, (1) a holding company would be considered to beneficially own all equity securities owned by its subsidiaries, (2) a partner in a partnership would be considered to beneficially own its proportionate share of any equity securities owned by such partnership, (3) an individual and such individual's family members may be treated as one individual, (4) persons and entities acting in concert to make a coordinated acquisition of equity securities may be treated as a single entity and (5) a holder would be considered to beneficially own equity securities that such holder has an Option to acquire). An "Option" to acquire stock includes all interests described in Treasury Regulations Section 1.382-4(d)(9), including any contingent purchase right, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

Procedures for Declarations of Worthlessness of Common Stock

   a. Any person or entity that currently is or becomes a 50-Percent Shareholder[9] must file with the Court and serve upon the Notice Parties a declaration of such status as a 50-Percent Shareholder, substantially in the form attached to the Procedures as **Exhibit 1D** (each, a "Declaration of Status as a 50-Percent Shareholder"), on or before the later of (i) 20 calendar days after the date of the Notice of Interim Order, and (ii) ten calendar days after becoming a 50-Percent Shareholder; *provided*, that, for the avoidance of doubt, the other procedures set forth herein shall apply to any 50-Percent Shareholder even if no Declaration of Status as a 50-Percent Shareholder has been filed.

   b. At least 15 calendar days prior to filing any federal or state tax return, or any amendment to such a return, or taking any other action that claims any deduction for worthlessness of Beneficial Ownership of Common Stock for a tax year ending before the effective date of the Debtors' chapter 11 plan, such 50-Percent Shareholder must file with the Court and serve upon the Notice Parties a declaration of intent to claim a worthless stock deduction

---

[8] Based on approximately 41,727,213 shares of Common Stock outstanding as of March 24, 2024, for purposes of section 382 of the IRC.

[9] For purposes of the Procedures, a "50-Percent Shareholder" is any entity or individual person that is or becomes a "50-percent shareholder" within the meaning of section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations.

        (a "Declaration of Intent to Claim a Worthless Stock Deduction"), substantially in the form attached to the Procedures as **Exhibit 1E**.

    i. The Debtors shall have 15 calendar days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50-Percent Shareholder an objection to any proposed claim of worthlessness described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their Tax Attributes.

    ii. If the Debtors timely object, the filing of the tax return or amendment thereto with such claim will not be permitted unless approved by a final and non-appealable order of the Court, unless the Debtors withdraw such objection.

    iii. If the Debtors do not object within such 15-day period, the filing of the return or amendment with such claim will be permitted solely as described in the Declaration of Intent to Claim a Worthless Stock Deduction. Additional returns and amendments within the scope of this section must be the subject of additional notices as set forth herein, with an additional 15-day waiting period. To the extent that the Debtors receive an appropriate Declaration of Intent to Claim a Worthless Stock Deduction and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to any statutory committee(s) appointed in these Chapter 11 Cases.

Procedures for Violation of These Procedures

    a. Any acquisition, disposition, or trading in the Beneficial Ownership of, or worthless stock deduction with respect to, the Common Stock in violation of these Procedures shall be null and void *ab initio* pursuant to the Court's equitable powers under Bankruptcy Code 105(a) and as an act in violation of the automatic stay under Bankruptcy Code section 362.

Notice Procedures

    a. No later than three business days following entry of the Interim Order, the Debtors shall serve a notice by first class mail, substantially in the form attached to the Procedures as **Exhibit 1F** (the "Notice of Interim Order"), on: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims; (iii) the U.S. Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) counsel to any official committees appointed in these Chapter 11 Cases; and (vi) all registered Common Stock holders and all banks, brokers, intermediaries or mailing

11

   agents (collectively, the "Nominees") that hold Common Stock in "street name" (with instructions to serve down to the beneficial holders of Common Stock). Additionally, no later than three business days following entry of the Final Order, the Debtors shall serve a Notice of Interim Order modified to reflect that the Final Order has been entered (as modified, the "Notice of Final Order") on the same entities that received the Notice of Interim Order.

b. All registered and Nominee holders of Common Stock shall be required to serve the Notice of Interim Order or Notice of Final Order, as applicable, on any holder for whose benefit such registered or Nominee holder holds such Common Stock down the chain of ownership for all such holders of Common Stock.

c. Any entity or broker or agent acting on such entity's or individual's behalf who sells in excess of 1,877,725 shares of Common Stock (representing approximately 4.5 percent of all issued and outstanding shares of Common Stock)[10] to another entity shall be required to serve a copy of the Notice of Interim Order or Notice of Final Order, as applicable, on such purchaser of such Common Stock, or any broker or agent acting on such purchaser's behalf.

d. As soon as reasonably practicable following entry of the Interim Order, the Debtors shall: (i) submit a copy of the Notice of Interim Order (modified for publication) for publication in *The New York Times* (national edition) and/or any such other similar publication that the Debtors deem appropriate and disclose in the applicable affidavit of service; and (ii) post the Interim Order and the Procedures to the Debtors' restructuring website at https://dm.epiq11.com/Curo.

e. To the extent confidential information is required in any declaration described in these Procedures, such confidential information may be filed and served in redacted form; *provided*, *however*, that any such declarations served on the Debtors ***shall not*** be in redacted form. The Debtors shall keep all information provided in such declarations strictly confidential and shall not disclose the contents thereof to any person except: (i) to the extent necessary to respond to a petition or objection filed with the Court; (ii) to the extent otherwise required by law; or (iii) to the extent that the information contained therein is already public; *provided*, *however*, that the Debtors may disclose the contents thereof to their professional advisors, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order. To the extent confidential information is necessary to respond to a petition or

---

[10] Based on approximately 41,727,213 shares of Common Stock outstanding as of March 24, 2024, for purposes of section 382 of the IRC.

objection filed with the Court, such confidential information shall be filed under seal or in a redacted form.

## Basis for Relief

17. Bankruptcy Code section 541 provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Tax Attributes are property of the Debtors' estates. *Prudential Lines*, 928 F.2d at 573 ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 16, 2005) [Docket No. 195] (finding that NOLs are property of the debtors' estates); *Official Comm. of Unsecured Creditors v. Forman (In re Forman Enters., Inc.)*, 273 B.R. 408, 415-16 (Bankr. W.D. Pa. 2002) (same); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling and Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same). Moreover, Bankruptcy Code section 362(a)(3) stays "any act [of a person or entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, any act of a holder of a debtor's equity securities that causes the termination, or limits use, of the Tax Attributes violates the automatic stay. *See, e.g.*, *Prudential Lines*, 928 F.2d at 574 (holding that causing the termination of or adversely affecting the value of a debtor's NOL violates the automatic stay); *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("[T]he sale of stock is prohibited by § 362(a)(3) [of the Bankruptcy Code] as an exercise of control over the NOL, which is property of the estate.").

18. Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the value of the Tax Attributes for the benefit of the Debtors' estates and creditors. Under section 382 of the IRC, certain transfers of Beneficial Ownership or declarations of worthlessness with respect to Common Stock prior to the

consummation of a chapter 11 plan could cause the termination or limit the use of the Tax Attributes. As stated above, the Debtors estimate that they have approximately $229 million of NOLs and approximately $76 million of Capital Loss Carryovers as of December 31, 2023. These Tax Attributes may provide the potential for material future tax savings in connection with the Debtors' restructuring. The termination or limitation of the Tax Attributes would be detrimental to the Debtors' creditors, as such could decrease their recoveries. Thus, granting relief requested herein would preserve the Debtors' flexibility in operating during the pendency of these Chapter 11 Cases that makes full and efficient use of the Tax Attributes and maximizes the value of the Debtors' estates.

19. Additionally, the Procedures do not bar all transfers of Beneficial Ownership or declarations of worthlessness with respect to Common Stock. The Debtors seek to establish procedures only to monitor those types of transactions that would pose a serious risk under the ownership change test pursuant to section 382 of the IRC, and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transfer or declaration of worthlessness could jeopardize the Debtors' utilization of the Tax Attributes. Because the Debtors' ability to use the Tax Attributes in their restructuring may increase recoveries for creditors, the benefits of implementing the Procedures outweigh the burden imposed on any party by subjecting a limited number of transfers to the Procedures.

20. Courts in this and other jurisdictions have routinely restricted transfers of equity interests and declarations of worthlessness with respect to beneficial interests of a debtor's stock, or instituted notice procedures regarding proposed transfers and declarations of worthlessness, to protect a debtor against the possible loss of its tax attributes. *E.g.*, *In re Loyalty Ventures Inc.*, No. 23-90111 (CML) (Bankr. S.D. Tex. Apr. 4, 2023) [Docket No. 169]; *In re Sorrento Therapeutics*

14

*Inc.*, No. 23-90085 (DRJ) (Bankr. S.D. Tex. Feb. 21, 2023) [Docket No. 110]; *In re Avaya Inc.*, No. 23-90088 (DRJ) (Bankr. S.D. Tex. Feb. 15, 2023) [Docket No. 82]; *In re Invacare Corp.*, No. 23-90068 (CML) (Bankr. S.D. Tex. Feb. 1, 2023) [Docket No. 79]; *In re GWG Holdings, Inc.*, No. 22-90032 (MI) (Bankr. S.D. Tex. May 20, 2022) [Docket No. 272]; *In re Sungard AS New Holdings LLC*, No. 22-90018 (DRJ) (Bankr. S.D. Tex. Apr. 12, 2022) [Docket No. 63].

## Emergency Consideration

21.     The Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003 and Bankruptcy Local Rule 9013-1, which empower a court to grant relief within the first 21 days after the commencement of a chapter 11 case when that relief is necessary to avoid immediate and irreparable harm to the estate.  An immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations and any delay in granting the relief requested could hinder their operations and cause irreparable harm.  The failure to receive the requested relief during the first 21 days of these Chapter 11 Cases could result in immediate harm to the Debtors' Tax Attributes and severely disrupt the Debtors' operations at this critical juncture and imperil the Debtors' restructuring.  Accordingly, the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

22.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

23.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed on the Debtors' petitions as

holding the largest 30 unsecured claims (on a consolidated basis); (c) counsel to the Prepetition 1L Agent; (d) counsel to the Prepetition 1.5L Notes Trustee; (e) counsel to the Prepetition 2L Notes Trustee; (f) counsel to the Ad Hoc Group; (g) counsel to Atlas Securitized Products Holdings, L.P. in its capacity as Administrative Agent; (h) counsel to Midtown Madison Management LLC as Heights II Administrative Agent and Canada II Administrative Agent; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general in the states where the Debtors conduct their business operations; (m) registered holders of Common Stock; (n) any stock transfer agent(s) of the Common Stock; and (o) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no further notice is necessary.

WHEREFORE, the Debtors request entry of interim and final orders, substantially in the forms of the Interim Order and Final Order filed with this Motion, granting the relief requested herein and granting such other relief as the Court deems just, proper, and equitable.

Dated: March 25, 2024
      Houston, Texas

*/s/ Sarah Link Schultz*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
       pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
       akordas@akingump.com
       orahnama@akingump.com

*Proposed Counsel to the Debtors*

**Certificate of Accuracy**

   I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Rule 9013-1(i) of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

                    */s/ Sarah Link Schultz*
                    Sarah Link Schultz

**Certificate of Service**

   I certify that on March 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                    */s/ Sarah Link Schultz*
                    Sarah Link Schultz