## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### DEBTORS' OMNIBUS MOTION
### FOR ENTRY OF AN ORDER (I) AUTHORIZING AND
### APPROVING (A) THE REJECTION OF CERTAIN UNEXPIRED LEASES OF
### NON-RESIDENTIAL REAL PROPERTY (B) ABANDONMENT OF CERTAIN
### PERSONAL PROPERTY AND (C) PROCEDURES TO REJECT ADDITIONAL
### UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY AND ABANDON
### ANY PERSONAL PROPERTY THEREON AND (II) GRANTING RELATED RELIEF

---

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS MOTION WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**

---

**PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR RESPECTIVE NAMES AND LEASES IN THE SCHEDULE ATTACHED TO THE MOTION AS <u>EXHIBIT A</u>.**

---

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state the following in support of this motion (the "<u>Motion</u>"):

### Relief Requested

1.     By the Motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "<u>Order</u>"), (i) authorizing and approving (a) the Debtors' rejection of certain unexpired

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

leases of non-residential real property listed on **Exhibit A** attached hereto effective as of the Rejection Date (as defined below), (b) procedures to reject additional unexpired leases of non-residential real property, as listed on **Exhibit B** attached hereto, and (c) the Debtors' abandonment of certain personal property associated with such leases (the "Personal Property"); and (ii) granting related relief.

## Jurisdiction and Venue

2.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.   This is a core proceeding pursuant to 28 U.S.C. § 157(b).   The Debtors confirm their consent to the entry of a final order.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105(a) 363, 365 and 554 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules") and the Procedures for Complex Cases in the Southern District of Texas.

## Background

5.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.   The Debtors have requested the Court enter an order authorizing the procedural consolidation and joint administration of these chapter 11 cases (the "Chapter 11 Cases") pursuant to Bankruptcy Rule 1015(b) substantially contemporaneous herewith.   As of the

date hereof, no request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed by the United States Trustee (the "U.S. Trustee").

6.     The Debtors and their non-debtor affiliates (collectively, the "Company") provide consumer credit lending services across the U.S. and Canada.  In the U.S., the Company operates under several principal brands, including "Heights Finance," "Southern Finance," "Covington Credit," "Quick Credit," and "First Heritage Credit."  In Canada, the Company operates under the "Cash Money" and "LendDirect" brands.  As of the Petition Date, the Company operated approximately 400 store locations across 13 U.S. states and approximately 150 stores in eight Canadian provinces and had an online presence in eight Canadian provinces and one territory.  The Company generated approximately $672 million in total revenue for the fiscal year 2023, and, as of the Petition Date, the Company had approximately $2.1 billion in aggregate principal amount of prepetition funded debt obligations.

7.     A description of the Debtors and their businesses, and the facts and circumstances supporting this Motion, are set forth in the *Declaration of Douglas Clark in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") filed on the Petition Date.[2]

### The Debtors' Rejected Leases and Other Leases

8.     The Debtors are party to over 600 unexpired leases of non-residential real property (each a "Lease" and collectively, the "Leases").  By this Motion, the Debtors seek authority to reject four such Leases, each as described herein, effective as of the proposed Rejection Date.  As of the Petition Date, the Debtors have closed and vacated one leased retail store location in the

---

[2]     Capitalized terms used but not defined herein have the meaning ascribed to such terms in the First Day Declaration.

U.S. subject to a Lease (the "Closed Store Lease"), as listed on the schedule attached hereto as **Exhibit A**.  The Debtors are in the process of closing and vacating two additional retail store locations in the U.S. and seek to reject two non-residential real property leases associated with such stores (the "Pending Closure Leases"), each as listed on **Exhibit A**.  Additionally, the Debtors seek rejection of a Chicago office lease, as listed on **Exhibit A** (the "Chicago Lease").  The Debtors have determined in their reasonable business judgment that the Closed Store Lease, the Pending Closure Leases, and the Chicago Lease are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates and are, therefore, burdensome liabilities.

9.      The effective date of the rejection (the "Rejection Date") for each applicable Lease shall be (A) the later of (i) the proposed effective date of the rejection for each such Lease (the "Proposed Rejection Date"), which with respect to each of the Closed Store Lease, Pending Closure Leases and the Chicago Lease shall be identified on **Exhibit A**, and (ii) the date upon which the Debtors notify the applicable landlord in writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable (the "Surrender Date"), or (B) such other date as the Debtors and the Counterparty to each applicable Lease otherwise agree.

10.      Finally, the Debtors are in the process of evaluating the rejection of additional Leases associated with retail stores and office spaces, and they may need to reject the Leases associated with any such locations as unfavorable to the Debtors (the "Additional Rejected Leases" and, together with the Closed Store Lease, the Pending Closure Leases and the Chicago Lease, the "Rejected Leases").  To avoid the burden of filing separate motions to reject Additional Rejected Leases—which would result in substantial costs to, and administrative burdens on, the Debtors' estates and, also, a burden on the Court's docket—the Debtors hereby request approval of certain

procedures for the Debtors' rejection of Additional Rejected Leases (the "Rejection Procedures") to minimize such costs and burdens.

11.     The Debtors also seek to abandon any Personal Property that remains on the premises of the Rejected Leases effective as of the applicable Rejection Date for each such Rejected Lease.

12.     To preserve and maximize the value of their estates, and to avoid incurring costs and expenses that are not integral to the Debtors' business operations and their chapter 11 efforts, the relief requested herein is necessary and appropriate.

## The Proposed Rejection Procedures

13.     The Debtors seek entry of the proposed Order authorizing and approving the following procedures with respect to any rejection of additional Leases (the "Rejection Procedures"):

    a.  ***Rejection Notice***.  The Debtors shall file a notice in the form attached as **Exhibit B** hereto (the "Rejection Notice") to reject Additional Rejected Leases pursuant to Bankruptcy Code section 365, which Rejection Notice shall set forth, among other things: (i) the Additional Rejected Lease(s) to be rejected; (ii) the names and addresses of the counterparties to such Additional Rejected Lease(s) (each, a "Counterparty," and collectively, the "Counterparties"); (iii) the Rejection Date, which shall be (A) the later of (i) the Proposed Rejection Date and (ii) the Surrender Date, or (B) such other date as the Debtors and the Counterparty to each applicable Lease otherwise agree; (iv) the personal property to be abandoned, if any; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).  The Rejection Notice may list multiple Leases and Counterparties.

    b.  ***Service of Rejection Notice***.  The Debtors will cause the Rejection Notice to be served by first class mail and/or email to the following notice parties: (i) (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel for the Ad Hoc Group, Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, NY 10019, Attn: Neil M. Snyder (NMSnyder@wlrk.com); (c) counsel to the Atlas as the First Heritage Administrative Agent and as the Heights I Administrative Agent, Weil, Gotshal & Manges LLP, 767 5th Ave, New York, NY 10153, Attn: Kevin Bostel (Kevin.Bostel@weil.com) and Justin Kanoff (Justin.Kanoff@weil.com); (d) counsel to Madison Midtown Management, LLC, Holland & Knight LLP, 811 Main Street, Suite 2500, Houston, Texas 77002, Attn: Anthony F. Pirraglia (anthony.pirraglia@hklaw.com), and Munger, Tolles & Olson

LLP, 350 S. Grand Ave. 50th Floor, Los Angeles, CA 90071, Attn: Thomas Walper (thomas.walper@mto.com); and (e) counsel to any statutory committee appointed in these Chapter 11 Cases (collectively, the "Notice Parties"); and (ii) the Lease counterparties who are subject to a Rejection Notice.

c.   ***Objection Procedures***.  Parties objecting to a Rejection Notice must file and serve a written objection so that such objection is filed with the Court and ***actually received*** by the following parties (collectively, the "Objection Service Parties") no later than fourteen (14) days after the date that the Debtors serve the Rejection Notice (the "Rejection Objection Deadline"): (a) the Debtors, 101 N. Main Street, Suite 600, Greenville, SC 29601, Attn: Rebecca Fox (BeccaFox@curo.com); (b) proposed counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201-2481, Attn: Sarah Link Schultz (SSchultz@akingump.com) and One Bryant Park, New York, NY 10036, Attn: Anna Kordas (AKordas@akingump.com) and Omid Rahnama (ORahnama@akingump.com); and (b) the Notice Parties.

d.   ***No Objection***.  If no objection to the rejection of any Additional Rejected Lease is timely filed, each Additional Rejected Lease listed in the applicable Rejection Notice shall be rejected as of the applicable Rejection Date.

e.   ***Unresolved Objections***.  If an objection to the rejection of any Additional Rejected Lease listed in the applicable Rejection Notice is timely filed and not withdrawn or resolved, the Debtors shall file a notice for a hearing to be held on not less than ten (10) days' notice to the applicable Counterparty to consider the objection for the Lease to which such objection relates.  If such objection is overruled or withdrawn, such Additional Rejected Lease(s) shall be rejected as of (a) the applicable Rejection Date, or (b) such other date as the Court may so-order.

f.   ***Abandoned Property***.  The Debtors are authorized, but not directed, at any time on or before the applicable Rejection Date, to remove or abandon any of the Debtors' personal property that may be located on the Debtors' leased premises that are subject to an Additional Rejected Leases.  The Debtors shall generally describe the abandoned personal property in the Rejection Notice.  Absent a timely objection, the property will be deemed abandoned pursuant to Bankruptcy Code section 554, as is, effective as of the Rejection Date.  For the avoidance of doubt, any and all property located on the Debtors' leased premises on the Rejection Date of the applicable Additional Rejected Leases shall be deemed abandoned pursuant to Bankruptcy Code section 554, as is, effective as of the Rejection Date.  Landlords may, in their sole discretion and without further notice or order of this Court, utilize and/or dispose of such property without liability to the Debtors or third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

g.   ***No Application of Security Deposits***.  If the Debtors have deposited monies with a Counterparty as a security deposit or other arrangement, such Counterparty may not setoff, recoup, or otherwise use such monies without further order of the Court,

unless the Debtors and the Counterparty or Counterparties to such Additional Rejected Lease(s) otherwise agree.

h. ***Proofs of Claim***.  Claims arising out of the rejection of Additional Rejected Lease(s), if any, must be filed on or before thirty (30) days after the effective Rejection Date.  If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on such a claim that may be made in connection with these Chapter 11 Cases.

## Basis for Relief

### I.     Rejection of the Rejected Leases Constitutes a Sound Exercise of the Debtors' Reasonable Business Judgment.

14.     Bankruptcy Code section 365(a) provides that a debtor in possession, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  "This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."  Stew*art Title Guar. Co. v. Old Republic Nat'l Title Ins. Co*., 83 F.3d 735, 741 (5th Cir. 1996) (citing *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)); *see also In re Orion Pictures Corp*., 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that the purpose of rejection of executory contracts is to permit the debtor-in-possession to renounce title to and abandon burdensome property).

15.     A debtor's rejection of an unexpired lease is governed by the "business judgment" standard.  *See Richmond Leasing Co. v. Capital Bank, N.A*., 762 F.2d 1303, 1309 (5th Cir. 1985) ("It is well established that 'the question whether a lease should be rejected . . . is one of business judgment.'" (quoting *Grp. of Institutional Inv'rs v. Chicago, M*., St. P. & P. R. Co., 318 U.S. 523, 550 (1943)).

16.     Rejection of an unexpired lease is appropriate where such rejection would benefit the estate.  *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) ("Courts apply the 'business judgment test,' which requires a showing

that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment."); *see also Orion Pictures*, 4 F.3d at 1098–99 (stating that Bankruptcy Code section 365 permits a debtor in possession, subject to court approval, to decide which executory contracts would be beneficial to reject).

17.     Upon finding that a debtor exercised its sound business judgment in determining that the rejection of certain leases is in the best interests of its estate, a court should approve the rejection under Bankruptcy Code section 365(a).  *See In re Summit Land Co*., 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

18.     Here, rejection of the Rejected Leases is well within the Debtors' business judgment and is in the best interest of their estates.  Eliminating certain unnecessary costs is critical to the Debtors' efforts to preserve and maximize the value of their estates and reduce the potential administrative costs in these Chapter 11 Cases.

19.     The Debtors have already closed or are in the process of closing the retail branch locations associated with the Closed Store Lease and the Pending Closure Leases listed on **Exhibit A**, and, therefore, such Leases are burdensome, provide no economic value to the Debtors' estates and are unnecessary to the Debtors' restructuring efforts.  The Debtors are similarly not utilizing the office space associated with the Chicago Lease listed on **Exhibit A**.   As such, any continued expense maintaining the Closed Store Lease, the Pending Closure Leases or the Chicago Lease, or any attempt to market such agreements, would needlessly deplete assets of the Debtors' estates.  In contrast, rejection of the Closed Store Lease, the Pending Closure Leases and the

Chicago Lease will result in approximately $10 million in aggregate cost savings to the estates over the remaining term of such Leases.

20.     Rejection of the Additional Rejected Leases is appropriate for the same reasons. The Debtors intend to utilize the Rejection Procedures to reject Leases that are burdensome and that do not provide any benefit to the Debtors' estates.  Thus, rejection is appropriate under the circumstances and reflects the Debtors' sound business judgment.

## II.     Bankruptcy Code Section 554(a) Authorizes Abandonment of the Personal Property.

21.     Bankruptcy Code section 554(a) provides that "[a]fter notice and hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Courts generally give deference to a debtor's decision to abandon property.  *See In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters.").  Unless the abandonment of the subject property would be harmful to the public, once a debtor has shown that the retention of such property is burdensome or of inconsequential value to the estate, a court should approve the abandonment.  *Id.*

22.     The Personal Property primarily consists of office furniture and materials and does not otherwise consist of hazardous materials or materials that would be harmful to the public. Although the Debtors maintain certain personal identifying information related to their customers at their locations, consistent with their obligations under applicable law, all such information has been or will be removed from the closed locations and properly destroyed, stored or otherwise safe-guarded prior to the applicable Rejection Date for each Rejected Lease.  The Debtors have determined that the cost of removing and storing the Personal Property for future sale exceeds its value.  Furthermore, the Debtors have concluded that any further efforts to market the Personal Property in place would delay the Debtors' exit of the subject properties and cause them to incur

additional rent.  Accordingly, authorizing the Debtors to abandon the Personal Property is in the best interests of the Debtors and their estates.

### III.     The Closed Store Lease Should be Deemed Rejected as of the Petition Date.

23.     Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively.  *See, e.g.*, *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (finding that "nothing precludes a bankruptcy court, based on the equities of the case, from approving" retroactive rejection); *In re Romacorp, Inc.*, 2006 WL 6544088, at *4 (Bankr. N.D. Tex. Feb. 2, 2006) ("This court is not alone in allowing retroactive rejection of unexpired leases; in fact, a number of other courts around the country have recognized this equitable practice.") (collecting cases); *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065–71 (9th Cir. 2004) (affirming bankruptcy court's approval of retroactive rejection*), cert. denied*, 546 U.S. 814 (2005).

24.     Here, the balance of equities favors rejection of the Closed Store Lease effective as of the Petition Date. Without such relief, the Debtors will potentially incur unnecessary administrative expenses related to the Closed Store Lease—which provide no benefit to the Debtors' estates in light of the rent and related charges the Debtors are obligated to pay thereunder. *See* 11 U.S.C. § 365(d)(3).  The landlords of the Closed Store Lease will not be unduly prejudiced if the rejection is deemed effective as of the Petition Date.  The landlords are receiving notice of the Debtors' intention to reject the Closed Store Lease by service of this Motion.  The Debtors have sought the relief requested at the earliest possible moment in these Chapter 11 Cases and do not seek to reject the Closed Store Lease effective as of the Petition Date due to any undue delay on their own part.  Based on this factual record, no party can assert that the Debtors seek to write any "revisionist history."  *Roman Cath. Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020) ("Federal courts may issue *nunc pro tunc* orders, or 'now for then' orders,

. . . to 'reflect the reality' of what has already occurred" but not as a "vehicle for . . . creating 'facts' that never occurred") (internal citations omitted).  Accordingly, the Debtors respectfully request that the Court deem the Closed Store Lease to be rejected effective as of the Petition Date.

**IV.    The Rejection Procedures Are in the Best Interests of the Debtors' Estates.**

25.    In addition to the Rejected Leases, the Debtors may determine to reject, a number of Additional Rejected Leases during the pendency of these Chapter 11 Cases.  Establishing the Rejection Procedures will streamline the administration of these Chapter 11 Cases and enhance the efficiency of the chapter 11 process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Lease that the Debtors seek to reject.  The Rejection Procedures are reasonable and fair to the Counterparties because they afford parties in interest the opportunity to be heard with respect to the rejection of the Lease or Leases.

26.    The Debtors have determined, in their sound business judgment, that the rejection of Leases in accordance with the Rejection Procedures proposed herein is and will be in the best interest of the Debtors' estates.  The Debtors submit that the information provided on the Rejection Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such rejections in their sound business judgment.  Further, the Rejection Procedures will allow the Debtors to avoid substantial legal expense and the use of the Court's time that would result if a motion were filed and a hearing held every time Debtors seek to reject and lease

27.    The Court may also authorize the Rejection Procedures under Bankruptcy Code section 105(a).  Section 105(a) codifies a bankruptcy court's inherent equitable powers, and allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Accordingly, a bankruptcy court's exercise of its

authority under Bankruptcy Code section 105(a) is appropriately used to carry out one of the central policies underlying chapter 11—*i.e.*, to preserve value and maximize property available to satisfy the Debtors' estate.

## V.    The Rejection Procedures Satisfy Due Process.

28.    The Counterparties to the Additional Rejected Leases will not be prejudiced by the Rejection Procedures because, upon receipt of a Rejection Notice, such Counterparties will have received advance notice of the Debtors' intent to reject their respective Leases as of the effective date of such rejection.  *See In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject), *aff'd*, 1 F.3d 1130 (10th Cir. 1993); *see also Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding debtor may reject executory contract by clearly communicating intention to reject) (citation and internal quotation marks omitted).  Additionally, the Debtors may vacate the premises before or upon serving the Rejection Notice, thereby allowing the Counterparties to take possession of the property.  *See, e.g., Adelphia Bus. Solutions, Inc. v. Abnos*, 482 F.3d 602, 608–09 (2d Cir. 2007) (holding that the bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re New Valley Corp*, No. 98-982, 2000 U.S. Dist. LEXIS 12663, at *44–46 (D.N.J. Aug. 31, 2000) (holding that bankruptcy court properly exercised its discretion in adjusting the effective date of rejection from the date the court signed the order authorizing rejection to the date on which the debtor vacated and the landlord exercised control over the property); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that the lease at issue should be deemed rejected as of the

petition date due to equities of the case where debtor turned over keys and vacated premises and served motion to reject lease as soon as possible).

29.     As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014."  Fed. R. Bankr. P. 6006(a).  Bankruptcy Rule 9014 provides that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought."  Fed. R. Bankr. P. 9014(a).  The notice and hearing requirements for contested matters in Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given *in light of the particular circumstances*.  *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances").

30.     Under Bankruptcy Rule 6006(e), a debtor may join requests for authority to reject multiple unexpired leases in one motion, subject to Bankruptcy Rule 6006(f).  *See* Fed. R. Bankr. P. 6006(e).  Bankruptcy Rule 6006(f) sets forth six requirements that motions to reject multiple unexpired leases must satisfy.  These requirements are procedural in nature.  A motion to reject multiple unexpired leases that are not between the same parties shall:

(a)     state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

(b)     list parties alphabetically and identify the corresponding contract or lease;

(c)     specify the terms, including the curing of defaults, for each requested assumption or assignment;

(d)     specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

(e)     be numbered consecutively with other omnibus motions to assume, assign or reject executory contracts or unexpired leases; and

(f)     be limited to no more than 100 executory contracts or unexpired leases.

31.     The clear purpose of Bankruptcy Rule 6006(f) is to protect the due process rights of counterparties to executory contracts and unexpired leases.  Counterparties must be able to locate their unexpired leases and readily determine whether their unexpired leases are being rejected.

32.     The Rejection Procedures satisfy Bankruptcy Rule 6006(f), including the 100-contract/lease limit.  Given the substantial number of Leases the Debtors will be seeking to reject, obtaining Court approval of each rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in costs to the Debtors' estates that may decrease the economic benefits of rejection.

33.     In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the U.S. Trustee and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

34.     As a result, the Rejection Procedures afford Counterparties and all other parties in interest their due process rights by providing notice and the opportunity to be heard. Moreover, court oversight is maintained in the event of an objection.  For the foregoing reasons, the Rejection Procedures should be approved, and the Debtors should be authorized to reject Leases consistent with the terms of such procedures.

35.     In sum, the Rejection Procedures will minimize costs to the Debtors' estates and reduce the burden on this Court's docket while protecting parties in interest by providing notice and the opportunity to object and obtain a hearing.  Moreover, the Debtors have determined that the Rejection Procedures are an appropriate means to protect and maximize the value of their estates.

**Reservation of Rights**

36.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors', or any other party in interest's, right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors', or any other party in interest's, rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity or perfection or to seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**Notice**

37.     The Debtors will provide notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Texas; (b) the entities listed on the Debtors' petitions as holding the largest 30 unsecured claims (on a consolidated basis); (c) counsel to the Prepetition 1L Agent; (d) counsel to the Prepetition 1.5L Notes Trustee; (e) counsel to the Prepetition 2L Notes

Trustee; (f) counsel to the Ad Hoc Group; (g) counsel to Atlas Securitized Products Holdings, L.P. in its capacity as Administrative Agent; (h) counsel to Midtown Madison Management LLC as Heights II Administrative Agent and Canada II Administrative Agent; (i) the United States Attorney's Office for the Southern District of Texas; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) the state attorneys general in the states where the Debtors conduct their business operations; (m) the Counterparties to the Debtors' Leases; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no further notice is necessary.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors request entry of an order, substantially in the form of the

Order filed with this Motion, granting the relief requested herein and granting such other relief as

the Court deems just, proper and equitable.

Dated: March 25, 2024
      Houston, Texas

/s/  Sarah Link Schultz

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email:  sschultz@akingump.com
       pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email:  mstamer@akingump.com
       akordas@akingump.com
       orahnama@akingump.com

*Proposed Counsel to the Debtors*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

<u>*/s/ Sarah Link Schultz*</u>
Sarah Link Schultz

**<u>Certificate of Service</u>**

I certify that on March 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>*/s/ Sarah Link Schultz*</u>
Sarah Link Schultz

## Exhibit A

**Schedule of Rejected Leases**

| No. | Lessor | Lessor Address | Debtor Counterparty | Facility Type | Location Address | Proposed Rejection Date | Abandoned Personal Property |
|---|---|---|---|---|---|---|---|
| 1 | National Retail Properties, Inc | PO Box 864202 Orlando, FL 32886 | CURO Intermediate Holdings Corp. | Retail Branch Location (Closed Store Lease) | 1552 W 119th St Chicago, IL 60643 | Petition Date | Office furniture (desks, chairs, cabinets, etc.) and other miscellaneous store materials |
| 2 | ZRP Crosspointe Plaza, LLC | 210 Wingo Way Mt. Pleasant, SC 29464 | Southern Finance of South Carolina, Inc. | Retail Branch Location (Pending Closure Lease) | 915 Old Airport Rd Greenville, SC 29607 | April 30, 2024 | Office furniture (desks, chairs, cabinets, etc.) and other miscellaneous store materials |
| 3 | Americus Fee Owner, LLC | PO BOX 19868 Charlotte, NC 28219 | Covington Credit of Georgia, Inc. | Retail Branch Location (Pending Closure Lease) | 109 N Prince St, Suite B Americus, GA 31709 | April 30, 2024 | Office furniture (desks, chairs, cabinets, etc.) and other miscellaneous store materials |
| 4 | Wells Hubbard Limited Partnership | c/o Urban Innovations, Ltd 306 West Erie Street Suite 700 Chicago, IL 60654 | Curo Management, LLC | Office Space (Chicago Lease) | 200 W Hubbard St Suite 700 Chicago, IL 60654 | April 30, 2024 | Office furniture and materials (desks, chairs, cabinets, tables, plates, utensils, etc.) and certain office electronics (monitors, printers, exercise equipment, kitchen appliances, etc.) |

**Exhibit B**

**Rejection Notice**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No.___** |

## NOTICE OF REJECTION OF CERTAIN UNEXPIRED LEASE[S]

**PLEASE TAKE NOTICE** that on [•], 2024, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order on the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors"),  approving expedited procedures for the rejection of unexpired leases ("Leases") and granting related relief [Docket No.[•]] (the "Procedures Order") attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Procedures Order and by this written notice (this "Rejection Notice"), the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that each Lease set forth on **Exhibit 2** attached hereto is hereby rejected effective as of the rejection date (the "Rejection Date"), which shall be (A) the later of (i) the proposed effective date of the rejection (the "Proposed Rejection Date") for such Lease as set forth on **Exhibit 2** and (ii) the date upon which the Debtors notify the landlord in writing (email being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes or security codes, as applicable (the "Surrender Date"), or (B) such other date as the Debtors and the Counterparty or Counterparties to such Lease(s) otherwise agree.

**PLEASE TAKE FURTHER NOTICE** that, parties seeking to object to the proposed rejection of any of the Leases must file and serve a written objection so that such objection is filed with the Court and actually received by the following parties (collectively, the "Objection Service Parties") no later than fourteen (14) days after the date that the Debtors serve the Rejection Notice (the "Rejection Objection Deadline"): (a) the Debtors, 101 N. Main Street, Suite 600, Greenville, SC 29601, Attn: Rebecca Fox (BeccaFox@curo.com); (b) proposed counsel to the Debtors, Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201-2481, Attn: Sarah Link Schultz (SSchultz@akingump.com) and One Bryant Park, New York, NY 10036, Attn: Anna Kordas (AKordas@akingump.com) and Omid Rahnama (ORahnama@akingump.com); (c) the Office of the United States Trustee for the Southern District of Texas; (d) counsel for the Ad Hoc Group, Wachtell, Lipton, Rosen &

---

[1]   A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/CuroGroup. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Katz, 51 West 52nd Street, New York, NY 10019, Attn: Neil M. Snyder (NMSnyder@wlrk.com); (e) counsel to the Atlas Securitized Products Holdings, L.P. as the First Heritage Administrative Agent and as the Heights I Administrative Agent, Weil, Gotshal & Manges LLP, 767 5th Ave, New York, NY 10153, Attn: Kevin Bostel (Kevin.Bostel@weil.com) and Justin Kanoff (Justin.Kanoff@weil.com); (f) counsel to Madison Midtown Management, LLC as Heights II Administrative Agent and Canada II Administrative Agent, Holland & Knight LLP, 811 Main Street, Suite 2500, Houston, Texas 77002, Attn: Anthony F. Pirraglia (anthony.pirraglia@hklaw.com) and Munger, Tolles & Olson LLP, 350 S. Grand Ave. 50th Floor, Los Angeles, CA 90071, Thomas Walper (thomas.walper@mto.com);  and (g) counsel to any statutory committee appointed in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE** that, absent an objection being timely filed, the rejection of each Lease shall become effective as of the Rejection Date.[3]

**PLEASE TAKE FURTHER NOTICE** that, if an objection to the rejection of any Lease is timely filed and not withdrawn or resolved, the Debtors shall file a notice for a hearing to be held on not less than ten (10) days' notice to the applicable Counterparty to consider the objection for the Lease(s) to which such objection relates.  If such objection is overruled or withdrawn, such Lease(s) shall be rejected as of (a) the applicable Rejection Date, or (b) such other date as the Court may so-order.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Procedures Order, if the Debtors have deposited monies with a Counterparty as a security deposit or other arrangement, the Counterparty may not setoff or recoup or otherwise use such monies without further order of the Court, unless the Debtors and the Counterparty or Counterparties to such Contract(s) otherwise agree.

**PLEASE TAKE FURTHER NOTICE** that, absent timely objection, any personal property of the Debtors that is listed and described in **Exhibit 2** shall be deemed abandoned as of the Rejection Date.

**PLEASE TAKE FURTHER NOTICE** that, to the extent you wish to assert a claim(s) with respect to rejection of your Lease(s), you must do so within thirty (30) days after the Rejection Date.  IF YOU FAIL TO TIMELY SUBMIT A PROOF OF CLAIM IN THE APPROPRIATE FORM BY THE DEADLINE SET FORTH HEREIN, YOU WILL BE, FOREVER BARRED, ESTOPPED AND ENJOINED FROM (1) ASSERTING SUCH CLAIM AGAINST ANY OF THE DEBTORS AND THEIR CHAPTER 11 ESTATES, (2) VOTING ON ANY CHAPTER 11 PLAN OF REORGANIZATION OR LIQUIDATION FILED IN THESE CASES ON ACCOUNT OF SUCH CLAIM AND (3) PARTICIPATING IN ANY DISTRIBUTION IN THE DEBTORS' CHAPTER 11 CASES ON ACCOUNT OF SUCH CLAIM.

---

[3]   An objection to the rejection of any particular Lease listed in this Rejection Notice shall not constitute an objection to the rejection of any other Lease listed in this Rejection Notice. Any objection to the rejection of any particular Lease listed in this Rejection Notice must state with specificity the Lease(s) to which it is directed. For each particular Lease whose rejection is not timely or properly objected to, such rejection will be effective in accordance with this Rejection Notice and the Order.

Dated: **[●]**, 2024
      Houston, Texas

                    **_____**

                    **AKIN GUMP STRAUSS HAUER & FELD LLP**
                    Sarah Link Schultz (State Bar No. 24033047;
                    S.D. Tex. 30555)
                    Patrick Wu (State Bar No. 24117924;
                    S.D. Tex. 3872088)
                    2300 N. Field Street, Suite 1800
                    Dallas, TX 75201-2481
                    Telephone: (214) 969-2800
                    Facsimile: (214) 969-4343
                    Email: sschultz@akingump.com
                            pwu@akingump.com

                    -and-

                    Michael S. Stamer (*pro hac vice* pending)
                    Anna Kordas (*pro hac vice* pending)
                    Omid Rahnama (*pro hac vice* pending)
                    One Bryant Park
                    New York, NY 10036-6745
                    Telephone: (212) 872-1000
                    Facsimile: (212) 872-1002
                    Email: mstamer@akingump.com
                          akordas@akingump.com
                          orahnama@akingump.com

                    *Proposed Counsel to the Debtors*

## **EXHIBIT 1**

### **Procedures Order**

*[omitted]*

## **EXHIBIT 2**

**Schedule of Rejected Leases**

*[omitted]*