## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
|  | ) |  |
| Debtors.[1] | ) | (Joint Administration Requested) |
|  | ) | (Emergency Hearing Requested) |

### DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING; (II) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT; (III) ESTABLISHING A PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE AND RELATED PROCEDURES; (IV) APPROVING THE SOLICITATION PROCEDURES; (V) APPROVING THE COMBINED NOTICE; (VI) EXTENDING THE TIME BY WHICH THE U.S. TRUSTEE CONVENES A MEETING OF CREDITORS AND (VII) GRANTING RELATED RELIEF

**Emergency relief has been requested. Relief is requested not later than 1:30 p.m. (prevailing Central Time) on March 25, 2024.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on March 25, 2024, at 1:30 p.m. (prevailing Central Time) in Courtroom 404, 4th Floor, 515 Rusk Street, Houston, TX 77002. Participation at the hearing will only be permitted by audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page. The meeting code is "JudgeIsgur". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this emergency motion (this "Motion"):[2]

### Preliminary Statement

1.      After extensive, good-faith negotiation with their funded debtholders, the Debtors have commenced these chapter 11 cases (the "Chapter 11 Cases") with a restructuring support agreement (the "RSA") signed by Holders of in excess of (i)  82% in aggregate outstanding principal amount of the Prepetition 1L Term Loan Claims, (ii) 84% in aggregate outstanding principal amount of the Prepetition 1.5L Notes Claims, and  (iii) 74% in aggregate outstanding principal amount of the Prepetition 2L Notes Claims (collectively, the "Consenting Stakeholders"). The Plan contemplates the reinstatement of certain senior prepetition debt, an equitization transaction, by which certain of the Company's prepetition and postpetition lenders will emerge as equity holders of the Reorganized CURO, and a distribution of a contingent value right to existing equity holders.   Notably, the Plan leaves all known general unsecured creditors (encompassing all trade, customer, employee, and landlord claims) unimpaired and will allow the Debtors to minimize disruptions to their go-forward operations while effectuating a value-maximizing transaction through the chapter 11 process.

---

[2]    The Debtors, together with their non-Debtor affiliates (collectively, the "Company"), are a leading provider of credit lending services across the U.S. and Canada.  The facts and circumstances supporting this Motion are set forth in the *Declaration of Douglas Clark, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously with the filing of this Motion and incorporated by reference herein.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be modified, amended, or supplemented from time to time and including all exhibits and supplements, the "Plan") or the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as may be modified, amended, or supplemented from time to time and including all exhibits and supplements, the "Disclosure Statement,"), as applicable.

2.      It is imperative that the Debtors proceed swiftly to Plan confirmation and emergence from these Chapter 11 Cases.  Given the consensual nature of the Restructuring Transactions contemplated by the Debtors, a prolonged stay in chapter 11 is unnecessary and would result in significant incremental administrative costs.  Furthermore, pursuant to the case milestones set forth in the RSA and the DIP Term Sheet (the "Milestones"),[3] the Debtors must obtain confirmation of the Plan within 50 days of the Petition Date and emerge from these Chapter 11 Cases within 120 days thereafter.

3.      The Debtors therefore request authority to proceed with these Chapter 11 Cases on the proposed Confirmation Schedule (as defined herein).  In light of the Debtors' substantial prepetition restructuring negotiations, and the fact that the general unsecured creditors will not be impaired by the Plan, the Confirmation Schedule provides ample time for interested parties to participate in these Chapter 11 Cases.  Approval of the proposed Confirmation Schedule will preserve significant value for the Debtors' estates and their stakeholders.

4.      Furthermore, if the Debtors receive a superior restructuring proposal during these Chapter 11 Cases, the Debtors have a "fiduciary out" that allows them to terminate the RSA and pursue a superior offer.  Furthermore, no parties in interest are prejudiced by the proposed Confirmation Schedule.  Pursuant to this Motion, the Debtors request that the Court schedule the Combined Hearing (as defined herein) on or around April 30, 2024, to consider approval of the Disclosure Statement and confirmation of the Plan.  Shortly after the Petition Date, unless otherwise ordered by the Court, the Debtors will also provide every known stakeholder with a

---

[3]     Contemporaneously herewith, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Authorizing the Use Cash Collateral, (IV) Modifying the Automatic Stay, and (V) Scheduling a Final Hearing* (the "DIP Motion"), pursuant to which the Debtors seek, among other things, to incur debtor-in-possession financing on the terms and conditions set forth in the DIP Term Sheet.

notice that will, among other things, summarize certain of the key material terms of the Plan, including classification and treatment of claims, provide the full text of the release, exculpation, and injunction provisions in the Plan, and offer multiple methods by which stakeholders may obtain copies of the Plan, Disclosure Statement, and RSA in the format of their choosing.  Notably the unimpaired creditors and equity interest holders will be served with actual notice providing the means by which they can opt out of the Third-Party Release.

5. Confirming the Plan on the Confirmation Schedule, as well as the other relief requested herein, is in the best interests of the Debtors, their estates, and all stakeholders, and should be approved.  The Combined Hearing will streamline and expedite the confirmation process and prevent the unnecessary accrual of additional administrative expenses that a two-stage process would require.

## Jurisdiction and Venue

6. The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court.

7. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. The bases for the relief requested herein are sections 105, 341, 363, 521, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 1007, 2002, 2015.3(d), 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2002-1, 2015.3, 3016-2, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas.

**Relief Requested**

9.     The Debtors seek entry of an order, substantially in the attached form (the "Order"),

granting the following relief:

(a)     ***Combined Hearing.***  Scheduling a hearing (the "Combined Hearing") on confirmation of the Debtors' Plan and the adequacy of the Debtors' Disclosure Statement;

(b)     ***Disclosure Statement.***  Conditionally approving the Disclosure Statement;

(c)     ***Objection Deadline.***  Establishing a deadline for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan (the "Objection Deadline") and approving related procedures;

(d)     ***Solicitation Procedures.***  Approving the solicitation procedures regarding votes to accept or reject the Plan (the "Solicitation Procedures");

(e)     ***Combined Notice.***  Approving the form and manner of notice of commencement of these Chapter 11 Cases and the Combined Hearing (the "Combined Notice"), substantially in the form attached to the Order as **Exhibit 1**;

(f)     ***Publication Notice.***  Approving the form and manner of publication notice of commencement of these Chapter 11 Cases and the Combined Hearing (the "Publication Notice"), substantially in the form attached to the Order as **Exhibit 2**;

(g)     ***Opt-Out Forms.***  Approving the form of the Notice of Non-Voting Status and Opt-Out Form, substantially in the form attached to the Order as **Exhibits 3**, **3A**, **3B**, and **3C** to the Order (each, an "Opt-Out Form" and collectively, the "Opt-Out Forms");

(h)     ***Ballots.***  Approving the appropriate ballots in the forms attached to the Order as **Exhibits 4A**, **4B**, **4C**, **4D**, **4E**, **4F**, **4G**, and **4H**, (each, a "Ballot," and collectively, the "Ballots");

(i)     ***Creditors' Meeting.***  Extending the time by which the United States Trustee for the Southern District of Texas (the "U.S. Trustee") convenes a meeting of creditors (the "Creditors' Meeting") under Bankruptcy Code section 341(e) to May 14, 2024, and without prejudice to the Debtors' ability to request additional extensions; and

(j)     ***Notice Period.***  Allowing the notice period for the Disclosure Statement and the Combined Hearing to run simultaneously.

10.     In connection with the foregoing, subject to the Court's availability, the Debtors request that the Court approve the following schedule of proposed dates (the "Confirmation Schedule").

| Event | Date |
|---|---|
| Voting Record Date | March 13, 2024 |
| Solicitation Commencement Date | March 24, 2024 |
| Voting Deadline | April 19, 2024, at 4:00 p.m., prevailing Central Time |
| Opt-Out Deadline | April 19, 2024, at 4:00 p.m., prevailing Central Time |
| Objection Deadline | April 23, 2024, at 4:00 p.m., prevailing Central Time |
| Combined Hearing | April 30, 2024, or such other date as the Court may direct |

## Plan Summary

11.     The Plan and the Disclosure Statement describe in detail the restructuring transactions contemplated by the Plan and the RSA and the recoveries provided to Holders of Claims against and Interests in the Debtors.  The following chart summarizes the classes of Claims and Interests, their status, and voting rights:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition 1L Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | Prepetition 1.5L Notes Claims | Impaired | Entitled to Vote |
| Class 5 | Prepetition 2L Notes Claims | Impaired | Entitled to Vote |
| Class 6 | Securitization Facilities Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 8 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote (Deemed to Accept / Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote (Deemed to Accept / Deemed to Reject) |
| Class 11 | Existing CURO Interests | Impaired | Entitled to Vote |

I.        **Notice Provided to the Voting Class**

12.     The Debtors commenced solicitation of votes on the Plan prior to the Petition Date, on March 24, 2024 (the "Solicitation Commencement Date").  On the Solicitation Commencement Date, the Debtors' proposed claims and noticing agent, Epiq Corporate Restructuring, LLC (the "Claims and Noticing Agent") caused to be delivered to the Nominees (defined below) of Beneficial Holders[4] of the Prepetition 1L Term Loan Claims in Class 3, Prepetition 1.5L Notes Claims in Class 4, Prepetition 2L Notes Claims in Class 5 and Existing CURO Interests in Class 11 as of March 13, 2024, (such classes, the "Voting Classes" and such date, the "Voting Record Date") packages including the following materials (the "Solicitation Package"):

>    (A)     directions on how to access the Disclosure Statement (including all exhibits thereto) or, if requested, receive a printed copy of the same; and
>
>    (B)     the appropriate Ballot, substantially in the forms attached to the Order as **Exhibits 4A**, **4B**, **4C**, **4D**, **4E**, **4F**, **4G** and **4H**.

13.     The Debtors, with the assistance of the Claims and Noticing Agent, will complete a final tabulation of the Ballots and, contemporaneously therewith, will submit a final voting report following the Voting Deadline.

14.     Holders of Claims that received the Solicitation Package were directed to follow the instructions contained in the Ballot (and described in the Disclosure Statement) to complete and submit their respective Ballot to cast a vote to accept or reject the Plan.  The Disclosure Statement and the Ballot expressly provide that each such Holder needs to submit its Ballot so that it is actually received by the Claims and Noticing Agent on or before the Voting Deadline to be counted.  Holders of Classes 1, 2, 6, 7, 8, 9, and 10 Claims were not provided a Solicitation Package

---

[4]     A "Beneficial Holder" means a beneficial owner of Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims, Prepetition 2L Notes Claims, or Existing CURO Interests whose claims have not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by the Nominees holding through the DTC, or one of the other applicable depositories.

because such Holders are unimpaired under, and conclusively presumed to accept, the Plan, or do not receive or retain any property under, and conclusively presumed to reject, the Plan under Bankruptcy Code sections 1126(f) and 1126(g), respectively.

15.     Beneficial Holders of Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims and Prepetition 2L Notes Claims (collectively, "Creditor Claims") and Beneficial Holders of Existing CURO Interests that received the Solicitation Packages were directed in the Disclosure Statement and the Beneficial Holder Ballots to cast a vote to accept or reject the Plan according to instructions received from their depositories, brokers, dealers, commercial banks, trust companies, or other nominees or agents and mailing agents (collectively, the "Nominees").  Nominees were provided with a sufficient number of Solicitation Packages (including the Beneficial Holder Ballots) for each Beneficial Holder represented by the Nominee as of the Voting Record Date, as well as master ballots (the "Master Ballots") for use by the Nominees to tabulate votes submitted on Beneficial Holder Ballots by Beneficial Holders who own the Creditor Claims or Existing CURO Interests in "street name."  Nominees were provided with two options related to distribution of the Solicitation Package to Beneficial Holders of Creditor Claims and Existing CURO Interests who hold their Claims through such Nominee.  Each Nominee was entitled to elect to:  (a) "pre-validate" the Beneficial Holder Ballot (i.e., execute the Beneficial Holder Ballot, validate the Beneficial Holder's position in the Creditor Claims or Existing CURO Interests as of the Voting Record Date by including a medallion guarantee stamp on the Beneficial Holder Ballot, forward the Solicitation Package and deliver the executed Beneficial Holder Ballot to the Beneficial Holder as of the Voting Record Date, and instruct the Beneficial Holder to (i) indicate its vote to accept or reject the Plan and (ii) return the executed Beneficial Holder Ballot directly to the proposed Claims and Noticing Agent); or (b) forward the Solicitation Package together with the unexecuted

Beneficial Holder Ballot to the Beneficial Holder as of the Voting Record Date with instructions for the Beneficial Holder to complete and return the executed Beneficial Holder Ballot to the Nominee.  In the event that a Nominee elected to proceed pursuant to option (b), such Nominee was required to advise its Beneficial Holders to return their Beneficial Holder Ballot to the Nominee by a date that would permit the Nominee sufficient time to prepare and return its Master Ballot to the proposed Claims and Noticing Agent by the Voting Deadline.  If it was a Nominee's (or Nominee's agent's) customary and accepted practice to forward the Solicitation Packages to (and collect votes or elections from) beneficial owners by voter information form, email, telephone, or other customary means of communication, as applicable, the Nominee (or Nominee's agent) could employ that method of communication in lieu of sending the paper Combined Notice, and/or full Solicitation Package.  Moreover, if it was the Nominee's (or Nominee's agent's) customary internal practice to provide to beneficial owners an electronic link to solicitation materials (including, but not limited to, the Disclosure Statement and the Plan), the Nominee (or Nominee's agent) could follow such customary practice in lieu of forwarding the flash drive or paper copies containing the Disclosure Statement and the Plan.  Any Beneficial Holder holding the Creditor Claims or Existing CURO Interests as a record Holder in its own name was permitted to vote on the Plan by completing and signing a Beneficial Holder Ballot and returning it directly to the proposed Claims and Noticing Agent on or before the Voting Deadline.  If a Beneficial Holder held Creditor Claims or Existing CURO Interests through more than one Nominee or through multiple accounts, such Beneficial Holder received more than one Ballot, and each such Beneficial Holder will be required to execute and return a separate Ballot for each block of Creditor Claims or Existing CURO Interests it held through any Nominee.

16.     The Debtors will complete a final tabulation of the Ballots after the Voting

Deadline.  The Debtors' procedures and standard assumptions for tabulating Ballots include the

following criteria for tabulating Ballots:

| | |
|---|---|
| **Votes Not Counted** | – any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim; |
| | – any Ballot that is not actually received by the Claims and Noticing Agent by the Voting Deadline, unless the Debtors determine otherwise or as permitted by the Court; |
| | – any unsigned Ballot; |
| | – any Ballot that partially rejects and partially accepts the Plan in a particular Voting Class; |
| | – any Ballot not marked to accept or reject the Plan in a particular Voting Class or marked both to accept and reject the Plan in a particular Voting Class; |
| | – any Ballot superseded by a later, timely submitted valid Ballot; and |
| | – any improperly submitted Ballot. |
| **No Vote Splitting** | – Holders are required to vote all of their Claims in a particular Voting Class to either accept or reject the Plan and are not permitted to split any votes in a particular Voting Class. |
| **Establishing Claim Amounts** | – Claim amounts held by a Holder, as applicable, were pre-populated in the Ballots.  Claim amounts for voting purposes for Holders of Prepetition 1.5L Notes Claims and Prepetition 2L Notes Claims were established by reference to the books and records of the applicable indenture trustee or administrative agent or, as the case may be, in the amount of such Claims held by each Beneficial Holder through its Nominee as of the Voting Record Date as evidenced by the securities position report(s) from DTC or other applicable depository firm. |

| | |
|---|---|
| **Ballot Tabulation for Holders of Creditor Claims and Existing CURO Interests** | – Votes cast by Holders of Creditor Claims and Existing CURO Interests through Nominees will be applied to applicable positions held by such Nominees as of the Voting Record Date, as evidenced by DTC's or other applicable depository firm's securities position report as of the Voting Record Date. |
| | – Votes submitted by a Nominee will not be counted in excess of the amount of securities held by such Nominee as of the Voting Record Date. |
| | – If conflicting votes or "over-votes" are submitted by a Nominee, the proposed Claims and Noticing Agent will use reasonable efforts to reconcile discrepancies with the Nominee. |
| | – If "over-votes" are submitted by a Nominee that are not reconciled prior to the preparation of the certification of voting results, the votes to accept and to reject the Plan will be approved in the same proportion as the votes to accept and to reject the Plan submitted by the Nominee, but only to the extent of the Voting Record Date position in the securities. |
| | – Each Beneficial Holder will be deemed to have voted only the principal amount of its securities. |

17.     The Debtors reserve the right to, in consultation with the Consenting Stakeholders, make any exception to any of the foregoing assumptions and criteria.

## II.        Notice Provided to Non-Voting Classes

18.     The Debtors will also mail, or caused to be delivered, to all Holders of Claims in non-voting classes, the Opt-Out Forms, attached as **Exhibits 3**, **3A**, **3B, and 3C** to the Order,[5] which (a) informs recipients of their status as Holders or potential Holders of Claims in non-voting classes, (b) provides the full text of the releases, exculpation and injunction provisions set forth in the Plan, and (c) includes a form by which Holders could elect to opt out of the Third-Party Release included in the Plan by checking a prominently featured and clearly labeled box.  Where applicable, the Opt-Out Forms also contain information on how certain Holders in a non-voting

---

[5]     Holders of Claims who hold such Claims through a broker, bank, or other nominee, will receive from such broker, bank, or other nominee, or such firm's agent (each of the foregoing, an "Opt-Out Nominee"), a *Beneficial Holder Opt-Out Form*, substantially in the form attached as **Exhibit 3B** to the Order.  The Opt-Out Nominee will receive a *Master Opt-Out Form*, substantially in the form attached as **Exhibit 3A** to the Order.  Holders of Claims who hold such Claims directly will receive a *Holders of Claims Opt-Out Form*, substantially in the form attached as **Exhibit 3C** to the Order.

class can opt out electronically via the online portal maintained by the Claims and Noticing Agent ("E-Ballot"). The opt-out data created by such electronic submission shall become part of the record of any Opt-Out Form submitted in this manner, and the applicable Holder's electronic signature will be deemed to be immediately legally valid and effective.

**Basis for Relief**

## I.        Scheduling the Combined Hearing and the Objection Deadline.

19.        Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Bankruptcy Code Section 1128(a) provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."

20.        Similarly, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary." Under Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."

21.        The Court may combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan. *See* 11 U.S.C. § 1125(g) (allowing the prepetition solicitation of votes through non-bankruptcy law); 11 U.S.C. § 105(d)(2)(B)(vi) (authorizing bankruptcy courts to combine the hearing on approval of the disclosure statement with the confirmation hearing). In addition, Bankruptcy Local Rule 3016-2 and section P of the *Procedures for Complex Cases in the Southern District of Texas* (the "Complex Case Procedures") allow the Court to

12

combine the hearing on the adequacy of the Disclosure Statement and the hearing to confirm the Plan, so long as contemporaneously with the filing of a disclosure statement and proposed plan, a plan proponent files a motion requesting:  (a) conditional approval of the disclosure statement; (b) approval of solicitation procedures; (c) the scheduling of a hearing on shortened notice to consider conditional approval of the proposed disclosure statement; and (d) the scheduling of a joint hearing to consider final approval of the adequacy of the disclosure statement and confirmation of the proposed plan—as this Motion does.

22.     The Debtors request that the Court schedule the Combined Hearing on April 30, 2024, and schedule the Objection Deadline at 4:00 p.m., prevailing Central Time, on April 23, 2024.  The Debtors also request that the Court require that objections to the Disclosure Statement or confirmation of the Plan must:  (a) be in writing; (b) comply with the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined herein) so as to be actually received by the Objection Deadline.

23.     The Debtors respectfully submit that it is appropriate to schedule a Combined Hearing to consider approval of the Disclosure Statement and confirmation of the Plan and have the notice periods run simultaneously in accordance with Bankruptcy Rule 9006(c)(1) and the Complex Case Procedures.

24.     *First*, the proposed Objection Deadline of April 23, 2024, is 30 days following the Solicitation Commencement Date and service of the Combined Notice, which is in compliance

with the time periods required by the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

25. **Second**, the notice periods provided in the proposed Confirmation Schedule will permit the Debtors to satisfy certain Milestones. The Milestones were heavily negotiated between the Debtors and the Consenting Stakeholders, and were a key factor for inducing the Consenting Stakeholders' support. The more expeditious Confirmation Schedule is intended to preserve value for the Debtors' creditors by reducing the administrative costs of a drawn-out chapter 11 proceeding. Given the largely consensual nature of these Chapter 11 Cases and the restructuring transactions proposed by the Plan, the Debtors believe concurrent notice periods to permit the Combined Hearing to take place, as proposed, on or around April 30, 2024, is essential to the success of the reorganization.

26. **Third**, the Debtors commenced solicitation on March 24, 2024 (37 days prior to the requested date for the Combined Hearing), in accordance with Bankruptcy Code sections 1125(g) and 1126(b). The Solicitation Package was distributed to each Holder of a Claim entitled to vote on the Plan.

27. **Fourth**, the Plan enjoys the support of Holders of a majority of the Company's funded indebtedness. The Debtors commenced these Chapter 11 Cases with a restructuring support agreement signed by Holders of in excess of (i) 82% in aggregate outstanding principal amount of the Prepetition 1L Term Loan Claims, (ii) 84% in aggregate outstanding principal amount of the Prepetition 1.5L Notes Claims, and (iii) 74% in aggregate outstanding principal amount of the Prepetition 2L Notes Claims. In addition, Holders of General Unsecured Claims will be paid in full under the Plan and are accordingly deemed to accept the Plan.

28.     *Finally*, the Debtors will implement a robust noticing plan that will provide over approximately 21,000 parties with the material terms of the Plan, the third-party releases, and the opportunity to opt out of such releases.

## II.     Conditional Approval of the Disclosure Statement.

29.     The Debtors also seek conditional approval of the Disclosure Statement at their first day hearing.  Such relief is consistent with section P of the Complex Case Procedures, which provides that the Court may consider motions seeking conditional approval of a disclosure statement so long as such motions include a proposed order which:  (a) finally approves the balloting and voting procedures to be utilized; (b) finally approves the form of notice to be provided to creditors and interest holders of the debtors; (c) finally approves the form of ballot which will be provided to creditors and interest holders entitled to vote on the proposed plan; (d) establishes a record date; and (e) establishes a voting deadline.  This Motion and the proposed Order comply with these requirements of the Complex Case Procedures and the other requirements of the Bankruptcy Rules and the Bankruptcy Local Rules, including Bankruptcy Local Rule 3016-2.

## III.    Approval of the Solicitation Procedures.

30.     The Debtors distributed the Solicitation Packages and commenced solicitation of votes to accept or reject the Plan prior to the Petition Date in accordance with Bankruptcy Code sections 1125 and 1126.  *See* 11 U.S.C. § 1125(g) (permitting debtors to commence solicitation prior to filing chapter 11 petitions); 11 U.S.C. § 1126(b)(2) (providing that holders of claims or interests that accepted or rejected a plan before the commencement of a chapter 11 case are deemed to accept or reject the plan so long as the solicitation provided adequate information).  Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and interests for the purpose of soliciting their votes to accept or reject a plan of reorganization.  As set forth herein,

the Solicitation Procedures comply with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and the Debtors seek approval of the Solicitation Procedures, the Ballots, and the procedures used for tabulations of votes to accept or reject the Plan.

> **A.      Voting Record Date.**

31.      Bankruptcy Rule 3018(b) provides that, in a prepetition solicitation, the holders of record of the applicable claims against and interests in a debtor entitled to receive ballots and related solicitation materials are to be determined "on the date specified in the solicitation."  The Disclosure Statement and Ballot clearly identify March 13, 2024, as the date for determining which Holders of Claims were entitled to vote to accept or reject the Plan.

> **B.      Voting Deadline.**

32.      Bankruptcy Rule 3018(b) provides that prepetition acceptances and rejections of a plan are valid only if the plan was transmitted to substantially all the holders of claims and interests, if applicable, in the same voting class and the time for voting was not unreasonably short.  The Debtors commenced solicitation via email on March 24, 2024, and will complete the hard-copy mailing of all Solicitation Packages on or before March 29, 2024.  As set forth in the Disclosure Statement and the Ballots, the Voting Deadline was set for April 19, 2024.  As such, Holders of Claims entitled to vote on the Plan have sufficient notice period to consider the Plan and the Disclosure Statement and submit a Ballot before the Voting Deadline.

33.      The transactions proposed in the Plan are the product of hard-fought, arm's-length negotiations among the Debtors and the Consenting Stakeholders.  Prior to the Solicitation Commencement Date, the Plan and the Disclosure Statement were subject to review and comment by the Consenting Stakeholders.

34.      The Debtors submit that each Holder of Claims and Interests in the Voting Classes is sophisticated and was able to review the Disclosure Statement, was able to review and vote on

the Plan, and will be able to respond with objections, if any, by the deadlines requested in this Motion.  For these reasons, the Debtors believe that the solicitation period is sufficient and appropriate for Holders of Claims and Interests entitled to vote on the Plan to make an informed decision to accept or reject the Plan.

        **C.**        **The Ballots.**

35.      Bankruptcy Rule 3017(d) requires the Debtors to transmit a form of ballot, which substantially conforms to Official Form No. 314, only to "creditors and equity security holders entitled to vote on the plan."  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity holder or an authorized agent, and conform to the appropriate Official Form."  Only the Holders of Claims and Interests in the Voting Classes were transmitted Ballots.  The forms of Ballots used in solicitation are based on Official Form No. 314, and have been modified, as applicable, to address the particular circumstances of these Chapter 11 Cases to include certain information that the Debtors believe to be relevant and appropriate for Holders of Claims entitled to vote to accept or reject the Plan.  The forms of Ballots used in solicitation are annexed as **Exhibits 4A**, **4B**, **4C**, **4D**, **4E**, **4F**, 4G, and **4H** to the Order.

        **D.**        **Vote Tabulation.**

36.      The Debtors are using standard tabulation procedures in tabulating votes.  These procedures are consistent with Bankruptcy Code section 1126(c) and Bankruptcy Rule 3018(a).

        **E.**        **The Debtors' Prepetition Solicitation was Exempt from Registration and Disclosure Requirements Otherwise Applicable Under Nonbankruptcy Law.**

37.      Bankruptcy Code section 1125(g) provides that:

> [A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited

before the commencement of the case in a manner complying with applicable nonbankruptcy law.

38.     Bankruptcy Code Section 1126(b) provides that:

> [A] holder of a claim or interest that has accepted or rejected the plan before the commencement of the case under this title is deemed to have accepted or rejected such plan, as the case may be, if—(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or (2) if there is not any such law, rule, or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

39.     Prepetition solicitation must therefore either comply with generally applicable federal and state securities laws and regulations (including the registration and disclosure requirements thereof) or, if such laws and regulations do not apply, the solicited Holders must receive "adequate information" under Bankruptcy Code section 1125.

40.     The Debtors respectfully submit that their prepetition solicitation is exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act"), under one or more of the exemptions from registration provided thereunder, including section 4(a)(2) thereof, Regulation S promulgated under the Securities Act ("Regulation S"), state "Blue Sky" laws, or any similar rules, regulations, or statutes.  Section 4(a)(2) of the Securities Act creates an exemption from the registration requirements of Section 5 of the Securities Act for transactions not involving a "public offering."  15 U.S.C.A. § 77d(a)(2).  Regulation S provides a safe harbor exemption from the registration requirements of Section 5 of the Securities Act for certain offers and sales of securities to persons outside the United States that are "offshore transactions" that do not include "directed selling efforts" and meet certain other criteria specified in Regulation S. With respect to the Impaired Claims under the Plan, the Holders of Prepetition 1.5L Notes Claims and Prepetition 2L Notes Claims will not receive securities pursuant to a "public offering."  In

addition, the Debtors understand that prepetition there was no general solicitation or general advertising or directed selling efforts in connection with the offer of securities under the Plan and that any offers to parties entitled to vote on the Plan who are not accredited investors were made only in offshore transactions that satisfied the other conditions of Regulation S.  As such, the Debtors' prepetition solicitation falls within the exemptions set out in section 4(a)(2) of the Securities Act and/or the safe harbor set out in Regulation S.  The Debtors respectfully submit that the requirements of Bankruptcy Code section 1126(b)(1) have been satisfied by the Debtors' prepetition solicitation process.  As discussed more fully below, the Debtors will seek a determination from the Court at the Combined Hearing that all solicited Holders received "adequate information" as defined by Bankruptcy Code section 1125(a) in compliance with Bankruptcy Code section 1126(b)(2).

**IV.     Approval of the Disclosure Statement at the Combined Hearing.**

41.     The Debtors will request that, at the Combined Hearing, the Court find that the Disclosure Statement contains "adequate information" as defined in Bankruptcy Code section 1125(a).  *See* 11 U.S.C. § 1126(b)(2) (providing that, where there is no non-bankruptcy law governing the solicitation of claim and interest holders prior to the debtors commencing chapter 11 cases, such solicitation must have been based on the debtors providing such holders "adequate information").

42.     The Disclosure Statement contains adequate information because it is extensive and comprehensive.  What constitutes "adequate information" is based on the facts and circumstances of each case, but the focus is on whether sufficient information is provided to enable parties to vote in an informed way, and that standard is easily met here.[6]  For instance, the Disclosure

---

[6]     *See* 11 U.S.C. § 1125(a)(1); *see also In re Cajun Elec. Power Coop., Inc.,* 150 F.3d 503, 518 (5th Cir. 1998) (stating that courts are vested with the discretion to determine whether a disclosure statement contains "adequate

Statement contains descriptions and summaries of, among other things:  (a) the Debtors' prepetition reorganization efforts;[7] (b) certain events and relevant negotiations preceding the commencement of these Chapter 11 Cases;[8] (c) the key terms of the RSA and the Plan;[9] (d) risk factors affecting consummation of the Plan;[10] (e) a liquidation analysis setting forth the estimated recovery that Holders of Claims and Interests would receive in a hypothetical chapter 7 case;[11] (f) financial information that is relevant in determining whether to accept or reject the Plan;[12] (g) a valuation analysis setting forth the value of the Debtors;[13] and (h) federal tax law consequences of the Plan.[14]  In addition, and as noted above, the Disclosure Statement and the Plan were subject to extensive review and comment by the Consenting Stakeholders, including Holders of Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims, and Prepetition 2L Notes Claims.   Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of Bankruptcy Code section 1125(a) and should be approved.

---

information" within the meaning of Bankruptcy Code section 1125(a)); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321–22 (3d Cir. 2003) (providing that a disclosure statement must contain "adequate information to enable a creditor to make an informed judgment about the [p]lan") (internal quotations omitted); *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (stating the determination of whether a disclosure statement contains adequate information must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case); *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (noting that "[d]isclosure of all factors [as defined in Bankruptcy Code section 1125(a)(1)] is not necessary in every case").

[7]   *See* Article IV of the Disclosure Statement.

[8]   *See* Articles II, IV of the Disclosure Statement.

[9]   *See* Articles IV, VI, VII of the Disclosure Statement.

[10]   *See* Article VIII of the Disclosure Statement.

[11]   *See* Exhibit E of the Disclosure Statement.

[12]   *See* Exhibit C of the Disclosure Statement.

[13]   *See* Exhibit D of the Disclosure Statement.

[14]   *See* Article XII of the Disclosure Statement.

**V.      Waiver of Certain Solicitation Package Mailings.**

43.     The Debtors request that the Court waive the requirement that they mail, or cause to be delivered, a copy of the Solicitation Package to Holders of Claims and Interests presumed to accept or presumed to reject the Plan.  *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of a court-approved disclosure statement to, inter alia, classes of unimpaired creditors and equity security holders unless the court orders otherwise).  Bankruptcy Rule 3017(d) applies, in relevant part, "[u]pon approval of a disclosure statement."  Bankruptcy Rule 3017 may be deemed not to apply here considering the prepetition solicitation process employed.  *See also* 11 U.S.C. § 1126(f)–(g) (providing that solicitation of parties either presumed to accept or deemed to reject is unnecessary).  The Debtors, however, make this request out of an abundance of caution.  Distributing the Solicitation Packages to non-voting creditors is an unnecessary expense.  The Debtors submit that their cash should be preserved for the benefit of all stakeholders and that their resources should not be distracted by having to satisfy this mailing requirement.  The Debtors have also made the Solicitation Package (excluding the Ballots) available at no cost on their chapter 11 website:  https://dm.epiq11.com/Curo.

**VI.     Approval of the Form and Manner of the Notice.**

44.     The Debtors request approval of the Combined Notice, substantially in the form of **Exhibit 1** attached to the Order.  In accordance with Bankruptcy Rules 2002 and 3017(d), the Combined Notice will:  (a) provide notice of the commencement of these Chapter 11 Cases; (b) provide a brief summary of the Plan; (c) disclose the date and time of the Combined Hearing; (d) disclose the date and time of the Objection Deadline and the procedures for objecting to the Disclosure Statement and the Plan; and (e) provide the record date for receiving distributions under the Plan.

45.     The Combined Notice will be served upon the Debtors' creditor matrix and all Holders of Claims and Interests of record, which service will occur as soon as possible after the Court's approval of the Combined Notice.  The Combined Notice likewise will be served upon the Notice Parties (as defined herein).

46.     Bankruptcy Rule 2002(l) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  Prior to the Combined Hearing, the Debtors propose to publish the Publication Notice in the *New York Times* within five (5) business days following entry of the Order, or as soon as reasonably practicable thereafter, substantially in the form of **Exhibit 2** annexed to the Order.  In addition, the Publication Notice will be available on the Debtors' chapter 11 website at https://dm.epiq11.com/Curo.   The Debtors believe that the Publication Notice will provide sufficient notice of the pending approval of the Disclosure Statement, the Combined Hearing, and the Objection Deadline to entities who will not otherwise receive notice by mail or email as provided herein and through the Solicitation Procedures.

47.     The Debtors also request approval of the Opt-Out Forms, substantially in the form of **Exhibits 3**, **3A**, **3B**, and **3C** attached to the Order.  The Opt-Out Forms:  (a) inform recipients of their status as Holders or potential Holders of Claims in non-voting classes; (b) provide the full text of the releases, exculpation, and injunction provisions set forth in the Plan; and (c) include a form by which Holders could elect to opt out of the Third-Party Release included in the Plan by checking a prominently featured and clearly labeled box.  Where applicable, the Opt-Out Forms also contain information on how the Holder of the Claim in the non-voting class can submit an opt-out electronically via E-Ballot.

48.     The Opt-Out Form will be served upon (a) the Holders of Claims in Classes that are not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f) and (b) the Holders of Claims in Classes that are Impaired under the Plan and, therefore, conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g), each as of the Voting Record Date.  The Debtors will serve such non-voting Holders as soon as possible after the Court's approval of the Opt-Out Form.  As clearly set forth in the Opt-Out Form, the Opt-Out Form must be returned no later than 4:00 p.m., prevailing Central Time, on April 19, 2024 (the "Opt-Out Deadline").  The Debtors respectfully submit that Holders of Claims not entitled to vote on the Plan had adequate time to consider the Plan and the Disclosure Statement and opt-out of the releases thereunder before the Opt-Out Deadline.

## VII.    Cause Exists to Extend the Time by Which the U.S. Trustee Convenes a Meeting of Creditors.

49.     The Debtors respectfully submit that the circumstances of these Chapter 11 Cases merit an extension of the time by which the U.S. Trustee convenes a Creditors' Meeting until May 14, 2024, and without prejudice to the Debtors' ability to request additional extensions.  This relief is appropriate because the Plan satisfies all General Unsecured Claims in full, and the Debtors anticipate the Plan will carry the support of the Voting Classes.

50.     Bankruptcy Code section 341 allows a court to order a meeting of creditors or equity holders not be held if a debtor has filed a plan on the petition date and solicited acceptances of a plan prior to the commencement of a chapter 11 case.  More specifically, Bankruptcy Code section 341(e) provides that:

> Notwithstanding subsections (a) and (b), the court, on the request of
> a party in interest and after notice and a hearing, for cause may order
> that the United States trustee not convene a meeting of creditors or

> equity security holders if the debtor has filed a plan as to which the
> debtor solicited acceptances prior to the commencement of the case.

11 U.S.C. § 341(e).

51.     The Debtors filed the Plan contemporaneously with this Motion on the Petition

Date, and the Debtors commenced solicitation of votes to accept or reject the Plan prior to the

filing of these Chapter 11 Cases, thereby satisfying the threshold statutory requirement.

52.     Cause exists to extend the section 341 meeting as set forth herein because the Plan

leaves General Unsecured Claims unimpaired.  The Debtors are required to confirm the Plan within

50 days of the Petition Date, the failure of which could jeopardize the current support for the Plan.

A section 341 meeting may force the Debtors to delay the Combined Hearing, thereby causing

additional administrative expenses and professional fees to the detriment of the Debtors' estates.

For these reasons, the Debtors submit that sufficient cause exists to extend the requirement to

convene a section 341 meeting as set forth herein until May 14, 2024, and be waived in the event

the Plan is confirmed on or prior to that date.

### Non-Substantive Modifications

53.     The Debtors request authorization to make non-substantive changes to the

Disclosure Statement, the Plan, the Solicitation Packages, the Combined Notice, the Publication

Notice, the Opt-Out Forms, the Ballots, and any related documents without further order of the

Court.  These changes could include changes to correct typographical and grammatical errors, if

any, and to make conforming changes to the Disclosure Statement, the Plan, and any other

materials in the Solicitation Packages before distribution.

### Emergency Consideration

54.     The Debtors request emergency consideration of this Motion pursuant to

Bankruptcy Rule 6003 and Bankruptcy Local Rule 9013-1, which empower a court to grant relief

within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm."  As described above, the relief requested herein is necessary to avoid the immediate and irreparable harm that would result from prolonged Chapter 11 Cases.  Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases would severely disrupt the Debtors' ability to achieve the restructuring necessary to ensure their long-term viability.  The Debtors have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and request that the Court approve the relief requested in this Motion on an emergency basis.

<u>**Notice**</u>

55.    The Debtors have provided notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee; (b) the entities listed on the Debtors' petitions as holding the largest 30 unsecured claims (on a consolidated basis); (c) counsel to the Prepetition 1L Agent; (d) counsel to the Prepetition 1.5L Notes Trustee; (e) counsel to the Prepetition 2L Notes Trustee; (f) counsel to the Ad Hoc Group;  (g) counsel to the lenders under the Securitization Facilities; (h) the Office of the United States Attorney for the Southern District of Texas; (i) the state attorneys general for states in which the Debtors conduct business; (j) the Internal Revenue Service; (k) the United States Securities and Exchange Commission; (l) other governmental agencies having a regulatory or statutory interest in these cases; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, no other or further notice is required.

WHEREFORE, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: March 25, 2024
      Houston, Texas

*/s/ Sarah Link Schultz*
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
      pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
      akordas@akingump.com
      orahnama@akingump.com

*Proposed Counsel to the Debtors*

## **Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Sarah Link Schultz*
Sarah Link Schultz


## **Certificate of Service**

I certify that on March 25, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Sarah Link Schultz*
Sarah Link Schultz