United States Bankruptcy Court
Southern District of Texas

**ENTERED**

March 25, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| CURO Group Holdings Corp., *et al.*, | Case No. 24-90165 |
| Debtors.[1] | (Joint Administration Requested)<br>(Emergency Hearing Requested) |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN
POSTPETITION FINANCING, (II) GRANTING LIENS AND PROVIDING
CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(III) AUTHORIZING USE OF CASH COLLATERAL, (IV) MODIFYING THE
AUTOMATIC STAY AND (V) SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion")[2] of the above-referenced debtors, as debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, 7007-1, 9013-1, 9013-4 and 9014-2 of the Local Rules (the "Bankruptcy Local Rules") of the United States Bankruptcy Court for the Southern District of Texas (the "Court") and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures") seeking, among other things:

(a) authorization for CURO Group Holdings Corp., a Delaware corporation, as borrower (the "DIP Borrower"), to obtain, and the other Debtors[3], as guarantors

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion, the Restructuring Support Agreement or the DIP Credit Agreement, as applicable.

[3] Neither the DIP Loan Parties, nor the Guarantors, shall include LendDirect Corp. or CURO Canada Corp. (collectively, the "Canadian Debtors") and none of the provisions of the DIP Term Sheet, or the DIP Documents

*(Cont'd on next page)*

(each, a "<u>Guarantor</u>", and collectively, the "<u>Guarantors</u>" and the Guarantors together with the DIP Borrower the "<u>DIP Loan Parties</u>"), to guarantee, on a joint and several basis, the DIP Borrower's obligations under, a priming, senior secured, superpriority debtor-in-possession term loan facility in the aggregate principal amount (exclusive of capitalized fees) of $70,000,000 (the "<u>DIP Facility</u>", and the commitments thereunder, the "<u>DIP Commitments</u>", and the term loans advanced (or deemed advanced) thereunder, the "<u>DIP Loans</u>") under a Superpriority Senior Secured Debtor-In-Possession Credit Agreement, by and among the DIP Borrower, the Guarantors, and the DIP Secured Parties (as defined below) in form and substance substantially consistent with the DIP Term Sheet (as defined below) and otherwise reasonably acceptable to the Debtors and Required Backstop Parties (as defined in the DIP Term Sheet) (as the same may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time pursuant to the terms thereof, the "<u>DIP Credit Agreement</u>"), consisting of a "new money" multidraw term loan facility in an aggregate principal amount of $70,000,000, of which (i) an initial draw amount of no more than $25,000,000 (the "<u>Initial DIP Loans</u>") will be made available to be drawn in a single drawing upon entry of this Interim DIP Order (together with all annexes and exhibits hereto, this "<u>Interim DIP Order</u>") and satisfaction of the other applicable conditions to any Initial DIP Loans set forth in the DIP Credit Agreement (such initial draw, the "<u>Initial Draw</u>"), (ii) an amount of, together with the amount of the Initial Draw, no more than $50,000,000 (the "<u>Second Draw DIP Loans</u>") will be made available to be drawn in a single drawing upon entry of the Final DIP Order (as defined below) and satisfaction of the other applicable conditions to any Second Draw DIP Loans set forth in the DIP Credit Agreement (the "<u>Second Draw</u>") and (iii) subject to the consent of the Required DIP Lenders, an additional amount of no more than $20,000,000 (the "<u>Delayed Draw DIP Loans</u>" and, together with the Initial DIP Loans and the Second Draw DIP Loans, the "<u>DIP Loans</u>") may be drawn in up to two drawings, each of no more than $10,000,000, upon entry of the Final DIP Order and the satisfaction or waiver of the other applicable conditions to the Delayed Draw DIP Loans set forth in the DIP Credit Agreement (the "<u>Delayed Draws</u>"), which shall be funded by certain Prepetition Secured Parties (as defined below) or their affiliates, related funds or permitted assignees, in their capacities as postpetition financing lenders (collectively, the "<u>DIP Lenders</u>"), pursuant to the terms and conditions set forth in (x) the DIP Credit Agreement, (y) the DIP Term Sheet attached as an exhibit to the RSA (as defined below) (the "<u>DIP Term Sheet</u>") and (z) all agreements, documents, and instruments delivered or executed in connection with the DIP Credit Agreement, in each case reasonably satisfactory in form and substance to the Debtors, Alter Domus (US) LLC, as administrative agent and collateral agent for the DIP Lenders (the "<u>DIP Agent</u>", and the DIP Agent, together with the DIP Lenders, the "<u>DIP Secured Parties</u>"), and Required Lenders (as defined in the DIP Credit Agreement) (the "<u>Required DIP Lenders</u>") (such agreements, documents, and instruments, including, without limitation, the DIP Credit Agreement and the DIP Term Sheet, collectively, the "<u>DIP Documents</u>");

(b)     authorization for the Debtors to (i) execute and enter into the DIP Credit Agreement and the other DIP Documents, consistent in all respects with the DIP Term Sheet and (ii) to perform their respective obligations thereunder and to take all such other

---

shall apply to the Canadian Debtors, nor shall the Canadian Debtors be deemed to grant any liens or claims under the terms of the Interim DIP Order or Final DIP Order.

and further acts as may be necessary, appropriate, or desirable in connection with the DIP Credit Agreement and the other DIP Documents or the DIP Facility;

(c)    grant to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, allowed superpriority administrative expense claims in each of the Cases and any successor cases, including any chapter 7 cases, with respect to the DIP Facility and all obligations and indebtedness owing thereunder and under the DIP Credit Agreement, the other DIP Documents and this Interim DIP Order (collectively, the "DIP Obligations"), subject to (i) the Superpriority Securitization Facilities Claims (as defined below), which claims shall be *pari passu* with the applicable superpriority claims granted to the DIP Agent hereunder, and (ii) the other priorities set forth herein;

(d)    grant to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, automatically perfected priming security interests in, and liens on, with respect to the DIP Loans, all of the DIP Collateral (as defined below), including, but not limited to, Cash Collateral (as defined below) and the Prepetition Collateral (as defined below), in each case, to secure the DIP Loans and the other DIP Obligations, subject only to the Carve Out (as defined below) and the terms and priorities set forth herein;

(e)    authorization for the Debtors to incur and pay, on the terms set forth herein and in the DIP Documents, on a final and irrevocable basis, the principal, interest, premiums, fees, expenses, indemnities, and other amounts payable under this Interim DIP Order and the DIP Documents as such amounts become earned, due, and payable;

(f)    authorization for the Debtors, pursuant to Bankruptcy Code sections 105, 361, 362, 363, 503 and 507 to (i) use cash collateral, as such term is defined in Bankruptcy Code section 363(a), and all other Prepetition Collateral solely in accordance with the terms of this Interim DIP Order, and (ii) grant adequate protection to the Prepetition Secured Parties to the extent of any Diminution in Value (as defined below) of their respective interests in the Prepetition Collateral (including Cash Collateral);

(g)    modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of this Interim DIP Order and the DIP Documents;

(h)    except to the extent of the Carve Out (as defined below), in respect of the Prepetition Collateral, the waiver of all rights to surcharge any Prepetition Collateral or Collateral (as defined below) under Bankruptcy Code section 506(c) or any other applicable principle of equity or law, provided that the foregoing waiver shall be without prejudice to any provisions of the Final DIP Order with respect to costs or expenses incurred following the entry of such Final DIP Order;

(i)    to the extent set forth herein, for the "equities of the case" exception under Bankruptcy Code section 552(b) to not apply to any of the Prepetition Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral under Bankruptcy Code section 552(b) or any other applicable principle of equity or law, provided that, with respect to the Prepetition Secured Parties, the foregoing waiver shall be without prejudice to any provisions of the Final DIP Order;

(j)     that this Court schedule a final hearing (the "Final Hearing") to consider entry of a Final DIP Order granting the relief requested in the Motion on a final basis (the "Final DIP Order");

(k)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim DIP Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(l)     granting related relief;

and the interim hearing (the "Interim Hearing") having been held by the Court on March [ ● ], 2024; and the Final Hearing having been scheduled by the Court for [ ● ], 2024 pursuant to Bankruptcy Rule 4001, notice of the Motion and the relief sought therein having been given by the Debtors as set forth in this Interim DIP Order; and the Court having considered the *Declaration of Douglas Clark in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") and the *Declaration of Joe Stone (Oppenheimer & Co., Inc.) in Support of (A) the Debtors' DIP Financing Motion and (B) the Debtors' Securitization Facilities Motion* (the "Oppenheimer Declaration") the Motion, the Approved Budget (as defined below) filed and served by the Debtors, offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and the Court having considered the interim relief requested in the Motion, and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary to avoid immediate and irreparable harm to the Debtors  and their estates and that such relief is fair and reasonable and that entry of this Interim DIP Order is in the best interest of the Debtors and their respective estates; and it appearing that the Debtors' entry into the DIP Credit Agreement and other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and due deliberation and good cause having been shown to grant the relief sought in the Motion;

**IT IS HEREBY FOUND AND DETERMINED THAT:[4]**

A.      ***Petition Date***.  On March 25, 2024 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

B.      ***Debtors in Possession***.  Each Debtor has continued with the management and operation of its respective businesses and properties as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.  No trustee or examiner has been appointed in the Cases.

C.      ***Jurisdiction and Venue***.  The Court has jurisdiction over the Motion, these Cases, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for these Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      ***Committee***.  As of the date hereof, no official committee of unsecured creditors has been appointed in these Cases pursuant to Bankruptcy Code section 1102 (any such committee, the "Committee").

E.      ***Debtors' Stipulations***.  Subject only to the rights of parties in interest specifically set forth in Paragraph 30 of this Interim DIP Order (and subject to the limitations thereon contained in such paragraph), the Debtors admit, stipulate and agree that (collectively, Paragraphs E.1 through E.8 below are referred to herein as the "Debtors' Stipulations"):

    1.      *Prepetition 1L Loans*.

       (a)      Under that certain Prepetition 1L Credit Agreement, dated as of May 15, 2023, among CURO Group Holdings Corp. ("CURO"), the subsidiaries of CURO party thereto from time to time as guarantors, the lenders party thereto from time to time (collectively, the "Prepetition 1L Lenders") and Alter Domus (US) LLC, as administrative

---

[4]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Bankruptcy Rule 7052.

agent (in such capacity, the "Prepetition 1L Administrative Agent") and collateral agent (in such capacity and including any successors thereto, the "Prepetition 1L Collateral Agent" and, together with the Prepetition 1L Administrative Agent, the "Prepetition 1L Agent"; the Prepetition 1L Agent, together with the Prepetition 1L Lenders and each of the other Secured Parties (as defined in the Prepetition 1L Credit Agreement (as defined below)), the "Prepetition 1L Secured Parties") (such credit agreement, as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition 1L Credit Agreement" and, together with all other documentation executed in connection therewith, including without limitation, the Collateral Documents (as defined in the Prepetition 1L Credit Agreement), and all other Facility Documents (as defined in the Prepetition 1L Credit Agreement), the "Prepetition 1L Credit Documents")), certain of the Prepetition 1L Loan Parties (as defined below) borrowed loans thereunder (the "Prepetition 1L Loans") in an initial aggregate principal amount of $165,000,000 (including, without limitation, fees paid in kind).  As used herein, the "Prepetition 1L Loan Parties" shall mean, collectively, CURO and the Guarantors (as defined in the Prepetition 1L Credit Agreement).

(b)      As of the Petition Date, the Prepetition 1L Loan Parties were jointly and severally indebted to the Prepetition 1L Secured Parties pursuant to the Prepetition 1L Credit Documents, without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $177,667,450.47 on account of outstanding Prepetition 1L Loans under the Prepetition 1L Credit Agreement, *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other

professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, in each case to the extent reimbursable pursuant to the terms of the Prepetition 1L Credit Documents and all other Obligations (as defined in the Prepetition 1L Credit Agreement) owing under or in connection with the Prepetition 1L Credit Documents (collectively, the "Prepetition 1L Indebtedness").

(c)     *Prepetition 1L Collateral*.  In connection with the Prepetition 1L Credit Agreement, certain of the Debtors entered into the Collateral Documents.  Pursuant to the Collateral Documents and the other Prepetition 1L Credit Documents, the Prepetition 1L Indebtedness is secured by valid, binding, perfected, and enforceable first-priority security interests in and liens (the "Prepetition 1L Priority Liens") on all of the Collateral (or any other comparable term describing the assets subject to security interests and liens securing the Prepetition 1L Indebtedness) (as defined in the Collateral Documents) (the "Prepetition Collateral") consisting of substantially all of each Prepetition 1L Loan Party's assets and property and products and proceeds thereof. For the avoidance of doubt, Prepetition Collateral excludes with respect to any Debtor or Canadian Debtor (i) any loan receivables and related rights and interests (collectively, "Receivables") that were originated and sold pursuant to the Securitization Facilities to the Non-Debtor Purchasers (as defined below) prepetition (including any such Receivables purported to be sold pursuant to the Securitization Facilities but subsequently avoided or recharacterized as an extension of credit or a pledge) and any proceeds thereof and (ii) any claims or causes of

action held by the Non-Debtor Purchasers arising on account of prepetition transfers of Receivables to the Non-Debtor Purchasers.

(d)     *Validity, Perfection, and Priority of Prepetition 1L Priority Liens and Prepetition 1L Indebtedness*.  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date:  (i) the Prepetition 1L Priority Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (ii) the Prepetition 1L Priority Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (iii) the Prepetition 1L Priority Liens are subject and subordinate only to valid, perfected and enforceable prepetition liens (if any) which are senior to the Prepetition 1L Secured Parties' liens or security interests as of the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b), and that are senior to the Prepetition 1L Secured Parties' liens or security interests as of the Petition Date (such liens, the "<u>Permitted Prior Liens</u>"); (iv) the Prepetition 1L Priority Liens were granted to or for the benefit of the Prepetition 1L Collateral Agent and the other Prepetition 1L Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (v) the Prepetition 1L Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the Debtors;  (vi) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition 1L Priority Liens or Prepetition 1L Indebtedness exist, and no portion of the Prepetition 1L Priority Liens or Prepetition 1L Indebtedness is subject to any challenge,

cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (vii) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to Bankruptcy Code sections 105, 510, or 542 through 553), against the Prepetition 1L Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Prepetition 1L Credit Documents, the Prepetition 1L Indebtedness, or the Prepetition 1L Priority Liens and (viii) the Prepetition 1L Indebtedness constitutes an allowed, secured claim within the meaning of Bankruptcy Code sections 502 and 506 to the extent of the value of the Prepetition Collateral allocable to the Prepetition 1L Indebtedness.

2.      *Prepetition 1.5L Notes*.

(a)      Under that certain Indenture, dated as of May 15, 2023 (the "Prepetition 1.5L Notes Indenture" and, together with the other Indenture Documents (as defined in the Prepetition 1.5L Notes Indenture), as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition 1.5L Notes Documents"), by and

among CURO, as issuer (the "Prepetition 1.5L Notes Issuer"), the subsidiaries of the Prepetition 1.5L Notes Issuer party thereto from time to time as guarantors and U.S. Bank Trust Company, National Association, as indenture trustee (including any successors thereto, the "Prepetition 1.5L Notes Trustee") and as collateral agent (including any successors thereto, the "Prepetition 1.5L Collateral Agent"; together with the Prepetition 1.5L Notes Trustee, the "Prepetition 1.5L Agent"), the Prepetition 1.5L Notes Issuer issued 7.50% Senior Prepetition 1.5L Secured Notes due 2028 in an initial aggregate principal amount of $682,298,000 (the "Prepetition 1.5L Notes").   As used herein, (a) the "Prepetition 1.5L Secured Parties" shall mean, collectively, the Prepetition 1.5L Agent and the holders of the Prepetition 1.5L Notes; and (b) the "Prepetition 1.5L Notes Parties" shall mean, collectively, the Prepetition 1.5L Notes Issuer, and the guarantors party to the Prepetition 1.5L Notes Documents from time to time.

(b)     As of the Petition Date, the Prepetition 1.5L Notes Parties were jointly and severally indebted to the Prepetition 1.5L Secured Parties pursuant to the Prepetition 1.5L Notes Documents, without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $682,298,000.00 *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, in each case to the extent reimbursable pursuant to the terms of the Prepetition 1.5L Notes Documents and all other Obligations (as defined in the Prepetition 1.5L Notes Indenture) owing under or in

connection with the Prepetition 1.5L Notes Documents (collectively, the "Prepetition 1.5L Indebtedness").

(c)     *Prepetition 1.5L Notes Collateral*.   In connection with the Prepetition 1.5L Notes Indenture, certain of the Debtors entered into the Collateral Documents (as defined in the Prepetition 1.5L Notes Indenture, the "Prepetition 1.5L Collateral Documents").   Pursuant to the Prepetition 1.5L Collateral Documents and the other Prepetition 1.5L Notes Documents, the Prepetition 1.5L Indebtedness is secured by valid, binding, perfected, and enforceable second-priority security interests in and liens on the Prepetition Collateral (the "Prepetition 1.5L Priority Liens").

(d)     *Validity, Perfection, and Priority of Prepetition 1.5 Priority Liens and Prepetition 1.5L Indebtedness*.  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date:  (i) the Prepetition 1.5L Priority Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (ii) the Prepetition 1.5L Priority Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral held by the Prepetition 1.5L Notes Parties; (iii) the Prepetition 1.5L Priority Liens are subject and subordinate only to the Prepetition 1L Priority Liens and Permitted Prior Liens; (iv) the Prepetition 1.5L Priority Liens were granted to or for the benefit of the Prepetition 1.5L Agent and the other Prepetition 1.5L Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (v) the Prepetition 1.5L Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the Debtors; (vi) no offsets, challenges, objections, defenses,

claims, or counterclaims of any kind or nature to any of the Prepetition 1.5L Priority Liens or Prepetition 1.5L Indebtedness exist, and no portion of the Prepetition 1.5L Priority Liens or Prepetition 1.5L Indebtedness is subject to any challenge, cause of action, or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (vii) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to Bankruptcy Code sections 105, 510, or 542 through 553), against the Prepetition 1.5L Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Prepetition 1.5L Notes Documents, the Prepetition 1.5L Indebtedness, or the Prepetition 1.5L Priority Liens; and (viii) the Prepetition 1.5L Indebtedness constitutes an allowed, secured claim within the meaning of Bankruptcy Code section 502 and 506 to the extent of the value of the Prepetition Collateral allocable to the Prepetition 1.5L Indebtedness.

      3.      *Prepetition 2L Notes.*

      (a)      Under that certain Indenture, dated as of July 30, 2021 (the "Prepetition 2L Notes Indenture" and, together with the other Indenture Documents (as

defined in the Prepetition 2L Notes Indenture), as amended, restated, supplemented, or otherwise modified from time to time, the "Prepetition 2L Notes Documents" and, together with the Prepetition 1.5L Notes Documents and the Prepetition 1L Credit Documents, the "Prepetition Secured Indebtedness Documents"), by and among CURO, as issuer (the "Prepetition 2L Notes Issuer"), the subsidiaries of the Prepetition 2L Notes Issuer party thereto from time to time as guarantors and Argent Institutional Trust Company (f/k/a TMI Trust Company), as indenture trustee (including any successors thereto, the "Prepetition 2L Notes Trustee") and  as collateral agent (including any successors thereto, the "Prepetition 2L Collateral Agent"; the Prepetition 2L Collateral Agent, together with the Prepetition 2L Notes Trustee, the "Prepetition 2L Agent"), the Prepetition 2L Notes Issuer issued 7.500% Senior Secured Notes due 2028 in an initial aggregate principal amount of $1,000,000,000 (the "Prepetition 2L Notes" and, together with the Prepetition 1.5L Notes, the "Prepetition Notes").  As used herein, (a) the "Prepetition 2L Secured Parties" shall mean, collectively, the Prepetition 2L Agent and the holders of the Prepetition 2L Notes (together with the Prepetition 1L Secured Parties and the Prepetition 1.5L Secured Parties, the "Prepetition Secured Parties"); (b) the "Prepetition 2L Notes Parties" shall mean, collectively, the Prepetition 2L Notes Issuer, and the guarantors[5] party to the Prepetition 2L Notes Documents from time to time; and (c) the "Prepetition Notes Parties" shall mean, collectively, the Prepetition 1.5L Notes Parties and the Prepetition 2L Notes Parties, and together with the Prepetition 1L Loan Parties, the "Prepetition Loan Parties".

---

[5]   For avoidance of doubt, Debtor CURO Ventures, LLC is not a Prepetition 2L Notes Party, and the Prepetition 2L Priority Liens (as defined below) do not encumber the assets of CURO Ventures, LLC.

(b)      As of the Petition Date, the Prepetition 2L Notes Parties were jointly and severally indebted to the Prepetition 2L Secured Parties pursuant to the Prepetition 2L Notes Documents, without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $317,702,000.00 *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, in each case to the extent reimbursable pursuant to the terms of the Prepetition 2L Notes Documents and all other First Priority Claims (as defined in Prepetition 2L Notes Indenture) or Obligations (as defined in Prepetition 2L Notes Indenture) owing under or in connection with the Prepetition 2L Notes Documents (collectively, the "Prepetition 2L Indebtedness" and, together with the Prepetition 1L Indebtedness and the Prepetition 1.5L Indebtedness, the "Prepetition Secured Indebtedness").

(c)      *Prepetition 2L Collateral*.  In connection with the Prepetition 2L Notes Indenture, certain of the Debtors entered into the Collateral Documents (as defined in the Prepetition 2L Notes Indenture, the "Prepetition 2L Collateral Documents"). Pursuant to the Prepetition 2L Collateral Documents and the other Prepetition 2L Notes Documents, the Prepetition 2L Indebtedness is secured by valid, binding, perfected, and enforceable third-priority security interests in and liens on the Prepetition Collateral (the "Prepetition 2L Priority Liens" and, together with the Prepetition 1L Priority Liens and the Prepetition 1.5L Priority Liens, the "Prepetition Liens").

(d)     *Validity, Perfection, and Priority of Prepetition 2L Priority Liens and Prepetition 2L Indebtedness.*  Each of the Debtors acknowledges and agrees that, in each case as of the Petition Date:  (i) the Prepetition 2L Priority Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (ii) the Prepetition 2L Priority Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral held by the Prepetition 2L Notes Parties; (iii) the Prepetition 2L Priority Liens are subject and subordinate only to the Prepetition 1.5L Priority Liens, the Prepetition 1L Priority Liens, and Permitted Prior Liens; (iv) the Prepetition 2L Priority Liens were granted to or for the benefit of the Prepetition 2L Agent and the other Prepetition 2L Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (v) the Prepetition 2L Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the Debtors;  (vi) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition 2L Priority Liens or Prepetition 2L Indebtedness exist, and no portion of the Prepetition 2L Priority Liens or Prepetition 2L Indebtedness is subject to any challenge, cause of action, or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (vii) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims,

cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to Bankruptcy Code sections 105, 510, or 542 through 553), against the Prepetition 2L Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Prepetition 2L Notes Documents, the Prepetition 2L Indebtedness, or the Prepetition 2L Priority Liens; and (viii) the Prepetition 2L Indebtedness constitutes an allowed, secured claim within the meaning of Bankruptcy Code sections 502 and 506 to the extent of the value of the Prepetition Collateral allocable to the Prepetition 2L Indebtedness.

4.      *Cash Collateral*.  Substantially all of the Prepetition Loan Parties' cash, including any amounts generated by the collection of accounts receivable, all cash proceeds of the Prepetition Collateral, and the Prepetition Loan Parties' banking, checking, or other deposit accounts with financial institutions as of the Petition Date or deposited into the Prepetition Loan Parties' banking, checking, or other deposit accounts with financial institutions after the Petition Date constitutes cash collateral of the Prepetition 1L Secured Parties within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral"). Cash Collateral excludes any Receivables or cash proceeds thereof which are property of the Non-Debtor Purchasers, but in the possession of one of the Debtors.

5.      *Bank Accounts*.  The Debtors acknowledge and agree that, as of the Petition Date, none of the Debtors has either opened or maintains any bank accounts other than the accounts

listed in the applicable exhibit attached to any motion seeking authorization for the Debtors to continue to use the Debtors' existing cash management system.

6.      *Intercreditor Agreements*.    The Prepetition 1L Collateral Agent, the Prepetition 1.5L Collateral Agent and the Prepetition 2L Collateral Agent are parties to the Intercreditor Agreement, dated as of May 15, 2023 (as amended, restated, supplemented or otherwise modified from time to time, the "Senior Intercreditor Agreement").   The Prepetition 1.5L Collateral Agent and the Prepetition 2L Collateral Agent are parties to the Intercreditor Agreement, dated as of May 15, 2023 (as amended, restated, supplemented or otherwise modified from time to time, the "Junior Intercreditor Agreement" and, together with the Senior Intercreditor Agreement, the "Intercreditor Agreements").   The Prepetition Loan Parties and each other obligor under the Prepetition Secured Indebtedness acknowledged and agreed to the Senior Intercreditor Agreement and the Junior Intercreditor Agreement.   Pursuant to Bankruptcy Code section 510, the Intercreditor Agreements and any other applicable intercreditor or subordination provisions contained in any of the Prepetition 1L Credit Documents, any of the Prepetition 1.5L Notes Documents, or any of the Prepetition 2L Notes Documents shall (a) remain in full force and effect, (b) continue to govern the relative obligations, priorities, rights and remedies of (i) the First Lien Creditors and the Junior Lien Creditors (each as defined in the Senior Intercreditor Agreement) in the case of the Senior Intercreditor Agreement; provided that nothing in this Interim DIP Order shall be deemed to provide liens to any of the First Lien Creditors or the Junior Lien Creditors (each as so defined) on any assets of the Debtors except as set forth herein, and (ii) the 1.5 Lien Creditors and Second Lien Creditors (each as defined in the Junior Intercreditor Agreement) in the case of the Junior Intercreditor Agreement, and (c) not be deemed to be amended, altered or modified by the terms of this Interim DIP Order.

7.        *Securitization Facilities*.   As set forth in more detail in the *Debtors'*
*Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Certain Debtors to*
*Continue Selling Receivables and Related Rights Pursuant to the Securitization Facilities, (II)*
*Modifying the Automatic Stay, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief*
(the "Securitization Facilities Motion"), certain of the Debtors are parties to five (5) separate
Securitization Facilities (as defined therein) (the "Securitization Facilities" and the agents
thereunder, the "Securitization Agents") with the Non-Debtor Purchasers (as defined therein) (the
"Non-Debtor Purchasers") under the Securitization Transaction Documents (as defined therein)
(the "Securitization Transaction Documents").   Contemporaneously with the filing of the Motion,
the Debtors have sought approval to continue the Securitization Facilities in accordance with the
terms of any order approving the Securitization Facilities Motion (any interim or final order
approving the Securitization Facilities Motion, the "Securitization Facilities Order").

8.        *No Control*.   As of the Petition Date, none of the Prepetition Secured Parties
control any of the Debtors or their properties or operations, have authority to determine the manner
in which any of the Debtor's operations are conducted, or are control persons or insiders of the
Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or
arising from this Interim DIP Order, the DIP Facility, the DIP Documents or the Prepetition
Secured Indebtedness Documents.

F.        ***Adequate Protection***.   The Prepetition Secured Parties are entitled, pursuant to
Bankruptcy Code sections 105, 361, 362, 363(e) and 364, as a condition for the use of their
Prepetition Collateral, including the Cash Collateral, to adequate protection of their respective
interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any
postpetition diminution in value of their respective interests in the Prepetition Collateral as of the

Petition Date resulting from, among other things, the Carve Out, the Debtors' use, sale, or lease of the Prepetition Collateral (including Cash Collateral), the grant of a lien under Bankruptcy Code section 364, and/or the imposition of the automatic stay pursuant to Bankruptcy Code section 362(a) ("Diminution in Value").  The foregoing shall not, nor shall any other provision of this Interim DIP Order be construed as, a determination or finding that there has been or will be any Diminution in Value of Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.

G.    ***Need to Use Cash Collateral***.  The Debtors have requested entry of this Interim DIP Order pursuant to Bankruptcy Rule 4001(b)(2) and have an immediate need to obtain postpetition financing pursuant to the DIP Credit Agreement and to obtain use of the Prepetition Collateral, including the Cash Collateral (subject to and in compliance with the Approved Budget, subject to Permitted Variances (as defined below)), in order to, among other things, (i) permit the orderly continuation of their businesses, (ii) pay certain Adequate Protection Payments (as defined below); (iii) pay the costs of administration of their estates; (iv) maintain sufficient Liquidity (as defined below) to satisfy the certain covenants under the Securitization Facilities requiring the Debtors to maintain a minimum amount of liquidity; and (v) satisfy other working capital and general corporate purposes of the Debtors.  An immediate and critical need exists for the Debtors to obtain the DIP Facility and to use the Cash Collateral, consistent with the Approved Budget (subject to Permitted Variances), for working capital purposes, other general corporate purposes of the Debtors, and the satisfaction of costs and expenses of administering the Cases.  The ability of the Debtors to obtain liquidity through obtaining the DIP Facility and the use of the Cash Collateral is vital to the Debtors and their efforts to maximize the value of their estates.  Absent

entry of this Interim DIP Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed.

H.      **Best Terms**.  As set forth in the Motion and the Oppenheimer Declaration, the Debtors are unable to obtain postpetition financing or other financial accommodations on more favorable terms under the circumstances from sources other than the DIP Lenders pursuant to the terms and provisions of the DIP Credit Agreement and the DIP Documents and are unable to obtain satisfactory unsecured credit allowable under Bankruptcy Code section 503(b)(1) or secured credit allowable only under Bankruptcy Code sections 364(c)(1), 364(c)(2) or 364(c)(3).  The Debtors, therefore, must grant, for the benefit of the DIP Lenders, priming liens under Bankruptcy Code section 364(d)(1) and a DIP Superpriority Claim (as defined below) on the terms and conditions set forth in this Interim DIP Order and the DIP Credit Agreement.

I.      **Sections 506(c) and 552(b)**.  In consideration of (i) the DIP Secured Parties' willingness to provide the DIP Facility to the extent set forth herein, (ii) the DIP Secured Parties' and the Prepetition Secured Parties' agreement to subordinate their respective liens and claims to the Carve-Out, (iii) the Prepetition Secured Parties' agreement to subordinate their respective liens and superpriority claims to the DIP Obligations and the Carve Out, (iv) the application and use of Cash Collateral as set forth in this Interim DIP Order, subject to and upon entry of the Final DIP Order, each DIP Secured Party and Prepetition Secured Party is entitled to (x) the rights and benefits of Bankruptcy Code section 552(b), and a waiver of any "equities of the case" claims under Bankruptcy Code section 552(b), (y) a waiver of the provisions of Bankruptcy Code section 506(c) and (z) a waiver of unjust enrichment, the equitable doctrine of marshaling and other similar doctrines.

J.       *Notice*.  In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and Local Rule 4001-2, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested herein, and of the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and Local Rule 4001-2.

K.       *Consent by Prepetition Secured Parties*.  To the extent required, the requisite Prepetition Secured Parties have not objected, have consented or are deemed to consent under the applicable Intercreditor Agreement to the Debtors' obtaining of the DIP Facility, use of Cash Collateral, and the other transactions contemplated hereby in accordance with and subject to the terms and conditions provided for in this Interim DIP Order.

L.       *Relief Essential; Best Interest*.  The Debtors have requested entry of this Interim DIP Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2.  The relief requested in the Motion (and as provided in this Interim DIP Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and the property of their estates.  It is in the best interest of the Debtors' estates that the Debtors be allowed to obtain the DIP Facility and to use the Cash Collateral under the terms hereof.  The Debtors have demonstrated good and sufficient cause for the relief granted herein.

M.       *Arm's-Length, Good Faith Negotiations*.  The terms of the DIP Facility pursuant to this Interim DIP Order were negotiated in good faith and at arm's-length between the Debtors, the DIP Secured Parties and the Prepetition Secured Parties.  The DIP Secured Parties and the Prepetition Secured Parties have acted without negligence or violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating,

implementing, documenting, or obtaining requisite approvals of the obtaining of the DIP Facility and the use of Cash Collateral, including in respect of the granting of DIP Liens (as defined below) and the Adequate Protection Liens (as defined below) and all documents related to and all transactions contemplated by the foregoing.

Now, therefore, upon the record of the proceedings heretofore held before this Court with respect to the Motion, the evidence adduced at the Interim Hearing, and the statements of counsel thereat, and based upon the foregoing findings and conclusions,

IT IS HEREBY ORDERED THAT:

1. ***Motion Granted***.  The Motion is granted on an interim basis as set forth herein, and incurrence of the DIP Obligations and the use of Prepetition Collateral (including, without limitation, Cash Collateral) on an interim basis is authorized, subject to the terms and conditions of this Interim DIP Order.

2. ***Objections Overruled***.  Any objections to the Motion with respect to the entry of this Interim DIP Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice.

3. ***Authorization of the DIP Facility and the DIP Documents***.

(a)     The Debtors are hereby expressly authorized to execute, enter into and perform under the DIP Credit Agreement and the other DIP Documents, which are each hereby approved.

(b)     Upon entry of this Interim DIP Order, the Debtors are immediately authorized,  without any further action by the Debtors or any other party, subject to the terms and conditions of this Interim DIP Order, the DIP Credit Agreement, and the other DIP Documents, to borrow an initial aggregate principal amount of no more than $25,000,000 of DIP Loans (with any

backstop commitment fee paid in kind being incremental thereto) pursuant to the Initial Draw pursuant to the terms and provisions of the DIP Credit Agreement, the other DIP Documents, and this Interim DIP Order, and to incur and pay the principal, interest, premium, fees (including the DIP Fees (as defined below)), indemnities, expenses and other amounts provided for in the DIP Credit Agreement, the other DIP Documents, and this Interim DIP Order, pursuant to the terms and provisions thereof, subject to any limitations on availability or borrowing under the DIP Credit Agreement, the other DIP Documents, and this Interim DIP Order, which borrowings shall be used for all purposes as permitted under the DIP Credit Agreement, the other DIP Documents, and this Interim DIP Order (including pursuant to the Approved Budget (as defined below), subject to Permitted Variances (as described below)).

(c)      In furtherance of the foregoing, and without further approval of this Court, the Debtors are authorized, and the automatic stay imposed by Bankruptcy Code section 362 is hereby lifted solely to the extent required to allow the Debtors, to perform all acts and to make, execute, and deliver all instruments, certificates, agreements, and documents (including, without limitation, the execution or recordation of pledge and security agreements, financing statements, and other similar documents) that may be reasonably required, appropriate or desirable for the Debtors' performance of their obligations under or related to the DIP Facility, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Credit Agreement and the other DIP Documents and any collateral documents contemplated thereby;

(ii)      the non-refundable and irrevocable payment to the DIP Agent and the DIP Lenders, as the case may be, of all premiums, fees and expenses (which premiums,

fees and expenses, in each case, were and were deemed to have been approved upon entry of this Interim DIP Order, whether or not the fees and expenses arose before or after the Petition Date, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other challenge of any nature under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise), and any amounts due (or that may become due) in respect of the indemnification and expense reimbursement obligations, in each case referred to in the DIP Credit Agreement and the other DIP Documents, with respect to those indemnified and/or reimbursable parties specifically set forth therein, including, without limitation, reimbursement of the reasonable and documented fees and out-of-pocket expenses incurred (with respect to Houlihan (as defined below) and EY (as defined below) to the extent consistent with the applicable engagement or reimbursement letters entered into by any of the Debtors) by (i) Wachtell, Lipton, Rosen & Katz, as counsel to the DIP Agent, the Prepetition 1L Agent and the Ad Hoc Group (as defined in the *Restructuring Support Agreement*, dated as of March 22, 2024, by and among the Debtors and the Prepetition Secured Parties party thereto (as amended, restated, supplemented or otherwise modified, the "RSA")) ("Wachtell"), (ii) Vinson & Elkins LLP, as Texas counsel to the Ad Hoc Group ("V&E"), (iii) Canadian counsel to the DIP Agent, the Prepetition 1L Agent and/or the Ad Hoc Group, if any, (iv) Ernst & Young LLP, as consultant to the Ad Hoc Group ("EY"), and (v) Houlihan Lokey Capital, Inc., as financial advisor to the Ad Hoc Group ("Houlihan" and, together with Wachtell, V&E and EY, the "DIP/Prepetition 1L Advisors") (collectively, the "DIP Fees");

(iii)     the granting of all liens and claims with respect to, and the making of any payments in respect of, the Adequate Protection Obligations (as defined below) to the extent provided for in this Interim DIP Order; and

(iv)     the performance of all other acts necessary, appropriate, or desirable under, or in connection with, the DIP Credit Agreement and the other DIP Documents.

4.     ***DIP Obligations***.  Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute legal, valid, binding, and non-avoidable obligations of the Debtors party thereto, enforceable in accordance with the terms of this Interim DIP Order, the DIP Credit Agreement, and the other DIP Documents, against the Debtors party thereto and their estates and any successors thereto, including any trustee appointed in the Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing.  Except as permitted by this Interim DIP Order, no obligation, payment, transfer, or grant of security hereunder or under the DIP Credit Agreement or the other DIP Documents to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under applicable law (including, without limitation, under Bankruptcy Code sections 502(d), 544, and 547 to 550, or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or challenge, whether under the Bankruptcy Code or any other applicable law or regulation by any person or entity for any reason.

5.      *DIP Liens*.  Subject and subordinate to the Carve Out and to the provisions set forth in this Paragraph 5, effective immediately upon entry of this Interim DIP Order and perfected automatically hereunder as of the Petition Date and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the DIP Obligations shall be secured by valid, binding, continuing, enforceable, fully-perfected, non-avoidable, automatically and properly perfected liens on, and security interests in (such liens and security interests, the "<u>DIP Liens</u>") all (i) the Prepetition Collateral and (ii) all of the DIP Borrower's and the Guarantors' other now-owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, all prepetition property and postpetition property of the DIP Borrower and Guarantors' estates, and the proceeds, products, rents and profits thereof, whether arising from Bankruptcy Code section 552(b) or otherwise, including, without limitation, all equipment, goods, accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the DIP Borrower and the Guarantors (including any accounts opened prior to, on, or after the Petition Date), insurance, equity interests, intercompany claims, accounts receivable, other rights to payment, general intangibles, contracts, securities, chattel paper, interest rate hedging agreements, owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, causes of action (other than those arising under Bankruptcy Code sections 544, 547, 548 and 549 and any related action under Bankruptcy Code section 550 (the "<u>Avoidance Actions</u>")), and any and all proceeds, products, rents, and profits of the foregoing, and proceeds of Avoidance Actions (all property identified in this Paragraph 5, subject to the following provisos, being collectively

referred to as the "DIP Collateral"); provided that, for the avoidance of doubt and notwithstanding anything to the contrary herein, the DIP Collateral shall exclude (i) all Excluded Assets (as defined in the DIP Credit Agreement), (ii) any of the foregoing to the extent a lien cannot attach to such property, assets or rights pursuant to applicable law, provided the liens granted pursuant to this Interim DIP Order shall, attach to the Debtors' economic rights, including, without limitation, any and all proceeds of the foregoing, and (iii) (x) any and all Receivables originated and sold pursuant to the Securitization Facilities to the Non-Debtor Purchasers (including any such Receivables purported to be sold pursuant to the Securitization Facilities but subsequently avoided or recharacterized as an extension of credit or a pledge) prepetition or postpetition and any proceeds thereof and (y) any claims or causes of action held by the Non-Debtor Purchasers arising on account of transfers of Receivables to the Non-Debtor Purchasers (the assets described in this clause (iii), "Transferred Receivables Assets").  The DIP Agent shall have a security interest in any residual cash balance remaining in the Carve Out Reserves (as defined below) after all obligations benefitting from the Carve Out have been indefeasibly paid in full in cash pursuant to a final non-appealable order of this Court (or such other Court of competent jurisdiction), which residual balance shall be paid to the DIP Agent for application in accordance with the DIP Credit Agreement (such security interest on residual cash balances remaining in the Carve Out Reserves, the "Carve Out Security Interest").  The Carve Out shall be senior to the DIP Liens, the Prepetition Liens, the Adequate Protection Liens and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Secured Indebtedness whatsoever.  The DIP Liens will otherwise have the following priorities:

(a)     Pursuant to Bankruptcy Code section 364(c)(2), a valid, binding, continuing, enforceable, non-avoidable, automatically fully-perfected, first-priority senior security

interest in and lien upon all of the DIP Collateral, whether existing on the Petition Date or thereafter created, acquired or arising, and wherever located, that, on or as of the Petition Date, is not subject to Prepetition Liens or any other valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b)), subject and subordinate only to (x) the Carve Out, and as to the Carve Out Reserves and funds therein, to the extent of any Carve Out Security Interest, and (y) the Receivables Liens (as defined in the Interim Securitization Order) (which shall apply solely to all rights of the Originators (as defined in the Interim Securitization Order) in the Receivables originated and purported to be sold through the Securitization Facilities on or after the Petition Date, whether existing on the Petition Date or thereafter arising or acquired) and the Pledge Liens (as defined in the Interim Securitization Order) (which apply solely to all limited liability company interests and all other equity interests in each case in the respective Non-Debtor Purchasers, and all proceeds and products thereof) (collectively, the "Securitization Liens"); and

(b)     Pursuant to Bankruptcy Code section 364(d)(1), a valid, binding, continuing, enforceable, non-avoidable, automatically fully perfected, first-priority senior priming security interest and lien (the "Priming Liens") on all DIP Collateral, whether in existence on the Petition Date or thereafter created, acquired, or arising, and wherever located, to the extent that such DIP Collateral is subject to any of the Prepetition Liens or any other valid, perfected, and non-avoidable liens (or perfected after the Petition Date to the extent permitted by Bankruptcy Code section 546(b)), subject and subordinate only to the Carve Out and to the Permitted Prior Liens and as to the Carve Out Reserves, and funds therein, to the extent of any Carve Out Security Interest.  The Priming Liens shall prime in all respects the liens and security interests of the Prepetition Secured Parties (including, without limitation, the Prepetition Liens and the Adequate

Protection Liens) (the "Primed Liens").  Notwithstanding anything herein to the contrary, the Priming Liens (x) shall be subject and immediately junior to the Permitted Prior Liens and will have no recourse to the Carve Out Reserves, or the funds therein (other than to the extent of the Carve Out Security Interest on the terms therein and in all cases, for the avoidance of doubt, subject and subordinate to the Carve Out), in all respects, (y) shall be subject and subordinate to the Securitization Liens, and (z) shall be senior in all respects to the Primed Liens.

(c)     The DIP Liens shall be entitled to the full protection of Bankruptcy Code section 364(e) if this Interim DIP Order or any provision hereof is vacated, reversed, or modified on appeal.

6.     ***DIP Superpriority Claims***.  Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the DIP Borrower and the Guarantors on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Borrower and the Guarantors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b) and any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 327, 328, 330, 331, 362, 364, 365, 503(b), 506(c) (subject to Paragraph 19 herein), 507(a), 507(b), 726, 1113, or 1114 (including the Adequate Protection Superpriority Claims (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed claims (the "DIP Superpriority Claims") shall, for purposes of Bankruptcy Code section 1129(a)(9)(A), be considered administrative expenses allowed under Bankruptcy Code section 503(b), and which DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP

Borrower and the Guarantors and all proceeds thereof in accordance with the DIP Credit Agreement, the other DIP Documents, and this Interim DIP Order, subject and subordinate only to (a) payment in full of the superpriority administrative expense claims granted by certain Debtors under the Securitization Facilities Order (the "Superpriority Securitization Facilities Claims"), which Superpriority Securitization Facilities Claims shall be *pari passu* with the DIP Superpriority Claims, and (b) payment in full of the Carve Out, which is senior in priority to the DIP Superpriority Claims, and provided that the DIP Superpriority Claims will have no recourse to the Carve Out Reserves, or the funds therein, except to the extent of any Carve Out Security Interest on the terms set forth herein after payment in full of the Carve Out.  The DIP Superpriority Claims shall be entitled to the full protection of Bankruptcy Code section 364(e) if this Interim DIP Order or any provision hereof is vacated, reversed, or modified on appeal. Notwithstanding the grant of the DIP Superpriority Claims or anything else to the contrary set forth herein or otherwise, each DIP Lender shall be deemed to have consented to the treatment set forth in the Plan (as defined in the RSA).

       7.    ***Authorization to Use Cash Collateral; Budget***.

       (a)    *Authorization*.  Subject to the terms and conditions of this Interim DIP Order, the Court hereby authorizes the Debtors' use of the proceeds of the DIP Facility and Cash Collateral during the period beginning with the Petition Date and ending on the DIP Termination Date (as defined below), in each case, solely and exclusively in a manner consistent with this Interim DIP Order and the Approved Budget (subject to Permitted Variances), and for no other purposes.

       (b)    *Approved Budget; Budget Period*.  As used in this Interim DIP Order: (i) "Approved Budget" means the last budget delivered to and agreed with the DIP Agent acting

at the direction of the Required DIP Lenders prior to the Petition Date, including for the thirteen-week period reflected on the budget attached as <u>Exhibit 1</u> hereto, as such Approved Budget may be modified from time to time by the Debtors subject to not receiving notice of an objection from the DIP Agent acting at the direction of the Required DIP Lenders in their reasonable discretion as set forth in Paragraph 7(e) of this Interim DIP Order; and (ii) "<u>Budget Period</u>" means the rolling four-week (4-week) period set forth in the Approved Budget in effect at such time.

(c)     *Budget Testing*.  The Debtors may use proceeds of the DIP Facility and Cash Collateral strictly in accordance with the Approved Budget, subject to Permitted Variances. Permitted Variances shall be tested on a rolling four (4) week basis beginning with the period ending on the fourth (4th) Friday following the Petition Date and on every second Friday thereafter (each such date, a "<u>Testing Date</u>").  On or before 5:00 p.m. (prevailing Central time) on the fourth (4th) business day following each Testing Date, the Debtors shall prepare and deliver to the DIP Agent and Wachtell, as counsel to the DIP Agent, in the form attached hereto as <u>Exhibit 2</u> or otherwise reasonably satisfactory to the DIP Agent, a variance report (the "<u>Variance Report</u>") setting forth: (i) the Debtors' actual disbursements, excluding Restructuring Professional Fees (as defined below) (the "<u>Actual Disbursements</u>") on a line-by-line and aggregate basis during the four-week period ending on the applicable Testing Date; (ii) the Debtors' actual cash receipts (the "<u>Actual Cash Receipts</u>") on a line-by-line and aggregate basis during the four-week period ending on the applicable Testing Date; (iii) the Debtors' net cash flow during the four-week period ending on the applicable Testing Date, calculated by subtracting Actual Disbursements from Actual Cash Receipts (the "<u>Actual Net Cash Flows</u>"); (iv) Restructuring Professional Fees during the four-week period ending on the applicable Testing Date; (v) a comparison (whether positive or negative, in dollars and expressed as a percentage) of the aggregate and line-item Actual Cash Receipts and

Actual Disbursements, and aggregate Actual Net Cash Flows and Restructuring Professional Fees, for the four-week period ending on the applicable Testing Date to the amounts set forth in the Approved Budget for such four-week period; and (vi) management commentary on any individual line item with positive or negative variance of 10.0% or more compared to the Approved Budget for such four-week period (unless the dollar amount corresponding to such variance is less than $1,000,000, in which case no such commentary shall be required).

          (d)     *Permitted Variances*.  The Debtors shall not permit (i) aggregate Actual Net Cash Flows to be less than 85% of the projected cumulative cash flows set forth in the Approved Budget, in each case, for the relevant four-week budgeted period (such deviations from the applicable projected amount set forth in the Approved Budget satisfying the "Permitted Variances"); *provided* that, for the avoidance of doubt, the cash disbursements considered for determining compliance with this covenant shall exclude the Debtors' disbursements in respect of restructuring professional fees (including, without limitation, amounts paid to any Committee professionals, payments made to the Prepetition Secured Parties on account of professional fees, and professional fee payments to other creditors or creditor groups (such excluded cash disbursements, the "Restructuring Professional Fees")), (ii) Liquidity to be less than $40,000,000 as of 11:59 p.m. prevailing Central time on the last business day of the calendar week in which the Initial Draw occurs or any calendar week thereafter; provided that "Liquidity" shall mean, as of any time of determination, (A) the amount of the Debtors' and their consolidated subsidiaries' unrestricted cash and cash equivalents plus (B) the amount of any undrawn DIP Commitments and (iii) Cash Liquidity to be less than $30,000,000 as of 11:59 p.m. prevailing Central time on the last business day of the calendar week in which the Initial Draw occurs or any calendar week thereafter;

provided that "Cash Liquidity" shall mean, as of any time of determination, the amount of the Debtors' and their consolidated subsidiaries' unrestricted cash and cash equivalents.

(e)     *Proposed Budget Updates*.  On or before the second business day before the end of each Budget Period, the Debtors shall deliver to the Notice Parties (as defined in the Interim Securitization Order) a rolling 13-week cash flow forecast of the Debtors substantially in the format of the initial Approved Budget (each, a "Proposed Budget"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget) shall become the Approved Budget effective *unless* the DIP Agent (as directed by the Required DIP Lenders in their reasonable discretion) notifies the Debtors of any reasonable objection to the Proposed Budget within four (4) business days after receipt of the Proposed Budget (the "Approval Deadline").  For the avoidance of doubt, the Debtors' use of proceeds of the DIP Facility and Cash Collateral shall be governed by the then-existing Approved Budget (x) at all times prior to the earlier of (i) the approval of the DIP Agent (as directed by the Required DIP Lenders in their reasonable discretion) of the Proposed Budget and (ii) the Approval Deadline; and (y) during the pendency of any unresolved objection by the DIP Agent (as directed by the Required DIP Lenders in their reasonable discretion) to the Proposed Budget.

8.     ***Access to Records.***  The Debtors shall provide the DIP/Prepetition 1L Advisors with all reporting and other information required to be provided to the DIP Agent under the DIP Documents to the extent such information is provided to the DIP Agent.  In addition to, and without limiting, whatever rights to access the DIP Secured Parties have under the DIP Documents, upon reasonable notice to counsel to the Debtors (email being sufficient), at reasonable times during normal business hours and upon reasonable notice, the Debtors shall, to the extent reasonably practicable, permit the representatives, advisors, agents, and employees of the DIP Agents and the

Required DIP Lenders to, on a confidential basis, (a) have reasonable access to (i) inspect the DIP Collateral, and (ii) reasonably requested information regarding the Debtors' operations, business affairs and financial condition and the Debtors' books and records, excluding, in each case, any information subject to attorney-client or similar privilege, or where such disclosure would not be permitted by any applicable requirements of law or any binding agreement that would violate confidentiality or other obligations, and (b) discuss the Debtors' affairs, financings, and conditions with the Debtors' attorneys and financial advisors.

9.      ***Adequate Protection for the Prepetition 1L Secured Parties.***

(a)      Subject only to the Carve Out, the Securitization Liens, the Permitted Prior Liens, the DIP Liens, the DIP Superpriority Claims, the Superpriority Securitization Facilities Claims and the terms of this Interim DIP Order, pursuant to Bankruptcy Code sections 361, 362, 363(e) and 364, and in consideration of the stipulations and consents set forth herein, as adequate protection of the interests of the Prepetition 1L Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, solely for and equal in amount to the Diminution in Value, the Prepetition 1L Secured Parties are hereby granted the following:

(b)      *Prepetition 1L Adequate Protection Liens*.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), solely to the extent of any Diminution in Value of the Prepetition 1L Secured Parties' interests in the Prepetition Collateral and subject in all cases to the Carve Out and the DIP Liens, effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Debtors are authorized to grant, and hereby deemed to have granted, to the Prepetition 1L Collateral Agent, for the benefit of itself and the other Prepetition 1L Secured

Parties, valid, binding, continuing, enforceable, fully-perfected, nonavoidable, senior additional and replacement security interests in and liens on (all such liens and security interests, the "Prepetition 1L Adequate Protection Liens") (i) the Prepetition Collateral and (ii) the DIP Collateral, in each case subject only to the Permitted Prior Liens, the Carve Out, the Securitization Liens and the DIP Liens, in which case the Prepetition 1L Adequate Protection Liens shall be junior in priority, first, to the Permitted Prior Liens; second, to the Carve Out; third, to the Securitization Liens; and fourth, to the DIP Liens.

(c)     *Prepetition 1L Adequate Protection Superpriority Claims*.   As further adequate protection, and to the extent provided by Bankruptcy Code sections 503(b) and 507(b), the Debtors are authorized to grant, and hereby deemed to have granted effective as of the Petition Date, to the Prepetition 1L Administrative Agent, for the benefit of itself and the other Prepetition 1L Secured Parties, allowed superpriority administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of, and in an aggregate amount equal to, any Diminution in Value (the "Prepetition 1L Adequate Protection Superpriority Claims"), but junior to the Carve Out, Superpriority Securitization Facilities Claims and the DIP Superpriority Claims.   Subject to the Carve Out, Superpriority Securitization Facilities Claims and the DIP Superpriority Claims, the Prepetition 1L Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to Paragraph 19 herein), 507(a), 507(b), 546(c), 726, 1113 and 1114.   The Prepetition 1L Adequate Protection Superpriority Claims may

be paid under any plan of reorganization in any combination of cash, debt, equity or other property having a value on the effective date of such plan equal to the allowed amount of such claims.

(d) *Right to Seek Additional Adequate Protection*.  This Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition 1L Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(e) *Other Covenants*.  The Debtors shall maintain their cash management arrangements in a manner consistent with this Court's order(s) granting the Debtors' cash management motion.  The Debtors shall provide financial and other periodic reporting to each of the Prepetition 1L Agent, the Prepetition 1.5L Agent and the Prepetition 2L Agent in accordance with the terms of the DIP Credit Agreement.

(f) *Fees and Expenses*.  As additional adequate protection, the Debtors shall pay in full in cash and in immediately available funds (with respect to Houlihan and EY, to the extent consistent with the applicable engagement or reimbursement letters entered into by any of the Debtors therewith) (such payments, "Adequate Protection Payments"):  (i) subject to Paragraph 38, within ten (10) days after the Debtors' receipt of invoices therefor, the reasonable and documented professional fees, expenses and disbursements (including, but not limited to, the expenses and disbursements of counsel and other third-party consultants, including financial advisors), arising prior to the Petition Date through and including the date of entry of this Interim DIP Order, incurred by the DIP/Prepetition 1L Advisors; and (ii) subject to Paragraph 38, on a monthly basis, within ten (10) days of the Debtors' receipt of invoices therefor, the reasonable and documented professional fees, expenses and disbursements, incurred by the DIP/Prepetition 1L Advisors arising subsequent to the date of entry of this Interim DIP Order through the date on

which the Debtors' authority to use Cash Collateral terminates in accordance with this Interim DIP Order. None of the foregoing reasonable and documented fees, expenses and disbursements shall be subject to separate approval by this Court or require compliance with the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments. Any payments made pursuant to this Paragraph 9(f) shall be without prejudice to whether any such payments should be recharacterized or reallocated pursuant to Bankruptcy Code section 506(b) as payments of principal, interest or otherwise.

(g)     *Miscellaneous*. Except for (i) the Carve Out, (ii) the Permitted Prior Liens, (iii) the DIP Liens and the DIP Obligations, (iv) the Superpriority Securitization Facilities Claims, (v) the Securitization Liens and (vi) as otherwise provided in this Paragraph 9, the Prepetition 1L Adequate Protection Liens and Prepetition 1L Adequate Protection Superpriority Claims granted to the Prepetition 1L Secured Parties pursuant to this Paragraph 9 of this Interim DIP Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under Bankruptcy Code section 364 or otherwise.

10.     ***Adequate Protection for the Prepetition 1.5L Secured Parties.***

(a)     Subject only to the Carve Out, the Securitization Liens, the Permitted Prior Liens, the DIP Liens, the DIP Superpriority Claims, the Superpriority Securitization Facilities Claims, the Prepetition 1L Adequate Protection Liens, the Prepetition 1L Priority Liens and the Prepetition 1L Adequate Protection Superpriority Claims and the terms of this Interim DIP Order, pursuant to Bankruptcy Code sections 361, 362, 363(e) and 364, and in consideration of the

stipulations and consents set forth herein, as adequate protection of the interests of the Prepetition 1.5L Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, solely for and equal in amount to the Diminution in Value, the applicable Prepetition 1.5L Secured Parties are hereby granted the following:

       (b)     *Prepetition 1.5L Adequate Protection Liens*.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), solely to the extent of any Diminution in Value of the Prepetition 1.5L Secured Parties' interests in the Prepetition Collateral and subject in all cases to the Carve Out, the Securitization Liens, the Permitted Prior Liens, the DIP Liens, the Prepetition 1L Adequate Protection Liens and the Prepetition 1L Priority Liens, effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Debtors are authorized to grant, and hereby deemed to have granted, to the Prepetition 1.5L Collateral Agent, for the benefit of itself and the other Prepetition 1.5L Secured Parties, valid, binding, continuing, enforceable, fully-perfected, nonavoidable, senior (except as otherwise provided in this Paragraph 10(b)), additional and replacement security interests in and liens on (all such liens and security interests, the "Prepetition 1.5L Adequate Protection Liens") (i) the Prepetition Collateral and (ii) the DIP Collateral, which Prepetition 1.5L Adequate Protection Liens shall be junior only to the Permitted Prior Liens, the Carve Out, the Securitization Liens, the DIP Liens, the Prepetition 1L Adequate Protection Liens and the Prepetition 1L Priority Liens, in which case the Prepetition 1.5L Adequate Protection Liens shall be junior in priority, first, to the Permitted Prior Liens; second, to the Carve Out; third, to the Securitization Liens; fourth, to the DIP Liens; fifth, to the Prepetition 1L Adequate Protection Liens; and, sixth, to the Prepetition 1L Priority Liens.

(c)     *Prepetition 1.5L Adequate Protection Superpriority Claims*.  As further adequate protection, and to the extent provided by Bankruptcy Code sections 503(b) and 507(b), the Debtors are authorized to grant, and hereby deemed to have granted, effective as of the Petition Date, to the Prepetition 1.5L Agent, for the benefit of itself and the other Prepetition 1.5L Secured Parties, allowed superpriority administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of, and in an aggregate amount equal to, any Diminution in Value (the "Prepetition 1.5L Adequate Protection Superpriority Claims"), but junior to the Carve Out, the Superpriority Securitization Facilities Claims, the DIP Superpriority Claims and the Prepetition 1L Adequate Protection Superpriority Claims.  Subject to the Carve Out, the Superpriority Securitization Facilities Claims, the DIP Superpriority Claims and the Prepetition 1L Adequate Protection Superpriority Claims, the Prepetition 1.5L Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to Paragraph 19 herein), 507(a), 507(b), 546(c), 726, 1113 and 1114.  The Prepetition 1.5L Adequate Protection Superpriority Claims may be paid under any plan of reorganization in any combination of cash, debt, equity or other property having a value on the effective date of such plan equal to the allowed amount of such claims.

(d)     *Right to Seek Additional Adequate Protection*.  This Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any

of the Prepetition 1.5L Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(e)      *Miscellaneous*.  Except for (i) the Carve Out, (ii) the Permitted Prior Liens, (iii) the DIP Liens and the DIP Obligations, (iv) the Superpriority Securitization Facilities Claims, (v) the Prepetition 1L Adequate Protection Liens, the Prepetition 1L Priority Liens and the Prepetition 1L Adequate Protection Superpriority Claims, (vi) the Securitization Liens, and (vii) as otherwise provided in this Paragraph 10, the Prepetition 1.5L Adequate Protection Liens and Prepetition 1.5L Adequate Protection Superpriority Claims granted to the Prepetition 1.5L Secured Parties pursuant to this Paragraph 10 of this Interim DIP Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under Bankruptcy Code section 364 or otherwise.

11.      ***Adequate Protection for the Prepetition 2L Secured Parties.***

(a)      Subject only to the Carve Out, the Securitization Liens, the Permitted Prior Liens, the DIP Liens, the DIP Superpriority Claims, the Superpriority Securitization Facilities Claims, the Prepetition 1L Adequate Protection Liens, the Prepetition 1L Priority Liens, the Prepetition 1L Adequate Protection Superpriority Claims, Prepetition 1.5L Adequate Protection Liens, the Prepetition 1.5L Priority Liens and the Prepetition 1.5L Adequate Protection Superpriority Claims and the terms of this Interim DIP Order, pursuant to Bankruptcy Code sections 361, 362, 363(e) and 364, and in consideration of the stipulations and consents set forth herein, as adequate protection of the interests of the Prepetition 2L Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case, solely for and equal in amount to

the Diminution in Value, the applicable Prepetition 2L Secured Parties are hereby granted the following:

(b)     *Prepetition 2L Adequate Protection Liens*.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), solely to the extent of any Diminution in Value of the Prepetition 2L Secured Parties' interests in the Prepetition Collateral and subject in all cases to the Carve Out, the Securitization Liens, the Permitted Prior Liens, the DIP Liens, the Prepetition 1L Adequate Protection Liens, the Prepetition 1L Priority Liens, Prepetition 1.5L Adequate Protection Liens and Prepetition 1.5L Priority Liens, effective as of the Petition Date and in each case perfected without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Debtors are authorized to grant, and hereby deemed to have granted, to the Prepetition 2L Collateral Agent, for the benefit of itself and the other Prepetition 2L Secured Parties, valid, binding, continuing, enforceable, fully-perfected, nonavoidable, senior (except as otherwise provided in this Paragraph 11(b)), additional and replacement security interests in and liens on (all such liens and security interests, the "Prepetition 2L Adequate Protection Liens" and, together with the Prepetition 1L Adequate Protection Liens and 1.5 Lien Adequate Protection Liens, the "Adequate Protection Liens") (i) the Prepetition Collateral and (ii) the DIP Collateral, which Prepetition 2L Adequate Protection Liens shall be junior only to the Permitted Prior Liens, the Carve Out, the Securitization Liens, the DIP Liens, the Prepetition 1L Adequate Protection Liens, the Prepetition 1L Priority Liens, the Prepetition 1.5L Adequate Protection Liens and the Prepetition 1.5L Priority Liens, in which case the Prepetition 2L Adequate Protection Liens shall be junior in priority, first, to the Permitted Prior Liens; second, to the Carve Out; third, to the Securitization Liens; fourth, to the DIP Liens; fifth,

to the Prepetition 1L Adequate Protection Liens; sixth, to the Prepetition 1L Priority Liens; seventh, to the Prepetition 1.5L Adequate Protection Liens; and, eighth, to the Prepetition 1.5L Priority Liens.

        (c)    *Prepetition 2L Adequate Protection Superpriority Claims.* As further adequate protection, and to the extent provided by Bankruptcy Code sections 503(b) and 507(b), the Debtors are authorized to grant, and hereby deemed to have granted, effective as of the Petition Date, to the Prepetition 2L Agent, for the benefit of itself and the other Prepetition 2L Secured Parties, allowed superpriority administrative expense claims in each of the Cases ahead of and senior to any and all other administrative expense claims in such Cases to the extent of, and in an aggregate amount equal to, any Diminution in Value (the "Prepetition 2L Adequate Protection Superpriority Claims" and together with the Prepetition 1L Adequate Protection Superpriority Claims and the Prepetition 1.5L Adequate Protection Superpriority Claims, the "Adequate Protection Superpriority Claims" and, the Adequate Protection Superpriority Claims with the Adequate Protection Liens, the "Adequate Protection Obligations"), but junior to the Carve Out, the Superpriority Securitization Facilities Claims, the DIP Superpriority Claims, the Prepetition 1L Adequate Protection Superpriority Claims and the Prepetition 1.5L Adequate Protection Superpriority Claims. Subject to the Carve Out, the Superpriority Securitization Facilities Claims, the DIP Superpriority Claims, the Prepetition 1L Adequate Protection Superpriority Claims and the Prepetition 1.5L Adequate Protection Superpriority Claims, the Prepetition 2L Adequate Protection Superpriority Claims will not be junior to any claims and shall have priority over all administrative expense claims and other claims against each of the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105,

326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to Paragraph 19 herein), 507(a), 507(b), 546(c), 726, 1113 and 1114.  The Prepetition 2L Adequate Protection Superpriority Claims may be paid under any plan of reorganization in any combination of cash, debt, equity or other property having a value on the effective date of such plan equal to the allowed amount of such claims.

(d)       *Right to Seek Additional Adequate Protection*.  This Interim DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition 2L Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request.

(e)       *Miscellaneous*.  Except for (i) the Carve Out, (ii) the Permitted Prior Liens, (iii) the DIP Liens and the DIP Obligations, (iv) the Superpriority Securitization Facilities Claims, (v) the Prepetition 1L Adequate Protection Liens, the Prepetition 1L Priority Liens and the Prepetition 1L Adequate Protection Superpriority Claims, (vi) the Prepetition 1.5L Adequate Protection Liens, the Prepetition 1.5 Priority Liens and the Prepetition 1.5L Adequate Protection Superpriority Claims, (vii) the Securitization Liens, and (viii) as otherwise provided in this Paragraph 11, the Prepetition 2L Adequate Protection Liens and Prepetition 2L Adequate Protection Superpriority Claims granted to the Prepetition 2L Secured Parties pursuant to this Paragraph 11 of this Interim DIP Order shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under Bankruptcy Code section 364 or otherwise.

12.       ***Perfection of DIP Liens and Adequate Protection Liens.***

(a)       The DIP Collateral Agent, the Prepetition 1L Collateral Agent, Prepetition 1.5L Collateral Agent and the Prepetition 2L Collateral Agent are hereby authorized, but not

required, to file or record (and to execute in the name of the Debtors, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) security agreements, pledge agreements, financing statements, intellectual property filings, deeds of trust, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the DIP Liens and the Adequate Protection Liens. Whether or not the DIP Collateral Agent, the Prepetition 1L Collateral Agent, Prepetition 1.5L Collateral Agent or the Prepetition 2L Collateral Agent shall, in their discretion or at the direction of the Required DIP Lenders or requisite Prepetition Secured Parties, choose to file such security agreements, pledge agreements, financing statements, intellectual property filings, deeds of trust, mortgages, depository account control agreements, notices of lien, or similar instruments or documents, such DIP Liens and Adequate Protection Liens shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and effective by operation of law, and not subject to challenge, dispute, or subordination (subject to the priorities set forth in this Interim DIP Order), at the time and on the date of this Interim DIP Order, in any jurisdiction (domestic and foreign), without the need of any further action of any kind.  This Interim DIP Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens without the necessity of filing or recording any security agreements, pledge agreements, financing statement, intellectual property filing, deed of trust, mortgage, depository account control agreement, notice of lien, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to create, attach, validate or perfect the DIP Liens and the Adequate Protection Liens or to entitle the DIP Liens and the Adequate Protection Liens to the priorities granted herein.  Upon the request of the DIP Agent, the Prepetition 1L Collateral Agent, Prepetition 1.5L Collateral Agent or the Prepetition 2L

Collateral Agent, as applicable, each of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors, without any further consent of any party, is authorized to take, execute, deliver, and file such instruments to enable the DIP Agent, the Prepetition 1L Collateral Agent, Prepetition 1.5L Collateral Agent or the Prepetition 2L Collateral Agent, as applicable, to further validate, perfect, preserve, and enforce the DIP Liens and the applicable Adequate Protection Liens, respectively.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A copy of this Interim DIP Order may, in the discretion of the DIP Agent, the Prepetition 1L Collateral Agent, Prepetition 1.5L Collateral Agent or the Prepetition 2L Collateral Agent or at the direction of the Required DIP Lenders or the requisite Prepetition Secured Parties, as applicable, be filed with or recorded in filing or recording offices in addition to, or in lieu of, such security agreements, pledge agreements, financing statements, intellectual property filings, mortgages, depository account control agreement, deeds of trust, notices of lien, or similar instruments, and all filing offices in all jurisdictions (domestic and foreign) are hereby authorized to accept such certified copy of this Interim DIP Order for filing and recording.

13.    ***Carve Out.***

(a)     *Priority of Carve Out*.  Each of the DIP Liens, the Prepetition Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out (as defined below).

(b)     *Definition of Carve Out*.  As used in this Interim DIP Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United

States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under Bankruptcy Code section 726(b) (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code section 327, 328, or 363 (the "Debtor Professionals") and the Committee pursuant to Bankruptcy Code section 328 or 1103 (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Agent (at the direction of the Required DIP Lenders) of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice (the amounts set forth in clauses (i) through (iii), the "Pre Carve Out Trigger Notice Cap"); and (iv) Allowed Professional Fees of Debtor Professionals in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the DIP Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the "Post-Carve Out Trigger Notice Cap"); provided that no fees or expenses of any Professional Persons may be included in the calculation of both the Post-Carve Out Trigger Notice Cap and the Pre-Carve Out Trigger Notice Cap. For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent (as directed by Required DIP Lenders in their sole discretion) to the Debtors, their lead restructuring counsel (Akin Gump Strauss Hauer & Feld LLP), the U.S. Trustee, and counsel to any Committee (if appointed), which notice may be delivered following the occurrence and during the continuation of an Event of

Default (as defined below) and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     *Carve Out Reserve*.  On the day on which a Carve Out Trigger Notice is delivered in accordance with Paragraph 13 (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees plus reasonably estimated fees not yet allowed for the period through and including the Termination Declaration Date (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtors to utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims. All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of "Carve Out" set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay to the DIP

Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, either in cash or as otherwise expressly permitted under the DIP Documents, and all DIP Commitments have been terminated, in which case any such excess shall be paid to the Prepetition 1L Secured Parties in accordance with their rights and priorities as of the Petition Date and subject to the Intercreditor Agreements.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Post-Carve Out Trigger Notice Cap and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero,  to the DIP Agent for the benefit of the DIP Lenders, unless the DIP Obligations have been indefeasibly paid in full, either in cash or as otherwise expressly permitted under the DIP Documents, and all DIP Commitments have been terminated, in which case any such remaining excess shall be paid to the Prepetition 1L Secured Parties in accordance with their rights and priorities as of the Petition Date and subject to the Intercreditor Agreements.  Notwithstanding anything to the contrary in the DIP Documents or this Interim DIP Order, (i) if the Post-Carve Out Trigger Notice Reserve is not funded in full in the amount set forth in this Paragraph 13, then, any excess funds in Pre-Carve Out Trigger Notice Reserve following the payment of the Pre-Carve Out Amounts shall be used to fund the Post-Carve Out Trigger Notice Reserve, up to the applicable amount set forth in this Paragraph 13, prior to making any payments to the DIP Agent or the Prepetition 1L Secured Parties, as applicable, following delivery of a Carve Out Trigger Notice, (ii) if, following delivery of a Carve Out Trigger Notice and any reallocation of amounts in the Carve Out Reserves pursuant to the immediately preceding clause (i), either of the Carve Out Reserves is funded in an amount that does not cover actually incurred Allowed Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, then such Carve Out Reserves will be funded in an amount that will be equal to the value of actually incurred Allowed

Professional Fees up to the Pre-Carve Out Trigger Notice Cap and the Post-Carve Out Trigger Notice Cap, as applicable, as soon as practicable but no later than two (2) business days following discovery of such shortfall by the Debtors; and (iii) following delivery of a Carve Out Trigger Notice, none of the DIP Secured Parties or the Prepetition Secured Parties shall sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the DIP Agent for application in accordance with the terms hereof and the DIP Documents and this Interim DIP Order. Further, notwithstanding anything to the contrary in this Interim DIP Order, (A) disbursements by the Debtors from the Carve Out Reserves shall not increase or reduce the DIP Obligations or the Prepetition Secured Indebtedness, (B) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (C) in no way shall the Approved Budget, Proposed Budget, Carve Out, the Pre-Carve Out Trigger Notice Cap, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt, the Carve Out shall be senior to all liens and claims securing the DIP Obligations and the Prepetition Secured Indebtedness, the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, any claims arising under Bankruptcy Code section 507(b), and any and all other forms of adequate protection, liens, or claims relating to the DIP Obligations or the Prepetition Secured Indebtedness.

(d)      *Payment of Allowed Professional Fees Prior to the Termination Declaration Date*. Any payment or reimbursement made prior to the occurrence of the

Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce or be deemed to reduce the Carve Out.

(e)     *No Direct Obligation To Pay Allowed Professional Fees*.  The DIP Agent, Prepetition 1L Agent, Prepetition 1.5L Agent, the Prepetition 2L Agent, and the other DIP Secured Parties and Prepetition Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget.  Except for funding the Carve Out Reserves as provided herein, none of the DIP Secured Parties or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim DIP Order or otherwise shall be construed to obligate the DIP Secured Parties or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     *Payment of Carve Out On or After the Termination Declaration Date*.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding or payment of the Carve Out from cash on hand or other available cash shall not reduce the DIP Obligations or Prepetition Secured Indebtedness, and shall be otherwise entitled to the protections granted under this Interim DIP Order, the DIP Documents, the Bankruptcy Code, and applicable law.

14.     ***DIP Termination Date.***   On the DIP Termination Date (as defined below), consistent with the DIP Credit Agreement, (a) all DIP Obligations shall be immediately due and

payable and all DIP Commitments will terminate; (b) all authority to use Cash Collateral shall cease; *provided, however*, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to fund (i) the Carve Out, (ii) payroll and (iii) other expenses critical to the administration of the Debtors' estates provided such payments are in accordance with the Approved Budget, subject to Permitted Variances; and (c) the DIP Secured Parties shall be otherwise entitled to exercise rights and remedies under the DIP Documents in accordance with this Interim DIP Order.

15.     ***Events of Default.***  The occurrence of any of the following events, unless waived by the Required DIP Lenders in accordance with the terms of the DIP Documents, shall constitute an event of default (collectively, the "Events of Default"):  (a) the failure of the Debtors to comply with any of the Required Milestones (as defined below); or (b) the occurrence of an "Event of Default" under the DIP Credit Agreement.

16.     ***Milestones.***  The Debtors shall comply with those certain case milestones set forth on Exhibit 3 to this Interim DIP Order (collectively, the "Required Milestones").  The failure to comply with any Required Milestone shall constitute an "Event of Default" in accordance with the terms of the DIP Credit Agreement.

17.     ***Rights and Remedies Upon Event of Default.***

(a)     Immediately upon the occurrence and during the continuation of an Event of Default and the delivery of the Carve Out Trigger Notice, notwithstanding the provisions of Bankruptcy Code section 362, without any application, motion, or notice to, hearing before, or order from the Court, but subject to the terms of this Interim DIP Order, including, without limitation, the Remedies Notice Period (defined below), (x) the DIP Agent (at the direction of the Required DIP Lenders) may declare (any such declaration shall be referred to herein as a

"Termination Declaration") (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) the application of the Carve Out through the delivery of the Carve Out Trigger Notice to the DIP Borrower and (y) the DIP Agent (at the direction of the Required DIP Lenders) may declare a termination (or reduction or restriction) on the ability of the Debtors to use Cash Collateral (the date on which a Termination Declaration is delivered, the "DIP Termination Date") in which case such rights and remedies described in clauses (x) and (y) as are set forth in the applicable Termination Declaration shall immediately go into effect, provided, however, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to fund the Carve-Out and pay payroll and other expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved Budget, subject to Permitted Variances.  The Termination Declaration shall not be effective until notice has been provided by electronic mail (or other electronic means) to counsel to the Debtors, counsel to a Committee (if appointed), counsel to the Securitization Agents, and the U.S. Trustee.

(b)      Upon the occurrence of an Event of Default, the DIP Agent, (acting at the direction of the Required DIP Lenders) and/or applicable Prepetition 1L Secured Parties, may file a motion with the Court seeking emergency relief (a "Remedies Determination Hearing") on at least five (5) business days' notice to the Debtors, the Securitization Agents, and the U.S. Trustee, and the Debtors agree not to object to the shortening of notice of such Remedies Determination Hearing.  The "Remedies Notice Period" shall be defined as the date commencing with the

Termination Declaration through a Court determination at the Remedies Determination Hearing. At such Remedies Determination Hearing, (x) the DIP Agent (acting at the direction of the Required DIP Lenders) may seek Court approval to exercise its rights and remedies (in addition to those rights and remedies set forth in Paragraph 17(a) above) in accordance with the DIP Documents and this Interim DIP Order to satisfy the DIP Obligations, DIP Superpriority Claims, and DIP Liens, subject to the Carve Out and the Superpriority Securitization Facilities Claims, including the complete termination of the use of Cash Collateral and (y) the applicable Prepetition Secured Parties may seek to exercise their respective rights and remedies to the extent available in accordance with the applicable Prepetition Secured Indebtedness Documents and this Interim DIP Order with respect to the Debtors' use of Cash Collateral. Notwithstanding anything to the contrary set forth in this Interim DIP Order, at the Remedies Determination Hearing, the Court may specify the remedies with respect to applicable Events of Default, which may include but shall not be limited to the remedies set forth in the DIP documents with respect to such Events of Default.   Upon a Termination Declaration, the Debtors, the Committee (if appointed), and/or any party in interest shall also be entitled to seek an emergency hearing with the Court for the purpose of contesting whether an Event of Default has occurred or is continuing.

(c)     Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtors or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief.  Any delay or failure of the DIP Agent or the Prepetition 1L Agent to exercise rights under the DIP Documents, the Credit Documents, the Intercreditor Agreements, or this Interim DIP Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise.  The occurrence of the DIP Termination Date shall not affect the validity, priority, or enforceability of any and all rights, remedies, benefits,  and protections provided to any of the DIP Secured Parties or the Prepetition Secured Parties under

this Interim DIP Order, which rights, remedies, benefits, and protections shall survive the DIP Termination Date or the delivery of a Termination Declaration.

(d)      Upon the termination of the DIP Facility in accordance with the terms of this Interim DIP Order, all DIP Obligations shall be indefeasibly paid in cash.

18.      ***Payments Free and Clear.***  Subject to the Carve-Out and Paragraphs 3(c), 9(f) and 38 of this Interim DIP Order, any and all payments or proceeds remitted to the DIP Agent for the benefit of the DIP Secured Parties, the Prepetition 1L Agent for the benefit of the Prepetition 1L Secured Parties, the Prepetition 1.5L Agent for the benefit of the Prepetition 1.5L Secured Parties, or the Prepetition 2L Agent for the benefit of the Prepetition 2L Secured Parties pursuant to the provisions of this Interim DIP Order or any subsequent order of this Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to Paragraph 19 herein, any such claim or charge arising out of or based on, directly or indirectly, Bankruptcy Code section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or section 552(b).

19.      ***Limitation on Charging Expenses Against Collateral.***  All rights to surcharge the interests of the DIP Secured Parties and Prepetition Secured Parties in any DIP Collateral or Prepetition Collateral, as applicable, under Bankruptcy Code section 506(c) or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtors and all parties in interest in the Cases, provided further that the foregoing waiver shall be without prejudice to any provision of the Final DIP Order with respect to costs or expenses incurred following entry of such Final DIP Order.

20.      ***Section 507(b) Reservation.***  Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the

Prepetition 1L Agent, Prepetition 1.5L Agent, the Prepetition 2L Agent or the other Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) during the Cases or any successor cases, including, but not limited to, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the Cases.

21.     *Insurance*.   Until the DIP Obligations have been indefeasibly paid in full, at all times the Debtors shall maintain casualty and loss insurance coverage for the Prepetition Collateral and the DIP Collateral on substantially the same basis as maintained prior to the Petition Date. Upon entry of this Interim DIP Order, the DIP Agent is, and will be deemed to be, without any further action or notice, named as additional insureds and lender's loss payees on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

22.     *No Waiver for Failure to Seek Relief*.   The failure or delay of the DIP Agent or the Required DIP Lenders to exercise rights and remedies under this Interim DIP Order, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.

23.     ***Reservation of Rights of the DIP Secured Parties and Prepetition Secured Parties.***   This Interim DIP Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of any of DIP Secured Parties or the Prepetition Secured Parties, as applicable, to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Cases, or to take any other action in the Cases and to appear and be heard in any matter raised in the Cases, or any party in interest from contesting any of the foregoing, and (b) any and all rights, remedies,

claims and causes of action which the DIP Secured Parties or the Prepetition Secured Parties may have against any non-Debtor party liable for the DIP Obligations or the Prepetition Secured Indebtedness.  For all adequate protection purposes throughout the Cases, each of the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and adequate protection for any Diminution in Value from and after the Petition Date.  For the avoidance of doubt, such request will survive termination of this Interim DIP Order.

24.     ***Modification of Automatic Stay.***   The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim DIP Order and the transactions contemplated hereby.  The stay of Bankruptcy Code section 362 is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim DIP Order.

25.     ***Survival of DIP Documents and Interim DIP Order.***   The provisions of the DIP Documents and this Interim DIP Order shall be binding upon any trustee appointed during the Cases or upon a conversion to cases under chapter 7 of the Bankruptcy Code, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting the Cases to chapter 7 cases, dismissing the Cases under Bankruptcy Code section 1112 or otherwise.  The terms and provisions of and the priorities in payments, liens, and security interests granted pursuant to, the DIP Documents and this Interim DIP Order, shall continue notwithstanding any conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, or the dismissal of any of the Cases.  Subject to the limitations expressly set forth in this Interim DIP Order, the Adequate Protection Payments made pursuant to this Interim DIP Order shall not be subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance in any of the Cases or any subsequent chapter 7 cases (other than a defense that the payment has actually been made).

26.     **No Third-Party Rights.**  Except as explicitly provided for herein, this Interim DIP Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

27.     **Release.**  Subject to the rights and limitations set forth in Paragraph 30 of this Interim DIP Order, and effective upon entry of this Interim DIP Order, each of the Debtors and the Debtors' estates, on its own behalf and on behalf of each of their predecessors, their successors, and assigns, shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the DIP Secured Parties and the Prepetition Secured Parties (each in their respective roles as such), and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates and assigns, and predecessors and successors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to the DIP Loans, the Prepetition 1L Loans, the Prepetition 1.5L Notes, the Prepetition 2L Notes, the DIP Liens, the Prepetition Liens, the DIP Obligations, the Prepetition Secured Indebtedness, the DIP Documents, the Prepetition 1L Credit Documents, the Prepetition 1.5L Notes Documents, the Prepetition 2L

Notes Documents, or the Intercreditor Agreements, or this Interim DIP Order, as applicable, and/or the transactions contemplated hereunder or thereunder including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the DIP Secured Parties or the Prepetition Secured Parties; *provided* that nothing herein shall relieve the Released Parties from fulfilling their obligations under the DIP Documents, the Prepetition 1L Credit Documents, the Prepetition 1.5L Notes Documents, the Prepetition 2L Notes Documents, the Intercreditor Agreements or this Interim DIP Order.

28.     ***Binding Effect.***  The DIP Documents, and the provisions of this Interim DIP Order, including all findings herein, shall be binding upon all parties in interest in the Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Committee (if appointed), and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of the DIP Secured Parties and the Prepetition Secured Parties; *provided* neither the DIP Secured Parties nor the Prepetition Secured Parties shall have any obligation to permit the use of DIP Collateral or Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

29.     ***Reversal, Stay, Modification or Vacatur.***  In the event the provisions of this Interim DIP Order are reversed, stayed, modified or vacated by court order following notice and any

further hearing, such reversals, modifications, stays or vacatur shall not affect the rights and priorities of the DIP Secured Parties and the Prepetition Secured Parties granted pursuant to this Interim DIP Order. Notwithstanding any such reversal, stay, modification or vacatur by court order, any indebtedness, obligation or liability incurred by the Debtors pursuant to this Interim DIP Order arising prior to the DIP Agent's, the Prepetition 1L Agent's, the Prepetition 1.5L Agent's, or the Prepetition 2L Agent's receipt of notice of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim DIP Order, and the DIP Secured Parties and the Prepetition Secured Parties shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and the security interests and liens granted herein, with respect to all such indebtedness, obligation or liability, and the validity of any payments made or obligations owed or credit extended or lien or security interest granted pursuant to this Interim DIP Order is and shall remain subject to the protection afforded under the Bankruptcy Code.

30. ***Reservation of Certain Third-Party Rights and Bar of Challenge and Claims.***

(a) Subject to the Challenge Period (as defined below), the stipulations, admissions, waivers, and releases contained in this Interim DIP Order, including the Debtors' Stipulations, shall be binding upon the Debtors, their estates, and any of their respective successors, including, without limitation, any chapter 7 or chapter 11 trustee, responsible person, examiner with expanded powers, or other estate representative, in all circumstances and for all purposes, and the Debtors are deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date. The stipulations, admissions, waivers and releases contained in this Interim DIP Order, including the Debtors' Stipulations, shall be binding upon all other parties in interest, including any Committee and any other person acting on behalf of the

Debtors' estates, unless and solely to the extent that (i) a party in interest is granted standing to file an adversary proceeding or contested matter under the Bankruptcy Rules and files a complaint seeking to avoid, object to, or otherwise challenge the findings or Debtors' Stipulations regarding (A) the validity, enforceability, extent, priority, or perfection of any of the Prepetition Liens or the mortgages, security interests, and liens of any of the Prepetition Secured Parties securing any Prepetition Secured Indebtedness, and the characterization of any of the Prepetition Collateral or (B) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Secured Indebtedness (any such claim set forth in such a complaint, a "Challenge") before the earlier of (a) (1) solely in the case of the Committee, if any, sixty (60) days after the appointment of the Committee if such appointment occurs no more than sixty (60) days from the entry of this Interim DIP Order and (2) with respect to all other parties in interest, sixty (60) days from the entry of this Interim DIP Order and (b) the date of entry of an order confirming a plan of reorganization or liquidation, subject to further extension by written agreement of (1) the Debtors and (2) as applicable, the Prepetition 1L Agent (at the direction of the requisite Prepetition 1L Secured Parties), the Prepetition 1.5L Agent (at the direction of the requisite Prepetition 1.5L Secured Parties) or Prepetition 2L Agent (at the direction of the requisite Prepetition 2L Secured Parties) (the "Challenge Period" and, the date of expiration of the Challenge Period, the "Challenge Period Termination Date"); *provided*, *however*, that if, prior to the end of the Challenge Period, (x) the Cases are converted to Cases under chapter 7 of the Bankruptcy Code, or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended by the later of (I) the time remaining under the Challenge Period plus ten (10) days or (II) such other time as ordered by the Court solely with respect to any such trustee appointed; and (ii) the Court enters a final order

in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter, which is no longer subject to appeal.

(b)      To the extent the stipulations, admissions, waivers and releases contained in this Interim DIP Order, including the Debtors' Stipulations, are (x) not subject to a Challenge timely and properly commenced prior to the expiration of the Challenge Period Termination Date or (y) subject to a Challenge timely and properly commenced prior to the expiration of the Challenge Period Termination Date, to the extent any such Challenge does not result in a final and nonappealable judgment or order of the Court that is inconsistent with the stipulations, admissions, waivers and releases contained in this Interim DIP Order, including the Debtors' Stipulations, then, without further notice, motion, or application to, or order of, or hearing before, this Court and without the need or requirement to file any proof of claim:  (i) any and all such Challenges by any party (including the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any successor case) shall be deemed to be forever, waived, released, and barred; (ii) the Prepetition Secured Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Debtors' Cases and any successor cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected secured claims, not subject to recharacterization, subordination, or avoidance; and (iv) all of the Debtors' stipulations, admissions, waivers and releases contained in this Interim DIP Order, including the Debtors' Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in this Interim DIP Order (including the

Prepetition Liens) shall be in full force and effect and forever binding upon the Debtors, the Debtors' estates, and all creditors, interest holders, and other parties in interest in these Cases and any successor cases.

        (c)      If a Challenge is timely and properly filed under the Bankruptcy Rules and remains pending and the Cases are converted to chapter 7, the chapter 7 trustee may continue to prosecute such Challenge on behalf of the Debtors' estates.  Furthermore, if any such Challenge is timely and properly filed under the Bankruptcy Rules, the stipulations, admissions, waivers and releases contained in this Interim DIP Order, including the Debtors' Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other person or entity except to the extent that such stipulations and admissions were expressly challenged in such timely and properly filed Challenge prior to the Challenge Period Termination Date and determined by final order of the Court to be disallowed.  Nothing in this Interim DIP Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, any Committee appointed in the Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any challenges (including a Challenge) with respect to the Prepetition 1L Credit Documents, the Prepetition 1.5L Notes Documents, the Prepetition 2L Notes Documents, the Prepetition Liens, and the Prepetition Secured Indebtedness, and a separate order of the Court conferring such standing on any Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest. For the avoidance of doubt, to the extent any Challenge is timely and properly commenced, the Prepetition 1L Secured Parties shall be entitled to reimbursement or payment of the related reasonable and documented costs and expenses, including, but not limited to, reasonable and

documented attorneys' fees, incurred in defending themselves in any such proceeding in accordance with and subject to Paragraph 9(f) of this Interim DIP Order.

31.     ***Limitation on Use of DIP Proceeds, DIP Collateral and Cash Collateral.*** Notwithstanding anything to the contrary set forth in this Interim DIP Order, but subject to the proviso below in this Paragraph 31, none of the DIP proceeds (the "DIP Proceeds"), the DIP Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve Out or proceeds of the foregoing may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person:   (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (i) against any of the DIP Secured Parties or the Prepetition Secured Parties (in their capacities as such), and each of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and causes of action, or seeking relief that would impair the rights and remedies of the DIP Secured Parties under the DIP Documents or this Interim DIP Order or the Prepetition Secured Parties under the Prepetition 1L Credit Documents, the Prepetition 1.5L Notes Documents, or the Prepetition 2L Notes Documents (as applicable) or this Interim DIP Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or any Committee appointed (if any) in these Cases in connection with the assertion of or joinder in any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or

other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the DIP Secured Parties to recover on the DIP Collateral or the Prepetition Secured Parties to recover on the Prepetition Collateral or seeking affirmative relief against any of the DIP Secured Parties related to the DIP Obligations or the Prepetition Secured Parties related to the Prepetition Secured Indebtedness (excluding, for the avoidance of doubt, filing and seeking approval of the Securitization Facilities Motion); (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the DIP Obligations or the Prepetition Secured Indebtedness, or the DIP Secured Parties' and the Prepetition Secured Parties' respective DIP Liens, Prepetition Liens or security interests in the DIP Collateral or Prepetition Collateral, as applicable (excluding, for the avoidance of doubt, filing and seeking approval of the Securitization Facilities Motion); or (iii) for monetary, injunctive, or other affirmative relief against any of the DIP Secured Parties, the Prepetition Secured Parties, or the DIP Secured Parties' and the Prepetition Secured Parties' respective liens on or security interests in the DIP Collateral or the Prepetition Collateral that would impair the ability of any of the DIP Secured Parties or the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the DIP Obligations or the Prepetition Secured Indebtedness, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including the DIP Liens and the Prepetition Liens) held by or on behalf of each of the DIP Secured Parties and the Prepetition Secured Parties related to the DIP Obligations or the Prepetition Secured Indebtedness, to the extent applicable; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever (including, without limitation, any Avoidance Actions) related to the DIP Obligations, the DIP Liens, the Prepetition Secured Indebtedness or the

Prepetition Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of DIP Liens or the Prepetition Liens or any other rights or interests of any of the DIP Secured Parties or the Prepetition Secured Parties related to the DIP Obligations, the DIP Liens, the Prepetition Secured Indebtedness or the Prepetition Liens, to the extent applicable; provided, that notwithstanding the foregoing, an aggregate of $50,000 of the DIP Proceeds, the DIP Collateral, or the Prepetition Collateral, including Cash Collateral, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any Committee to investigate potential Challenges.

32.     ***Conditions Precedent***.  Except to the extent expressly set forth in this Interim DIP Order, no DIP Lender shall have any obligation to make any DIP Loan under the respective DIP Documents unless all of the conditions precedent to the making of such extensions of credit under the applicable DIP Documents have been satisfied in full or waived in accordance with such DIP Documents.

33.     ***Enforceability; Waiver of Any Applicable Stay; Bankruptcy Rules.***  This Interim DIP Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim DIP Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim DIP Order.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

34.     ***Proofs of Claim***.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline

for the filing of proofs of claim or requests for payment of administrative expenses under Bankruptcy Code section 503(b), none of the DIP Agent, any DIP Secured Party, the Prepetition 1L Agent, Prepetition 1.5L Agent, the Prepetition 2L Agent or any Prepetition Secured Party shall be required to file any proof of claim or request for payment of administrative expenses with respect to any of the DIP Obligations, the Prepetition Secured Indebtedness or any claims (including, without limitation, Adequate Protection Superpriority Claims) arising under this Interim DIP Order, and the Debtors' Stipulations shall be deemed to constitute timely filed proofs of claim against each of the applicable Debtors in the Cases. Each of (i) the DIP Agent on behalf of the DIP Secured Parties, (ii) the Prepetition 1L Administrative Agent on behalf of the Prepetition 1L Secured Parties, (iii) the Prepetition 1.5L Notes Trustee on behalf of the Prepetition 1.5L Secured Parties, and (iv) the Prepetition 2L Notes Trustee on behalf of the Prepetition 2L Secured Parties, may (but is not required) in its discretion to file (and amend and/or supplement) a proof of claim and/or aggregate proofs of claim in each of the Cases or any successor cases for any claim allowed herein, and any such proof of claim may (but is not required to) be filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor. The failure of the DIP Agent, any DIP Secured Party, the Prepetition 1L Agent, Prepetition 1.5L Agent, the Prepetition 2L Agent, or any Prepetition Secured Party to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Documents, the Prepetition 1L Credit Documents, Prepetition 1.5L Notes Documents, the Prepetition 2L Notes Documents, or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Agent's, any DIP Secured Party's, Prepetition 1L Agent's, Prepetition 1.5L Agent's, Prepetition 2L Agent's, or any Prepetition Secured Party's respective rights,

remedies, powers, or privileges under any of the DIP Documents, the Prepetition 1L Credit Documents, Prepetition 1.5L Notes Documents, the Prepetition 2L Notes Documents, this Interim DIP Order, or applicable law (as applicable). The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

35. **_Intercreditor Agreements._** Pursuant to Bankruptcy Code section 510, the Intercreditor Agreements and any other applicable intercreditor agreement, or subordination provision contained in any of the DIP Documents, the Prepetition 1L Credit Documents, the Prepetition 1.5L Notes Documents, and the Prepetition 2L Notes Documents shall (a) remain in full force and effect, (b) continue to govern the relative and respective obligations, priorities, rights and remedies of (i) the Prepetition 1L Creditors and the Junior Lien Creditors (each as defined in the Senior Intercreditor Agreement) in the case of the Senior Intercreditor Agreement; _provided_ that nothing in this Interim DIP Order shall be deemed to grant liens or security interests to any of the Prepetition 1L Creditors or the Junior Lien Creditors (as so defined) on or in any assets of the Debtors except as set forth herein, and (ii) the 1.5L Lien Creditors and the Prepetition 2L Creditors (each as defined in the Junior Intercreditor Agreement) in the case of the Junior Intercreditor Agreement; provided that nothing in this Interim DIP Order shall be deemed to grant liens or security interests to any of the 1.5L Lien Creditors or the Prepetition 2L Creditors (as so defined) on or in any assets of the Debtors except as set forth herein, and (c) not be deemed to be amended, altered or modified by the terms of this Interim DIP Order unless expressly set forth herein or therein.

36. **_Bankruptcy Code Section 552(b)._** The DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of Bankruptcy Code section

552(b), and  the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the DIP Collateral or the Prepetition Collateral, provided that, with respect to the Prepetition Secured Parties, the foregoing waiver shall be without prejudice to any provisions of the Final DIP Order.

37.     ***No Marshaling.***  The DIP Secured Parties and the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, provided that, with respect to the Prepetition Secured Parties, the foregoing waiver shall be without prejudice to any provisions of the Final DIP Order.

38.     ***Expense Invoices; Disputes; Indemnification***

(a)     Any of the Debtors' obligations to pay, in accordance with this Interim DIP Order, the principal, interest, fees, payments, expenses, or any other amounts described in the DIP Documents, the Prepetition Documents or this Interim DIP Order, as such amounts become due, shall not require the DIP Loan Parties, the Prepetition Loan Parties, the Prepetition Notes Parties or any other party to obtain further Court approval.  For the avoidance of doubt, such payments include, without limitation, reimbursement of the fees and expenses incurred by the DIP/Prepetition 1L Advisors to the extent set forth in Paragraphs 3(c) and 9(f) of this Interim DIP Order, whether or not such fees arose before or after the Petition Date, all to the extent provided in this Interim DIP Order.

(b)     The DIP Loan Parties, Prepetition Loan Parties and Prepetition Notes Parties, as applicable, shall be jointly and severally obligated to pay all reasonable and documented fees and expenses described above, which obligations shall constitute DIP Obligations or

Prepetition Secured Indebtedness, as applicable. The Debtors shall pay the reasonable and documented professional fees, expenses, and disbursements of professionals to the extent provided for in in Paragraphs 3(c) and 9(f) of this Interim DIP Order without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines, including such amounts arising before the Petition Date; *provided, that* copies of invoices for such professional fees, expenses and disbursements arising on or after the Petition Date(the "<u>Invoiced Fees</u>") shall be served by email on the Debtors, the U.S. Trustee, and counsel to any Committee (collectively, the "<u>Fee Notice Parties</u>"), who shall have ten (10) business days (the "<u>Review Period</u>") to review and assert any objections thereto. Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Cases, and such invoice summary shall not be required to contain time entries, but shall include a list of professionals providing services, with rates and hours worked, and a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information (such information, collectively, "<u>Confidential Information</u>"), and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law; *provided*, *however*, that the U.S. Trustee reserves the right to seek copies of invoices containing detailed time entries of any such professional (which detailed invoices may be redacted to the extent necessary to protect Confidential Information). The Debtors, any Committee or the U.S. Trustee may dispute the payment of any portion of the

Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, a Debtor, any Committee that may be appointed in these Cases, or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days' prior written notice to the submitting party of any hearing on such motion or other pleading).  For avoidance of doubt, the Debtors shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(c)     In addition, the Debtors will indemnify the DIP Lenders, the DIP Agent, and their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person") and hold them harmless from and against all costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions contemplated hereby and any actual or proposed use of the proceeds of any loans made under the DIP Facility and any claim, litigation, investigation or proceeding relating to any of the foregoing, whether or not any Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by any of the Debtors or any of their subsidiaries or affiliates; provided that no such person will be indemnified for costs, expenses, or liabilities (x) to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred primarily by reason of the gross negligence, fraud or willful misconduct of such Indemnified Person (or their related persons), (y) that arose from a material breach in bad faith of such Indemnified Person's (or their related persons') obligations under any DIP Document (as determined by a court of competent jurisdiction in a final, non-appealable judgment) or (z) arose from any claim, actions, suits, inquiries, litigation, investigation

or proceeding that does not involve an act or omission of the Debtors and is brought by any Indemnified Person against another Indemnified Person (other than any claim, actions, suits, inquiries, litigation, investigation or proceeding against the DIP Agent, in its capacity as such). No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtors or any shareholders or creditors of the Debtors for or in connection with the transactions contemplated hereby, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction (x) to have resulted primarily from such Indemnified Person's (or their related persons') gross negligence, fraud, or willful misconduct or breach of their obligations under the DIP Facility or (y) that arose from a material breach in bad faith of such Indemnified Person's (or their related persons') obligations under any DIP Document, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

39.    ***Credit Bidding.***    Subject to (a) the terms of the RSA and the Intercreditor Agreements, (b) entry of the Final DIP Order and (c) the rights of the Committee (if any) under Paragraph 30 hereof, (x) the DIP Agent (at the direction of the Required DIP Lenders) and (y) the Prepetition 1L Collateral Agent as instructed by the Prepetition 1L Administrative Agent (at the direction of the Required Lenders (as defined in the Prepetition 1L Credit Agreement)), in each case, shall have the right to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the underlying lenders' respective claims, including, for the avoidance of doubt, Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the Prepetition Collateral or the DIP Collateral including, without limitation, sales occurring pursuant to Bankruptcy Code section 363 or included as part of any chapter 11 plan subject to confirmation under Bankruptcy Code section 1129(b)(2)(A)(ii)-(iii).

40.     ***Preservation of Rights Granted Under this Interim DIP Order***.

(a)     Unless and until all DIP Obligations are indefeasibly paid in full, either in cash or as otherwise expressly permitted under the DIP Documents, and all DIP Commitments are terminated, the Prepetition Secured Parties, in such capacities, shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Secured Indebtedness Documents or this Interim DIP Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in Paragraph 12 herein.

(b)     In the event this Interim DIP Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, any liens or claims granted to the DIP Secured Parties or the Prepetition Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification of this Interim DIP Order shall be governed in all respects by the original provisions of this Interim DIP Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits afforded in Bankruptcy Code  section 364(e).

(c)     Notwithstanding any order dismissing any of the Cases entered at any time, (x) the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Interim DIP Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim DIP Order until all DIP Obligations and Adequate Protection Payments are paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in a manner

expressly permitted under the DIP Documents) and such DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, and the other administrative claims granted pursuant to this Interim DIP Order, shall, notwithstanding such dismissal, remain binding on all parties in interest; and (y) to the fullest extent permitted by law the Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

(d)      Except as expressly provided in this Interim DIP Order or in the RSA, the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Interim DIP Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases or terminating the joint administration of these Cases, approval or consummation of any sale, or otherwise.  The terms and provisions of this Interim DIP Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code.  The DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of this Interim DIP Order shall continue in full force and effect until the DIP Obligations and the Adequate Protection Payments are paid in full, in cash (or, with respect to the DIP Obligations, otherwise satisfied in a manner expressly permitted under the DIP Documents).

(e)     Other than as set forth in this Interim DIP Order or as required by applicable law, neither the DIP Liens nor the Adequate Protection Liens shall be made subject to or *pari passu* with any lien or security interest granted in any of the Cases or arising after the Petition Date, and neither the DIP Liens nor the Adequate Protection Liens shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

41.     ***Limitation of Liability.***  Subject to entry of a Final DIP Order, in determining to make any loan under the DIP Documents, permitting the use of Cash Collateral, or in exercising any rights or remedies (excluding any actions taken after an exercise of remedies) as and when permitted pursuant to this Interim DIP Order or the DIP Documents, the DIP Secured Parties and the Prepetition Secured Parties shall not, solely by reason thereof, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. § § 9601 *et seq*., as amended, or any similar federal or state statute).  Nothing in this Interim DIP Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, or any Prepetition Secured Parties of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors.

42.     ***Headings.***  The headings in this Interim DIP Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim DIP Order.

43.     ***Retention of Jurisdiction.***  The Court has and will retain exclusive jurisdiction to resolve any and all disputes arising under or related to the DIP Obligations, the DIP Documents

and this Interim DIP Order, and to enforce all of the conditions of the DIP Documents and this Interim DIP Order.

44.      ***Controlling Effect of Interim DIP Order.***   To the extent any provision of this Interim DIP Order conflicts or is inconsistent with any provision of the Motion, any other order of this Court or any of the DIP Documents, the Prepetition 1L Credit Documents, the Prepetition 1.5L Notes Documents, and the Prepetition 2L Notes Documents, the provisions of this Interim DIP Order shall control to the extent of such conflict, except to the extent expressly provided otherwise herein or in a subsequent order of this Court.   To the extent a conflict arises between the provisions of this Interim DIP Order and the Securitization Facilities Order, a hearing shall be held before the Court to resolve such conflict prior to the enforcement of, or any action being taken under, the provisions giving rise to such conflict by any party.

45.      ***Final Hearing.***   A final hearing on the relief requested in the Motion shall be held on April 19, 2024 at 10:00 a.m. at the United States Courthouse in Corpus Christi, Texas. Any party in interest objecting to the relief sought at the Final Hearing shall file written objections no later than April 17, 2024 at 4:00 p.m. (prevailing Central time).

Signed: March 25, 2024

_____
Marvin Isgur
United States Bankruptcy Judge

**Exhibit 1**

**Approved Budget**

## CURO GROUP HOLDINGS
**13 Week Cash Flow Forecast**

*$ Thousands*

| Week of | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | 4/22/2024 | 4/29/2024 | 5/6/2024 | 5/13/2024 | 5/20/2024 | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | 6/24/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating Receipts | $ 37,377 | $ 39,672 | $ 29,810 | $ 43,408 | $ 31,734 | $ 36,628 | $ 32,953 | $ 33,917 | $ 32,859 | $ 34,022 | $ 35,770 | $ 33,290 | $ 35,429 | $ 38,754 |
| Operating Disbursements | $ (31,150) | $ (36,178) | $ (26,832) | $ (37,927) | $ (35,036) | $ (37,837) | $ (27,347) | $ (35,287) | $ (31,542) | $ (34,867) | $ (30,251) | $ (38,122) | $ (32,658) | $ (60,431) |
| **Net Cash from Operations** | $ 6,227 | $ 3,494 | $ 2,977 | $ 5,481 | $ (3,302) | $ (1,209) | $ 5,606 | $ (1,370) | $ 1,317 | $ (845) | $ 5,520 | $ (4,832) | $ 2,771 | $ (21,676) |
| **Operating Disbursements (Excl. Pro Fees)** | $ (31,150) | $ (35,053) | $ (26,532) | $ (37,927) | $ (29,386) | $ (37,837) | $ (27,047) | $ (35,287) | $ (28,314) | $ (34,867) | $ (29,951) | $ (38,122) | $ (32,583) | $ (43,181) |
| Non-Operating Cash Flow | $ 17,287 | $ (6,123) | $ 1,324 | $ 1,715 | $ 23,585 | $ (4,551) | $ 348 | $ 2,493 | $ (1,317) | $ (3,660) | $ (3,030) | $ 7,111 | $ 574 | $ (4,068) |
| **Total Net Cash Flow** | $ 23,513 | $ (2,628) | $ 4,301 | $ 7,196 | $ 20,284 | $ (5,760) | $ 5,955 | $ 1,124 | $ 0 | $ (4,505) | $ 2,489 | $ 2,280 | $ 3,345 | $ (25,744) |
| **Total Net Cash Flow (Excl. Pro. Fees)** | $ 23,513 | $ (1,503) | $ 4,601 | $ 7,196 | $ 25,934 | $ (5,760) | $ 6,255 | $ 1,124 | $ 3,228 | $ (4,505) | $ 2,789 | $ 2,280 | $ 3,420 | $ (8,494) |
| **Beginning Cash Balance** | $ 36,028 | $ 59,541 | $ 56,913 | $ 61,213 | $ 68,409 | $ 88,693 | $ 82,932 | $ 88,887 | $ 90,011 | $ 90,011 | $ 85,506 | $ 87,995 | $ 90,275 | $ 93,620 |
| **Ending Cash Balance** | $ 59,541 | $ 56,913 | $ 61,213 | $ 68,409 | $ 88,693 | $ 82,932 | $ 88,887 | $ 90,011 | $ 90,011 | $ 85,506 | $ 87,995 | $ 90,275 | $ 93,620 | $ 67,876 |
| **Min Liquidity (Unrestricted Cash Portion)[1]** | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 |
| Excess / (Deficiency) | $ 29,541 | $ 26,913 | $ 31,213 | $ 38,409 | $ 58,693 | $ 52,932 | $ 58,887 | $ 60,011 | $ 60,011 | $ 55,506 | $ 57,995 | $ 60,275 | $ 63,620 | $ 37,876 |
| Unrestricted Cash | $ 59,541 | $ 56,913 | $ 61,213 | $ 68,409 | $ 88,693 | $ 82,932 | $ 88,887 | $ 90,011 | $ 90,011 | $ 85,506 | $ 87,995 | $ 90,275 | $ 93,620 | $ 67,876 |
| Unused DIP Commitments | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 | $ 20,000 |
| **Liquidity** | $ 104,541 | $ 101,913 | $ 106,213 | $ 113,409 | $ 108,693 | $ 102,932 | $ 108,887 | $ 110,011 | $ 110,011 | $ 105,506 | $ 107,995 | $ 110,275 | $ 113,620 | $ 87,876 |
| **Min Liquidity** | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 | $ 40,000 |
| Excess / (Deficiency) | $ 64,541 | $ 61,913 | $ 66,213 | $ 73,409 | $ 68,693 | $ 62,932 | $ 68,887 | $ 70,011 | $ 70,011 | $ 65,506 | $ 67,995 | $ 70,275 | $ 73,620 | $ 47,876 |

(1) Aggregate amount of (i) unrestricted cash and cash equivalents, and (ii) any unused portion of the DIP backstop commitments, in each case, as of the last business day of each calendar week must be no less than $40 million, with the aggregate amount of unrestricted cash and cash equivalents as of the last business day of each calendar week must be no less than $30 million.

**CURO USDL**

**13 Week Cash Flow Forecast**

*$ Thousands*

| Week of | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | 4/22/2024 | 4/29/2024 | 5/6/2024 | 5/13/2024 | 5/20/2024 | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | 6/24/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Collections | $ 12,417 | $ 15,999 | $ 11,057 | $ 10,874 | $ 9,056 | $ 13,682 | $ 12,012 | $ 10,844 | $ 9,548 | $ 13,235 | $ 13,591 | $ 12,270 | $ 10,803 | $ 14,975 |
| Misc Deposits | $ - | $ - | $ - | $ - | $ - | $ 1,515 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Operating Receipts** | **$ 12,417** | **$ 15,999** | **$ 11,057** | **$ 10,874** | **$ 9,056** | **$ 15,197** | **$ 12,012** | **$ 10,844** | **$ 9,548** | **$ 13,235** | **$ 13,591** | **$ 12,270** | **$ 10,803** | **$ 14,975** |
| Loan Originations | $ (9,534) | $ (6,478) | $ (5,678) | $ (6,935) | $ (6,714) | $ (6,920) | $ (5,026) | $ (5,786) | $ (5,852) | $ (6,099) | $ (6,648) | $ (7,635) | $ (7,741) | $ (8,061) |
| Payroll / Benefits | $ (578) | $ (5,614) | $ (578) | $ (6,526) | $ (353) | $ (5,615) | $ (448) | $ (6,177) | $ (353) | $ (5,264) | $ (358) | $ (6,302) | $ (453) | $ (5,464) |
| AP | $ (3,667) | $ (1,949) | $ (1,888) | $ (2,042) | $ (1,692) | $ (4,681) | $ (1,845) | $ (2,042) | $ (1,887) | $ (4,823) | $ (2,012) | $ (2,311) | $ (2,057) | $ (5,041) |
| Taxes | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Interest Expense | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Misc Disbursements | $ - | $ (300) | $ - | $ (210) | $ - | $ (4,900) | $ - | $ (300) | $ (210) | $ - | $ - | $ (210) | $ - | $ (1,794) |
| Professional Fees | $ - | $ (1,125) | $ (300) | $ - | $ (4,900) | $ - | $ (300) | $ - | $ - | $ (2,665) | $ - | $ (300) | $ (75) | $ (16,875) |
| **Operating Disbursements** | **$ (13,780)** | **$ (15,465)** | **$ (8,444)** | **$ (15,713)** | **$ (13,659)** | **$ (17,217)** | **$ (7,620)** | **$ (14,215)** | **$ (10,757)** | **$ (16,185)** | **$ (9,317)** | **$ (16,458)** | **$ (10,326)** | **$ (37,235)** |
| **Operating Disbursements (Excl. Pro Fees)** | **$ (13,780)** | **$ (14,340)** | **$ (8,144)** | **$ (15,713)** | **$ (8,759)** | **$ (17,217)** | **$ (7,320)** | **$ (14,215)** | **$ (8,092)** | **$ (16,185)** | **$ (9,017)** | **$ (16,458)** | **$ (10,251)** | **$ (20,360)** |
| HFC SPV I Sweeps | $ (3,873) | $ (5,126) | $ (3,722) | $ (3,465) | $ (3,139) | $ (4,243) | $ (3,932) | $ (3,496) | $ (3,310) | $ (3,768) | $ (4,449) | $ (3,955) | $ (3,745) | $ (4,264) |
| HFC SPV II Sweeps | $ (3,575) | $ (4,732) | $ (3,436) | $ (3,199) | $ (2,897) | $ (3,917) | $ (3,629) | $ (3,227) | $ (3,055) | $ (3,478) | $ (4,107) | $ (3,651) | $ (3,457) | $ (3,936) |
| FH SPV Sweeps | $ (2,410) | $ (4,088) | $ (3,207) | $ (2,682) | $ (2,182) | $ (3,258) | $ (3,317) | $ (2,794) | $ (2,181) | $ (3,155) | $ (3,563) | $ (3,161) | $ (2,467) | $ (3,570) |
| HFC I Releases | $ 3,469 | $ 4,247 | $ 3,452 | $ 4,434 | $ 2,906 | $ 3,311 | $ 3,521 | $ 4,507 | $ 2,715 | $ 2,840 | $ 4,541 | $ 3,635 | $ 4,506 | $ 3,287 |
| HFC II Releases | $ 3,013 | $ 3,786 | $ 3,078 | $ 3,387 | $ 2,591 | $ 3,029 | $ 3,250 | $ 3,550 | $ 2,506 | $ 2,622 | $ 4,192 | $ 3,356 | $ 3,550 | $ 3,034 |
| FH SPV Releases | $ 2,042 | $ 3,523 | $ 2,912 | $ 3,283 | $ 1,915 | $ 2,771 | $ 3,069 | $ 3,351 | $ 2,091 | $ 2,352 | $ 3,346 | $ 2,918 | $ 3,250 | $ 2,722 |
| HFC I Advances | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 6,700 | $ - | $ - |
| HFC II Advances | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| FH Advances | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Intercompany | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Financing Activity | $ 21,425 | $ - | $ - | $ - | $ 25,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Non-Operating Cash Flow** | **$ 20,091** | **$ (2,390)** | **$ (923)** | **$ 1,758** | **$ 24,193** | **$ (2,305)** | **$ (1,038)** | **$ 1,891** | **$ (1,234)** | **$ (2,587)** | **$ (40)** | **$ 5,841** | **$ 1,637** | **$ (2,727)** |
| **Total Net Cash Flow** | **$ 18,729** | **$ (1,857)** | **$ 1,690** | **$ (3,081)** | **$ 19,590** | **$ (4,325)** | **$ 3,355** | **$ (1,479)** | **$ (2,443)** | **$ (5,538)** | **$ 4,234** | **$ 1,653** | **$ 2,114** | **$ (24,987)** |
| **Total Net Cash Flow (Excl. Pro. Fees)** | **$ 18,729** | **$ (732)** | **$ 1,990** | **$ (3,081)** | **$ 24,490** | **$ (4,325)** | **$ 3,655** | **$ (1,479)** | **$ 222** | **$ (5,538)** | **$ 4,534** | **$ 1,653** | **$ 2,189** | **$ (8,112)** |
| **Beginning Cash Balance** | **$ 11,894** | **$ 30,623** | **$ 28,766** | **$ 30,456** | **$ 27,375** | **$ 46,965** | **$ 42,639** | **$ 45,994** | **$ 44,515** | **$ 42,072** | **$ 36,535** | **$ 40,769** | **$ 42,422** | **$ 44,536** |
| **Ending Cash Balance** | **$ 30,623** | **$ 28,766** | **$ 30,456** | **$ 27,375** | **$ 46,965** | **$ 42,639** | **$ 45,994** | **$ 44,515** | **$ 42,072** | **$ 36,535** | **$ 40,769** | **$ 42,422** | **$ 44,536** | **$ 19,550** |

## CURO CDL[1]
**13 Week Cash Flow Forecast**

*$ Thousands*

| Week of | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | 4/22/2024 | 4/29/2024 | 5/6/2024 | 5/13/2024 | 5/20/2024 | 5/27/2024 | 6/3/2024 | 6/10/2024 | 6/17/2024 | 6/24/2024 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ACH Collections | 18,846 | 17,291 | 14,770 | 18,721 | 17,002 | 16,518 | 15,369 | 17,465 | 16,736 | 15,347 | 16,389 | 15,372 | 18,337 | 17,765 |
| Store/Cash Collections | 6,115 | 6,383 | 3,982 | 7,084 | 5,676 | 4,913 | 5,572 | 4,108 | 6,575 | 5,439 | 5,790 | 4,148 | 6,290 | 6,014 |
| Misc Deposits | - | - | - | 6,728 | - | - | 1,500 | - | - | - | - | 1,500 | - | - |
| **Operating Receipts** | **24,960** | **23,674** | **18,753** | **32,533** | **22,678** | **21,431** | **20,941** | **23,073** | **23,311** | **20,786** | **22,179** | **21,020** | **24,626** | **23,779** |
| | | | | | | | | | | | | | | |
| EFT Funding | (5,695) | (8,483) | (6,600) | (8,011) | (7,376) | (8,933) | (7,507) | (7,647) | (7,149) | (8,627) | (8,285) | (7,612) | (8,536) | (8,064) |
| Money Order/Western Union | (3,693) | (5,355) | (4,030) | (5,028) | (4,417) | (4,839) | (4,258) | (4,450) | (4,749) | (3,886) | (4,543) | (4,632) | (4,718) | (3,902) |
| Payroll | (2,222) | - | (2,221) | - | (2,222) | - | (2,222) | - | (2,222) | - | (2,222) | - | (2,222) | - |
| AP | (807) | (1,503) | (472) | (518) | (898) | (1,076) | (660) | (407) | (648) | (869) | (801) | (566) | (835) | (1,173) |
| Taxes | - | - | - | - | - | - | - | - | - | - | - | - | - | (4,500) |
| Store Cash Orders | (4,954) | (5,372) | (5,065) | (5,658) | (5,714) | (5,773) | (5,080) | (5,568) | (5,454) | (5,300) | (5,082) | (5,855) | (6,021) | (5,182) |
| Misc Disbursements | - | - | - | (3,000) | - | - | - | (3,000) | - | - | - | (3,000) | - | - |
| Professional Fees | - | - | - | - | (750) | - | - | - | (563) | - | - | - | - | (375) |
| **Operating Disbursements** | **(17,371)** | **(20,712)** | **(18,389)** | **(22,214)** | **(21,377)** | **(20,621)** | **(19,727)** | **(21,072)** | **(20,785)** | **(18,681)** | **(20,933)** | **(21,664)** | **(22,332)** | **(23,195)** |
| | | | | | | | | | | | | | | |
| **Operating Disbursements (Excl. Pro Fees)** | **(17,371)** | **(20,712)** | **(18,389)** | **(22,214)** | **(20,627)** | **(20,621)** | **(19,727)** | **(21,072)** | **(20,223)** | **(18,681)** | **(20,933)** | **(21,664)** | **(22,332)** | **(22,820)** |
| | | | | | | | | | | | | | | |
| CDL II (ACM) Sweeps | (1,932) | (2,318) | (1,630) | (1,655) | (1,869) | (2,143) | (1,810) | (1,538) | (1,818) | (1,906) | (2,294) | (1,755) | (1,804) | (2,147) |
| CDL I (WAM) Sweeps | (6,953) | (9,222) | (6,090) | (6,361) | (7,342) | (8,357) | (6,975) | (5,961) | (5,706) | (7,192) | (8,796) | (6,725) | (7,134) | (6,694) |
| CDL II (ACM) Releases | 1,307 | 783 | 2,465 | 1,552 | 1,597 | 1,811 | 2,062 | 1,689 | 1,391 | 1,466 | 1,688 | 1,875 | 1,500 | 1,125 |
| CDL I (WAM) Releases | 6,460 | 7,025 | 7,501 | 6,421 | 7,007 | 6,444 | 8,108 | 6,413 | 6,050 | 6,560 | 6,413 | 7,875 | 6,375 | 6,375 |
| CDL II (ACM) Advances | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| CDL I (WAM) Advances | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Intercompany | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Financing Activity | (1,688) | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Non-Operating Cash Flow** | **(2,805)** | **(3,732)** | **2,247** | **(43)** | **(608)** | **(2,246)** | **1,386** | **602** | **(83)** | **(1,073)** | **(2,990)** | **1,270** | **(1,063)** | **(1,341)** |
| | | | | | | | | | | | | | | |
| **Total Net Cash Flow** | **4,785** | **(771)** | **2,611** | **10,276** | **694** | **(1,435)** | **2,600** | **2,603** | **2,443** | **1,033** | **(1,744)** | **626** | **1,231** | **(757)** |
| | | | | | | | | | | | | | | |
| **Total Net Cash Flow (Excl. Pro. Fees)** | **4,785** | **(771)** | **2,611** | **10,276** | **1,444** | **(1,435)** | **2,600** | **2,603** | **3,005** | **1,033** | **(1,744)** | **626** | **1,231** | **(382)** |
| | | | | | | | | | | | | | | |
| **Beginning Cash Balance** | **17,219** | **22,004** | **21,232** | **23,843** | **34,119** | **34,814** | **33,378** | **35,978** | **38,581** | **41,024** | **42,057** | **40,312** | **40,938** | **42,169** |
| **Ending Cash Balance** | **22,004** | **21,232** | **23,843** | **34,119** | **34,814** | **33,378** | **35,978** | **38,581** | **41,024** | **42,057** | **40,312** | **40,938** | **42,169** | **41,412** |

(1) 1 CAD = $0.75 USD.

**<u>Exhibit 2</u>**

**Form of Variance Report**

**CURO Consolidated - Budget Variance**

**13 Week Cash Flow Forecast**

*$ Thousands*

| Week of | Budget | | | | Total | Actuals | | | | Total | Variance | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | |
| Operating Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Operating Disbursements | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Operating Disbursements Less Pro Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Non-Operating Cash Flow | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Net Cash Flow | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Net Cash Flow Less Pro Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

**CURO USDL - Budget Variance**

**13 Week Cash Flow Forecast**

*$ Thousands*

| Week of | Budget 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | Total | Actuals 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | Total | Variance 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Collections | | | | | $ - | | | | | $ - | | | | | $ - |
| Misc Deposits | | | | | - | | | | | | | | | | - |
| **Operating Receipts** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Loan Originations | | | | | $ - | | | | | $ - | | | | | $ - |
| Payroll / Benefits | | | | | - | | | | | - | | | | | - |
| AP | | | | | - | | | | | - | | | | | - |
| Taxes | | | | | - | | | | | - | | | | | - |
| Interest Expense | | | | | - | | | | | - | | | | | - |
| Misc Disbursements | | | | | - | | | | | - | | | | | - |
| Professional Fees | | | | | - | | | | | - | | | | | - |
| **Operating Disbursements** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Operating Disbursements Less Pro Fees** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| HFC SPV I Sweeps | | | | | | | | | | | | | | | |
| HFC SPV II Sweeps | | | | | | | | | | | | | | | |
| FH SPV Sweeps | | | | | | | | | | | | | | | |
| HFC I Releases | | | | | | | | | | | | | | | |
| HFC II Releases | | | | | | | | | | | | | | | |
| FH SPV Releases | | | | | | | | | | | | | | | |
| HFC  I Advances | | | | | | | | | | | | | | | |
| HFC II Advances | | | | | | | | | | | | | | | |
| FH Advances | | | | | | | | | | | | | | | |
| Intercompany | | | | | | | | | | | | | | | |
| Other Financing Activity | | | | | | | | | | | | | | | |
| **Non-Operating Cash Flow** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Net Cash Flow** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Net Cash Flow Less Pro Fees** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

**CURO CDL[1] - Budget Variance**

**13 Week Cash Flow Forecast**

*$ Thousands*

| Week of | Budget | | | | Total | Actuals | | | | Total | Variance | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | | 3/25/2024 | 4/1/2024 | 4/8/2024 | 4/15/2024 | |
| ACH Collections | | | | | $ - | | | | | $ - | | | | | $ - |
| Store/Cash Collections | | | | | - | | | | | - | | | | | - |
| Misc Deposits | | | | | - | | | | | - | | | | | - |
| **Operating Receipts** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| EFT Funding | | | | | $ - | | | | | $ - | | | | | $ - |
| Money Order/Western Union | | | | | - | | | | | - | | | | | - |
| Payroll | | | | | - | | | | | - | | | | | - |
| AP | | | | | - | | | | | - | | | | | - |
| Taxes | | | | | - | | | | | - | | | | | - |
| Store Cash Orders | | | | | - | | | | | - | | | | | - |
| Misc Disbursements | | | | | - | | | | | - | | | | | - |
| Professional Fees | | | | | - | | | | | - | | | | | - |
| **Operating Disbursements** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Operating Disbursements Less Pro Fees** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CDL II (ACM) Sweeps | | | | | $ - | | | | | $ - | | | | | $ - |
| CDL I (WAM) Sweeps | | | | | - | | | | | - | | | | | - |
| CDL II (ACM) Releases | | | | | - | | | | | - | | | | | - |
| CDL I (WAM) Releases | | | | | - | | | | | - | | | | | - |
| CDL II (ACM) Advances | | | | | - | | | | | - | | | | | - |
| CDL I (WAM) Advances | | | | | - | | | | | - | | | | | - |
| Intercompany | | | | | - | | | | | - | | | | | - |
| Other Financing Activity | | | | | - | | | | | - | | | | | - |
| **Non-Operating Cash Flow** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Net Cash Flow** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Net Cash Flow Less Pro Fees** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |

(1) 1 CAD = $0.75 USD.

**Exhibit 3**

**Required Milestones**

- No later than 1 business day after the Petition Date, the Debtors shall have filed the Plan and Disclosure Statement (each as defined in the RSA);

- No later than 3 business days after the Petition Date, the Bankruptcy Court shall have entered this Interim DIP Order in the form attached as Exhibit A to the DIP Term Sheet and otherwise acceptable to the Required Backstop Parties (as defined in the DIP Term Sheet);

- No later than 3 business days after the Petition Date, the Bankruptcy Court shall have entered an interim Securitization Facilities Order, which order shall be in form and substance satisfactory to the Required DIP Lenders;

- No later than 45 calendar days after the Petition Date, the Bankruptcy Court shall have entered the Final DIP Order, which shall contain customary modifications to this Interim DIP Order to reflect the final nature of the approval set forth therein and shall otherwise be acceptable to the Required DIP Lenders;

- No later than 45 calendar days after the Petition Date, the Bankruptcy Court shall have entered a final Securitization Facilities Order, which order shall be in form and substance satisfactory to the Required DIP Lenders;

- No later than 50 calendar days after the Petition Date, the Bankruptcy Court shall have entered an order confirming the Plan and approving the Disclosure Statement; and

- No later than 120 calendar days after the Petition Date, the effective date of the Plan shall have occurred.