**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

**JOINT PREPACKAGED PLAN OF REORGANIZATION OF
CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (MODIFIED)**

> **THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126.  THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY.**

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Sarah Link Schultz (State Bar No. 24033047; S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924; S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email:     sschultz@akingump.com
           pwu@akingump.com

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email:     mstamer@akingump.com
           akordas@akingump.com
           orahnama@akingump.com

*Proposed Counsel to the Debtors*

Dated March 28, 2024

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
      GOVERNING LAW ...................................................................................................1
  A.     Defined Terms. ....................................................................................................1
  B.     Rules of Interpretation. ......................................................................................14
  C.     Computation of Time. ........................................................................................15
  D.     Governing Law. .................................................................................................15
  E.     Reference to Monetary Figures. ........................................................................15
  F.     Reference to the Debtors or the Reorganized Debtors. .....................................15
  G.     Controlling Document. .......................................................................................15
  H.     Consent Rights. ..................................................................................................15

ARTICLE II. ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING
      EXPENSES .............................................................................................................16
  A.     Administrative Claims. ......................................................................................16
  B.     DIP Claims. ........................................................................................................16
  C.     Professional Fee Claims. ....................................................................................16
  D.     Priority Tax Claims. ...........................................................................................17
  E.     Payment of Restructuring Expenses. .................................................................17
  F.     Postpetition Securitization Facilities Claims. ....................................................17

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................18
  A.     Classification of Claims and Interests. ..............................................................18
  B.     Treatment of Claims and Interests. ...................................................................18
  C.     Special Provision Governing Unimpaired Claims. ............................................22
  D.     Elimination of Vacant Classes. .........................................................................22
  E.     Voting Classes, Presumed Acceptance by Non-Voting Classes. .......................22
  F.     Intercompany Interests. .....................................................................................22
  G.     Confirmation Pursuant to Bankruptcy Code Sections 1129(a)(10) and 1129(b)............23
  H.     Controversy Concerning Impairment. ...............................................................23
  I.     Subordinated Claims. .........................................................................................23

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................23
  A.     General Settlement of Claims and Interests. .....................................................23
  B.     Restructuring Transactions..................................................................................23
  C.     Sources of Consideration for Plan Distributions. ..............................................24
  D.     Corporate Existence. ..........................................................................................26
  E.     Vesting of Assets in the Reorganized Debtors. .................................................26
  F.     Preservation and Reservation of Causes of Action. ..........................................26
  G.     Cancellation of Existing Agreements and Interests. ..........................................27
  H.     Corporate Action. ...............................................................................................28
  I.     Governance Documents. .....................................................................................28
  J.     Directors and Officers of the Reorganized Debtors. .........................................28
  K.     Effectuating Documents; Further Transactions..................................................29
  L.     CVR Agreement and CVR Distribution Framework. ........................................29
  M.     Certain Securities Law Matters. ........................................................................30
  N.     Section 1146 Exemption. ...................................................................................31
  O.     Employment Obligations. ..................................................................................32
  P.     Management Incentive Plan. ..............................................................................32
  Q.     DTC Eligibility. .................................................................................................32
  R.     Closing the Chapter 11 Cases. ..........................................................................32

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............32
  A.     Assumption of Executory Contracts and Unexpired Leases. ............................32

B.    Indemnification Obligations.................................................................................33
C.    Assumption of the D&O Liability Insurance Policies...........................................33
D.    Claims Based on Rejection of Executory Contracts or Unexpired Leases...................33
E.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases..................33
F.    Insurance Policies...............................................................................................34
G.    Reservation of Rights..........................................................................................34
H.    Nonoccurrence of Effective Date........................................................................34
I.    Contracts and Leases Entered Into After the Petition Date...................................35

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .....................................................35
A.    Timing and Calculation of Amounts to Be Distributed.........................................35
B.    Disbursing Agent................................................................................................35
C.    Rights and Powers of Disbursing Agent..............................................................35
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions..............35
E.    Manner of Payment.............................................................................................36
F.    Compliance with Tax Requirements....................................................................36
G.    Allocations..........................................................................................................37
H.    No Postpetition Interest on Claims......................................................................37
I.    Foreign Currency Exchange Rate........................................................................37
J.    Setoffs and Recoupment.....................................................................................37
K.    Claims Paid or Payable by Third Parties..............................................................37

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
              DISPUTED CLAIMS ...............................................................................................38
A.    Disputed Claims Process.....................................................................................38
B.    Allowance of Claims and Interests......................................................................39
C.    Claims Administration Responsibilities...............................................................39
D.    Adjustment to Claims or Interests without Objection...........................................39
E.    Disallowance of Claims or Interests....................................................................39

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............40
A.    Discharge of Claims and Termination of Interests................................................40
**B.    Release of Liens.**..............................................................................................40
**C.    Releases by the Debtors.** ..............................................................................40
**D.    Releases by Third Parties.**..............................................................................41
**E.    Exculpation.**......................................................................................................42
**F.    Injunction.**..........................................................................................................43
G.    Protections Against Discriminatory Treatment....................................................43
H.    Document Retention............................................................................................43
I.    Reimbursement or Contribution..........................................................................43

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
            THE PLAN ...............................................................................................................44
A.    Conditions Precedent to Confirmation ...............................................................44
B.    Conditions Precedent to the Effective Date. .......................................................44
C.    Waiver of Conditions..........................................................................................45
D.    Effect of Failure of Conditions...........................................................................45
E.    Substantial Consummation..................................................................................46

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................46
A.    Modification and Amendments............................................................................46
B.    Effect of Confirmation on Modifications.............................................................46
C.    Revocation or Withdrawal of Plan......................................................................46

ARTICLE XI. RETENTION OF JURISDICTION ..........................................................................46

ARTICLE XII. MISCELLANEOUS PROVISIONS ..................................................................................48

    A.    Immediate Binding Effect. ...........................................................................................48
    B.    Additional Documents. .................................................................................................49
    C.    Payment of Statutory Fees. ..........................................................................................49
    D.    Statutory Committee and Cessation of Fee and Expense Payment. .............................49
    E.    Reservation of Rights. ..................................................................................................49
    F.    Successors and Assigns. ...............................................................................................49
    G.    Notices. ........................................................................................................................49
    H.    Term of Injunctions or Stays. ......................................................................................50
    I.    Entire Agreement. ........................................................................................................50
    J.    Exhibits. .......................................................................................................................50
    K.    Nonseverability of Plan Provisions. ............................................................................50
    L.    Votes Solicited in Good Faith. .....................................................................................51
    M.    Closing of Chapter 11 Cases. .......................................................................................51
    N.    Waiver or Estoppel. ......................................................................................................51
    O.    Tax Reporting and Compliance ...................................................................................51
    P.    Creditor Default .........................................................................................................51

## INTRODUCTION

The Debtors propose this Plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Holders of Claims against or Interests in the Debtors may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of this Plan, the Restructuring Transactions, and certain related matters. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*Ad Hoc Group*" means that certain ad hoc group of Prepetition 1L Lenders, Prepetition 1.5L Noteholders, and Prepetition 2L Noteholders represented by the Ad Hoc Group Advisors.

2.    "*Ad Hoc Group Advisors*" means (i) Wachtell, Lipton, Rosen & Katz, as counsel, (ii) Houlihan Lokey Capital, Inc., as financial advisor, (iii) Vinson & Elkins LLP, as local counsel, and (iv) Ernst & Young LLP, as consultant.

3.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under Bankruptcy Code sections 327, 328, 330, 365, 503(b), 507(a), 507(b), or 1114(e)(2), including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date until and including the Effective Date; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911-1930; (d) Adequate Protection Claims (as defined in the DIP Orders); and (e) the Restructuring Expenses.

4.    "*Affiliate*" has the meaning set forth in Bankruptcy Code section 101(2).

5.    "*Agents/Trustees*" means, collectively, the DIP Agent, the Prepetition 1L Agent, Prepetition 1.5L Notes Trustee, and the Prepetition 2L Notes Trustee, including any successors thereto.

6.    "*Allowed*" means, as to a Claim or an Interest, a Claim or an Interest expressly allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable. For the avoidance of doubt, (a) there is no requirement to File a Proof of Claim (or move the Bankruptcy Court for allowance) to be an Allowed Claim under the Plan, and (b) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable nonbankruptcy law; *provided*, *however* that the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

7.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532.

8.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

9. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

10. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11. "*Canadian Court*" means the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario.

12. "*Canadian Debtors*" means Curo Canada Corp. and LendDirect Corp.

13. "*Canadian Recognition Proceeding*" means the proceedings commenced under Part IV of the *Companies' Creditors Arrangement Act* (Canada) in the Canadian Court recognizing in Canada the Chapter 11 Cases of the Canadian Debtors.

14. "*Canadian Recognition Order*" means the order of the Canadian Court, which shall, among other things, recognize and declare the Chapter 11 of the Canadian Debtors as foreign main proceedings.

15. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

16. "*Cash Collateral*" has the meaning set forth in Bankruptcy Code section 363(a).

17. "*Cause of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including under any state or federal securities laws). Causes of Action include:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity, (b) the right to object to Claims or Interests, (c) any claim pursuant to Bankruptcy Code section 362 or chapter 5, (d) any claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in Bankruptcy Code section 558, and (e) any state law fraudulent transfer claim.

18. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court and (b) when used with reference to all the Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

19. "*Claim*" means any claim, as defined in Bankruptcy Code section 101(5), against any of the Debtors.

20. "*Claims and Noticing Agent*" means Epiq Corporate Restructuring, LLC, the claims, noticing, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

21. "*Claims Register*" means the official register of Claims and Interests in the Debtors maintained by the Claims and Noticing Agent.

22. "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to Bankruptcy Code section 1122(a).

23. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

24. "*Combined Hearing*" means the hearing conducted by the Bankruptcy Court to consider final approval of the Disclosure Statement and confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

25. "*Combined Order*" means the order or orders of the Bankruptcy Court approving the Disclosure Statement on a final basis and confirming this Plan pursuant to Bankruptcy Code section 1129, which order or orders shall be in form and substance consistent with the consent rights set forth in the RSA.

26. "*Company Parties*" means CURO and each of its direct and indirect subsidiaries that are or become parties to the RSA, solely in their capacity as such.

27. "*Confirmation*" means the Bankruptcy Court's entry of the Combined Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX.A hereof having been (a) satisfied or (b) waived pursuant to Article IX.C hereof.

28. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Combined Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

29. "*Consenting 1L Lenders*" means the Holders of the Prepetition 1L Term Loan Claims that are signatories to the RSA, a Joinder Agreement, or a Transfer Agreement.

30. "*Consenting 1.5L Noteholders*" means the Holders of the Prepetition 1.5L Notes Claims that are signatories to the RSA, a Joinder Agreement, or a Transfer Agreement.

31. "*Consenting 2L Noteholders*" means the Holders of the Prepetition 2L Notes Claims that are signatories to the RSA, a Joinder Agreement, or a Transfer Agreement.

32. "*Consenting Stakeholders*" means, collectively, the Consenting 1L Lenders, Consenting 1.5L Noteholders, and Consenting 2L Noteholders.

33. "*Consummation*" means the occurrence of the Effective Date.

34. "*Credit Agreement*" means that certain First Lien Credit Agreement, dated as of May 15, 2023 (as may be amended, supplemented, amended and restated, or otherwise modified from time to time), by and among CURO, as borrower, the guarantors from time to time party thereto, the lenders from time to time party thereto and the Prepetition 1L Agent.

35. "*Cure*" means a monetary Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Bankruptcy Code section 365, other than a default that is not required to be cured pursuant to Bankruptcy Code section 365(b)(2).

36. "*CURO*" means CURO Group Holdings Corp., a Delaware corporation.

37. "*CURO SPV*" means CURO SPV, LLC, a Delaware limited liability company and a non-Debtor subsidiary of CURO.

38. "*CURO SPV Term Loan Claims*" means any and all Claims derived from, arising under, based upon or related to the CURO SPV Term Loans.

39. "*CURO SPV Term Loans*" means the term loans made pursuant to the Prepetition 1L Term Loan Facility held by CURO SPV.

40. "*CVR Agent*" means the agent to be specified in and to be party to the CVR Agreement.

41. "*CVR Agreement*" means an agreement setting forth the full terms and conditions of the CVRs, the form of which shall be included in the Plan Supplement, consistent with the terms set forth in the CVR and Warrant Term Sheet, and in the form and substance acceptable to the Company Parties and the Required Consenting Stakeholders.

42.     "*CVR Distribution Framework*" means the procedures set forth in Article IV.L of the Plan (and as may be supplemented in the Plan Supplement) to be utilized by the Reorganized Debtors to distribute the CVRs pursuant to the Plan in a manner to ensure compliance with the Exchange Act, solely to the extent that the Exchange Act is applicable.

43.     "*CVR Distribution Conditions*" means the conditions set forth in the CVR Distribution Framework that are required to be satisfied by an individual recipient prior to such recipient becoming eligible to receive CVRs.

44.     "*CVR and Warrant Term Sheet*" means the CVR and Warrant Term Sheet attached as <u>Exhibit E</u> to the RSA.

45.     "*CVRs*" means certain contingent value rights issued pursuant to the Plan and the CVR Agreement and consistent with the CVR and Warrant Term Sheet.

46.     "*D&O Liability Insurance Policies*" means the insurance policies and all agreements, documents or instruments related thereto (including runoff endorsements extending coverage, including costs and expenses (including reasonable and necessary attorneys' fees and experts' fees) for current or former directors, managers, and officers of the Debtors and for certain of the future directors, managers and officers of the Company Parties for a six-year period after the Effective Date for covered liabilities, including sums that any party becomes legally obligated to pay as a result of judgments, fines, losses, claims, damages, settlements, or liabilities arising from activities occurring before the Effective Date) for directors', managers' and officers' liability maintained by the Debtors on or before the Effective Date.

47.     "*Debtor Release*" means the release set forth in Article VIII.C of this Plan.

48.     "*Debtors*" means, collectively, each of the following:  CURO Group Holdings Corp.; Curo Financial Technologies Corp.; Curo Intermediate Holdings Corp.; Curo Management, LLC; Curo Collateral Sub, LLC; CURO Ventures, LLC; CURO Credit, LLC; Ennoble Finance, LLC; Ad Astra Recovery Services, Inc.; Attain Finance, LLC; First Heritage Credit, LLC; First Heritage Credit of Alabama, LLC; First Heritage Credit of Louisiana, LLC; First Heritage Credit of Mississippi, LLC; First Heritage Credit of South Carolina, LLC; First Heritage Credit of Tennessee, LLC; SouthernCo, Inc.; Heights Finance Holding Co.; Southern Finance of South Carolina, Inc.; Southern Finance of Tennessee, Inc.; Covington Credit of Alabama, Inc.; Quick Credit Corporation; Covington Credit, Inc.; Covington Credit of Georgia, Inc.; Covington Credit of Texas; Heights Finance Corporation (IL); Heights Finance Corporation (TN); LendDirect Corp.; and CURO Canada Corp. upon their filing of voluntary petitions for relief under chapter 11 of title 11 of the United States Code.

49.     "*Definitive Documents*" means, collectively, (a) the Disclosure Statement; (b) the Solicitation Materials; (c) the Governance Documents; (d) the DIP Orders (and motion(s) seeking approval thereof); (e) the DIP Facility Documents; (f) the Exit Facility Documents; (g) the Plan (and all exhibits thereto); (h) the Combined Order; (i) the Canadian Recognition Order; (j) all material pleadings filed by the Debtors in connection with the Chapter 11 Cases (and related orders), including the first day pleadings and all orders sought pursuant thereto; (k) the Plan Supplement; (l) all regulatory filings and notices necessary to implement the Restructuring Transactions; (m) the CVR Agreement and documents related thereto; (n) the Securitization Facilities Amendments; (o) the RSA; (p) the New Warrant Agreement and documents related thereto; (q) the Private Placement Notes Amendment; and (r) such other material agreements, instruments, and documentation as may be necessary to consummate and document the transactions contemplated by the RSA or the Plan.

50.     "*Description of Transaction Steps*" means the description of the steps to be carried out to effectuate the Restructuring Transactions in accordance with the Plan and as set forth in the Plan Supplement.

51.     "*DIP Agent*" means Alter Domus (US) LLC in its capacity as administrative agent and collateral agent under the DIP Facility.

52.     "*DIP Backstop Commitment Party*" means a member of the Ad Hoc Group that has agreed to backstop the DIP Facility on the terms and conditions set forth in the RSA.

53. "*DIP Backstop Commitments*" has the meaning set forth in the RSA.

54. "*DIP Backstop Commitment Fee*" means a backstop fee equal to 5.0% of the full principal commitment of the DIP Facility payable in New Equity Interests at a 25% discount of the Plan Equity Value, and payable ratably to each DIP Backstop Commitment Party.

55. "*DIP Commitment Shares*" means the New Equity Interests issued to the DIP Backstop Commitment Parties and DIP Lenders on account of the DIP Backstop Commitment Fee and/or the DIP Exit Fee.

56. "*DIP Facility*" means a priming secured and superpriority debtor-in-possession credit facility to be provided by the DIP Lenders on terms consistent with the DIP Term Sheet and consisting of commitments to provide up to $70,000,000 in new money DIP Term Loans.

57. "*DIP Claim*" means any Claim held by the DIP Lenders or the DIP Agent arising under, derived from, secured by, based on, or relating to the DIP Orders, the DIP Facility Documents, or any other agreement, instrument, or document executed at any time in connection with the DIP Facility and any guaranty thereof, including any and all fees, interests paid in kind, and accrued but unpaid interest and fees due under the DIP Facility Documents. All DIP Claims shall be deemed Allowed to the extent provided for in the DIP Orders.

58. "*DIP Exit Fee*" means an exit fee equal to 10.0% of the full principal commitment of the DIP Facility, payable as follows: (a) 5.0% paid in kind as additional Exit Term Loans and (b) 5.0% payable in New Equity Interests at a 25% discount of the Plan Equity Value, payable ratably to each DIP Lender based on such DIP Lender's DIP Claims immediately prior to satisfaction in full thereof.

59. "*DIP Equity Fee*s" means the DIP Backstop Commitment Fee and the portion of the DIP Exit Fee payable in New Equity Interests.

60. "*DIP Facility Documents*" means any documents governing the DIP Facility that are entered into in accordance with DIP Term Sheet and the DIP Orders and any amendments, modifications, and supplements thereto, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection therewith.

61. "*DIP Lenders*" means the lenders providing the DIP Term Loans.

62. "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order and any other Bankruptcy Court order approving entry into the DIP Facility Documents.

63. "*DIP Term Loans*" means the new money loans extended by the DIP Lenders pursuant to the DIP Facility.

64. "*DIP Term Sheet*" means the DIP Facility term sheet attached as <u>Exhibit C</u> to the RSA.

65. "*Disbursing Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select, in consultation with the Ad Hoc Group, to make or to facilitate distributions in accordance with the Plan, which Entity may include the Claims and Noticing Agent and the Agents/Trustees.

66. "*Disclosure Statement*" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, in each case as amended, supplemented, or otherwise modified from time to time in accordance with the terms of the RSA, and that is prepared and distributed in accordance with Bankruptcy Code sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018, and other applicable law.

67. "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

68. "*DTC*" means The Depository Trust Company.

69. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Combined Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.B of the Plan have been satisfied or waived in accordance with Article IX.C of the Plan.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

70. "*Employment Obligations*" means any existing obligations to employees to be assumed, reinstated, or honored, as applicable, in accordance with Article IV.O of the Plan.

71. "*Entity*" means any entity, as defined in Bankruptcy Code section 101(15).

72. "*Equity Security*" means any equity security, as defined in Bankruptcy Code section 101(16), in a Debtor.

73. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to Bankruptcy Code section 541.

74. "*Exchange Act*" means the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78a, et seq., or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

75. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors and (b) the directors, officers, or managers of any Debtor.

76. "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption, and assignment, or rejection under Bankruptcy Code sections 365 or 1123, including any modification, amendments, addenda, or supplements thereto or restatements thereof.

77. "*Existing CURO Interests*" means the Interests in CURO immediately prior to the consummation of the transactions contemplated in this Plan.

78. "*Exit Facility*" means the term loan facility comprised of the Exit Term Loans to be incurred by the Reorganized Debtors and applicable guarantors on the Effective Date pursuant to the Exit Facility Credit Agreement.

79. "*Exit Facility Agent*" means the administrative agent, collateral agent, or similar Entity under the Exit Facility Credit Agreement.

80. "*Exit Facility Credit Agreement*" means the credit agreement with respect to the Exit Facility, as may be amended, supplemented, or otherwise modified from to time.

81. "*Exit Facility Documents*" means, collectively, the Exit Facility Credit Agreement and any other agreements or documents memorializing the Exit Facility, as may be amended, restated, supplemented, or otherwise modified from time to time.

82. "*Exit Term Loans*" means the term loans provided under the Exit Facility on the terms and conditions set forth in the Exit Facility Credit Agreement, which shall include the First Out Exit Term Loans and the Second Out Exit Term Loans.

83. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

84. "*File*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.  "Filed" and "Filing" shall have correlative meanings.

85. "*Final DIP Order*" means one or more Final Orders approving the DIP Facility and the DIP Facility Documents, and authorizing the Debtors' use of Cash Collateral.

86.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, vacated, stayed, modified, or amended, and as to which the time to appeal, seek leave to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and no appeal, petition for certiorari, leave to appeal, or other proceeding for a new trial, reargument, or rehearing thereof has been timely sought, or, if an appeal, leave to appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or leave to appeal or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied, or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; *provided*, however, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or Bankruptcy Code sections 502(j) or 1144 has been or may be filed with respect to such order or judgment.

87.     "*Final Securitization Order*" means one or more Final Orders approving the Securitization Facilities and the Securitization Facilities Amendments.

88.     "*First Out Exit Term Loans*" means the first priority Exit Term Loans on the terms set forth in the RSA and issued under the Exit Facility Credit Agreement.

89.     "*General Unsecured Claim*" means any Claim that is not (a) an Administrative Claim, (b) a Priority Tax Claim, (c) a DIP Claim, (d) an Other Secured Claim, (e) an Other Priority Claim, (f) a Prepetition 1L Term Loan Claim, (g) a Prepetition 1.5L Notes Claim, (h) a Prepetition 2L Notes Claim, (i) an Intercompany Claim, (j) a Section 510(b) Claim, (k) a Securitization Facilities Claim, or (l) a Postpetition Securitization Facilities Claim.  For the avoidance of doubt, the Private Placement Notes Guarantee Claims shall be General Unsecured Claims.

90.     "*Governance Documents*" means, as applicable, the organizational and governance documents for the Reorganized Debtors, which will give effect to the Restructuring Transactions, including, without limitation, New Stockholders' Agreement, certificates of incorporation, certificates of formation or certificates of limited partnership (or equivalent organizational documents), bylaws, limited liability company agreements, shareholder agreements (or equivalent governing documents), and the identities of proposed members of the board of directors of Reorganized CURO which documents shall be consistent with the Governance Term Sheet.

91.     "*Governance Term Sheet*" means the governance term sheet attached as <u>Exhibit F</u> to the RSA.

92.     "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, managing member, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or the Reorganized Debtors, as applicable.

93.     "*Governmental Unit*" means any governmental unit, as defined in Bankruptcy Code section 101(27).

94.     "*Holder*" means an Entity or a Person that is the record owner of a Claim or Interest.  For the avoidance of doubt, affiliated record owners of Claims or Interests managed or advised by the same institution shall constitute separate Holders.

95.     "*Impaired*" means "impaired" within the meaning of Bankruptcy Code section 1124.

96.     "*Indemnification Obligation*" means each of the Debtors' indemnification provisions currently in place, whether in the Debtors' bylaws, certificates of incorporation or other formation or governing documents, board resolutions, management or indemnification agreements, employment or service contracts, or otherwise for the benefit of the current, former, or future directors of the Debtors or the Reorganized Debtors, director nominees, managers, managing members, officers, members (including any *ex officio* members), equity holders, employees, accountants, investment bankers, attorneys, other professionals of the Debtors, and such current and former directors', officers', and managers' respective Affiliates, each of the foregoing solely in their capacity as such.

97.     "*Indemnified Parties*" means, each of the Debtors' respective current or former directors, director nominees, managers, managing members, officers, members (including any *ex officio* members), equity holders, employees, accountants, investment bankers, attorneys, other professionals of the Debtors, and such current and former directors', officers', and managers' respective Affiliates, each of the foregoing solely in their capacity as such.

98.     "*Information Officer*" means FTI Consulting Canada Inc. in its capacity as the Canadian Court appointed information officer in the Canadian Recognition Proceeding.

99.     "*Intercompany Claim*" means any Claim against a Debtor or a non-Debtor subsidiary of CURO held by a Debtor or a non-Debtor subsidiary of CURO.  For the avoidance of doubt, the CURO SPV Term Loan Claims shall not be Intercompany Claims.

100.     "*Intercompany Interest*" means an Interest in a Debtor or non-Debtor subsidiary of CURO held by a Debtor.

101.     "*Interest*" means, collectively, (a) any Equity Security and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

102.     "*Interim DIP Order*" means one or more orders entered on an interim basis approving the DIP Facility and the DIP Facility Documents and authorizing the Debtors' use of Cash Collateral.

103.     "*Interim Securitization Order*" means one or more orders entered on an interim basis approving the Securitization Facilities and the Securitization Facilities Amendments.

104.     "*Joinder Agreement*" has the meaning set forth in the RSA.

105.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

106.     "*Lien*" means a lien as defined in Bankruptcy Code section 101(37).

107.     "*List of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, which shall be included in the Plan Supplement.

108.     "*Management Incentive Plan*" means a management incentive plan reserving up to 10.00% of New Equity Interests on a fully-diluted basis as of the Effective Date.

109.     "*New Board*" means the board of directors or similar governing body of Reorganized CURO which shall be selected in accordance with the Governance Term Sheet.

110.     "*New Equity Interests*" means equity or membership interests in Reorganized CURO on and after the Effective Date in accordance with the Plan.

111.     "*New Stockholders' Agreement*" means that certain stockholders' agreement that will govern certain matters related to the governance of the Reorganized Debtors and which shall be consistent with the Governance Term Sheet; *provided, however,* that to the extent the Reorganized CURO is converted to a limited liability company upon emergence, the references to the New Stockholders' Agreement throughout the Plan shall instead refer to a new LLC operating agreement.

112.     "*New Warrant Agreement*" means an agreement setting forth the full terms and conditions of the Warrants, the form of which shall be included in the Plan Supplement, consistent with the terms set forth in the CVR and Warrant Term Sheet, and in the form and substance acceptable to the Company Parties and the Required Consenting Stakeholders.

113. "*New Warrants*" means warrants to acquire 15% of the New Equity Interests, subject to dilution by the Management Incentive Plan, and otherwise consistent with the CVR and Warrant Term Sheet and the RSA.

114. "*NYSE*" means the New York Stock Exchange.

115. "*Other Priority Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under Bankruptcy Code section 507(a).

116. "*Other Secured Claim*" means any Secured Claim against the Debtors other than the DIP Claims, Priority Tax Claims, Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims, Prepetition 2L Notes Claims, the Securitization Facilities Claims or the Postpetition Securitization Facilities Claims.

117. "*Person*" has the meaning set forth in Bankruptcy Code section 101(41).

118. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

119. "*Plan*" means this joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, the RSA, or the terms hereof, as the case may be, and the Plan Supplement, which is incorporated herein by reference, including all exhibits, supplements, appendices, and schedules hereto and thereto.

120. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under and in accordance with the Plan.

121. "*Plan Equity Value*" means the deemed per share value of the New Equity Interests.

122. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, instruments schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors before the Combined Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable:  (a) the principal Governance Documents; (b) the identity of the members of the New Board; (c) the Exit Facility Documents; (d) the Description of Transaction Steps (which shall, for the avoidance of doubt, remain subject to modification until the Effective Date and may provide for certain actions to occur prior to the Effective Date, subject to the consent of the Required Consenting Stakeholders); (e) the Rejected Executory Contract and Unexpired Lease List, if any; (f) the List of Retained Causes of Action; (g) the CVR Agreement; and (h) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

123. "*Postpetition Securitization Facilities Claims*" means any and all Claims arising under or related to the Securitization Facilities arising after the Petition Date and prior to the Effective Date.  All Postpetition Securitization Facilities Claims shall be deemed Allowed to the extent provided for in the Securitization Orders.

124. "*Prepetition 1L Agent*" means Alter Domus (US) LLC, or any successor thereto, in its capacity as administrative agent and collateral agent under the Credit Agreement.

125. "*Prepetition 1L Lenders*" means the lenders under the Prepetition 1L Term Loan Facility.

126. "*Prepetition 1L Term Loan Claims*" means any and all Claims derived from, arising under, based upon, related to, or secured pursuant to the Credit Agreement, the "Loan Documents" referred to therein, and/or the Prepetition 1L Term Loan Facility. For the avoidance of doubt, the CURO SPV Term Loan Claims shall be Prepetition 1L Term Loan Claims.

127. "*Prepetition 1L Term Loan Facility*" means the term loan under the Credit Agreement in an aggregate principal amount outstanding as of immediately prior to the Petition Date of approximately $177,667,450.47.

128. "*Prepetition 1.5L Noteholders*" means the Holders of the Prepetition 1.5L Notes.

129. "*Prepetition 1.5L Notes*" means the 7.500% Senior 1.5 Lien Secured Notes due 2028 issued by CURO pursuant to the Prepetition 1.5L Notes Indenture.

130. "*Prepetition 1.5L Notes Claims*" means any and all Claims derived from, arising under, based upon, related to, or secured pursuant to the Prepetition 1.5L Notes Indenture and the "Indenture Documents" referred to therein, including all Claims in respect of principal amounts outstanding, interest, fees, expenses, costs, reimbursement obligations, hedging obligations, and other charges arising thereunder or related thereto, in each case, with respect to the Prepetition 1.5L Notes.

131. "*Prepetition 1.5L Notes Indenture*" means that certain Indenture, dated as of May 15, 2023, among CURO, as issuer, the guarantors from time to time party thereto, and the Prepetition 1.5L Notes Trustee, including all amendments, modifications, and supplements thereto.

132. "*Prepetition 1.5L Notes Trustee*" means U.S. Bank Trust Company, National Association, or any successor thereto, as trustee and collateral agent under the Prepetition 1.5L Notes Indenture.

133. "*Prepetition 2L Noteholders*" means the Holders of the Prepetition 2L Notes.

134. "*Prepetition 2L Notes*" means the 7.500% Senior Secured Notes due 2028 issued by CURO pursuant to the Prepetition 2L Notes Indenture.

135. "*Prepetition 2L Notes Claims*" means any and all Claims derived from, arising under, based upon, related to, or secured pursuant to the Prepetition 2L Notes Indenture and the "Indenture Documents" referred to therein, including all Claims in respect of principal amounts outstanding, interest, fees, expenses, costs, reimbursement obligations, hedging obligations, and other charges arising thereunder or related thereto, in each case, with respect to the Prepetition 2L Notes.

136. "*Prepetition 2L Notes Distribution*" means (i) New Equity Interests equal to 10.1% of the outstanding New Equity Interests as of and after giving effect to the Effective Date, subject to dilution by the New Warrants and the Management Incentive Plan, and (ii) the New Warrants.

137. "*Prepetition 2L Notes Indenture*" means that certain Indenture, dated as of July 30, 2021, among CURO, as issuer, the guarantors from time to time party thereto, and the Prepetition 2L Notes Trustee, including all amendments, modifications, and supplements thereto.

138. "*Prepetition 2L Notes Trustee*" means Argent Institutional Trust Company (f/k/a TMI Trust Company), or any successor thereto, as trustee and collateral agent under the Prepetition 2L Notes Indenture.

139. "*Private Placement Notes*" means the private placement notes issued by CURO SPV, secured by a Lien on the CURO SPV Term Loans and guaranteed by CURO.

140. "*Private Placement Notes Amendment*" means an amendment to the Private Placement Notes, which amendment shall waive any defaults and events of default arising under the Private Placement Notes, make appropriate modifications to the terms of the Private Placement Notes to account for the making of the Second Out Exit Term Loans in satisfaction of the Prepetition 1L Term Loan Claims and otherwise on terms satisfactory to CURO and the Ad Hoc Group.

141. "*Private Placement Notes Guarantee Claims*" means any and all Claims derived from, arising under, based upon, or related to CURO's guarantee of the Private Placement Notes.

142. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Bankruptcy Code section 507(a)(8).

143.    "*Pro Rata*" means, unless otherwise specified, the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

144.    "*Professional*" means a Person or an Entity:  (a) retained pursuant to a Bankruptcy Court order in accordance with Bankruptcy Code sections 327, 363, or 1103 and to be compensated for services rendered prior to or on the Effective Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, 331, and 363; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

145.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses of Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.C of the Plan.

146.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court for compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Bankruptcy Code sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5).

147.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount.

148.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

149.    "*Reinstate*" means reinstate, reinstated, or reinstatement with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124. "Reinstated" and "Reinstatement" shall have correlative meanings.

150.    "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors, in consultation with the Ad Hoc Group and the Securitization Facilities Parties, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, which list, as may be amended from time to time, with the consent of the Debtors, in consultation with  the Ad Hoc Group and the Securitization Facilities Parties, shall be included in the Plan Supplement.

151.    "*Related Party*" means with respect to a Person, each of such Person's, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

152.    "*Released Party*" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Agent/Trustee; (e) each DIP Backstop Party and each DIP Lender; (f) the Information Officer; (g) the Securitization Facilities Parties; (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

153.    "*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) each DIP Backstop Party and each DIP Lender; (e) each Agent/Trustee; (f) the Securitization Facilities Parties; (g) each Consenting Stakeholder; (h) all Holders of Claims or Interests that vote to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by

checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) with respect to each of the Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

154.    "*Reorganized CURO*" means either (i) CURO, as reorganized pursuant to and under the Plan or any successor thereto (or as converted from a corporation to another form of entity, as agreed upon between the Debtors and the Ad Hoc Group), or (ii) a newly-formed Entity formed to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of the Company Parties and, on the Effective Date, issue the New Equity Interests (and in each case including any other newly-formed Entity formed to, among other things, effectuate the Restructuring Transactions and issue the New Equity Interests); *provided*, that such determination shall be consistent with the consent rights contained in Section 3.02 of the RSA.

155.    "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

156.    "*Required Consenting 1.5L Noteholders*" means, as of the relevant date, Consenting 1.5L Noteholders holding, collectively, at least 50.01% of the aggregate outstanding principal amount of Prepetition 1.5L Notes that are held by Consenting 1.5L Noteholders as of the Effective Date.

157.    "*Required Consenting First Lien Lenders*" means, as of the relevant date, Consenting 1L Lenders holding, collectively, at least 50.01% of the aggregate outstanding principal amount of Prepetition 1L Term Loan Claims that are held by Consenting 1L Lenders as of the Effective Date.

158.    "*Required Consenting Stakeholders*" means the Required Consenting First Lien Lenders and the Required Consenting 1.5L Noteholders.

159.    "*Restructuring Expenses*" means the reasonable and documented fees and expenses of (i) the Ad Hoc Group Advisors accrued since the inception of their respective engagements related to the implementation of the Restructuring Transactions and not previously paid by, or on behalf of, the Debtors, and (ii) the advisors to the Securitization Facilities Parties.

160.    "*Restructuring Transactions*" means the transactions described in Article IV.B of the Plan.

161.    "*RSA*" means that certain Restructuring Support Agreement, entered into as of March 22, 2024, by and among the Debtors and the other parties thereto, including all exhibits thereto, as may be amended, modified, or supplemented from time to time, in accordance with its terms, attached to the Disclosure Statement as Exhibit B.

162.    "*SEC*" means the United States Securities and Exchange Commission.

163.    "*Second Out Exit Term Loans*" means second priority Exit Term Loans on the terms set forth in the RSA and issued under the Exit Facility Credit Agreement in an aggregate principal amount equal to the Allowed amount of the Prepetition 1L Term Loan Claims (including the "Prepayment Premium" contemplated by the Prepetition 1L Term Loan Facility and interest accrued after the Petition Date, but excluding the Restructuring Expenses) on the Effective Date.

164.    "*Section 510(b) Claim*" means any Claim against any Debtor: (a) arising from the rescission of a purchase or sale of a Security of any Debtor or an affiliate of any Debtor; (b) for damages arising from the purchase or sale of

such a Security made to the Debtors prior to the Petition Date; (c) for reimbursement or contribution allowed under Bankruptcy Code section 502 on account of such a Claim; *provided* that a Section 510(b) Claim shall not include any Claims subject to subordination under Bankruptcy Code section 510(b) arising from or related to an Interest; and (d) any other claim determined to be subordinated under Bankruptcy Code section 510(b).

165.    "*Secured Claim*" means a Claim: (a) secured by a valid, perfected, and enforceable Lien on collateral to the extent of the value of such collateral, as determined in accordance with Bankruptcy Code section 506(a) or (b) subject to a valid right of setoff pursuant to Bankruptcy Code section 553.

166.    "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

167.    "*Securitization Facilities*" means existing loan receivables securitization programs of the Debtors' non-Debtor Affiliates (i) First Heritage Financing I, LLC, a Delaware limited liability company, (ii) Heights Financing I, LLC, a Delaware limited liability company, (iii) Heights Financing II, LLC, a Delaware limited liability company, (iv) Curo Canada Receivables Limited Partnership, an Ontario limited partnership, or (v) Curo Canada Receivables II Limited Partnership, an Ontario limited partnership.

168.    "*Securitization Facilities Agents*" means, collectively, (i) Atlas Securitized Products Holdings, L.P., as successor to Credit Suisse AG, New York Branch, as structuring and syndication agent and administrative agent under the Heights I Credit Agreement and First Heritage Credit Agreement (each as defined in the Securitization Orders), (ii) Midtown Madison Management, LLC, as structuring and syndication agent and administrative agent under the Heights II Credit Agreement and Canada II Credit Agreement (each as defined in the Securitization Orders), and (iii) Waterfall Asset Management, LLC, as administrative agent under the Canada I Credit Agreement (as defined in the Securitization Orders).

169.    "*Securitization Facilities Amendments*" means all amendments, restatements, supplements, instruments and agreements related to the Securitization Facilities Documents entered into to permit the Securitization Facilities to continue during the Chapter 11 Cases and following the Effective Date.

170.    "*Securitization Facilities Claims*" means any and all Claims arising under or related to the Securitization Facilities arising prior to the Petition Date.  All Securitization Facilities Claims shall be deemed Allowed to the extent provided for in the Securitization Orders.

171.    "*Securitization Facilities Documents*" means any documents governing the Securitization Facilities and any amendments, modifications, and supplements thereto entered into prior to the date hereof, and together with any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing entered into prior to the date hereof) related to or executed in connection therewith, other than the Securitization Facilities Amendments.

172.    "*Securitization Facilities Lenders*" means, collectively, (i) Atlas Securitized Products Funding 1, L.P., (ii) ACM AIF Evergreen P2 DAC SubCo LP, (iii) Atalaya A4 Pool 1 LP, (iv) Atalaya A4 Pool 1 (Cayman) LP, (v) ACM Alamosa I LP, (vi) ACM Alamosa I-A LP, (vii) ACM A4 P2 DAC SubCo LP, (viii) ACM AIF Evergreen P3 DAC SubCo LP, (ix) Atalaya Asset Income Fund Parallel 345 LP, (x) ACM AIF Evergreen P2 DAC SubCo LP, (xi) ACM AIF Co-Investment DAC SubCo LP, (xii) ACM A4 P2 DAC SubCo LP, (xiii) AIF Evergreen P3 DAC SubCo LP, (xiv) ACM Alamosa I LP, (xv) ACM A4 P3 DAC SubCo LP, (xvi) WF MARLIE 2018-1, LTD, and (xvii) Atalaya Hybrid Income Fund Evergreen Pool 1 LP, each in their capacity as a lender under one or more of the Securitization Facilities.

173.    "*Securitization Facilities Parties*" means, collectively, the Securitization Facilities Agents and the Securitization Facilities Lenders.

174.     "*Securitization Orders*" means, collectively, the Interim Securitization Order and the Final Securitization Order and any other Bankruptcy Court order approving the Debtors' continued utilization of the Securitization Facilities.

175.     "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

176.     "*Third-Party Release*" means the release set forth in Article VIII.D of this Plan.

177.     "*Transfer Agreement*" has the meaning set forth in the RSA.

178.     "*Trustee Fees*" means outstanding reasonable and documented fees and expenses of the Prepetition 1L Agent, Prepetition 1.5L Notes Trustee, and the Prepetition 2L Notes Trustee.

179.     "*Unexpired Lease*" means a lease to which one or more of the Debtors are a party that is subject to assumption or rejection under Bankruptcy Code section 365.

180.     "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of Bankruptcy Code section 1124.

B.     *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that nothing in this clause (2) shall affect any parties' consent rights over any of the Definitive Documents or any amendments thereto (both as that term is defined herein and as it is defined in the RSA); (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented in accordance with the Plan or Combined Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) unless otherwise specified, the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) unless otherwise specified herein, the rules of construction set forth in Bankruptcy Code section 102 shall apply; (12) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (13) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (14) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (15) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (16) unless otherwise specified, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (other than section 5-1401 and section 5-1402 of the New York General Obligations Law), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters; *provided* that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated in New York shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Reorganized Debtors, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Reorganized Debtors.*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Combined Order).  In the event of an inconsistency between the Combined Order and the Plan, the Combined Order shall control.

H.      *Consent Rights.*

Notwithstanding anything herein to the contrary, any and all consent rights of the parties to the RSA set forth in the RSA and the Securitization Facilities Amendments, to the extent applicable, with respect to the form and substance of this Plan, any Definitive Document, the exhibits to the Plan, and the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and be fully enforceable as if stated in full herein until such time as the RSA or the applicable Securitization Facilities Amendment, as applicable, is terminated in accordance with its terms.  Failure to reference in this Plan the rights referred to in the immediately preceding sentence as such rights relate to any document referenced in the RSA or the Securitization Facilities Amendments, if applicable, shall not impair such rights and obligations.  In case of a conflict between the consent rights of the parties to the RSA that are set forth in the RSA or the parties to the Securitization Facilities Amendments, if applicable, with those parties' consent rights that are set forth in the Plan or the Plan Supplement, the consent rights in the RSA or the Securitization Facilities Amendments, if applicable, shall control.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS, PRIORITY CLAIMS, AND RESTRUCTURING EXPENSES**

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Fee Claims), DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors (with the consent of the Required Consenting Stakeholders, which consent shall not be unreasonably withheld) or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Reorganized Debtors, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

B.      *DIP Claims.*

On the Effective Date, in full and final satisfaction of the Allowed DIP Claims, (i) the principal amount of and accrued but unpaid interest on the DIP Term Loans shall be on a dollar-for-dollar basis automatically converted into First Out Exit Term Loans, (ii) each Holder of DIP Claims shall receive its Pro Rata portion of the DIP Exit Fee, and (iii) each DIP Backstop Commitment Party shall receive its Pro Rata portion of the DIP Backstop Commitment Fee.

C.      *Professional Fee Claims.*

1.      <u>Final Fee Applications and Payment of Professional Fee Claims.</u>

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.

Notwithstanding anything to the contrary set forth herein, professional fees and expenses of professionals incurred in connection with the Canadian Recognition Proceeding shall in all cases continue to be paid in accordance with the terms of the orders of the Canadian Court.

2.      <u>Professional Fee Escrow Account.</u>

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered

property of the Estates of the Debtors or the Reorganized Debtors.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Bankruptcy Court.

       3.   <u>Professional Fee Amount.</u>

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than three (3) Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.

       4.   <u>Post-Confirmation Fees and Expenses.</u>

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331, 363, and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.     *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in Bankruptcy Code section 1129(a)(9)(C).

E.     *Payment of Restructuring Expenses.*

The Restructuring Expenses and Trustee Fees incurred, or estimated to be incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms set forth herein and in the RSA and the Securitization Orders, as applicable, without any requirement to File a fee application with the Bankruptcy Court, without the need for itemized time detail, or without any requirement for Bankruptcy Court review or approval.  All Restructuring Expenses and Trustee Fees to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided, however,* that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses or Trustee Fees.  On the Effective Date, invoices for all Restructuring Expenses and Trustee Fees incurred prior to and as of the Effective Date shall be submitted to the Debtors.  In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses and Trustee Fees related to implementation, consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date.

F.     *Postpetition Securitization Facilities Claims.*

All Postpetition Securitization Facilities Claims shall be at the option of the Debtors or Reorganized Debtors, as applicable, upon consultation with the Required Consenting Stakeholders, either (i) Reinstated as of the Effective

Date, in accordance with the terms of the Securitization Facilities Amendments, or (ii) paid in full in Cash on the Effective Date.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with Bankruptcy Code sections 1122 and 1123(a)(1).  A Claim or an Interest, or any portion thereof, is classified in a particular Class only to the extent that any portion of such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Prepetition 1L Term Loan Claims | Impaired | Entitled to Vote |
| Class 4 | Prepetition 1.5L Notes Claims | Impaired | Entitled to Vote |
| Class 5 | Prepetition 2L Notes Claims | Impaired | Entitled to Vote |
| Class 6 | Securitization Facilities Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 7 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 8 | Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept / Deemed to Reject) |
| Class 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Intercompany Interests | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept / Deemed to Reject) |
| Class 11 | Existing CURO Interests | Impaired | Entitled to Vote |

B.      *Treatment of Claims and Interests.*

Each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan, subject to the minimum distribution amount conditions set forth in Article VI.D.2 hereof, the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Reorganized Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.  <u>Class 1 – Other Secured Claims</u>

    (a)     *Classification*:  Class 1 consists of any Other Secured Claims against any Debtor.

    (b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the option of the applicable Debtor or Reorganized Debtor, upon consultation with the Required Consenting Stakeholders, either:

            (i)     payment in full in Cash of its Allowed Other Secured Claim;

            (ii)    the collateral securing its Allowed Other Secured Claim;

            (iii)   Reinstatement of its Allowed Other Secured Claim; or

            (iv)    such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with Bankruptcy Code section 1124.

    (c)     *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.  <u>Class 2 – Other Priority Claims</u>

    (a)     *Classification*:  Class 2 consists of any Other Priority Claims against any Debtor.

    (b)     *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of Bankruptcy Code section 1129(a)(9).

    (c)     *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.  <u>Class 3 – Prepetition 1L Term Loan Claims</u>

    (a)     *Classification*:  Class 3 consists of any Prepetition 1L Term Loan Claims against any Debtor.

    (b)     *Allowance*:  The Prepetition 1L Term Loan Claims shall be deemed Allowed in the aggregate principal amount of at least $177,667,450.47, plus accrued and unpaid interest (including default interest) on such principal amount through the Effective Date, and any fees (including the "Prepayment Premium" referred to in the Credit Agreement), expenses, and indemnification or other obligations of any kind arising under or in connection with the Credit Agreement.

    (c)     *Treatment*:  On the Effective Date, each holder of an Allowed Prepetition 1L Term Loan Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata portion of the Second Out Exit Term Loans.

    (d)     *Voting*:  Class 3 is Impaired under the Plan and Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4. Class 4 – Prepetition 1.5L Notes Claims

    (a)    *Classification*:  Class 4 consists of any Prepetition 1.5L Notes Claims against any Debtor.

    (b)    *Allowance*:  The Prepetition 1.5L Claims shall be deemed Allowed in the aggregate principal amount of at least $682,298,000.00, plus accrued and unpaid interest on such principal amount through the Effective Date, and any fees, expenses, and indemnification or other obligations of any kind arising under or in connection with the Prepetition 1.5L Notes Indenture.

    (c)    *Treatment*: On the Effective Date, each holder of an Allowed Prepetition 1.5L Claim shall receive its Pro Rata share of, (a) 100% of the New Equity Interests, less (b) the Prepetition 2L Notes Distribution and the DIP Equity Fees, subject to dilution by the New Warrants and the Management Incentive Plan.

    (d)    *Voting*:  Class 4 is Impaired under the Plan and Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

5. Class 5 – Prepetition 2L Notes Claims

    (a)    *Classification*:  Class 5 consists of any Prepetition 2L Notes Claims against any Debtor.

    (b)    *Allowance*:  The Prepetition 2L Claims shall be deemed Allowed in the aggregate principal amount of at least $317,702,000.00, plus accrued and unpaid interest on such principal amount through the Effective Date, and any fees, expenses, and indemnification or other obligations of any kind arising under or in connection with the Prepetition 2L Notes Indenture.

    (c)    *Treatment*: On the Effective Date, each holder of an Allowed Prepetition 2L Claim shall receive its Pro Rata share of the Prepetition 2L Notes Distribution.

    (d)    *Voting*:  Class 5 is Impaired under the Plan and Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

6. Class 6 – Securitization Facilities Claims

    (a)    *Classification*:  Class 6 consists of any Securitization Facilities Claims against any Debtor.

    (b)    *Treatment*: The Securitization Facilities Claims shall be, at the option of the Debtors or Reorganized Debtors, as applicable, upon consultation with the Required Consenting Stakeholders, either: (i) Reinstated as of the Effective Date, in accordance with the terms of the Securitization Facilities Amendments, (ii) paid in full in Cash on the Effective Date, or (iii) receive such other treatment as agreed with each holder of the Securitization Facilities Claim.

    (c)    *Voting*:  Class 6 is Unimpaired under the Plan.  Holders of Class 6 Claims are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7. Class 7 – General Unsecured Claims

    (a)    *Classification*:  Class 7 consists of General Unsecured Claims.

    (b)    *Treatment*:  Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, at the option of the applicable Debtor or Reorganized Debtor, upon consultation with the Required Consenting Stakeholders, either:

        (i)    Reinstatement of such Allowed General Unsecured Claim pursuant to Bankruptcy Code section 1124; or

        (ii)    payment in full in Cash on (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim.

    (c)    *Voting*:  Class 7 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 7 are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f).  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8. Class 8 – Intercompany Claims

    (a)    *Classification:*  Class 8 consists of all Intercompany Claims.

    (b)    *Treatment:*  Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor, after consultation with the Required Consenting Stakeholders, either Reinstated, converted to equity, otherwise set off, settled, distributed, contributed, canceled, or released, in each case, in accordance with the Description of Transaction Steps; *provided however* that all Intercompany Claims owing to any of the Canadian Debtors or any Canadian non-Debtor Affiliates shall be Reinstated and paid in the ordinary course.

    (c)    *Voting:*  Holders of Class 8 Claims are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f) or rejected the Plan pursuant to Bankruptcy Code section 1126(g).  Holders of Class 8 Claims are not entitled to vote to accept or reject the Plan.

9. Class 9 – Section 510(b) Claims

    (a)    *Classification*:  Class 9 consists of all Section 510(b) Claims.

    (b)    *Treatment*:  On the Effective Date, all Section 510(b) Claims will be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of Section 510(b) Claims will not receive any distribution on account of such Section 510(b) Claims.

    (c)    *Voting*:  Class 9 is Impaired under the Plan.  Holders of Allowed Claims in Class 9 are conclusively deemed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g).  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

10. Class 10 – Intercompany Interests

    (a)    *Classification:*  Class 10 consists of all Intercompany Interests.

    (b)    *Treatment:*  On the Effective Date, Intercompany Interests shall, at the election of the applicable Debtor, after consultation with the Required Consenting Stakeholders, be either (i) Reinstated or (ii) set off, settled, addressed, distributed, contributed, merged, canceled,

or released, in each case, in accordance with the Description of Transaction Steps; *provided, however,* that notwithstanding anything herein to the contrary, the Intercompany Interests in the SPVs (as defined in the Disclosure Statement) shall vest in the Reorganized Debtors free and clear of all Liens, charges, Claims (other than Securitization Facilities Claims or Claims arising under the Securitization Facilities Amendments) or other encumbrances on the Effective Date.

(c)     *Voting*:  Class 10 is Unimpaired if the Class 10 Interests are Reinstated or Impaired if the Class 10 Interests are cancelled.  Holders of Class 10 Interests are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f) or rejected the Plan pursuant to Bankruptcy Code section 1126(g).  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

11.  Class 11 – Existing CURO Interests

(a)     *Classification*:  Class 11 consists of all Existing CURO Interests.

(b)     *Treatment*:  On the Effective Date, Holders of Existing CURO Interests shall receive, in full and final satisfaction of such Interests, their Pro Rata share of CVRs as further described in Article IV.L of the Plan, provided, that, if the CVR Distribution Framework is applicable, then, in the event that a Potential CVR Recipient would be eligible to receive CVRs but for the limitation on the Maximum CVR Recipients, Cash in lieu of CVRs, provided, further, that if the Cash to be distributed to a particular beneficial holder in lieu of CVRs is less than the minimum distribution amount set forth in Article VI.D.2 of the Plan, then such holder shall not receive any additional Cash nor any rights under or interest in the CVRs.

(c)     *Voting*:  Class 11 is Impaired under the Plan and Holders of Allowed Interests in Class 11 are entitled to vote to accept or reject the Plan.

C.     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claims, including, all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

D.     *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Bankruptcy Code section 1129(a)(8).

E.     *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.     *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the Holders of New Equity Interests, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

G.      *Confirmation Pursuant to Bankruptcy Code Sections 1129(a)(10) and 1129(b).*

Bankruptcy Code section 1129(a)(10) shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to Bankruptcy Code section 1129(b) with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code section 1129(b) requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Bankruptcy Code section 510, or otherwise. Pursuant to Bankruptcy Code section 510, and subject to the RSA, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Combined Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Code section 1123 and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.      *Restructuring Transactions.*

Before, on, and after the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall consummate the Restructuring Transactions and may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan, including: (1) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, the Plan Supplement, and the RSA; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, and the RSA and having other terms to which the applicable Entities may agree; (3) the execution, delivery, and filing, if applicable, of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law, including any applicable Governance Documents; (4) the execution and delivery of the Exit Facility Documents and entry into the Exit Facility;

(5) the issuance and distribution of the New Equity Interests (including the DIP Equity Fees) as set forth in the Plan; (6) the execution and delivery of the New Warrant Agreement and the issuance and distribution of the New Warrants; (7) the execution and delivery of the CVR Agreement and the issuance and distribution of the CVRs; (8) the execution and delivery of, and entry into, the Securitization Facilities Amendments; (9) the execution and delivery of, and entry into, the Private Placement Notes Amendment; (10) the adoption of the Management Incentive Plan and the issuance and reservation of the New Equity Interests to the participants in the Management Incentive Plan in accordance with the terms thereof; (11) such other transactions that are required to effectuate the Restructuring Transactions, including any transactions set forth in the Description of Transaction Steps; and (12) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

The Combined Order shall and shall be deemed to, pursuant to both Bankruptcy Code sections 1123 and 363, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan.

The terms of the Restructuring Transactions will be structured to maximize tax efficiencies for each of the Debtors and the Consenting Stakeholders, as agreed to by the Debtors and the Required Consenting Stakeholders and in accordance with the Plan and the Plan Supplement.

C.      *Sources of Consideration for Plan Distributions.*

The Debtors shall fund distributions under the Plan, as applicable, with: (1) the Exit Facility, (2) the New Equity Interests, (3) the New Warrants, (4) the CVRs, (5) the Cash on hand from the utilization of the Securitization Facilities (as amended by the Securitization Facilities Amendments to continue following the Effective Date), and (6) the Debtors' Cash on hand from operations and the proceeds of borrowings under the DIP Facility.   Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.   The issuance, distribution, or authorization, as applicable, of certain Securities in connection with the Plan, including the New Equity Interests will be exempt from SEC registration, as described more fully in Article IV.M below.

1.      Exit Facility.

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility, the terms of which will be set forth in the Exit Facility Documents.  Confirmation of the Plan shall be deemed approval of the Exit Facility and the Exit Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Facility.  Execution of the Exit Facility Credit Agreement by the Exit Facility Agent shall be deemed to bind all Holders of the DIP Claims and the Prepetition 1L Term Loan Claims as if each such Holder had executed the Exit Facility Credit Agreement with appropriate authorization.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facility Documents, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Combined Order (it being understood that perfection shall occur automatically by virtue of the entry of the Combined Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to

make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

2.   Securitization Facilities Amendments.

Confirmation of the Plan shall be deemed approval of the Securitization Facilities (as amended by the Securitization Facilities Amendments to continue following the Effective Date) and the Securitization Facilities Amendments applicable to continuation of the Securitization Facilities following the Effective Date, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein.

On the Effective Date, all of the Liens and security interests to be granted in accordance with the Securitization Facilities Amendments, (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Securitization Facilities Amendments, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Securitization Facilities Amendments, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests shall be authorized to make, or cause their applicable non-Debtor Affiliates to make, all filings and recordings, and to obtain, or cause their applicable non-Debtor Affiliates to obtain, all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Combined Order (it being understood that perfection shall occur automatically by virtue of the entry of the Combined Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate, or cause their applicable non-Debtor Affiliates to cooperate, to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

3.   New Equity Interests and New Warrants.

Reorganized CURO shall be authorized to issue a certain number of shares of New Equity Interests pursuant to its Governance Documents.  The issuance of the New Equity Interests and New Warrants shall be authorized without the need for any further corporate action.  On the Effective Date, the New Equity Interests shall be issued and distributed as provided for in the Description of Transaction Steps to the Holders of Allowed Claims entitled to receive the New Equity Interests pursuant to, and in accordance with, the Plan.

All of the shares of New Equity Interests issued pursuant to the Plan (including the New Equity Interests underlying the New Warrants) shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, including the Governance Documents, which terms and conditions shall bind each Holder receiving such distribution or issuance.  Any Holder's acceptance of New Equity Interests shall be deemed as its consent to the terms and conditions of the Governance Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their terms.  The New Equity Interests will not be listed for trading on any securities exchange as of the Effective Date.  The New Warrant Agreement shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Warrants shall be bound thereby.

Reorganized CURO (i) shall emerge from these Chapter 11 Cases on the Effective Date as a private company and the New Equity Interests shall not be listed on a public stock exchange, (ii) shall not be voluntarily subjected to any reporting requirements promulgated by the SEC, and (iii) shall not be required to list the New Equity Interests on a recognized U.S. or any foreign stock exchange.

To the extent the following actions have not been completed on or prior to the Effective Date, Reorganized CURO shall (i) take all actions reasonably necessary or desirable to delist the Existing CURO Interests from NYSE

and to deregister under the Exchange Act as promptly as practicable in compliance with SEC rules, (ii) file post-effective amendments to terminate all of CURO's effective registration statements under the Securities Act and deregister any and all unsold securities thereunder, (iii) file a Form 15 to terminate CURO's registration under the Exchange Act and to suspend CURO's reporting obligations under the Exchange Act with respect to the common stock, and (iv) take all actions reasonably necessary or desirable to ensure (A) that the New Equity Interests and the CVRs shall not be listed on a public securities exchange and that the Reorganized Debtors shall not be required to list the New Equity Interests or CVRs on a recognized securities exchange, except, in each case, as otherwise may be required pursuant to the Governance Documents or the CVR Agreement, as applicable, and (B) that the Reorganized Debtors shall not be voluntarily subjected to any reporting requirements promulgated by the SEC.

       4.    Use of Cash.

The Debtors or Reorganized Debtors, as applicable, shall use Cash on hand to fund distributions to certain Holders of Allowed Claims, consistent with the terms of the Plan.

D.      *Corporate Existence.*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which such Debtor is incorporated or formed and pursuant to the certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

E.      *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.      *Preservation and Reservation of Causes of Action.*

In accordance with Bankruptcy Code section 1123(b), and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to the Debtor Releases provided in Article VIII.C and the Exculpation contained in Article VIII.E of this Plan), the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the List of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Reorganized Debtors, as the successors-in-interest to the Debtors and the Estates, may, and shall have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of such Causes of Action without notice to or approval from the Bankruptcy Court.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Combined Order, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.  Except as otherwise set forth herein, the Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity.**

The Debtors expressly reserve all Causes of Action for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the Confirmation or Consummation of this Plan based on the Disclosure Statement, this Plan, or the Combined Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised or settled in this Plan (including, for the avoidance of doubt, pursuant to the Debtor Releases provided in Article VIII.C and the Exculpation contained in Article VIII.E of this Plan) or any other Final Order (including, without limitation, the Combined Order and the DIP Orders).  In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any of the Debtors are a plaintiff, defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

In accordance with Bankruptcy Code section 1123(b)(3), except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the applicable Reorganized Debtor.  The applicable Reorganized Debtors through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

G.      *Cancellation of Existing Agreements and Interests.*

On the Effective Date, except with respect to the Exit Facility, the Securitization Facilities Amendments, or to the extent otherwise provided in the Plan, including in Article V.A hereof, all notes, instruments, certificates, and other documents evidencing Claims or Interests, including credit agreements and indentures, shall be cancelled and the obligations of all parties thereto, including the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect; *provided*, *however*, that notwithstanding anything to the contrary contained herein, any agreement that governs the rights of the DIP Agent shall continue in effect solely for purposes of allowing the DIP Agent to (i) enforce its rights against any Person other than any of the Released Parties, pursuant and subject to the terms of the DIP Orders and the DIP Facility Documents, (ii) receive distributions under the Plan and to distribute them to the Holders of the Allowed DIP Claims, in accordance with the terms of DIP Orders and the DIP Facility Documents, (iii) enforce its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to Holders of Allowed DIP Claims, in accordance with the terms of DIP Orders and the DIP Facility Documents, and (iv) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to either of the DIP Agent or Holders of the DIP Claims under the Plan, as applicable.  Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to this Plan.

Any credit agreement, indenture or other instrument that governs the rights, claims, and remedies of the Holder of a Claim shall continue in full force and effect for purposes of allowing Holders of Allowed Claims to receive distributions under the Plan and to allow Agents/Trustees, as applicable, to enforce its rights to payment of fees, expenses, and indemnification obligations, including preservation of charging liens, as against any money or property distributable to such Holders.

For the avoidance of doubt, any credit agreement or other instrument evidencing claims arising from or related to the Securitization Facilities Amendments shall continue in full force and effect for all purposes.

If the record Holder of the Prepetition 1.5L Notes or Prepetition 2L Notes is DTC or its nominee or another securities depository or custodian thereof, and such Prepetition 1.5L Notes or Prepetition 2L Notes, as applicable, are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each such Holder of the Prepetition 1.5L Notes or Prepetition 2L Notes, as applicable, shall be deemed to have

surrendered such Holder's note, debenture, or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.

H.      *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including:  (1) adoption or assumption, as applicable, of the Employment Obligations; (2) selection of the directors, officers, or managers for the Reorganized Debtors (as applicable) in accordance with the Governance Term Sheet; (3) the issuance and distribution of the New Equity Interests and the New Warrants; (4) implementation of the Restructuring Transactions; (5) entry into the Exit Facility Documents; (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date); (7) adoption of the Governance Documents; (8) the assumption or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (9) the entry into the CVR Agreement and the issuance and distribution of the CVRs; and (10) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtor, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security Holders, directors, officers, or managers of the Debtors or the Reorganized Debtors, as applicable.  Before, on or after (as applicable) the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the New Equity Interests, the New Warrants, the CVRs, the Governance Documents, the Exit Facility, and the Exit Facility Documents, any other Definitive Documents, and any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I.      *Governance Documents.*

On or immediately prior to the Effective Date, the Governance Documents shall be adopted or amended in a manner consistent with the terms and conditions set forth in the Governance Term Sheet, as may be necessary to effectuate the transactions contemplated by the Plan.  Each of the Reorganized Debtors will file its Governance Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state, province, or country of incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation to the extent such filing is required for each such document.  The Governance Documents will prohibit the issuance of non-voting Equity Securities to the extent required under Bankruptcy Code section 1123(a)(6).  For the avoidance of doubt, the principal Governance Documents shall be included as exhibits to the Plan Supplement. After the Effective Date, each Reorganized Debtor may amend and restate its constituent and governing documents as permitted by the laws of its jurisdiction of formation and the terms of such documents.

On the Effective Date, Reorganized CURO shall enter into and deliver the New Stockholders Agreement, which shall become effective and binding in accordance with its terms and conditions upon the parties thereto without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Entity. Holders of New Equity Interests shall be deemed to have executed the New Stockholders Agreement and be parties thereto and bound by the terms thereof without the need to deliver signature pages thereto.

J.      *Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the term of the current members of the board of directors or other Governing Body of CURO shall expire and such Persons shall be deemed to have resigned from the board of directors of CURO, and the members for the initial term of the New Board shall be appointed in accordance with the Governance Documents. The initial members of the New Board will be identified in the Plan Supplement, to the extent known at the time of filing.  Each such member and officer of the Reorganized Debtors shall serve from and after the Effective Date pursuant to the terms of the Governance Documents and other constituent documents of the Reorganized Debtors.

*K.*      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and their respective officers and boards of directors and managers, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

*L.*      *CVR Agreement and CVR Distribution Framework.*

On the Effective Date, Reorganized CURO shall enter into the CVR Agreement with the CVR Agent.  After the Effective Date, the CVRs shall either be distributed through DTC, or, if the Debtors, upon consultation with the Ad Hoc Group, determine that distribution through DTC is not reasonably practicable, according to the following CVR Distribution Framework:

No later than five (5) days after the Effective Date, Reorganized CURO will mail a notice of the potential right to receive one CVR per share of Existing CURO Interest (the "<u>CVR Notice</u>") to all known registered and beneficial Holders of Existing CURO Interests as of the Effective Date (immediately prior to the cancellation thereof) (such Holders, the "<u>Potential CVR Recipients</u>") and each such CVR Notice shall contain (i) information as to the process for a Potential CVR Recipient to receive their CVR (or Cash in lieu of CVR); and (ii)  notification that the Potential CVR Recipient will lose the right to obtain any interest in the CVRs (or to obtain Cash in lieu of a CVR distribution) if the CVR Recipient Certification is not received by the CVR Submission Deadline.

In order to obtain any interest in the CVRs, by no later than 90 days after service of the CVR Notice ("<u>CVR Submission Deadline</u>"), Potential CVR Recipients shall be required to return a certification and agreement (the "<u>CVR Recipient Certification</u>") that will provide for, among other things ("<u>CVR Recipient Conditions</u>"):

(a)      The Potential CVR Recipient shall certify whether or not they are an accredited investor (as defined in Rule 501 promulgated under the Securities Act) (each such accredited investor, an "<u>Accredited Investor</u>");

(b)      The Potential CVR Recipient agrees to release (and shall be deemed to have released) any Section 510(b) Claims upon receipt of the CVRs (or Cash in lieu of the CVRs);

(c)      For any beneficial Holders that hold their Existing CURO Interests through a registered broker or agent, a certification from such Holder's broker or agent as to the amount of shares beneficially owned by such holder as of the Effective Date (immediately prior to the cancellation thereof); and

(d)      Such other standard identification information reasonably requested by the Reorganized Debtors (such as mailing address, contact information, and information related to preferred method of delivery).

Reorganized CURO will distribute the CVRs; *provided* that Reorganized CURO, on the Effective Date, shall be a privately held company whose securities are not required to be registered under the Securities Exchange Act, *provided* further that CVRs shall not be distributed to more than 1,900 beneficial holders of Existing Common Stock Interests, of which no more than 450 shall be non-Accredited Investors ("<u>Maximum CVR Recipients</u>").

If more Potential CVR Recipients meeting the CVR Recipient Conditions than the Maximum CVR Recipients return a properly executed CVR Recipient Certification by the CVR Submission Deadline, then the Reorganized Debtors shall only distribute the CVRs pursuant to the Plan to the Potential CVR Recipients that hold the largest percentage of Existing CURO Securities until CVRs have been distributed to the Maximum CVR Recipients.  In the event that multiple Potential CVR Recipients hold the same number of shares and all such holders cannot be included due to the Maximum CVR Recipient Requirement, then the Reorganized Debtors shall include such Potential CVR Recipients in alphabetical order (based on last name or entity name) until the Maximum CVR

Recipient threshold is reached.

For any Potential CVR Recipient meeting the CVR Recipient Requirements that would have been eligible to receive the CVRs but for the limitation on the Maximum CVR Recipients, the Reorganized Parent shall pay Cash in an amount equal to the value of the CVRs at the Effective Date ("Effective Date CVR Value") to a particular Holder in lieu of distribution of CVRs to such Holder; *provided*, that if the Cash to be distributed to a particular beneficial Holder in lieu of CVRs is less than the minimum distribution amount set forth in Article VI.D.2 of the Plan, then such Holder shall not receive any additional Cash nor any rights under or interest in the CVRs.  The Cash payment will be paid to the address identified by the Potential CVR Recipient on the CVR Recipient Certification.  The Effective Date CVR Value will be made available to the Potential CVR Recipients as soon as practicable.

For the avoidance of doubt, any Potential CVR Recipient that does not submit a CVR Recipient Certification by the CVR Submission Deadline shall not receive any interest in the CVRs or any additional Cash payment in lieu of the CVRs.

The CVR Agreement shall be duly authorized without the need for any further corporate action and without any further action by CURO or Reorganized CURO, as applicable.

As a result of the distribution of the CVRs pursuant to the CVR Distribution Framework in accordance with the Plan, the CVRs shall not be listed on a public stock exchange (nor shall Reorganized CURO be under any obligation to list them on a recognized U.S. or any foreign stock exchange) or voluntarily subjected to any reporting requirements promulgated by the SEC.

*M.*     *Certain Securities Law Matters.*

The offering, issuance, and distribution of the New Equity Interests (other than the DIP Commitment Shares and any New Equity Interests underlying the Management Incentive Plan), as contemplated by Article III of this Plan, after the Petition Date, shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, Bankruptcy Code section 1145, and to the extent such exemption is not available, then such New Equity Interests will be offered, issued, and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable securities laws.  The Debtors believe that either the CVRs shall not constitute a "security" under applicable U.S. securities laws or that the issuance of the CVRs shall be exempt from the registration requirements of Section 5 of the Securities Act and any other applicable U.S., state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, Bankruptcy Code section 1145.

Such New Equity Interests and CVRs (to the extent such CVRs constitute a "security"), as a result of being offered, issued, and distributed pursuant to Bankruptcy Code section 1145, (i) will not be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) (A) will be freely tradeable and transferable without registration under the Securities Act in the United States by any recipient thereof that is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, subject to the provisions of Bankruptcy Code section 1145(b)(1) relating to the definition of an underwriter in Bankruptcy Code section 1145(b) and any restrictions in the Governance Documents and CVR Agreement, as applicable, and (B) may not be transferred by any recipient thereof that is an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom (including by complying with the conditions of Rule 144 under the Securities Act with respect to "control securities").

The DIP Commitment Shares will be offered, issued, and distributed in reliance upon Section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or reliance on Regulation S under the Securities Act, will be considered "restricted securities," and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom.  The New Equity Interests underlying the Management Incentive Plan will be offered, issued, and distributed in reliance upon Section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other exemptions from registration, and will be considered "restricted securities."

The New Equity Interests will be subject to any restrictions in the Governance Documents to the extent applicable. The New Warrants will be subject to any restrictions in the New Warrant Agreement to the extent applicable. Transfer restrictions on the New Warrants will be governed by the Governance Documents and be substantially similar to the transfer restrictions applicable to the New Equity Interests. The CVRs will be subject to any restrictions in the CVR Agreement to the extent applicable and will be non-transferable.

The Reorganized Debtors need not provide any further evidence other than the Plan or the Combined Order to any Entity (including DTC and any transfer agent for the New Equity Interests) with respect to the treatment of the New Equity Interests to be issued under the Plan under applicable securities laws. DTC and any transfer agent for the New Equity Interests shall be required to accept and conclusively rely upon the Plan and Combined Order in lieu of a legal opinion regarding whether the New Equity Interests to be issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. Notwithstanding anything to the contrary in the Plan, no Entity (including DTC and any transfer agent for the New Equity Interests) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Equity Interests to be issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

The offering, issuance, and distribution of New Equity Interests (other than any New Equity Interests underlying the Management Incentive Plan but including any CVRs to the extent the CVRs are deemed to be securities) pursuant to or in connection with the Plan to persons in Canada will be exempt from the prospectus and registration requirements of applicable Canadian Securities Laws pursuant to Section 2.11 of National Instrument 45-106 "Prospectus Exemptions". New Equity Interests (including New Equity Interests distributed outside of Canada) will not be freely tradable in Canada and may only be resold to persons in Canada: (a) pursuant to an available exemption from the prospectus and registration requirements of Canadian Securities Laws; (b) pursuant to a final prospectus qualified under applicable Canadian Securities Laws; or (c) if each of the following conditions are satisfied: (i) the issuer of the New Equity Interests has been a reporting issuer in a jurisdiction of Canada of the four months immediately preceding the trade; (ii) the trade is not a "control distribution" within the meaning of Canadian Securities Laws; (iii) no unusual effort is made to prepare the market or create a demand for the security that is the subject of the trade; and (iv) no extraordinary commission or consideration is paid to a person or company in respect of the trade. "Canadian Securities Laws" means, as applicable, the securities laws, regulations, rules, rulings and orders in each of the Provinces and Territories of Canada, and the applicable policy statements, notices, blanket rulings, orders and all other regulatory instruments of the securities regulators in each of such jurisdictions. THE FOREGOING SUMMARY DISCUSSION IS GENERAL IN NATURE AND HAS BEEN INCLUDED IN THIS DISCLOSURE STATEMENT SOLELY FOR INFORMATIONAL PURPOSES. PERSONS WHO RECEIVE SECURITIES UNDER THE PLAN ARE URGED TO CONSULT THEIR OWN LEGAL ADVISORS WITH RESPECT TO THE RESTRICTIONS APPLICABLE UNDER CANADIAN SECURITIES LAWS AND THE CIRCUMSTANCES UNDER WHICH SECURITIES MAY BE SOLD IN RELIANCE ON SUCH LAWS.

## N.      Section 1146 Exemption.

To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for any or all of the Exit Facility; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Combined Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed,

shall comply with the requirements of Bankruptcy Code section 1146(c), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

O.    *Employment Obligations.*

Unless otherwise provided herein, and subject to Article V of the Plan, all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans as of the Effective Date.  For the avoidance of doubt, pursuant to Bankruptcy Code section 1129(a)(13), as of the Effective Date, all retiree benefits (as such term is defined in Bankruptcy Code section 1114), if any, shall continue to be paid in accordance with applicable law. On the Effective Date, the Reorganized Debtors shall (a) assume all employment agreements, indemnification agreements, or other agreements entered into with current employees; or (b) enter into new agreements with such employees on terms and conditions acceptable to the Reorganized Debtors and such employee.

P.    *Management Incentive Plan.*

On the Effective Date, the New Board shall be authorized to adopt and implement (a) the Management Incentive Plan, which will be on the terms and conditions (including any and all awards granted thereunder) determined by the New Board (including, without limitation, with respect to participants, allocations, duration, timing, and the form and structure of the equity and compensation thereunder) and (b) such other incentive plans as may be agreed to by the New Board.

Q.    *DTC Eligibility.*

The Debtors and the Reorganized Debtors, as applicable, shall use commercially reasonable efforts to promptly make the New Equity Interests, the New Warrants, and CVRs eligible for deposit with DTC.

R.    *Closing the Chapter 11 Cases.*

Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to close all of the Chapter 11 Cases except for one of the Chapter 11 Cases as determined by the Reorganized Debtors, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case. Following entry of the Combined Order, CURO shall seek an order of the Canadian Court permitting the discharge of the Information Officer and termination of the Canadian Recognition Proceeding upon written notice from CURO to the Information Officer that the Effective Date has occurred and the Information Officer's delivery to the CURO of a termination certificate.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption of Executory Contracts and Unexpired Leases.*

Each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under Bankruptcy Code section 365, unless such Executory Contract and Unexpired Lease: (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject Filed on or before the Effective Date; or (4) is identified on the Rejected Executory Contract and Unexpired Lease List.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  The Combined Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses,

permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

B.      *Indemnification Obligations.*

        The Debtors, and upon the Effective Date, the Reorganized Debtors, shall assume all of the Indemnification Obligations in place on and before the Effective Date for Indemnified Parties for Claims related to or arising out of any actions, omissions or transactions occurring before the Effective Date.

C.      *Assumption of the D&O Liability Insurance Policies.*

        The Debtors, and upon the Effective Date, the Reorganized Debtors, shall assume all of the D&O Liability Insurance Policies pursuant to Bankruptcy Code section 365(a).  Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Combined Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the D&O Liability Insurance Policies and authorization for the Debtors to take such actions, and to execute and deliver such documents, as may be reasonably necessary or appropriate to implement, maintain, cause the binding of, satisfy any terms or conditions of, or otherwise secure for the insureds the benefits of the D&O Liability Insurance Policies.

        In addition and for the avoidance of doubt, after the Effective Date, none of the Company Parties shall terminate or otherwise reduce the coverage under any D&O Liability Insurance Policies covering the Debtors' current boards of directors in effect on or after the Petition Date and, subject to the terms of the applicable D&O Liability Insurance Policies, all directors and officers of the Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

D.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

        Entry of the Combined Order shall constitute a Bankruptcy Court order approving the rejections, if any, of any Executory Contracts or Unexpired Leases as provided for in the Plan or the Rejected Executory Contract and Unexpired Lease List, as applicable. Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Combined Order, if any, must be Filed with the Claims and Noticing Agent at the address specified in any notice of entry of the Combined Order and served on the Reorganized Debtors no later than thirty (30) days after the effective date of such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Claims and Noticing Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article VIII.F of the Plan, notwithstanding anything in a Proof of Claim to the contrary. All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to Bankruptcy Code section 365 shall be treated as a General Unsecured Claim pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Notwithstanding anything to the contrary in the Plan, the Debtors, or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List at any time through and including thirty days after the Effective Date.

E.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

        The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable

Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date. Any such request that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure; *provided* that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to File such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before 30 days after the Effective Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing, or such other setting as requested by the Debtors or Reorganized Debtors, for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.E shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Combined Order, and for which any Cure has been fully paid pursuant to this Article V.E, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

F.      *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

G.      *Reservation of Rights.*

Nothing contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

H.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Bankruptcy Code section 365(d)(4).

I.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business.  Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Combined Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

C.      *Rights and Powers of Disbursing Agent.*

1.      Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      Delivery of Distributions in General.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Effective Date, or, if applicable, to such Holder's designee, as appropriate: (a) at the address for each such Holder as indicated on the Debtors' records (or the records of the DIP Agent and the Prepetition 1L Agent with

respect to the DIP Claims and Prepetition 1L Term Loan Claims); (b) to the signatory set forth on any Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtors have not been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Distribution Agent, as appropriate, after the date of any related Proof of Claim; (d) with respect to Securities held through DTC, in accordance with the applicable procedures of DTC; or (e) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf; *provided* that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors.

2. <u>Minimum Distributions.</u>

No fractional shares of New Equity Interests shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an Allowed Claim or Allowed Interest (as applicable) would otherwise result in the issuance of a number of shares of New Equity Interests that is not a whole number, the actual distribution of shares of New Equity Interests shall be rounded as follows: (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefore. The total number of authorized shares of New Equity Interests to be distributed under the Plan shall be adjusted as necessary to account for the foregoing rounding.

Except with respect to the ordinary course payment in Cash of interest arising under the Prepetition 1.5L Notes Indenture or the Prepetition 2L Notes Indenture, none of the Reorganized Debtors or the Disbursing Agent shall have any obligation to make a Cash distribution that is less than two hundred and fifty dollars ($250) to any Holder of an Allowed Claim.

3. <u>Undeliverable Distributions and Unclaimed Property.</u>

In the event that any distribution to any Holder of Allowed Claims is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under Bankruptcy Code section 347(b) at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims to such property or interest in property shall be discharged and forever barred.

E.      *Manner of Payment.*

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, any applicable withholding or reporting agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Combined Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

I.      *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)*, on the Effective Date.

J.      *Setoffs and Recoupment.*

Except as expressly provided in this Plan, each Reorganized Debtor may, pursuant to Bankruptcy Code section 553, set off and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Claims Paid or Payable by Third Parties.*

1.      <u>Claims Paid by Third Parties.</u>

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is fully repaid.

2.   Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.   Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything to the contrary contained herein (including Article III of the Plan), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers, under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.   *Disputed Claims Process.*

1.   No Filing of Proofs of Claim or Interest.

Except as otherwise provided in this Plan, Holders of Claims or Interests shall not be required to File a Proof of Claim or proof of interest, and no parties should File a Proof of Claim or proof of interest.  All Filed Proofs of Claims shall be deemed objected to and Disputed without further action by the Debtors or Reorganized Debtors; *provided*, *however*, that the Debtors and the Reorganized Debtors, as applicable, reserve the right to object to any Claim or Interest that is entitled, or deemed to be entitled, to a distribution under this Plan or is rendered Unimpaired under this Plan.  Instead, the Debtors intend to make distributions, as required by this Plan, in accordance with the books and records of the Debtors.  For the avoidance of doubt, the Plan does not intend to impair or otherwise impact the rights of Holders of General Unsecured Claims or the Debtors' customers.

**If any such Holder of a Claim or an Interest disagrees with the Debtors' books and records with respect to the Allowed amount of such Holder's Claim or Interest, such Holder must so advise the Debtors in writing within 30 days of receipt of any distribution on account of such Holder's Claim or Interest, in which event the Claim or Interest shall become a Disputed Claim or a Disputed Interest.  The Reorganized Debtors intend to attempt to resolve any such disputes consensually or through judicial means outside the jurisdiction of the Bankruptcy Court.**

Nevertheless, the Reorganized Debtors may, in their discretion, File with the Bankruptcy Court (or any other court of competent jurisdiction) an objection to the allowance of any Claim or Interest or any other appropriate motion or adversary proceeding with respect thereto.  All such objections shall be litigated to Final Order; *provided*, *however*, that the Reorganized Debtors may compromise, settle, withdraw, or resolve by any other method approved by the Bankruptcy Court any objections to Claims or Interests.

**Except as otherwise provided herein, all Proofs of Claim Filed before or after the Effective Date shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

2. <u>Claims Estimation.</u>

Any Debtor or Reorganized Debtor, as applicable, may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether such Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal related to any such objection. Notwithstanding any provision otherwise in this Plan, a Claim against any Debtor that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism.

B.   *Allowance of Claims and Interests.*

Except as expressly provided herein or any order entered in the Chapter 11 Cases on or before the Effective Date (including the Combined Order), no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under the Bankruptcy Code or under this Plan, or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim under Bankruptcy Code section 502. Except as expressly provided in any order entered in the Chapter 11 Cases on or before the Effective Date (including the Combined Order), the Reorganized Debtors after Confirmation shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest as of the Petition Date.

C.   *Claims Administration Responsibilities.*

From and after the Effective Date, the Reorganized Debtors shall have the exclusive authority to File, settle, compromise, withdraw or litigate to judgment any objections to Claims or Interests as permitted under this Plan. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court. The Reorganized Debtors shall administer and adjust the Claims Register and their respective books and records to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court. The Reorganized Debtors also reserve the right to resolve any Disputed Claim or Disputed Equity Interest in an appropriate forum outside the jurisdiction of the Bankruptcy Court under applicable governing law.

D.   *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest, any Claim that is substantiated by an invoice that is invalid, previously rejected, or otherwise deemed erroneous by the Debtors, any Claim asserted solely on the basis of an Equity Interest (other than a 510(b) Claim), or any Claim or Interest that has been paid, satisfied, amended, or superseded, may be adjusted on the Claims Register by the Reorganized Debtors without filing a claim objection and without any further notice or action by the Reorganized Debtors or any order or approval of the Bankruptcy Court.

E.   *Disallowance of Claims or Interests.*

All Claims and Interests of any Entity from which property is sought by the Debtors under Bankruptcy Code sections 542, 543, 550, or 553 or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under Bankruptcy Code sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) shall be disallowed if: (1) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned Bankruptcy Code sections; and (2) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests.*

Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan, the Combined Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not:  (1) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (2) the Holder of such a Claim or Interest has accepted the Plan.  The Combined Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.      *Release of Liens.*

**Except as otherwise provided in the Exit Facility Documents, the Plan, the Combined Order, any Canadian Court order with respect to the Canadian charges, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, the Securitization Facilities Claims, and the Postpetition Securitization Facilities Claims, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Combined Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

C.      *Releases by the Debtors.*

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule,**

40

statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "<u>Debtor Releases</u>").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence. For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.     *Releases by Third Parties.*

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other

Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

E.      *Exculpation.*

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F.      *Injunction.*

**Except as otherwise expressly provided in this Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Canadian Recognition Proceeding and the Information Officer.**

G.      *Protections Against Discriminatory Treatment.*

Consistent with Bankruptcy Code section 525 and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to Bankruptcy Code section 502(e)(1)(B), then to the extent that such Claim is contingent as of the time of allowance or

disallowance, such Claim shall be forever disallowed and expunged notwithstanding Bankruptcy Code section 502(j) , unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.      the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed in a manner consistent in all material respects with the RSA and the Plan;

2.      the RSA shall not have been terminated as to all parties thereto and shall remain in full force and effect; and

3.      the Plan shall not have been amended, altered, or modified from the form in effect as of the commencement of solicitation unless such amendment, alteration, or modification has been made in accordance with Article X of the Plan and the RSA.

B.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C hereof:

1.      the RSA shall not have been terminated as to all parties thereto in accordance with its terms and shall be in full force and effect;

2.      the Bankruptcy Court shall have entered the DIP Orders and the Final DIP Order shall be in full force and effect;

3.      no default or event of default shall have occurred and be continuing under the DIP Facility or any DIP Order;

4.      the Bankruptcy Court shall have entered the Securitization Orders and the Final Securitization Order shall be in full force and effect;

5.      the Bankruptcy Court shall have entered the Combined Order in form and substance consistent with the RSA, and the Combined Order shall have become a Final Order;

6.      the Canadian Court shall have entered an order recognizing the Combined Order;

7.      the Definitive Documents shall (i) be consistent with the RSA and otherwise approved by the applicable parties thereto consistent with their respective consent and approval rights as set forth in the RSA, (ii) have been executed or deemed executed and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties, and (iii) shall be adopted on terms consistent with the RSA;

8.      all authorizations, consents, regulatory approvals, rulings, actions, documents, and agreements necessary to implement and consummate the Plan and the Restructuring Transactions shall have been

obtained, effected, and executed, and all waiting periods imposed by any governmental entity shall have terminated or expired;

9.  the Exit Facility Documents shall have been executed and delivered by each party thereto, and each of the conditions precedent related thereto shall have been satisfied or waived (with the consent of the Required Consenting Stakeholders), other than such conditions that relate to the effectiveness of the Plan and related transactions, including payment of fees and expenses;

10.  the New Equity Interests shall have been issued;

11.  Reorganized CURO shall have entered into the New Warrant Agreement and the New Warrants shall have been issued;

12.  Reorganized CURO shall have entered into the CVR Agreement with the CVR Agent and, to the extent applicable, shall have commenced the CVR Distribution Framework;

13.  all steps necessary to consummate the Restructuring Transactions as set forth in the Description of Transaction Steps shall have been effected;

14.  all Restructuring Expenses shall have been paid in full;

15.  the Debtors and each other party thereto shall have entered into Securitization Facilities Amendments with respect to each Securitization Facility in form and substance satisfactory to the Required Consenting Stakeholders and the Securitization Facilities Amendments shall not have been amended, supplemented, otherwise modified, or terminated (other than in accordance with the terms thereof during the Chapter 11 Cases to the extent agreed to by the Required Consenting Stakeholders), and shall be in full force and effect immediately upon the Effective Date;

16.  each of the conditions precedent to the effectiveness of the Securitization Facilities Amendments after the Effective Date (other than the occurrence of the Effective Date of this Plan) shall have been satisfied or waived in accordance with the terms of the Securitization Facilities Amendments;

17.  the Debtors and each other party thereto shall have entered into all the Private Placement Notes Amendment and the Private Placement Notes Amendment shall not have been amended, supplemented, otherwise modified or terminated (other than in accordance with the terms thereof during the Chapter 11 Cases to the extent agreed to by the Required Consenting Stakeholders) and shall be in full force and effect; and

18.  no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing, or prohibiting the consummation of the Restructuring Transactions, the RSA, or any of the Definitive Documents contemplated hereby.

C.    *Waiver of Conditions.*

The conditions precedent to Confirmation of the Plan and to the Effective Date set forth in this Article IX may be waived in whole or in part at any time by the Debtors only with the prior written consent of the Required Consenting Stakeholders (email shall suffice), without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

D.    *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity;

or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity, respectively; *provided* that all provisions of the RSA that survive termination thereof shall remain in effect in accordance with the terms thereof.

E.      *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in Bankruptcy Code section 1101(2), shall be deemed to occur on the Effective Date.

# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments.*

Except as otherwise specifically provided in the Plan and to the extent permitted by the RSA, the Debtors reserve the right to amend or modify the Plan, whether such amendment or modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such amended or modified Plan. Subject to those restrictions on modifications set forth in the Plan and the RSA, and the requirements of Bankruptcy Code section 1127, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, Bankruptcy Code sections 1122, 1123, and 1125, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Combined Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Notwithstanding anything to the contrary herein, the Debtors shall not amend or modify the Plan in a manner inconsistent with the RSA or the consent rights (if any) set forth in the DIP Facility Documents.

B.      *Effect of Confirmation on Modifications.*

Entry of a Combined Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

To the extent permitted by the RSA (including the consent, approval, and consultation rights set forth therein), the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Combined Order and the occurrence of the Effective Date, on and after the Effective Date, other than with respect to the Canadian Recognition Proceeding and the Information Officer, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan pursuant to Bankruptcy Code sections 105(a) and 1142, including jurisdiction to:

1.   allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.   decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.   resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure pursuant to Bankruptcy Code section 365; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.   ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.   modify the Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127; modify the Combined Order or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Disclosure Statement or the Combined Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Combined Order or any contract, instrument, release or other agreement or document entered into, delivered or created in connection with the Plan, the Disclosure Statement or the Combined Order, in such manner as may be necessary or appropriate to consummate the Plan;

6.   adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7.   adjudicate, decide, or resolve any and all matters related to Bankruptcy Code sections 1141 and 1145;

8.   enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.   enter and enforce any order for the sale of property pursuant to Bankruptcy Code sections 363, 1123, or 1146(a);

10.   resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.   issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.   resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

13.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.K hereof;

14.  enter and implement such orders as are necessary or appropriate if the Combined Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.  determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Combined Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan, or the Disclosure Statement;

16.  enter an order concluding or closing the Chapter 11 Cases;

17.  adjudicate any and all disputes arising from or relating to distributions under the Plan;

18.  consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Combined Order;

19.  determine requests for the payment of Claims and Interests entitled to priority pursuant to Bankruptcy Code section 507;

20.  hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Combined Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.  hear and determine matters concerning any tax matters relating to the restructuring, including state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505, and 1146;

22.  hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

23.  enforce all orders previously entered by the Bankruptcy Court; and

24.  hear any other matter not inconsistent with the Bankruptcy Code.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the Governance Documents, the Exit Facility Documents, and the Securitization Facilities Amendments shall be governed by the jurisdictional provisions therein and the Bankruptcy Court shall not retain any jurisdiction with respect thereto.

### ARTICLE XII.
### MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents.*

On or before the Effective Date, and consistent in all respects with the terms of the RSA, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to Bankruptcy Code section 1128, shall be paid by each of the Reorganized Debtors (or the Disbursing Agent on behalf of each of the Reorganized Debtors) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, if any, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases. The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Combined Order, and the Combined Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, manager, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered addressed as follows:

1.      if to the Debtors, to:

CURO Group Holdings Corp.
101 N. Main Street, Suite 600
Greenville, SC 29601
Attention:  Rebecca Fox, Chief Legal Officer and Corporate Secretary
Email address:  beccafox@curo.com

with copies to:

Akin Gump Strauss Hauer & Feld LLP

49

2300 N. Field Street, Suite 1800
Dallas, Texas 75201
Attention:  Sarah Link Schultz and Patrick Wu
E-mail address:  sschultz@akingump.com; pwu@akingump.com

and

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attention:  Michael S. Stamer, Anna Kordas, Omid Rahnama
E-mail address:  mstamer@akingump.com; akordas@akingump.com; orahnama@akingump.com

2.    if to a member of the Ad Hoc Group, to:

Wachtell, Lipton, Rosen & Katz
51 W 52nd Street
New York, New York 10019
Attention: Joshua A. Feltman, Neil M. Snyder
E-mail address: jafeltman@wlrk.com; nmsnyder@wlrk.com

After the Effective Date, the Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Combined Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Bankruptcy Code sections 105 or 362 or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Combined Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Combined Order shall remain in full force and effect in accordance with their terms.

I.      *Entire Agreement.*

Except as otherwise indicated, and without limiting the effectiveness of the RSA, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://dm.epiq11.com/Curo or the Bankruptcy Court's website at www.txs.uscourts.gov/bankruptcy.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, subject to the terms of the RSA, the Bankruptcy Court shall have the power to alter and

interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Combined Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent, *provided* that any such deletion or modification must be consistent with the RSA and the consent rights contained in each of them; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Combined Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to Bankruptcy Code section 1125(e), the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Cases.*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases. Following entry of the Combined Order, CURO shall seek an order of the Canadian Court permitting the discharge of the Information Officer and termination of the Canadian Recognition Proceeding upon written notice from CURO to the Information Officer that the Effective Date has occurred and the Information Officer's delivery to the CURO of a termination certificate.

N.      *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

O.      *Tax Reporting and Compliance*

The Reorganized Debtors shall be authorized to request an expedited determination under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

P.      *Creditor Default*

An act or omission by a Holder of a Claim or an Interest in contravention of the provisions of this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtors may seek to hold the defaulting party in contempt of the Combined Order and may be entitled to reasonable attorneys' fees and costs of the Reorganized Debtors in remedying such default. Upon the finding of such a default by a Holder of a Claim or Interest, the Bankruptcy Court may: (i) designate a party to appear, sign, and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Bankruptcy Rule 7070; (ii) enforce this Plan by order of specific performance; (iii) award judgment against such defaulting Holder of a Claim or Interest in favor of the

Reorganized Debtors in an amount, including interest, to compensate the Reorganized Debtors for the damages caused by such default; and (iv) make such other order as may be equitable that does not materially alter the terms of the Plan.

[*Remainder of page intentionally left blank.*]

Dated:  March 28, 2024

CURO GROUP HOLDINGS CORP.
on behalf of itself and all other Debtors


By: */s/ Douglas Clark*
    Name:  Douglas Clark
    Title:   Chief Executive Officer