United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 01, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | **Re Docket No. 46** |

**ORDER (I) SCHEDULING A COMBINED DISCLOSURE STATEMENT APPROVAL AND PLAN CONFIRMATION HEARING; (II) CONDITIONALLY APPROVING THE DISCLOSURE STATEMENT; (III) ESTABLISHING A PLAN AND DISCLOSURE STATEMENT OBJECTION DEADLINE AND RELATED PROCEDURES; (IV) APPROVING THE SOLICITATION PROCEDURES; (V) APPROVING THE COMBINED NOTICE; (VI) EXTENDING THE TIME BY WHICH THE U.S. TRUSTEE CONVENES A MEETING OF CREDITORS AND (VII) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (i) scheduling the Combined Hearing; (ii) conditionally approving the Disclosure Statement; (iii) establishing the Objection Deadline and approving related procedures; (iv) approving the Solicitation Procedures; (v) approving the form and manner of the Combined Notice; (vi) approving the form and manner of the Publication Notice; (vii) approving the form of the Opt-Out Forms; (viii) approving the form of the Ballots; (ix) extending the time by which the U.S. Trustee convenes the Creditors' Meeting under Bankruptcy Code section 341(e) until May 14, 2024, and without prejudice to the Debtors' ability to request additional extensions for cause; (x) allowing the notice period for the Disclosure Statement and the Combined Hearing to run simultaneously; and (xi) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Motion.

jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "<u>Hearing</u>"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Combined Hearing, at which time this Court will consider, among other things, final approval of the adequacy of the Disclosure Statement and confirmation of the Plan, shall be held on **May 14, 2024, at 1:30 p.m., prevailing Central Time**.

2.      The Disclosure Statement is conditionally approved and its use in the Debtors' prepetition and postpetition solicitation of acceptances of the Plan is approved.

3.      The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims, Holders of Interests, and other parties in interest with sufficient notice of the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

4.      Any objections to the adequacy of the Disclosure Statement and confirmation of the Plan must be filed on or before **May 7, 2024, at 4:00 p.m., prevailing Central Time**.

5.      Any objections to the Disclosure Statement or confirmation of the Plan must:

      a.      be in writing;

      b.      comply with the Bankruptcy Rules and the Bankruptcy Local Rules;

      c.      state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity;

      d.      state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and

      e.      be filed with this Court with proof of service thereof and served upon the Notice Parties so as to be actually received by the Objection Deadline.

6.      Any objections not satisfying the requirements of this Order shall not be considered and shall be overruled.

7.      The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages as set forth in the Motion in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including any applicable registration requirements under the Securities Act, and any exemptions from registration under Blue Sky requirements and are approved.

8.      The form of the Combined Notice, substantially in the form attached hereto as **Exhibit 1**, the Publication Notice, substantially in the form attached hereto as **Exhibit 2**, and the Opt-Out Forms, substantially in the forms attached hereto as **Exhibits 3**, **3A**, **3B**, and **3C**, and service thereof, comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and are approved.

9.      The Confirmation Schedule is approved (subject to modification as necessary) as follows:

| Event | Date |
|---|---|
| Voting Record Date | March 13, 2024 |
| Solicitation Commencement Date | March 24, 2024 |
| Voting Deadline | April 19, 2024, at 4:00 p.m., prevailing Central Time |
| Opt-Out Deadline | April 19, 2024, at 4:00 p.m., prevailing Central Time |
| Objection Deadline | May 7, 2024, at 4:00 p.m., prevailing Central Time |
| Combined Hearing | May 14, 2024, or such other date as the Court may direct |

10.     The Solicitation Packages provide the Holders of Claims and Interests entitled to vote on the Plan with adequate information to make informed decisions with respect to voting on the Plan in accordance with Bankruptcy Rules 2002(b) and 3017(d), the Bankruptcy Code and the Bankruptcy Local Rules.  Service of the Solicitation Packages shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

11.     The Debtors are authorized to enter into transactions to cause the Publication Notice to be published in the *New York Times* within five (5) business days following entry of this Order, or as soon as reasonably practicable thereafter, and to make reasonable payments required for such publication.  The Publication Notice, together with the Combined Notice provided for in the Motion, is deemed to be sufficient and appropriate under the circumstances.

12.     The Ballots, substantially in the forms attached hereto as **Exhibits 4A**, **4B**, **4C**, **4D**, **4E**, **4F**, **4G**, and **4H** are approved.

13.     The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Motion and as provided by the Ballot are approved.

14.     The Debtors are authorized, subject to any consent rights set forth in the RSA, to make non-substantive changes to the Disclosure Statement, the Plan, the Solicitation Packages, the Combined Notice, the Publication Notice, the Opt-Out Forms, the Ballots and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan and any materials in the Solicitation Packages before distribution.

15.     The time by which the U.S. Trustee convenes a Creditors' Meeting under Bankruptcy Code section 341(e) is extended to and including May 14, 2024, without prejudice to the Debtors' right to request further extensions or a waiver thereof either by agreement with the U.S. Trustee or by further motion.

16.     The notice and objection procedures set forth in this Order and the Motion constitute good and sufficient notice of the Confirmation Hearing, commencement of these Chapter 11 Cases, deadline, and procedures for objection to approval of the Solicitation Procedures, adequacy of the Disclosure Statement, and confirmation of the Plan, and no other or further notice shall be necessary.

17.     The Debtors are not required to mail a copy of the Plan or the Disclosure Statement to Holders of Claims that are unimpaired under, and conclusively presumed to accept, the Plan or Holders of Claims that do not receive or retain any property under, and conclusively presumed to reject, the Plan.

18.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

19.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

21.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed:  April 01, 2024

_____
Marvin Isgur
United States Bankruptcy Judge

## Exhibit 1

**Combined Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF (I) COMMENCEMENT OF
PREPACKAGED CHAPTER 11 BANKRUPTCY
CASES; (II) HEARING ON THE DISCLOSURE STATEMENT,
CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11
PLAN, AND RELATED MATTERS; AND (III) OBJECTION DEADLINES
AND SUMMARY OF THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

**NOTICE IS HEREBY GIVEN** as follows:

On March 25, 2024 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 50] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed disclosure statement [Docket No. 51] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection, for a fee, at https://pacer.gov (account required) or, free of charge, on the Debtors' restructuring website at https://dm.epiq11.com/Curo.[2]

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

The Plan is a "prepackaged" plan of reorganization.  The Debtors believe that any valid alternative to confirmation of the Plan would result in significant delays, litigation, and additional costs and, ultimately, would jeopardize recoveries for holders of allowed claims.

## **Hearing on Confirmation of the Plan and the Adequacy of the Disclosure Statement**

A hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge, in Courtroom 404 of the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on May 14, 2024, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto and any other matter that may properly come before the Bankruptcy Court.  Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

## **Information Regarding the Plan**

**Voting Record Date**.  The voting record date was **March 13, 2024**, which was the date used for determining which Holders of Claims in Classes 3, 4 and 5 and Interests in Class 11 were entitled to vote on the Plan.

**Objections to the Plan**.  The deadline for filing objections to the Plan is **May 7, 2024, at 4:00 p.m., prevailing Central Time**.  Any objections (each, an "Objection") to the Plan or the Disclosure Statement must:  (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity; and (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections.

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

<div style="border:1px solid black;">

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AND <u>ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE</u>. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

</div>

  Objections must be filed with the Bankruptcy Court and served so as to be **actually received** no later than **May 7, 2024, at 4:00 p.m., prevailing Central Time**, by those parties who have filed a notice of appearance in the Debtors' chapter 11 cases as well as the following parties:

| | |
|---|---|
| **Debtors** | **CURO Group Holdings Corp.**<br>101 N. Main Street, Suite 600<br>Greenville, SC 29601<br>Attn: Rebecca Fox |
| **Proposed Counsel to the Debtors** | **Akin Gump Strauss Hauer & Feld LLP**<br>2300 N. Field Street, Suite 1800<br>Dallas, TX 75201-2481<br>Attn: Sarah Link Schultz and Patrick Wu<br><br>-and-<br><br>One Bryant Park<br>New York, NY 10036-6745<br>Attn: Michael S. Stamer, Anna Kordas and Omid Rahnama |

| United States Trustee | Office of the United States Trustee<br>for the Southern District of Texas<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn:   Ha M. Nguyen and Ross Travis |
|---|---|

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**AS DESCRIBED BELOW, YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

### Summary of Plan Treatment

The following chart summarizes the treatment provided by the Plan to each class of Claims against and Interests in the Debtors, and indicates the voting status of each class.

| SUMMARY OF ESTIMATED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Allowed Amount of Claims | Estimated % Recovery Under Plan[3] |
| Class 1 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction of such Claim, at the option of the applicable Debtor or Reorganized Debtor, upon consultation with the Required Consenting Stakeholders, either: (i) payment in full in Cash of its Allowed Other Secured Claim; (ii) the collateral securing its Allowed Other Secured Claim; (iii) Reinstatement of its Allowed Other Secured Claim; or (iv) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with Bankruptcy Code section 1124. | $0 | 100% |
| Class 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment of its Allowed Claim, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of Bankruptcy Code section 1129(a)(9). | $0 | 100% |

---

[3]   The estimated recovery for Classes 4, 5, and 11 is subject to dilution on account of the Management Incentive Plan.

| | | SUMMARY OF ESTIMATED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Allowed Amount of Claims | Estimated % Recovery Under Plan[3] |
| Class 3 | Prepetition 1L Term Loan Claims | On the Effective Date, each holder of an Allowed Prepetition 1L Term Loan Claim shall receive, in full and final satisfaction of such Claim, its Pro Rata portion of the Second Out Exit Term Loans. | $246.7 million | 100%[4] |
| Class 4 | Prepetition 1.5L Notes Claims | On the Effective Date, each holder of an Allowed Prepetition 1.5L Claim shall receive its Pro Rata share of, (a) 100% of the New Equity Interests, less (b) the Prepetition 2L Notes Distribution and the DIP Equity Fees, subject to dilution by the New Warrants and the Management Incentive Plan. | $715.8 million | 42% |
| Class 5 | Prepetition 2L Notes Claims | On the Effective Date, each holder of an Allowed Prepetition 2L Claim shall receive its Pro Rata share of the Prepetition 2L Notes Distribution. | $333.3 million | 11% |
| Class 6 | Securitization Facilities Claims | The Securitization Facilities Claims shall be, at the option of the Debtors or Reorganized Debtors, as applicable, upon consultation with the Required Consenting Stakeholders, either: (i) Reinstated as of the Effective Date, in accordance with the terms of the Securitization Facilities Amendments, (ii) paid in full in Cash on the Effective Date, or (iii) receive such other treatment as agreed with each holder of the Securitization Facilities Claim. | Undetermined | 100% |
| Class 7 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, at the option of the applicable Debtor or Reorganized Debtor, upon consultation with the Required Consenting Stakeholders, either: (i) Reinstatement of such Allowed General Unsecured Claim pursuant to Bankruptcy Code section 1124; or (ii) payment in full in Cash on (A) the Effective Date or (B) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Unsecured Claim. | $29 - $35 million | 100% |
| Class 8 | Intercompany Claims | Each Allowed Intercompany Claim shall be, at the option of the applicable Debtor, after consultation with the Required Consenting Stakeholders, either Reinstated, converted to equity, otherwise set off, settled, distributed, contributed, canceled, or released, in each case, in accordance with the Description of Transaction Steps; provided however that all Intercompany Claims owing to any of the Canadian Debtors or any Canadian non-Debtor Affiliates shall be Reinstated and paid in the ordinary course. | N/A | 100% |

---

[4] Note that while Holders of Claims in Class 3 will receive recovery on account of their Claims, their liens upon emergence will be junior to Second Out Exit Term Loans and, therefore, Class 3 is Impaired.

| SUMMARY OF ESTIMATED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Interest | Treatment of Claim/ Interest | Projected Allowed Amount of Claims | Estimated % Recovery Under Plan[3] |
| Class 9 | Section 510(b) Claims | On the Effective Date, all Section 510(b) Claims will be cancelled, released, discharged, and extinguished and will be of no further force or effect, and Holders of Section 510(b) Claims will not receive any distribution on account of such Section 510(b) Claims. | N/A | 0% |
| Class 10 | Intercompany Interests | On the Effective Date, Intercompany Interests shall, at the election of the applicable Debtor, after consultation with the Required Consenting Stakeholders, be either (i) Reinstated or (ii) set off, settled, addressed, distributed, contributed, merged, canceled, or released, in each case, in accordance with the Description of Transaction Steps; provided, however, that notwithstanding anything herein to the contrary, the Intercompany Interests in the SPVs (as defined in the Disclosure Statement) shall vest in the Reorganized Debtors free and clear of all Liens, charges, Claims (other than Securitization Facilities Claims or Claims arising under the Securitization Facilities Amendments) or other encumbrances on the Effective Date. | N/A | 100% |
| Class 11 | Existing CURO Interests | On the Effective Date, Holders of Existing CURO Interests shall receive, in full and final satisfaction of such Interests, their Pro Rata share of CVRs as further described in Article IV.L of the Plan, provided, that, if the CVR Distribution Framework is applicable, then in the event that a Potential CVR Recipient would be eligible to receive CVRs but for the limitation on the Maximum CVR Recipients, Cash in lieu of CVRs, provided, further, that if the Cash to be distributed to a particular beneficial holder in lieu of CVRs is less than the minimum distribution amount set forth in Article VI.D.2 of the Plan, then such holder shall not receive any additional Cash nor any rights under or interest in the CVRs. | $4 million | TBD[5] |

## Discharge, Injunctions, Exculpation, and Releases

Please be advised that the Plan contains certain release, exculpation, and injunction provisions as follows:

## Relevant Definitions

"**Exculpated Parties**" means, collectively, and in each case in its capacity as such:

---

[5]   Holders of Existing CURO Interests will receive CVRs in exchange for their Interests.  Due to the instrument's contingent nature, no Effective Date value has been assigned.

(a) the Debtors, and (b) the directors, officers, or managers of any Debtor.

"**Released Party**" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Agent/Trustee; (e) each DIP Backstop Party and each DIP Lender; (f) the Information Officer; (g) the Securitization Facilities Parties; (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

"**Releasing Party**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) each DIP Backstop Party and each DIP Lender; (e) each Agent/Trustee; (f) the Securitization Facilities Parties; (g) each Consenting Stakeholder; (h) all Holders of Claims or Interests that vote to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) with respect to each of the Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

**PLEASE NOTE THAT IF YOU HAVE PREVIOUSLY RECEIVED A BALLOT IN CONNECTION WITH THE PLAN, THE DEFINITION OF "RELEASING PARTY" HAS BEEN UPDATED AS FOLLOWS (ADDED LANGUAGE IN BLUE UNDERLINED FONT BELOW):**

"**Releasing Party**" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) each DIP Backstop Party and each DIP Lender; (e) each Agent/Trustee; (f) the Securitization Facilities Parties; (g) each Consenting Stakeholder; (h) all Holders of Claims or Interests that vote to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan

by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) with respect to each of the Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

**A.** *Discharge of Claims and Termination of Interests.*

**Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan, the Combined Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i), in each case whether or not: (1) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Bankruptcy Code section 502; or (2) the Holder of such a Claim or Interest has accepted the Plan. The Combined Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.**

**B.** *Release of Liens*.

**Except as otherwise provided in the Exit Facility Documents, the Plan, the Combined Order, any Canadian Court order with respect to the Canadian charges, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, the Securitization Facilities Claims, and the Postpetition Securitization Facilities Claims, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the**

Reorganized Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Reorganized Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Combined Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## C.  *Releases by the Debtors*.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or

omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "<u>Debtor Releases</u>").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.  For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**D.** *Releases by Third Parties*.

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to

assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "__Third-Party Releases__").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

E.  *Exculpation*.

To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under

the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

F. *Injunction.*

Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim

of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Canadian Recognition Proceeding and the Information Officer.

Dated: March 28, 2024
Houston, Texas

/s/ Sarah Link Schultz
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
        pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
        akordas@akingump.com
        orahnama@akingump.com

*Proposed Counsel to the Debtors*

## Exhibit 2

**Proposed Publication Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF COMMENCEMENT
OF PREPACKAGED CHAPTER 11 BANKRUPTCY CASES
AND HEARING ON THE DISCLOSURE STATEMENT AND
CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN**

**TO:    ALL HOLDERS OF CLAIMS, HOLDERS OF INTERESTS, AND PARTIES IN
INTEREST IN THE ABOVE-CAPTIONED CHAPTER 11 CASES**

**PLEASE TAKE NOTICE THAT** on March 25, 2024 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 50] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and proposed disclosure statement [Docket No. 51] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code").  Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time.  The Plan and the Disclosure Statement also are available for inspection, for a fee, at https://pacer.gov (account required) or, free of charge, on the Debtors' restructuring website at https://dm.epiq11.com/Curo.[2]

**PLEASE TAKE FURTHER NOTICE THAT** a hearing (the "Combined Hearing") will be held before the Honorable Marvin Isgur, United States Bankruptcy Judge, in Courtroom 404 of

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable.  The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein.  To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control.  For a more detailed description of the Plan, please refer to the Disclosure Statement.

the United States Bankruptcy Court, 515 Rusk Street Houston, Texas 77002, on May 14, 2024, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court.  Please be advised that the Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on other parties entitled to notice.

**PLEASE TAKE FURTHER NOTICE THAT** objections (each, an "Objection"), if any, to the Plan or the Disclosure Statement must:  (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the of the Bankruptcy Local Rules for the Southern District of Texas; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest beneficially owned by such entity or individual; (d) state with particularity the legal and factual basis for such objections, and, if practicable, a proposed modification to the Plan that would resolve such objections; and (e) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served so as to be **actually received** no later than **May 7, 2024, at 4:00 p.m., prevailing Central Time**, by those parties who have a filed a notice of appearance in the Debtors' chapter 11 cases as well as each of the following parties:

| | |
|---|---|
| **Debtors** | **CURO Group Holdings Corp.**<br>101 N. Main Street, Suite 600<br>Greenville, SC 29601<br>Attn:   Rebecca Fox |
| **Proposed Counsel to the Debtors** | **Akin Gump Strauss Hauer & Feld LLP**<br>2300 N. Field Street, Suite 1800<br>Dallas, TX 75201-2481<br>Attn:   Sarah Link Schultz and Patrick Wu<br><br>-and-<br><br>One Bryant Park<br>New York, NY 10036-6745<br>Attn: Michael S. Stamer, Anna Kordas and Omid Rahnama |

| | |
|---|---|
| **United States Trustee** | **Office of the United States Trustee** |
| | **for the Southern District of Texas** |
| | 515 Rusk Street, Suite 3516 |
| | Houston, Texas 77002 |
| | Attn:   Ha M. Nguyen and Ross Travis |

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS A THIRD-PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (X) ELECT TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE VIII OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

## Exhibit 3

**Notice of Non-Voting Status**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Joint Administration Requested) |
| | ) | |

NOTICE OF NON-VOTING STATUS
TO HOLDERS OR POTENTIAL HOLDERS
OF UNIMPAIRED CLAIMS CONCLUSIVELY
PRESUMED TO ACCEPT THE PLAN AND HOLDERS OR POTENTIAL
HOLDERS OF IMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO REJECT THE PLAN

PLEASE TAKE NOTICE THAT on March 25, 2024 (the "Petition Date"), CURO Group Holdings Corp. and its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") the *Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 50] (as amended, supplemented, or otherwise modified from time to time, the "Plan") and a related disclosure statement [Docket No. 51] (as amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") pursuant to sections 1125 and 1126(b) of title 11 of the United States Code (the "Bankruptcy Code"). Copies of the Plan and the Disclosure Statement may be obtained upon request of the Debtors' proposed counsel at the address specified below and are on file with the Clerk of the Court, 515 Rusk Street, Houston, Texas 77002, where they are available for review between the hours of 8:00 a.m. to 5:00 p.m., prevailing Central Time. The Plan and the Disclosure Statement also are available for inspection, for a fee, at https://pacer.gov (account required) or, free of charge, on the Debtors' restructuring website at https://dm.epiq11.com/Curo.

PLEASE TAKE FURTHER NOTICE THAT you are a Holder or potential Holder of a Claim against or Interest in the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, *is **not** entitled to vote on the Plan*. Specifically, under the terms of the Plan, a Holder of a Claim in a Class that is not Impaired under the Plan and, therefore, conclusively presumed to have accepted the Plan pursuant to Bankruptcy Code section 1126(f) or a Holder of a Claim or Interest in a Class that is Impaired under the Plan and, therefore, conclusively presumed to have rejected the Plan pursuant to Bankruptcy Code section 1126(g), is *not* entitled to vote on the Plan.

PLEASE TAKE FURTHER NOTICE THAT if you would like to **obtain a copy of the Disclosure Statement, the Plan or related documents at no additional cost**, you should contact Epiq Corporate Restructuring, LLC, the Debtors' solicitation agent in the chapter 11 cases (the "Claims and Noticing Agent"), by: (a) visiting the Debtors' restructuring website at: https://dm.epiq11.com/Curo; (b) writing to CURO Group Holdings Corp. Processing Center, c/o Epiq Corporate Restructuring, LLC, P.O. Box 4422 Beaverton, OR 97076-4422; (c) contacting the Claims and Noticing Agent at

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

CURO@epiqglobal.com; and/or (d) calling the Debtors' restructuring hotline at (877) 354-3909 (USA or Canada); +1 (971) 290-1442 (International).

**PLEASE TAKE FURTHER NOTICE THAT** the following provisions are included in the Plan:

**ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D CONTAINS THE FOLLOWING THIRD-PARTY RELEASE (THE "THIRD-PARTY RELEASE"):**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "Third-Party Releases").**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.**

**Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan;**

2

**(3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Third-Party Release under the Plan:

"**RELEASED PARTY**" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

"**RELEASING PARTY**" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

<center>*       *       *</center>

<center>3</center>

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE RELEASES, EXCULPATION, INJUNCTION AND THIRD-PARTY RELEASES PROVIDED IN THE PLAN.  IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

Dated: March 28, 2024
        Houston, Texas

/s/ Sarah Link Schultz

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Sarah Link Schultz (State Bar No. 24033047;
S.D. Tex. 30555)
Patrick Wu (State Bar No. 24117924;
S.D. Tex. 3872088)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: sschultz@akingump.com
        pwu@akingump.com

-and-

Michael S. Stamer (*pro hac vice* pending)
Anna Kordas (*pro hac vice* pending)
Omid Rahnama (*pro hac vice* pending)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: mstamer@akingump.com
        akordas@akingump.com
        orahnama@akingump.com

*Proposed Counsel to the Debtors*

**Exhibit 3A**

**Opt-Out Form (Master)**

**MASTER OPT-OUT FORM**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS MASTER OPT-OUT FORM.

**THIS MASTER OPT-OUT FORM MUST BE COMPLETED, EXECUTED AND RETURNED TO EPIQ CORPORATE RESTRUCTURING, LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>") SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024 (THE "<u>OPT-OUT DEADLINE</u>").**

This Master Opt-Out Form may not be used for any purpose other than conveying their Beneficial Holder clients' elections to opt out of the Third-Party Release contained in the Plan.  If you believe you have received this Master Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent <u>immediately</u> by calling (877) 354-3909 (USA or Canada); +1 (971) 290-1442 (International) or sending an electronic message via email to <u>CURO@epiqglobal.com</u>.  Nothing contained herein or in the enclosed documents shall render you or any other entity an agent of the Debtors or the Claims and Noticing Agent or authorize you or any other entity to use any document or make any statements on behalf of any of the Debtors with respect to the Plan, except for the statement contained in the documents enclosed herewith.

You are required to distribute the Beneficial Holder Opt-Out Form contained herewith to your Beneficial Holder clients holding Interests in CURO Group Holdings Corp. ("<u>Curo</u>") as of March 13, 2024 (the "<u>Opt-Out Record Date</u>"), within five business days of your receipt of the Solicitation Packages in which this Master Opt-Out Form was included.  With respect to the Beneficial Holder Opt-Out Forms returned to you, you must (1) execute this Master Opt-Out Form so as to reflect the Third-Party Release elections set forth in such Beneficial Holder Opt-Out Forms and (2) forward this Master Opt-Out Form to the Claims and Noticing Agent in accordance with the Form Instructions accompanying this Master Opt-Out Form. **Any election delivered to you by a Beneficial Holder shall not be counted unless you complete, sign, and return this Master Opt-Out Form to the Claims and Noticing Agent so that it is actually received by the Opt-Out Deadline.**

Before completing this Master Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Master Opt-Out Form" carefully to ensure that you complete, execute, and return this Master Opt-Out Form properly.

<u>Item 1</u>. **Certification of Authority to Make Elections.**

The undersigned certifies that as of the Opt-Out Record Date, the undersigned:

☐       Is a Nominee for the Beneficial Holders in the principal number of Interests in Curo listed in Item 2 below, or

☐       Is acting under a power of attorney or agency (a copy of which will be provided upon request) granted by a Nominee for the Beneficial Holders in the principal number of Interests in Curo listed in Item 2 below, or

☐       Has been granted a proxy (an original of which is attached hereto) from a Nominee for the Beneficial Holders (or the Beneficial Holders itself/themselves) in the principal number of Interests in Curo listed in Item 2 below;

and accordingly, has full power and authority to convey decisions to opt-out of the Third-Party Release, on behalf of the Beneficial Holders of the Interests in Curo described in Item 2.

**Item 2. Optional Third-Party Release Election.**

The undersigned certifies that the information provided below (including any information provided on additional sheets attached hereto) is a true and accurate schedule of the Beneficial Holders of Interests in Curo, as identified by their respective account numbers, that made a decision to opt-out of the Third-Party Release via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary means of conveying such information.

Indicate in the appropriate column below the Beneficial Holder/Account Number of each Beneficial Holder that completed and returned the Beneficial Holder Opt-Out Form and the aggregate number of Interests in Curo held by such Beneficial Holder/Account Number electing to opt-out of the Third-Party Release or attach such information to this Master Opt-Out Form in the form of the following table.

Please complete the information requested below (add additional sheets if necessary):

| Beneficial Holder/Account Number | Amount of Interest in Curo Holders Electing to Opt-Out of Third-Party Release |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |
| 5. | |
| **TOTAL** | |

**Item 3.  Additional Certifications.**

By signing this Master Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

    a.    that either: (i) the undersigned has received a completed Opt-Out Form from each Beneficial Holder of Interests in Curo listed in Item 2 of this Master Opt-Out Form, or (ii) an e-mail, recorded telephone call, internet transmission, facsimile, voting instruction form, or other customary means of communication conveying a decision to opt-out of the releases from each Holder of Interests in Curo;

    b.    that the undersigned is a Nominee (or agent of the Nominee) of the Beneficial Holders of Interests in Curo listed in Item 2 of this Master Opt-Out Form; and

    c.    that the undersigned has properly disclosed for each Beneficial Holder who submitted a Beneficial Holder Opt-Out Form or opt-out decisions via other customary means:  (i) the respective number of the Interests in Curo owned by each Beneficial Holder and (ii) the customer account or other identification number for each such Beneficial Holder.

2

| Institution: | |
|---|---|
| | **(Print or Type)** |
| **DTC Participant Number:** | |
| **Signature:** | |
| **Name of Signatory:** | |
| **Title:** | |
| **Address:** | |
| | |
| | |
| **Date Completed:** | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA (I) ONLINE FORM AT <u>HTTPS://DM.EPIQ11.COM/CURO</u>. CLICK ON THE "E-OPT OUT" SECTION OF THE DEBTORS' WEBSITE AND FOLLOW THE DIRECTIONS TO SUBMIT YOUR OPT OUT. IF YOU CHOOSE TO SUBMIT YOUR BALLOT VIA EPIQ'S E-OPT OUT SYSTEM, YOU SHOULD <u>NOT</u> ALSO RETURN A HARD COPY OF YOUR OPT OUT, OR (II) FIRST CLASS MAIL, OVERNIGHT COURIER OR HAND DELIVERY TO:**

| By first class mail to: | Via overnight courier or hand delivery to: |
|---|---|
| **CURO Group Holdings Corp** | **CURO Group Holdings Corp** |
| c/o Epiq Ballot Processing Center | c/o Epiq Ballot Processing Center |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, OR 97076-4422 | Beaverton, OR 97005 |

> If you have any questions on the procedures for voting on the Plan, please call the Claims and Noticing Agent at: (877) 354-3909 (USA or Canada) or +1 (971) 290-1442 (International).

> IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS MASTER OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024, THEN THE ELECTIONS TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.
>
> OPT-OUT FORMS SENT BY FACSIMILE OR TELECOPY WILL <u>NOT</u> BE ACCEPTED.

**INSTRUCTIONS FOR COMPLETING THIS MASTER OPT-OUT FORM**

1.    Capitalized terms used in the Master Opt-Out Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.    **Distribution of the Opt-Out Forms:**

> ➢ You should immediately distribute the Beneficial Holder Opt-Out Forms accompanied by pre-addressed, postage-paid return envelopes to all Beneficial Holders of Interests in Curo as of the Opt-Out Record Date and take any action required to enable each such Beneficial Holders to make an opt-out election timely. You must include a pre-addressed, postage-paid return envelope or must certify that your Beneficial Holder clients that did not receive return envelopes were provided with electronic or other means (consented to by such Beneficial Holder clients) of returning their Beneficial Holder Opt-Out Forms in a timely manner.

> ➢ Any election delivered to you by a Beneficial Holder shall not be counted until you complete, sign, and return this Master Opt-Out Form to the Claims and Noticing Agent, so that it is actually received by the Opt-Out Deadline.

3.    You should solicit elections from your Beneficial Holder clients via the (a) delivery of duly completed Beneficial Holder Opt-Out Forms or (b) conveyance of their decision to opt-out of the releases via e-mail, telephone, internet application, facsimile, voting instruction form, or other customary and approved means of conveying such information.

4.    With regard to any Beneficial Holder Opt-Out Forms returned to you by a Beneficial Holder, you must: (a) compile and validate the elections and other relevant information of each such Beneficial Holder on the Master Opt-Out Form using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Opt-Out Form; and (c) transmit the Master Opt-Out form to the Claims and Noticing Agent.

5.    **Return of Master Opt-Out Form**: The Master Opt-Out Form must be returned to the Claims and Noticing Agent so as to be **actually received** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **4:00 p.m. (prevailing Central Time) on April 19, 2024**.

6.    If a Master Opt-Out Form is received by the Claims and Noticing Agent after the Opt-Out Deadline, it will not be effective.  Additionally**,** the following Opt-Out Forms will NOT be counted:

> ➢ ANY MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE EQUITY INTEREST;

> ➢ ANY MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE THIRD-PARTY RELEASE;

> ➢ ANY MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

> ➢ ANY UNSIGNED MASTER OPT-OUT FORM; OR

> ➢ ANY MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SCHEDULING ORDER.

7. The method of delivery of Master Opt-Out Forms to the Claims and Noticing Agent is at the election and risk of Nominee.  Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Claims and Noticing Agent **actually receives** the originally executed Master Opt-Out Form.  Nominees should allow sufficient time to assure timely delivery.

8. Multiple Master Opt-Out Forms may be completed and delivered to the Claims and Noticing Agent. Elections reflected by multiple Master Opt-Out Forms will be deemed valid.  If two or more Master Opt-Out Forms are submitted, please mark the subsequent Master Opt-Out Form(s) with the words "Additional Election" or such other language as you customarily use to indicate an additional election that is not meant to revoke an earlier election.

9. The Master Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to transmit elections to opt-out of the Third-Party Release. Holders of Interests in Curo should not surrender certificates (if any) representing their Interests at this time, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates transmitted together with a Master Opt-Out Form.

10. This Master Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

11. Please be sure to sign and date your Master Opt-Out Form.  If you are signing a Master Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Opt-Out Form.

12. No fees or commissions or other remuneration will be payable to any broker, bank, dealer, or other person in connection with this solicitation.  Upon written request, however, the Debtor will reimburse you for reasonable, customary mailing and handling expenses incurred by you in forwarding the Opt-Out Forms to your client(s).

**<u>PLEASE RETURN YOUR MASTER OPT-OUT FORM PROMPTLY!</u>**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:**

**(877) 354-3909 (USA or Canada) or +1 (971) 290-1442 (International)**

**Or via <u>email</u> at: <u>CURO@epiqglobal.com</u>.**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THIS
MASTER OPT-OUT FORM FROM YOU BEFORE THE OPT-OUT DEADLINE,
WHICH IS 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024, THEN THE
OPT-OUT ELECTIONS TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO
MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN
WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

**<u>Exhibit 3B</u>**

**Opt-Out Form (Beneficial Holders)**

**OPTIONAL:  BENEFICIAL HOLDER OPT-OUT FORM**

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan").  Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release on or before April 19, 2024, at 4:00 p.m., prevailing Central Time, or timely objects to the Third-Party Release on or before May 7, 2024, at 4:00 p.m., prevailing Central Time, and such objection is not resolved before confirmation.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BENEFICIAL HOLDER OPT-OUT FORM CAREFULLY <u>BEFORE</u> COMPLETING THIS BENEFICIAL HOLDER OPT-OUT FORM.

**UNLESS YOU CHECK THE BOX ON THIS BENEFICIAL HOLDER OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**THIS BENEFICIAL HOLDER OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED TO YOUR NOMINEE IN SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO PROCESS YOUR INSTRUCTIONS ON A MASTER OPT-OUT FORM AND RETURN TO EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT") SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024 (THE "OPT-OUT DEADLINE").**

This Beneficial Holder Opt-Out Form may not be used for any purpose other than opting out of the Third-Party Release contained in the Plan.  If you believe you have received this Beneficial Holder Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent <u>immediately</u> by calling (877) 354-3909 (USA or Canada) or +1 (971) 290-1442 (International) or sending an electronic message via CURO@epiqglobal.com.

Before completing this Beneficial Holder Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Beneficial Holder Opt-Out Form" carefully to ensure that you complete, execute, and return this Beneficial Holder Opt-Out Form properly.

<u>Item 1</u>. Optional Third-Party Release Election.

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐       **By checking this box, you elect to opt <u>out</u> of the Third-Party Release.**

**Article VIII.D of the Plan contains the following Third-Party Release:**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "<u>Third-Party Releases</u>").**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.**

**Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions related to the Third-Party Release:

"*Related Party*" means with respect to a Person, each of such Person's, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

"*Released Party*" " means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Agent/Trustee; (e) each DIP Backstop Party and each DIP Lender; (f) the Information Officer; (g) the Securitization Facilities Parties; (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

"*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) each DIP Backstop Party and each DIP Lender; (e) each Agent/Trustee; (f) the Securitization Facilities Parties; (g) each Consenting Stakeholder; (h) all Holders of Claims or Interests that vote to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) with respect to each of the Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

## Item 2.  Certifications.

By signing this Beneficial Holder Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

      a.      that, as of March 13, 2024, either:  (i) the undersigned is the Holder of Claims or Interests; (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Claims or Interests;

b.       that the Holder has received a copy of the *Notice of Non-Voting Status* and that this Beneficial Holder Opt-Out Form is made pursuant to the terms and conditions set forth therein;

c.       that the undersigned has made the same election with respect to all Claims or Interests; and

d.       that no other Beneficial Holder Opt-Out Form has been cast with respect to the Holder's Claims or Interests, or, if any other Beneficial Holder Opt-Out Forms have been cast with respect to such Claims or Interests, such Beneficial Holder Opt-Out Forms are hereby revoked.

By signing this Beneficial Holder Opt-Out Form, the undersigned authorizes and instructs its Nominee (a) to furnish the election information in a Master Opt-Out Form to be transmitted to the Claims and Noticing Agent and (b) to retain this Beneficial Holder Opt-Out Form and related information in its records for at least one year after the Effective Date of the Plan.

YOUR RECEIPT OF THIS BENEFICIAL HOLDER OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM OR INTEREST HAS BEEN OR WILL BE ALLOWED.

| | |
|---|---|
| **Name of Holder:** | |
| | **(Print or Type)** |
| **Signature:** | |
| **Name of Signatory:** | |
| | **(If other than Holder)** |
| **Title:** | |
| **Address:** | |
| | |
| | |
| **Date Completed:** | |
| | |

**PLEASE COMPLETE, SIGN AND DATE THIS BENEFICIAL HOLDER OPT-OUT FORM AND RETURN IT TO YOUR NOMINEE IN SUFFICIENT TIME TO ALLOW YOUR NOMINEE TO PROCESS YOUR INSTRUCTIONS ON A MASTER OPT-OUT FORM AND RETURN TO THE CLAIMS AND NOTICING AGENT SO THAT IT IS ACTUALLY RECEIVED ON OR PRIOR TO THE OPT OUT DEADLINE.**

IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> A MASTER OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024, THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.

BENEFICIAL HOLDER OPT-OUT FORMS SENT DIRECTLY TO THE CLAIMS AND NOTICING AGENT WILL <u>NOT</u> BE ACCEPTED.

## **INSTRUCTIONS FOR COMPLETING THIS FORM**

1.     Capitalized terms used in the Beneficial Holder Opt-Out Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.     To ensure that your election is counted, you <u>must</u> complete the Beneficial Holder Opt-Out Form and take the following steps: (a) clearly indicate your decision to "opt out" of the Third-Party Release set forth in the Plan in <u>Item 1</u> above; (b) make sure that the information required by <u>Item 2</u> above has been correctly inserted; <u>and</u> (c) sign, date and return an original of your Beneficial Holder Opt-Out Form to your Nominee in accordance with paragraph 3 directly below.

3.     **<u>Return of Beneficial Holder Opt-Out Form</u>**: Your Beneficial Holder Opt-Out Form MUST be returned to your Nominee in sufficient time to allow your Nominee to process your instructions on a Master Opt-Out Form and return to the Claims and Noticing Agent so as to be **<u>actually received</u>** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **4:00 p.m. (prevailing Central Time) on April 19, 2024**.

4.     If a Master Opt-Out Form is received by the Claims and Noticing Agent <u>after</u> the Opt-Out Deadline, it will not be effective. Additionally, the following Opt-Out Forms will <u>NOT</u> be counted:

> ➢ ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE INTEREST;

> ➢ ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE THIRD-PARTY RELEASE;

> ➢ ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

> ➢ ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM TRANSMITTED BY FACSIMILE OR TELECOPY;

> ➢ ANY UNSIGNED BENEFICIAL HOLDER OR MASTER OPT-OUT FORM**;** OR

> ➢ ANY BENEFICIAL HOLDER OR MASTER OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SOLICITATION ORDER.

5.     The method of delivery of Beneficial Opt-Out Forms to your Nominee is at the election and risk of each Holder of an Interest. Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Voting and Claims Agent **actually receives** a Master Opt-Out Form from your Nominee. Beneficial Holders and their Nominees should allow sufficient time to assure timely delivery.

6.   If multiple Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7.   The Beneficial Holder Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt-out of the Third-Party Release.  Accordingly, at this time, Holders of Interests should not surrender certificates or instruments representing or evidencing their Interests, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with a Beneficial Holder Opt-Out Form.

8.   The Beneficial Holder Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

9.   Please be sure to sign and date your Beneficial Holder Opt-Out Form.  If you are signing a Beneficial Holder Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Beneficial Holder Opt-Out Form.

**PLEASE RETURN YOUR BENEFICIAL HOLDER OPT-OUT FORM PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BENEFICIAL OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:**

**(877) 354-3909 (USA or Canada) or +1 (971) 290-1442 (International)**

**Or via email: CURO@epiqglobal.com.**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THE
MASTER OPT-OUT FORM FROM YOUR NOMINEE BEFORE THE OPT-OUT
DEADLINE, WHICH IS 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024,
THEN YOUR OPT-OUT ELECTION TRANSMITTED PURSUANT TO THE
BENEFICIAL HOLDER OPT-OUT FORM WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

**<u>Exhibit 3C</u>**

**Opt-Out Form (Holders of Claims)**

## OPTIONAL:  OPT-OUT FORM

You are receiving this opt out form (the "Opt-Out Form") because you are or may be a Holder of a Claim that is not entitled to vote on the *Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, supplemented, or otherwise modified from time to time, the "Plan").  Holders of Claims and Interests are deemed to grant the Third-Party Release set forth in the Notice unless a Holder affirmatively opts out of the Third-Party Release on or before April 19, 2024, at 4:00 p.m., prevailing Central Time, or timely objects to the Third-Party Release on or before May 7, 2024, at 4:00 p.m., prevailing Central Time, and such objection is not resolved before confirmation.

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS OPT-OUT FORM.

**UNLESS YOU CHECK THE BOX ON THIS OPT-OUT FORM BELOW AND FOLLOW ALL INSTRUCTIONS, YOU WILL BE HELD TO FOREVER RELEASE THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**THIS OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT") ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024 (THE "OPT-OUT DEADLINE").**

This Opt-Out Form may not be used for any purpose other than opting out of the Third-Party Release contained in the Plan.  If you believe you have received this Opt-Out Form in error, or if you believe that you have received the wrong opt out form, please contact the Claims and Noticing Agent immediately by calling (877) 354-3909 (USA or Canada) or +1 (971) 290-1442 (International) or sending an electronic message via email to CURO@epiqglobal.com.

Before completing this Opt-Out Form, please read and follow the enclosed "Instructions for Completing this Opt-Out Form" carefully to ensure that you complete, execute, and return this Opt-Out Form properly.

**Article VIII.D of the Plan contains the following Third-Party Release:**

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would**

1

**have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "_Third-Party Releases_").**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.**

**Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions related to the Third-Party Release:

"_Related Party_" means with respect to a Person, each of such Person's, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

"_Released Party_" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each Consenting Stakeholder; (d) each Agent/Trustee; (e) each DIP Backstop Party and each DIP Lender; (f) the Information Officer; (g) the Securitization Facilities Parties; (h) with respect to each of the foregoing Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; _provided_ that in each case, an Entity shall not be a Released Party if it:  (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

"*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) each Company Party; (d) each DIP Backstop Party and each DIP Lender; (e) each Agent/Trustee; (f) the Securitization Facilities Parties; (g) each Consenting Stakeholder; (h) all Holders of Claims or Interests that vote to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (i) all Holders of Claims that are deemed to accept the Plan who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (j) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided in the Plan; (k) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided in the Plan; (l) with respect to each of the Entities in clauses (a) through (g), such Entities' Related Parties, in each case solely in their capacity as such; *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) elects to opt out of the releases contained in Article VIII.D of the Plan; or (y) timely objects to the releases contained in Article VIII.D of the Plan and such objection is not resolved before Confirmation.

[*Remainder of page intentionally left blank.*]

**<u>Item 1</u>. Optional Third-Party Release Election.**

AS A HOLDER OF A CLAIM, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>ONLY IF</u> (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS AT YOUR OPTION.

☐     **By checking this box, you elect to opt <u>out</u> of the Third-Party Release.**

**<u>Item 2</u>.  Certifications.**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors:

a.     that, as of March 13, 2024, either:  (i) the undersigned is the Holder of Claims in a Non-Voting Class, or; (ii) the undersigned is an authorized signatory for an Entity or Person that is the Holder of Claims Non-Voting Class;

b.     that the Holder has received a copy of the *Notice of Non-Voting Status* and that this Opt-Out Form is made pursuant to the terms and conditions set forth therein;

YOUR RECEIPT OF THIS OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

If your address or contact information has changed, please note the new information here.

| | |
|---|---|
| **Name of Holder:** | |
| | *(Print or Type)* |
| **Signature:** | |
| | |
| **Name of Signatory:** | |
| | *(If other than Holder)* |
| **Title:** | |
| **Address:** | |
| | |
| | |
| **Date Completed:** | |
| **Email Address:** | |
| **Phone Number:** | |
| | |

**IF YOU WISH TO OPT OUT, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND RETURN PROMPTLY VIA ONLY ONE OF THE FOLLOWING METHODS**

**ONLINE SUBMISSION:**

If you choose to submit the Opt-Out Form online, visit https://dm.epiq11.com/Curo.   Under the Case Actions section of the Debtors' website, click on "E-Opt Out" section and follow the directions to submit your Opt Out.

**If you choose to submit your Ballot via Epiq's E-Opt Out system, you should NOT also return a hard copy of your Opt Out.**

**HARD COPY (PAPER) SUBMISSION:**

Via first class mail, overnight courier or hand delivery to:

| By first class mail to: | Via overnight courier or hand delivery to: |
|---|---|
| **CURO Group Holdings Corp** | **CURO Group Holdings Corp** |
| c/o Epiq Ballot Processing Center | c/o Epiq Ballot Processing Center |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, OR 97076-4422 | Beaverton, OR 97005 |

If you have any questions please call the Claims and Noticing Agent at: (877) 354-3909 (USA or Canada) or +1 (971) 290-1442 (International).

IF THE CLAIMS AND NOTICING AGENT DOES NOT ACTUALLY RECEIVE THIS OPT-OUT FORM ON OR BEFORE 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024, THEN YOUR ELECTION TRANSMITTED HEREBY WILL NOT BE EFFECTIVE.

OPT-OUT FORMS SENT BY FACSIMILE OR EMAIL WILL NOT BE ACCEPTED.

## **INSTRUCTIONS FOR COMPLETING THIS FORM**

1.    Capitalized terms used in the Opt-Out Form or in these instructions (the "Instructions") but not otherwise defined therein or herein shall have the meaning set forth in the Plan.

2.    To ensure that your election is counted, you must complete the Opt-Out Form and take the following steps: (a) clearly indicate your decision to "opt out" of the Third-Party Release set forth in the Plan in Item 1 above; (b) make sure that the information required by Item 2 above has been correctly inserted; and (c) sign, date and return an original of your Opt-Out Form in accordance with paragraph 3 directly below.

3.    **Return of Opt-Out Form**:  Your Opt-Out Form MUST be returned to the Claims and Noticing Agent so as to be **actually received** by the Claims and Noticing Agent on or before the Opt-Out Deadline, which is **4:00 p.m. (prevailing Central Time) on April 19, 2024**.

4.    If an Opt-Out Form is received by the Claims and Noticing Agent after the Opt-Out Deadline, it will not be effective.  Additionally**,** the following Opt-Out Forms will NOT be counted:

> ➤  ANY OPT-OUT FORM THAT IS ILLEGIBLE OR CONTAINS INSUFFICIENT INFORMATION TO PERMIT THE IDENTIFICATION OF THE HOLDER OF THE CLAIM OR INTEREST;

> ➤  ANY OPT-OUT FORM CAST BY OR ON BEHALF OF AN ENTITY THAT IS NOT ENTITLED TO OPT-OUT OF THE THIRD-PARTY RELEASE;

> ➤  ANY OPT-OUT FORM SENT TO THE DEBTORS, THE DEBTORS' AGENTS/REPRESENTATIVES (OTHER THAN THE CLAIMS AND NOTICING AGENT), OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS;

> ➤  ANY OPT-OUT FORM TRANSMITTED BY FACSIMILE OR EMAIL;

> ➤  ANY UNSIGNED OPT-OUT FORM**;** OR

> ➤  ANY OPT-OUT FORM NOT COMPLETED IN ACCORDANCE WITH THE PROCEDURES APPROVED IN THE SOLICITATION ORDER.

5.    The method of delivery of Opt-Out Forms to the Claims and Noticing Agent is at the election and risk of each Holder of a Claim or Interest.  Except as otherwise provided herein, such delivery will be deemed made to the Claims and Noticing Agent only when the Voting and Claims Agent **actually** **receives** the executed Opt-Out Form.  Holders should allow sufficient time to assure timely delivery.

6.    If multiple Opt-Out Forms are received from the same Holder with respect to the same Claim or Interest prior to the Opt-Out Deadline, the last Opt-Out Form timely received will supersede and revoke any earlier received Opt-Out Forms.

7.    The Opt-Out Form is not a letter of transmittal and may not be used for any purpose other than to opt-out of the Third-Party Release.  Accordingly, at this time, Holders of Interests should not surrender certificates or instruments representing or evidencing their Interests, and neither the Debtors nor the Claims and Noticing Agent will accept delivery of any such certificates or instruments surrendered together with an Opt-Out Form.

8.    The Opt-Out Form does not constitute, and shall not be deemed to be, (a) a proof of claim, (b) proof of interest, or (c) an assertion or admission of a Claim or Interest.

9.      <u>Please be sure to sign and date your Opt-Out Form</u>.  If you are signing an Opt-Out Form in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Opt-Out Form.

### **PLEASE RETURN YOUR OPT-OUT FORM PROMPTLY!**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-OUT FORM
OR THE INSTRUCTIONS OR PROCEDURES, PLEASE CONTACT
THE CLAIMS AND NOTICING AGENT AT:**

**(877) 354-3909 (USA or Canada) or +1 (971) 290-1442 (International)**

**Or via email: <u>CURO@epiqglobal.com</u>.**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THE OPT-OUT FORM FROM YOU BEFORE THE OPT-OUT DEADLINE, WHICH IS 4:00 P.M. PREVAILING CENTRAL TIME ON APRIL 19, 2024, THEN YOUR OPT-OUT ELECTION TRANSMITTED THEREBY WILL NOT BE EFFECTIVE.**

---

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, REGARDING THE DEBTORS OR THE PLAN, OTHER THAN WHAT IS CONTAINED IN THE DOCUMENTS MAILED HEREWITH.

## Exhibit 4A

**Class 3 Claims (Individual Lender Ballot)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| CURO Group Holdings Corp., *et al.*,[1] | **IMPORTANT**: No chapter 11 case has been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
| Debtors. |  |

**BALLOT FOR VOTING
ON THE JOINT PREPACKAGED PLAN
OF REORGANIZATION OF CURO GROUP HOLDINGS CORP.
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 3 – PREPETITION 1L TERM LOAN CLAIMS**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR CURO GROUP HOLDINGS CORP., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT CURO@EPIQGLOBAL.COM AND REFERENCE "CURO" IN THE SUBJECT LINE, OR CALL (877) 354-3909 (USA OR CANADA) OR +1 (971) 290-1442 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM. IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES OR VOTING INSTRUCTIONS, INCLUDING ANY QUESTIONS ABOUT HOW TO SUBMIT YOUR VOTE, PLEASE CONTACT YOUR NOMINEE (AS DEFINED BELOW).

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

The Plan constitutes a separate chapter 11 plan of reorganization for each of the 29 Debtors and the classifications set forth in the Plan shall be deemed to apply to CURO Group Holdings Corp. and each of its Debtor Affiliates.

You are receiving this ballot (the "Ballot") because you have been identified as a Holder of a Prepetition 1L Term Loan Claim in Class 3 as of **March 13, 2024** (the "Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package").  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by Holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Claims and Noticing Agent") at no charge by:  (i) accessing the Debtors' restructuring website at http://dm.epiq11.com/Curo; (ii) writing to the Claims and Noticing Agent at Epiq Corporate Restructuring, LLC, CURO Group Holdings Corp., Ballot Processing, P.O. Box 4422 Beaverton, OR 97076-4422; (iii) calling the Claims and Noticing Agent at (877) 354-3909 (US toll-free) or +1 (971) 290-1442 (international); (iv) emailing Curo@epiqglobal.com with a reference to "CURO Group Holdings Corp." in the subject line; or (v) for a fee via PACER at http://www.txs.uscourts.gov/page/bankruptcy-court.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan.  If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

3

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN DISCHARGE, RELEASE, EXCULPATION AND INJUNCTION PROVISIONS.  THESE PROVISIONS ARE FOUND IN <u>ARTICLE VIII</u> OF THE PLAN.  YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**If your vote is not received by the Claims and Noticing Agent on or before the Voting Deadline and the deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

**YOUR VOTE ON THIS BALLOT FOR CLAIMS IN CLASS 3 SHALL BE APPLIED TO EACH APPLICABLE DEBTOR.**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan.  Your Claim has been placed in Class 3 under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M. (PREVAILING CENTRAL TIME) ON APRIL 19, 2024.**

**Ballots will not be accepted by facsimile transmission or electronic mail.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

**Item 1.  Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of Prepetition 1L Term Loan Claim(s) in the following aggregate amount (insert amount in box below):

$\qquad$ $ _____$

**Item 2.  Vote on Plan.**

The Holder of the Class 3 Prepetition 1L Term Loan Claim(s) against the Debtors set forth in Item 1 votes to (please check ONLY <u>one</u>):

☐   **ACCEPT** (vote FOR) the Plan          ☐   **REJECT** (vote AGAINST) the Plan

**Item 3.  Important Information Regarding Releases under the Plan.**[3]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "**<u>Debtor Release</u>**"):

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally,**

---

[3]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence. For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever

5

**(including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "Third-Party Releases").**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.**

**Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE

BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF:  (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES; AND (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

☐   **By checking this box, the Holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence**

7

as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.

**Item 4.  Certifications and Acknowledgments.**

Upon execution of this Ballot, the undersigned certifies that:

a. as of the Voting Record Date, either:  (i) the Entity is the Holder of the Prepetition 1L Term Loan Claim(s) being voted; or (ii) the Entity is an authorized signatory for the Entity that is the Holder of the Prepetition 1L Term Loan Claims being voted;

b. the undersigned has the power and authority to vote to accept or reject the Plan on behalf of the Entity;

c. the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

d. the Entity has cast the same vote with respect to all Prepetition 1L Term Loan Claims in a single Class;

e. no other Ballots with respect to the amount of the Prepetition 1L Term Loan Claims identified in Item 1 have been cast or, if any other Ballots have been cast with respect to such Prepetition 1L Term Loan Claims, then any such earlier Ballots are hereby revoked; and

f. the undersigned understands that, if this Ballot is validly executed but does not indicate either acceptance or rejection of the Plan, this Ballot will not be counted as either an acceptance or rejection of the Plan.

| | |
|---|---|
| Name of Holder: | |
| | (Print or Type) |
| | |
| Signature: | |
| Name of Signatory: | |
| | (If other than the Holder) |
| Title: | |
| Address: | |
| | |
| | |
| Telephone Number: | |
| Email: | |
| Date Completed: | |

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT (EPIQ CORPORATE RESTRUCTURING, LLC) BY THE VOTING DEADLINE.**

| By first class mail to: | Via overnight courier or hand delivery to: |
|---|---|
| **CURO Group Holdings Corp** | **CURO Group Holdings Corp** |
| c/o Epiq Ballot Processing Center | c/o Epiq Ballot Processing Center |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, OR 97076-4422 | Beaverton, OR 97005 |

**OR**

**By electronic, online submission:**

Please visit https://dm.epiq11.com/CURO. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via Epiq's E-Ballot system, you should not also return a hard copy of your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

  **Unique E-Ballot ID#: _____**

"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile or email will not be counted.

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (877) 354-3909 (DOMESTIC TOLL-FREE) OR +1 (971) 290-1442 (INTERNATIONAL TOLL/LOCAL) OR CURO@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY THE E-BALLOT PORTAL).**

**THE BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

| Class 3 — Prepetition 1L Term Loan Claims |
|---|

### INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.    The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement.  Capitalized terms used in the Ballot or in these instructions (the "<u>Ballot Instructions</u>") but not otherwise defined therein or herein shall have the meanings set forth in the Plan or Disclosure Statement (as applicable).  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.    The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3.    To ensure that your Ballot is counted, you *must either* complete and submit this Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://dm.epiq11.com/Curo.

4.    <u>Use of Hard Copy Ballot</u>.  To ensure that your hard copy Ballot is counted, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to one of the following addresses or in accordance with paragraph 5 below.

| By first class mail to: | Via overnight courier or hand delivery to: |
|---|---|
| **CURO Group Holdings Corp** | **CURO Group Holdings Corp** |
| c/o Epiq Ballot Processing Center | c/o Epiq Ballot Processing Center |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, OR 97076-4422 | Beaverton, OR 97005 |

5.    <u>Use of Online Ballot Portal (E-Ballot)</u>.  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case website at: https://dm.epiq11.com/Curo.  You will need to enter your unique E-Ballot identification number indicated herein.  The E-Ballot portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online balloting portal).**

6.    Your Ballot *must* be returned to the Claims and Noticing Agent so as to be *actually received* by the Claims and Noticing Agent on or before the Voting Deadline.  **The Voting Deadline is April 19, 2024 at 4:00 p.m., prevailing Central Time**.

7.    If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors.  Additionally, **the following Ballots will *not* be counted**:

(a)    any Ballot that is completed, executed, and timely returned to the Claims and Noticing Agent, but does not indicate either an acceptance or rejection of the Plan;

(b)    any Ballot that is completed, executed, and timely returned to the Claims and Noticing Agent, but indicates both an acceptance and rejection of the Plan;

(c)    any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline in writing as to such Ballot;

(d)    any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

(e)    any Ballot cast by an Entity that does not hold a Claim in Class 3;

      (f)   any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

      (g)   any unsigned Ballot;

      (h)   any Ballot not bearing an original signature (for the avoidance of doubt, Ballots submitted online shall be deemed to bear an original signature ; and/or

      (i)   any Ballot transmitted to the Claims and Noticing Agent by facsimile or other means not specifically approved herein.

8.    The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each Holder of a Prepetition 1L Term Loan Claim. Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent ***actually receives*** the originally executed Ballot. In all cases, Holders should allow sufficient time to assure timely delivery.

9.    If multiple Ballots are received from the same Holder of a Prepetition 1L Term Loan Claim with respect to the same Prepetition 1L Term Loan Claim prior to the Voting Deadline, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballots.

10.    You must vote all of your Prepetition 1L Term Loan Claims within Class 3 either to accept or reject the Plan and may **not** split your vote. Further, if a Holder has multiple Prepetition 1L Term Loan Claims within Class 3, the Debtors may, in their discretion, aggregate the Claims of any particular Holder with multiple Prepetition 1L Term Loan Claims within Class 3 for the purpose of counting votes.

11.    This Ballot does ***not*** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

12.    **Please be sure to sign and date your Ballot**. If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder. In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13.    If you hold Claims or Interests in more than one Class under the Plan you may receive more than one Ballot coded for each different Class. Each Ballot votes ***only*** your Claims or Interests indicated on that Ballot, so please complete and return each Ballot that you receive.

14.    For purposes of the numerosity requirement of Bankruptcy Code section 1126(c), separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

<div align="center">

**PLEASE SUBMIT YOUR BALLOT PROMPTLY.**

</div>

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (877) 354-3909 (DOMESTIC TOLL-FREE) OR +1 (971) 290-1442 (INTERNATIONAL TOLL/LOCAL) OR CURO@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE. ANY BALLOT RECEIVED AFTER THE VOTING**

**DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

---

**IF THE CLAIMS AND NOTICING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS <u>APRIL 19, 2024 AT 4:00 P.M., PREVAILING CENTRAL TIME</u> (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED HEREBY MAY NOT BE COUNTED.**

---

**<u>Exhibit 4B</u>**

**Class 4 Claims (Master Ballot)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| CURO Group Holdings Corp., *et al.*,[1] | ) **IMPORTANT**: No chapter 11 case has been |
|  | ) commenced as of the date of distribution of |
|  | ) this ballot.  This ballot is a prepetition |
|  | ) solicitation of your vote on a plan of |
| Debtors. | ) reorganization. |
|  | ) |

**MASTER BALLOT FOR VOTING ON THE JOINT PREPACKAGED
PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 4 – PREPETITION 1.5L NOTES CLAIMS**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR CURO GROUP HOLDINGS CORP., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE, OR CALL (646) 362-6336.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND HOLDERS REGARDLESS OF WHETHER THEY HAVE VOTED.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]   Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan. The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[3] of a Prepetition 1.5L Notes Claim in Class 4 (the "Voting Class") as of **March 13, 2024** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders' Class 4 Claims to transmit to the Claims and Noticing Agent the votes of such Beneficial Holders in respect of their Class 4 Claims to accept or reject the Plan. The CUSIP numbers (the "CUSIP") for Class 4 Claims entitled to vote and of which you are the Nominee are set forth on Exhibit A attached hereto. THE VOTES ON THIS BALLOT FOR BENEFICIAL HOLDERS OF CLAIMS IN CLASS 4 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 4 CLAIM.**

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot. This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto. Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

---

[3]   "Beneficial Holder" is a beneficial owner of Class 4 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Notice and Claims Agent **actually receives** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a broker, bank, or other nominee for the beneficial owners of the aggregate principal amount of the Claims listed in Item 2 below, and is the record holder of such bonds; or

☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below; or

☐ has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the beneficial owners of the Claims described in Item 2.

**Item 2.  Claims in the Voting Class Vote on Plan and Item 3.  Releases.**

The undersigned transmits the following votes and releases of Beneficial Holders of Claims against the Debtors in the Voting Class as set forth below and certifies that the following Beneficial Holders of the Classes of Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Ballots casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote.  Any Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan in the Voting Class will not be counted.  If the Beneficial Holder has checked the box on Item 2 of the Beneficial Holder Ballot pertaining to the releases by Holders of Claims, as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column of the Voting Class below.  The full text of Article VIII.D is duplicated in the Master Ballot Instructions.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

## CLASS 4 – PREPETITION 1.5L NOTES CLAIMS

| A SEPARATE MASTER BALLOT MUST BE USED FOR EACH CUSIP/ISIN. INDICATE CUSIP/ISIN VOTED ON THIS BALLOT | | | | |
|---|---|---|---|---|
| ☐  CUSIP 23131LAE7 / ISIN US23131LAE74 | | ☐  CUSIP U12727AD2 / ISIN USU12727AD21 | | |
| **Your Customer Account Number for Each Beneficial Holder Who Voted in this Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2** Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below. | | **Item 3** If the box in Item 2 of the Beneficial Holder Ballot was completed, place an "X" in the column below. |
| | | **Accept the Plan** | **or** / **Reject the Plan** | |
| 1. | $ | | | |
| 2. | $ | | | |
| 3. | $ | | | |
| 4. | $ | | | |
| 5. | $ | | | |
| 6. | $ | | | |
| **TOTALS** | $ | | | |

4

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 3.  Certification as to Transcription of Information from Item 3 of the Ballots as to Claims in Class 4 Voted Through Other Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 3 of each Ballot received from a Beneficial Holder.  Please use additional sheets of paper if necessary.

### Class 4 – Prepetition 1L Notes Claims

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 3 of the Ballots | TRANSCRIBE FROM ITEM 3 OF THE CLASS 4  BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number of Other Class 4 Claims Voted | Name of Owner (Beneficial Owner or name of Nominee if Notes are held through a Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Class 4 Claims Voted |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

5

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 4.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.    it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims in the Voting Class listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes;

2.    it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.    it is the registered Beneficial Holder of the securities being voted;

4.    it has been authorized by each such Beneficial Holder to vote on the Plan;

5.    it has properly disclosed:  (a) the number of Beneficial Holders who completed Ballots; (b) the respective amounts of the Claims in the Voting Class as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) each such Beneficial Holder's certification as to other Claims voted; and (e) the customer account or other identification number for each such Beneficial Holder; and

6.    it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Name of Nominee:        _____
                                          (Print or Type)

DTC Participant Number: _____

Name of Proxy Holder or Agent
for Nominee (if applicable):

                                   _____
                                          (Print or Type)

Signature:                 _____


Name of Signatory:       _____

Title:                        _____

Address:                   _____

                                   _____

                                   _____

Date Completed:          _____

Email Address:            _____

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, OR BY EMAIL (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT EPIQ CORPORATE RESTRUCTURING, LLC) BY THE VOTING DEADLINE.**

| By first class mail to:<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Via overnight courier or hand delivery to:<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>10300 SW Allen Blvd.<br>Beaverton, OR 97005 |
|---|---|

**OR**

| Via email to: tabulation@epiqglobal.com with a reference to: "CURO– Master Ballot" in the subject line |
|---|

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (646) 362-6336 OR TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**MASTER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY E-MAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO MASTER BALLOT" IN THE SUBJECT LINE).**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

## VOTING INSTRUCTIONS

1.    As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 4 Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and the Disclosure Statement are included in the Solicitation Package.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.    The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3.    You should immediately distribute the Ballots (or other customary material used to collect votes in lieu of the Ballots) and the Solicitation Package to all Beneficial Holders of Class 4 Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Claims and Noticing Agent, a Master Ballot that reflects the vote of such Beneficial Holders by 4:00 p.m., prevailing Central Time, on April 19, 2024, or otherwise validate the Ballot in a manner acceptable to the Claims and Noticing Agent.

If you are transmitting the votes of any beneficial owners of Claims in Voting Classes, you may either:

(a)    "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 4 Claim for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Claims and Noticing Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Ballot and including their DTC participant name and DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of the Class 4 Claim held by the Nominee for such Beneficial Holder, applying a medallion guarantee stamp to the ballot to certify the principal amount of the Class 4 Claim owned by the Beneficial Holder as of the Voting Record Date and then forwarding the Ballot together with the Solicitation Package to the Beneficial Holder. The Beneficial Holder then completes the information requested on the Ballot and returns the Ballot directly to the Claims and Noticing Agent.  A list of the Beneficial Holders to whom "pre-validated" Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

(b)    Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 4 Claim for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the beneficial owner then returning the individual Beneficial Holder Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Claims and Noticing Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Claims and Noticing Agent. The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare

8

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

and return the Master Ballot to the Claims and Noticing Agent so that the Master Ballot is **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.

4.      With regard to any Ballots returned to you by a Beneficial Holder, you must:  (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Claims and Noticing Agent by the Voting Deadline; and (d) retain such Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date.  You may be ordered to produce the Ballots to the Company or the Bankruptcy Court.

5.      The time by which a Ballot is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is April 19, 2024, at 4:00 p.m., prevailing Central Time**.

6.      If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order.  In all cases, Nominees should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Company or the Company's financial or legal advisors.  A Ballot will not be counted unless received by the Claims and Noticing Agent.

7.      If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

8.      If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

9.      If a voter simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots shall not be counted.

10.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

11.     The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim in the Company's chapter 11 cases.

12.     Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Claims and Noticing Agent, the Company, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.     If you are both the Nominee and the Beneficial Holder of any of the Claims in the Voting Class and you wish to vote such Claims in the Voting Class, you may return a Master Ballot for such Claims in the Voting Class and you must vote your entire Claim in the Voting Class to either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot, other than a Master Ballot with the votes of multiple Holders, that partially rejects and partially accepts the Plan will not be counted.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

14.     The following Ballots and Master Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder of the Claim; (b) any Ballot or Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot or Master Ballot; (d) any Ballot or Master Ballot not marked to accept or reject the Plan; and (e) any Ballot or Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

15.     For purposes of the numerosity requirement of Bankruptcy Code section 1126(c), separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

The following additional rules shall apply to Master Ballots:

16.     Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims in the Voting Class as of the Record Date, as evidenced by the record and depository listings;

17.     Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Claims in the Voting Class held by such Nominee;

18.     To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Claims and Noticing Agent will attempt to reconcile discrepancies with the Nominee;

19.     To the extent that overvotes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in the relevant Claims in the Voting Classes; and

20.     For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Claims and Noticing Agent may be asked to adjust such principal amount to reflect the Claim amount.

**Important Information Regarding Releases under the Plan**:[4]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other**

---

[4]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Master Ballot.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence. For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the

<div align="center">11</div>

CUSIPs / ISINs as indicated on Exhibit A attached hereto

Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR;  (B) EACH REORGANIZED DEBTOR;  (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE

BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any**

<div align="center">13</div>

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.

IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (646) 362-6336 OR TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.

**<u>PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY</u>**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Exhibit A**

**Class 4 (Prepetition 1.5L Notes Claims)**

| BOND DESCRIPTION | CUSIP / ISIN |
|---|---|
| 7.500% Senior 1.5 Lien Secured Notes due 2028 | 23131L AE7 / US23131LAE74 |
| 7.500% Senior 1.5 Lien Secured Notes due 2028 | U12727 AD2 / USU12727AD21 |

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**<u>Exhibit 4C</u>**

**Class 4 Claims (Beneficial Holder Ballot)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CURO Group Holdings Corp., *et al.*,[1] | ) | **IMPORTANT**: No chapter 11 case has been commenced as of the date of distribution of this ballot.  This ballot is a prepetition solicitation of your vote on a plan of reorganization. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**BENEFICIAL HOLDER BALLOT FOR VOTING ON THE JOINT
PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP.
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 4 – PREPETITION 1.5L NOTES CLAIMS**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "<u>PLAN</u>")[2] FOR CURO GROUP HOLDINGS CORP., ET AL. (THE "<u>COMPANY</u>") INCLUDED WITH THIS BALLOT <u>BEFORE</u> COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "<u>TRANSACTION</u>") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS BALLOT (OR THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BALLOT) MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>" OR THE "<u>SOLICITATION AGENT</u>") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "<u>VOTING DEADLINE</u>").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT <u>CURO@EPIQGLOBAL.COM</u> AND REFERENCE "CURO" IN THE SUBJECT LINE, OR CALL 877-354-3909 (USA OR CANADA) OR 971-290-1442 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES OR VOTING INSTRUCTIONS, INCLUDING ANY QUESTIONS ABOUT HOW TO SUBMIT YOUR VOTE, PLEASE CONTACT YOUR NOMINEE (AS DEFINED BELOW).

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]   Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

- IF A BENEFICIAL HOLDER[3] HOLDS CLASS 4 CLAIMS THROUGH ONE OR MORE NOMINEES,[4] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS 4 CLAIMS HELD IN ACCORDANCE WITH ITEM 3 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

You are receiving this ballot (the "Ballot") because your Nominee has identified you as a Beneficial Holder of a Prepetition 1.5L Notes Claim in Class 4 (the "Voting Class") as of **March 13, 2024** (the "Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package").  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by Holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT FOR CLAIMS IN CLASS 4 SHALL BE APPLIED TO EACH APPLICABLE DEBTOR.**

---

[3]   "Beneficial Holder" is a beneficial owner of Class 4 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company and/or the applicable indenture trustee, as of the Voting Record Date.

[4]   "Nominee" means a broker, dealer, commercial bank, trust company, or other nominee who holds Class 4 Claims, or such firm's agent, on behalf of a Beneficial Holder.

3

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan. You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan. Your Claim has been placed in Class 4 under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**Item 1.  Voting - Complete This Section.**

| **ITEM 1**: PRINCIPAL AMOUNT OF CLAIMS | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder), of Claim(s) in the Voting Class as set forth below (your "Claims").  If you do not know the amount of your Class 4 Prepetition 1.5L Notes Claim as of the Voting Record Date, please contact your Nominee for this information.  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for the Voting Class in order to have your vote in the Voting Class counted. |
|---|---|
| | Please note that you are voting all of your Claims in the Voting Class either to accept or reject the Plan.  You may not split your vote in the Voting Class.  If you do not indicate that you either accept or reject the Plan in the Voting Class by checking the applicable box below, your vote in the Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for the Voting Class by checking both boxes below, your vote in the Voting Class will not be counted. |
| | The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor. |
| | The Beneficial Holder of the Claim in the Voting Class set forth below votes to (*please check one and only one box per applicable Voting Claim*): |

| Plan Class | Amount | Vote to Accept or Reject Plan |
|---|---|---|
| Class 4 Prepetition 1.5L Notes Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN <br><br> ☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.  Important Information Regarding Releases under the Plan.**[5]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "Debtor Release"):

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other**

---

[5]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

4

Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.  For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the

5

Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I)

ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

**<u>IMPORTANT INFORMATION REGARDING THE RELEASES:</u>**

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF:  (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES; <u>AND</u> (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

☐    **By checking this box, the Holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**<u>Exculpation</u>**"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes**

7

actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.

*[Remainder of this page is intentionally left blank.]*

8

**Item 3.  Certification of Claims in the Voting Class Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Claims in the Voting Class identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table.  **To be clear, if any Beneficial Holder holds Claims in a Voting Class through one or more Nominees, such Beneficial Holder must identify all Claims in the Voting Class held through its own name and/or each Nominee in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

**ONLY COMPLETE ITEM 3 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF OTHER CLASS 4 – PREPETITION 1.5L NOTES CLAIMS**

| Account Number of Other Class 4  Claims Voted | Name of Owner[6] | Principal Amount of Other Claims Voted in Class 4 | CUSIP of Other Class 4 Claims Voted |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

---

[6]   **Insert your name if the Claims in the respective Voting Class are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank and their DTC Participant Number.**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 4.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.  as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of the Claims in the Voting Class set forth in Item 1;

b.  the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.  the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.  the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Claims in the Voting Class;

e.  the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

f.  the Beneficial Holder understands and acknowledges that the Claims and Noticing Agent may verify the amount of the Claims in the Voting Class set forth in Item 1 held by the Beneficial Holder as of the Voting Record Date with any Nominee through which the Beneficial Holder holds its the Claims in the Voting Classes set forth in Item 1 and by returning an executed Ballot the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Claims and Noticing Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Claims and Noticing Agent, the amount shown on the records of the Nominee, if applicable, or the Company's records shall control; and

g.  the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

2

**Item 5.  Beneficial Holder Information and Signature.**

Name of Beneficial Holder:_____
                                                     (*print or type*)

Signature:_____

Name of Signatory:_____
                                                 (*if other than Beneficial Holder*)

Title: _____

Address:_____

          _____

          _____

Date Completed:_____

Email Address:_____


**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**IF YOU RECEIVED A PRE-VALIDATED BALLOT AND A RETURN ENVELOPE ADDRESSED TO THE CLAIMS AND NOTICING AGENT (EPIQ CORPORATE RESTRUCTURING, LLC), PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE. THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS ABOUT THIS BALLOT OR THE PLAN SOLICITATION OR YOU NEED ADDITIONAL VOTING MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT CURO@EPIQGLOBAL.COM AND REFERENCE "CURO" IN THE SUBJECT LINE OR CALL (877) 354-3909 (USA OR CANADA) OR +1 (971) 290-1442 (INTERNATIONAL). IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT YOUR NOMINEE. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

## VOTING INSTRUCTIONS

1. As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 4 Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package you received with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2. The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3. To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions received, so that this Ballot (if "pre-validated" by your Nominee) or a Master Ballot cast on your behalf is actually received by the Claims and Noticing Agent by the Voting Deadline**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Claims and Noticing Agent so that it is <u>actually received</u> by the Voting Deadline. Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

   **The Claims and Noticing Agent will not accept beneficial ballots by facsimile or other electronic means.** If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot to your Nominee, including all certifications.

4. The time by which a Ballot or Master Ballot including your vote is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. **The Voting Deadline is April 19, 2024, at 4:00 p.m., prevailing Central Time**.

5. If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order. In all cases, Beneficial Holders should allow sufficient time to ensure timely delivery. No Ballot should be sent to the Company or the Company's financial or legal advisors. A Ballot will not be counted unless received by the Claims and Noticing Agent.

6. The Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent.

7. If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8. If a Beneficial Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors

should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10. The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11. Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12. You must vote your entire Claim in the Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan as to the Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

13. Any Ballot that is properly completed, executed, and timely returned that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14. The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15. If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims or Interests indicated on that Ballot. Please complete and return each Ballot you receive.

16. For purposes of the numerosity requirement of Bankruptcy Code section 1126(c), separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

_____

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Claims and Noticing Agent at <u>CURO@epiqglobal.com</u> OR call (877) 354-3909 (USA Or Canada) OR +1 (971) 290-1442 (International).**

<u>**PLEASE SUBMIT YOUR BALLOT PROMPTLY**</u>

**Exhibit A**

***Your Nominee may have checked a box below to indicate the CUSIP/ISIN to which this Ballot pertains,
or otherwise provided that information to you on a label or schedule attached to the Ballot.***

### Class 4 (Prepetition 1.5L Notes Claims)

|  | BOND DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 7.500% Senior 1.5 Lien Secured Notes due 2028 | 23131LAE7 / US23131LAE74 |
| ☐ | 7.500% Senior 1.5 Lien Secured Notes due 2028 | U12727AD2 / USU12727AD21 |

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Exhibit 4D**

**Class 5 Claims (Master Ballot)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
|  | ) | **IMPORTANT**: No chapter 11 case has been |
| CURO Group Holdings Corp., *et al.*,[1] | ) | commenced as of the date of distribution of |
|  | ) | this ballot. This ballot is a prepetition |
|  | ) | solicitation of your vote on a plan of |
| Debtors. | ) | reorganization. |
|  | ) |  |

**MASTER BALLOT FOR VOTING ON THE JOINT PREPACKAGED
PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND
ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

### CLASS 5 – PREPETITION 2L NOTES CLAIMS

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR CURO GROUP HOLDINGS CORP., ET AL. (THE "COMPANY") INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT. THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11. THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE, OR CALL (646) 362-6336.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND HOLDERS REGARDLESS OF WHETHER THEY HAVE VOTED.

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) of a Beneficial Holder[3] of a Prepetition 2L Notes Claim in Class 5 (the "Voting Class") as of **March 13, 2024** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Holders' Class 5 Claims to transmit to the Claims and Noticing Agent the votes of such Beneficial Holders in respect of their Class 5 Claims to accept or reject the Plan.  The CUSIP numbers (the "CUSIP") for Class 5 Claims entitled to vote and of which you are the Nominee are set forth on Exhibit A attached hereto.  THE VOTES ON THIS BALLOT FOR BENEFICIAL HOLDERS OF CLAIMS IN CLASS 5 SHALL BE APPLIED TO EACH DEBTOR AGAINST WHOM SUCH BENEFICIAL HOLDERS HAVE A CLASS 5 CLAIM.**

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot.  This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

---

[3]   "Beneficial Holder" is a beneficial owner of Class 5 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company or other relevant security depository and/or the applicable indenture trustee, as of the Voting Record Date.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Holders of Claims and Interests.  To have the votes of your Beneficial Holders count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Notice and Claims Agent **actually receives** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a broker, bank, or other nominee for the beneficial owners of the aggregate principal amount of the Claims listed in Item 2 below, and is the record holder of such bonds; or

☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below; or

☐ has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a beneficial owner, that is the registered holder of the aggregate principal amount of the Claims listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the beneficial owners of the Claims described in Item 2.

**Item 2.  Claims in the Voting Class Vote on Plan and Item 3.  Releases.**

The undersigned transmits the following votes and releases of Beneficial Holders of Claims against the Debtors in the Voting Class as set forth below and certifies that the following Beneficial Holders of the Classes of Claims, as identified by their respective customer account numbers set forth below, are Beneficial Holders of such securities as of the Voting Record Date, and have delivered to the undersigned, as Nominee, Ballots casting such votes.

Indicate in the appropriate column below the aggregate principal amount voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Holder must vote all of their Claims in the Voting Class either to accept or reject the Plan and may not split such vote.  Any Ballot executed by the Beneficial Holder that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan in the Voting Class will not be counted.  If the Beneficial Holder has checked the box on Item 2 of the Beneficial Holder Ballot pertaining to the releases by Holders of Claims, as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column of the Voting Class below.  The full text of Article VIII.D is duplicated in the Master Ballot Instructions.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

## CLASS 5 – PREPETITION 2L NOTES CLAIMS

| SEPARATE MASTER BALLOT MUST BE USED FOR EACH CUSIP/ISIN. INDICATE CUSIP/ISIN VOTED ON THIS BALLOT | | | | |
|---|---|---|---|---|
| ☐   CUSIP 23131L AC1 / ISIN US23131LAC19 | | ☐   CUSIP   U12727 AB6 / ISIN USU12727AB64 | | |
| **Your Customer Account Number for Each Beneficial Holder Who Voted in this Plan Class** | **Principal Amount Held as of the Voting Record Date** | **Item 2**<br>**Indicate the vote cast on the Beneficial Holder Ballot by placing an "X" in the appropriate column below.** | | **Item 3**<br>**If the box in Item 2 of the Beneficial Holder Ballot was completed, place an "X" in the column below.** |
| | | **Accept the Plan** | **or** | **Reject the Plan** | |
| 1. | $ | | | | |
| 2. | $ | | | | |
| 3. | $ | | | | |
| 4. | $ | | | | |
| 5. | $ | | | | |
| 6. | $ | | | | |
| **TOTALS** | $ | | | | |

4

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 3.  Certification as to Transcription of Information from Item 3 of the Ballots as to Claims in Voting Classes Voted Through Other Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 3 of each Ballot received from a Beneficial Holder.  Please use additional sheets of paper if necessary.

### Class 5 – Prepetition 2L Notes Claims

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 3 of the Ballots | TRANSCRIBE FROM ITEM 3 OF THE CLASS 5 BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Account Number of Other Class 5 Claims Voted | Name of Owner (Beneficial Owner or name of Nominee if Notes are held through a Nominee | Principal Amount of Other Claims Voted | CUSIP of Other Class 5 Claims Voted |
| 1. | | | $ | |
| 2. | | | $ | |
| 3. | | | $ | |
| 4. | | | $ | |
| 5. | | | $ | |
| 6. | | | $ | |
| 7. | | | $ | |
| 8. | | | $ | |
| 9. | | | $ | |
| 10. | | | $ | |

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 4.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.     it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Holders of the Claims in the Voting Class listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes;

2.     it has received appropriate voting instructions from each Beneficial Holder listed in Item 2 of this Master Ballot;

3.     it is the registered Beneficial Holder of the securities being voted;

4.     it has been authorized by each such Beneficial Holder to vote on the Plan;

5.     it has properly disclosed:  (a) the number of Beneficial Holders who completed Ballots; (b) the respective amounts of the Claims in the Voting Class as set forth in Item 2, as the case may be, by each Beneficial Holder who completed a Ballot; (c) each such Beneficial Holder's respective vote concerning the Plan; (d) each such Beneficial Holder's certification as to other Claims voted; and (e) the customer account or other identification number for each such Beneficial Holder; and

6.     it will maintain Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

Name of Nominee:    _____
                                      (Print or Type)

DTC Participant Number:  _____

Name of Proxy Holder or Agent
for Nominee (if applicable):
                           _____
                                      (Print or Type)

Signature:               _____

Name of Signatory:      _____

Title:                    _____

Address:               _____

                         _____

                         _____

Date Completed:       _____

Email Address:         _____

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, OR BY EMAIL (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT EPIQ CORPORATE RESTRUCTURING, LLC) BY THE VOTING DEADLINE.**

| By first class mail to:<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Via overnight courier or hand delivery to:<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>10300 SW Allen Blvd.<br>Beaverton, OR 97005 |
| --- | --- |

**OR**

| Via email to: tabulation@epiqglobal.com with a reference to: "CURO Group Holdings Corp. – Master Ballot" in the subject line |
| --- |

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (877) 354-3909 (DOMESTIC TOLL-FREE) OR +1 (971) 290-1442 (INTERNATIONAL TOLL/LOCAL) OR CURO@epiqglobal.com. ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**MASTER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY E-MAIL TO tabulation@epiqglobal.com WITH A REFERENCE TO "CURO MASTER BALLOT" IN THE SUBJECT LINE).**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

## VOTING INSTRUCTIONS

1.     As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 5 Claims with respect to the Plan referred to in the Disclosure Statement.  The Plan and the Disclosure Statement are included in the Solicitation Package.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.     The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3.     You should immediately distribute the Ballots (or other customary material used to collect votes in lieu of the Ballots) and the Solicitation Package to all Beneficial Holders of Class 5 Claims and take any action required to enable each such Beneficial Holder to timely vote the Claims that it holds.  You may distribute the Solicitation Packages to Beneficial Holders, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Holders in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.  Any Ballot returned to you by a Beneficial Holder of a Claim shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Claims and Noticing Agent, a Master Ballot that reflects the vote of such Beneficial Holders by 4:00 p.m., prevailing Central Time, on April 19, 2024, or otherwise validate the Ballot in a manner acceptable to the Claims and Noticing Agent.

If you are transmitting the votes of any beneficial owners of Claims in Voting Classes, you may either:

(a)     "Pre-validate" the individual Beneficial Holder Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Holder then returning the individual Beneficial Holder Ballot directly to the Claims and Noticing Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Holder Ballot by signing the Ballot and including their DTC participant name and DTC participant number; indicating the account number of the Beneficial Holder and the principal amount of the Class 5 Claim held by the Nominee for such Beneficial Holder, applying a medallion guarantee stamp to the ballot to certify the principal amount of the Class 5 Claim owned by the Beneficial Holder as of the Voting Record Date and then forwarding the Ballot together with the Solicitation Package to the Beneficial Holder.  The Beneficial Holder then completes the information requested on the Ballot and returns the Ballot directly to the Claims and Noticing Agent.  A list of the Beneficial Holders to whom "pre-validated" Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

(b)     Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Holder of the Class 5 Claim for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the beneficial owner then returning the individual Beneficial Holder Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective Beneficial Holders on a Master Ballot that will be provided to the Nominee separately by the Claims and Noticing Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Claims and Noticing Agent.  The Nominee should advise the Beneficial Holders to return their individual Beneficial Holder Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

and return the Master Ballot to the Claims and Noticing Agent so that the Master Ballot is **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.

4.      With regard to any Ballots returned to you by a Beneficial Holder, you must:  (a) compile and validate the votes and other relevant information of each such Beneficial Holder on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Holder; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Claims and Noticing Agent by the Voting Deadline; and (d) retain such Ballots from Beneficial Holders, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date.  You may be ordered to produce the Ballots to the Company or the Bankruptcy Court.

5.      The time by which a Ballot is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is April 19, 2024, at 4:00 p.m., prevailing Central Time**.

6.      If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order.  In all cases, Nominees should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Company or the Company's financial or legal advisors.  A Ballot will not be counted unless received by the Claims and Noticing Agent.

7.      If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot.

8.      If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

9.      If a voter simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots shall not be counted.

10.     The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, creditors should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

11.     The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim in the Company's chapter 11 cases.

12.     Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Claims and Noticing Agent, the Company, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.     If you are both the Nominee and the Beneficial Holder of any of the Claims in the Voting Class and you wish to vote such Claims in the Voting Class, you may return a Master Ballot for such Claims in the Voting Class and you must vote your entire Claim in the Voting Class to either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot, other than a Master Ballot with the votes of multiple Holders, that partially rejects and partially accepts the Plan will not be counted.

<div align="center">9</div>

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

14.    The following Ballots and Master Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder of the Claim; (b) any Ballot or Master Ballot cast by a Party that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot or Master Ballot; (d) any Ballot or Master Ballot not marked to accept or reject the Plan; and (e) any Ballot or Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

15.    For purposes of the numerosity requirement of Bankruptcy Code section 1126(c), separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

The following additional rules shall apply to Master Ballots:

16.    Votes cast by Beneficial Holders through a Nominee will be applied against the positions held by such entities in the Claims in the Voting Class as of the Record Date, as evidenced by the record and depository listings;

17.    Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, will not be counted in excess of the record amount of the Claims in the Voting Class held by such Nominee;

18.    To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Holder Ballots, the Claims and Noticing Agent will attempt to reconcile discrepancies with the Nominee;

19.    To the extent that overvotes on a Master Ballot or pre-validated Beneficial Holder Ballots are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Holder Ballots that contained the overvote, but only to the extent of the Nominee's position in the relevant Claims in the Voting Classes; and

20.    For purposes of tabulating votes, each Beneficial Holder holding through a particular account will be deemed to have voted the principal amount relating to its holding in that particular account, although the Claims and Noticing Agent may be asked to adjust such principal amount to reflect the Claim amount.

**Important Information Regarding Releases under the Plan**:[4]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "**<u>Debtor Release</u>**"):

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other**

---

[4]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Master Ballot.

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.  For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the

<div align="center">11</div>

CUSIPs / ISINs as indicated on Exhibit A attached hereto

Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR;  (B) EACH REORGANIZED DEBTOR;  (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE

CUSIPs / ISINs as indicated on Exhibit A attached hereto

BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any**

13

kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.

IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (877) 354-3909 (DOMESTIC TOLL-FREE) OR +1 (971) 290-1442 (INTERNATIONAL TOLL/LOCAL) OR CURO@epiqglobal.com.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.

**PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY**

CUSIPs / ISINs as indicated on Exhibit A attached hereto

**Exhibit A**

*Please check ONLY ONE box below to indicate the CUSIP/ISIN to which this Master Ballot pertains (or clearly indicate such information directly on the Master Ballot or on a schedule thereto).  If you check more than one box below, the Beneficial Holder votes submitted on this Master Ballot may be invalidated:*

### Class 5 (Prepetition 2L Notes Claims)

| | BOND DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 7.500% Senior Secured Notes due 2028 | 23131L AC1 / US23131LAC19 |
| ☐ | 7.500% Senior Secured Notes due 2028 | U12727 AB6 / USU12727AB64 |

**Exhibit 4E**

**Class 5 Claims (Beneficial Holder Ballot)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| | ) | Chapter 11 |
| In re: | ) | |
| | ) | **IMPORTANT**:  No chapter 11 case has been |
| CURO Group Holdings Corp., *et al.*,[1] | ) | commenced as of the date of distribution of |
| | ) | this ballot.  This ballot is a prepetition |
| | ) | solicitation of your vote on a plan of |
| Debtors. | ) | reorganization. |
| | ) | |

**BENEFICIAL HOLDER BALLOT FOR VOTING ON THE JOINT
PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP.
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

### CLASS 5 – PREPETITION 2L NOTES CLAIMS

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "<u>PLAN</u>")[2] FOR CURO GROUP HOLDINGS CORP., ET AL. (THE "<u>COMPANY</u>") INCLUDED WITH THIS BALLOT <u>BEFORE</u> COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "<u>TRANSACTION</u>") UPON THE EMERGENCE OF THE COMPANY FROM CHAPTER 11.  THE COMPANY HAS NOT COMMENCED CHAPTER 11 CASES AS OF THE DATE HEREOF.

- THIS BALLOT (OR THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BALLOT) MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "<u>CLAIMS AND NOTICING AGENT</u>" OR THE "<u>SOLICITATION AGENT</u>") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "<u>VOTING DEADLINE</u>").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT <u>CURO@EPIQGLOBAL.COM</u> AND REFERENCE "CURO" IN THE SUBJECT LINE, OR CALL (877) 354-3909 (USA OR CANADA) OR +1 (971) 290-1442 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES OR VOTING INSTRUCTIONS, INCLUDING ANY QUESTIONS ABOUT HOW TO SUBMIT YOUR VOTE, PLEASE CONTACT YOUR NOMINEE (AS DEFINED BELOW).

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]     Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

2

- IF A BENEFICIAL HOLDER[3] HOLDS CLASS 5 CLAIMS THROUGH ONE OR MORE NOMINEES,[4] SUCH BENEFICIAL HOLDER MUST IDENTIFY ALL CLASS 5 CLAIMS HELD IN ACCORDANCE WITH ITEM 3 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Company is soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  The Company may file for protection under title 11 of the United States Code (the "Bankruptcy Code") in a bankruptcy court of competent jurisdiction (the "Bankruptcy Court") and seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

You are receiving this ballot (the "Ballot") because your Nominee has identified you as a Beneficial Holder of a Prepetition 2L Notes Claim in Class 5 (the "Voting Class") as of **March 13, 2024** (the "Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package").  This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by Holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

**YOUR VOTE ON THIS BALLOT FOR CLAIMS IN CLASS 5 SHALL BE APPLIED TO EACH APPLICABLE DEBTOR.**

---

[3]   "Beneficial Holder" is a beneficial owner of Class 5 Claims whose Claims have not been satisfied prior to the Voting Record Date pursuant to court order or otherwise, as reflected in the records maintained by the Nominees (as defined herein) holding through the Depository Trust Company and/or the applicable indenture trustee, as of the Voting Record Date.

[4]   "Nominee" means a broker, dealer, commercial bank, trust company, or other nominee who holds Class 5 Claims, or such firm's agent, on behalf of a Beneficial Holder.

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan. You may wish to seek legal advice concerning the Plan and classification and treatment of your Claim under the Plan. Your Claim has been placed in Class 5 under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**Item 1.  Voting - Complete This Section.**

| <u>ITEM 1</u>: PRINCIPAL AMOUNT OF CLAIMS | The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder), of Claim(s) in the Voting Class as set forth below (your "<u>Claims</u>").  If you do not know the amount of your Class 5 Prepetition 2L Notes Claim as of the Voting Record Date, please contact your Nominee for this information.  You may vote to accept or reject the Plan.  You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for the Voting Class in order to have your vote in the Voting Class counted. |
|---|---|
| | Please note that you are voting all of your Claims in the Voting Class either to accept or reject the Plan.  You may not split your vote in the Voting Class.  If you do not indicate that you either accept or reject the Plan in the Voting Class by checking the applicable box below, your vote in the Voting Class will not be counted.  If you indicate that you both accept and reject the Plan for the Voting Class by checking both boxes below, your vote in the Voting Class will not be counted. |
| | The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor.  Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor. |
| | The Beneficial Holder of the Claim in the Voting Class set forth below votes to (*please check <u>one and only one box per applicable Voting Claim</u>*): |

| Plan Class | Amount | Vote to Accept or Reject Plan |
|---|---|---|
| Class 5 Prepetition 2L Notes Claims | $_____ | ☐ ACCEPT (VOTE FOR) THE PLAN<br><br>☐ REJECT (VOTE AGAINST) THE PLAN |

**Item 2.  Important Information Regarding Releases under the Plan.**[5]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "<u>Debtor Release</u>"):

　　　　As of the Effective Date, except for the rights that remain in effect from and after the Effective Date **to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other**

---

[5]　　The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

4

Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.  For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the

5

Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I)

6

ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

**IMPORTANT INFORMATION REGARDING THE RELEASES:**

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF: (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES; <u>AND</u> (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

☐      **By checking this box, the Holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "<u>**Exculpation**</u>"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes**

7

actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder. The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.

*[Remainder of page intentionally left blank.]*

8

**Item 3.  Certification of Claims in the Voting Class Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Claims identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Claims in the Voting Class identified in Item 1 owned by such Beneficial Holder as indicated in Item 1, except for the Claims identified in the following table.  **To be clear, if any Beneficial Holder holds Claims in a Voting Class through one or more Nominees, such Beneficial Holder must identify all Claims in the Voting Class held through its own name and/or each Nominee in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

**ONLY COMPLETE ITEM 3 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF OTHER CLASS 5 – PREPETITION 2L NOTES CLAIMS**

| Account Number of Other Class 5 Claims Voted | Name of Owner[6] | Principal Amount of Other Claims Voted in Class 5 | CUSIP of Other Class 5 Claims Voted |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

---

[6]   **Insert your name if the Claims in the respective Voting Class are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank and their DTC Participant Number.**

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**Item 4.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.       as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory for a Beneficial Holder) of the Claims in the Voting Class set forth in Item 1;

b.       the Beneficial Holder has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.       the Beneficial Holder has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.       the Beneficial Holder has cast the same vote with respect to all of the Beneficial Holder's Claims in the Voting Class;

e.       the Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

f.       the Beneficial Holder understands and acknowledges that the Claims and Noticing Agent may verify the amount of the Claims in the Voting Class set forth in Item 1 held by the Beneficial Holder as of the Voting Record Date with any Nominee through which the Beneficial Holder holds its the Claims in the Voting Classes set forth in Item 1 and by returning an executed Ballot the Beneficial Holder directs any such Nominee to provide any information or comply with any actions requested by the Claims and Noticing Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Claims and Noticing Agent, the amount shown on the records of the Nominee, if applicable, or the Company's records shall control; and

g.       the Beneficial Holder understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Holder and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Holder.

2

**Item 5.  Beneficial Holder Information and Signature.**

Name of Beneficial Holder: _____

(*print or type*)

Signature: _____

Name of Signatory: _____

(*if other than Beneficial Holder*)

Title: _____

Address: _____

_____

_____

Date Completed: _____

Email Address: _____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**IF YOU RECEIVED A PRE-VALIDATED BALLOT AND A RETURN ENVELOPE ADDRESSED TO THE CLAIMS AND NOTICING AGENT (EPIQ CORPORATE RESTRUCTURING, LLC), PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS ABOUT THIS BALLOT OR THE PLAN SOLICITATION OR YOU NEED ADDITIONAL VOTING MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT CURO@EPIQGLOBAL.COM AND REFERENCE "CURO" IN THE SUBJECT LINE OR CALL (877) 354-3909 (USA OR CANADA) OR +1 (971) 290-1442 (INTERNATIONAL).  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT YOUR NOMINEE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

3

## VOTING INSTRUCTIONS

1. As described in the Disclosure Statement, the Company is soliciting the votes of Beneficial Holders of Class 5 Claims with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package you received with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL HOLDER BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Claim under the Plan.

2. The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3. To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **sign and return the Ballot in accordance with the instructions, so that this Ballot (if "pre-validated" by your Nominee) or a Master Ballot cast on your behalf is actually received by the Claims and Noticing Agent by the Voting Deadline**. If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Claims and Noticing Agent so that it is actually received by the Voting Deadline. Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Holders according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Beneficial Holders through online voting, by phone, facsimile, or other electronic means.

   **The Claims and Noticing Agent will not accept beneficial ballots by facsimile or other electronic means.** If you are directed by your Nominee to submit the Beneficial Holder Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Holder Ballot to your Nominee, including all certifications.

4. The time by which a Ballot or Master Ballot including your vote is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. **The Voting Deadline is April 19, 2024, at 4:00 p.m., prevailing Central Time**.

5. If a Ballot is received after the Voting Deadline, it will not be counted unless the Company determines otherwise or as permitted by applicable law or court order. In all cases, Beneficial Holders should allow sufficient time to ensure timely delivery. No Ballot should be sent to the Company or the Company's financial or legal advisors. A Ballot will not be counted unless received by the Claims and Noticing Agent.

6. The Beneficial Holder understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent.

7. If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8. If a Beneficial Holder simultaneously casts inconsistent duplicate Ballots, with respect to the same Claim, such Ballots will not be counted.

9. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors

should not surrender certificates or instruments representing or evidencing their Claims, and the Company will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10. The Ballot does not constitute, and shall not be deemed to be: (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11. Please be sure to sign and date your Ballot. If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12. You must vote your entire Claim in the Voting Class either to accept or reject the Plan and may not split your vote. Accordingly, a Ballot that partially rejects and partially accepts the Plan as to the Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

13. Any Ballot that is properly completed, executed, and timely returned that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14. The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder; (b) any Ballot cast by a Person or Entity that does not hold a Claim in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15. If you hold Claims or Interests in more than one Class under the Plan or for different Claims within a Class you may receive more than one Ballot. Each Ballot votes only your Claims or Interests indicated on that Ballot. Please complete and return each Ballot you receive.

16. For purposes of the numerosity requirement of Bankruptcy Code section 1126(c), separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided*, that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

_____

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Claims and Noticing Agent at <u>CURO@epiqglobal.com</u> OR call (877) 354-3909 (USA Or Canada) OR +1 (971) 290-1442 (International).**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**

## Exhibit A

***Your Nominee may have checked a box below to indicate the CUSIP/ISIN to which this Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Ballot.***

### Class 5 (Prepetition 2L Notes Claims)

| | BOND DESCRIPTION | CUSIP / ISIN |
|---|---|---|
| ☐ | 7.500% Senior Secured Notes due 2028 | 23131L AC1 / US23131LAC19 |
| ☐ | 7.500% Senior Secured Notes due 2028 | U12727 AB6 / USU12727AB64 |

**CUSIPs / ISINs as indicated on Exhibit A attached hereto**

**<u>Exhibit 4F</u>**

**Class 11 Interests (Registered Owner Ballot)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CURO Group Holdings Corp., *et al.*,[1] | ) | Case No. 24-90164 (MI) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

**REGISTERED OWNER BALLOT FOR VOTING ON THE JOINT
PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP.
AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

### CLASS 11 – EXISTING CURO INTERESTS

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR CURO GROUP HOLDINGS CORP., ET. AL. INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE ABOVE-CAPTIONED DEBTORS (THE "DEBTORS") FROM CHAPTER 11

- THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT CURO@EPIQGLOBAL.COM AND REFERENCE "CURO" IN THE SUBJECT LINE, OR CALL 877-354-3909 (USA OR CANADA) OR 971-290-1442 (INTERNATIONAL).

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

---

[1]  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]  Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES. THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BALLOT.

The Debtors are soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement"). On March 25, 2024, the Debtors filed for protection under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); the Debtors seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein. A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan. The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

You are receiving this ballot (the "Ballot") because, according to the register of CURO Group Holdings Corp. as of March 13, 2024, (the "Voting Record Date") you were the registered owner (a "Registered Owner") of an Existing CURO Interest in Class 11 (the "Voting Class"). Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class. The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package"). This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by Holders of Claims and Interests. Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them from (a) Epiq Corporate Restructuring, LLC (the "Claims and Noticing Agent") at no charge by: (i) accessing the Debtors' restructuring website at http://dm.epiq11.com/Curo; (ii) writing to the Claims and Noticing Agent at Epiq Corporate Restructuring, LLC, CURO Group Holdings Corp., Ballot Processing, P.O. Box 4422 Beaverton, OR 97076-4422; (iii) calling the Claims and Noticing Agent at (877) 354-3909 (US toll-free) or +1 (971) 290-1442 (international); (iv) emailing Curo@epiqglobal.com with a reference to "CURO Group Holdings Corp." in the subject line; or (v) for a fee via PACER at http://www.txs.uscourts.gov/page/bankruptcy-court.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong ballot, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

**PLEASE BE ADVISED THAT THE PLAN CONTAINS CERTAIN DISCHARGE, RELEASE, EXCULPATION AND INJUNCTION PROVISIONS. THESE PROVISIONS ARE FOUND IN ARTICLE VIII OF THE PLAN. YOU ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND**

3

**CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**If your vote is not received by the Claims and Noticing Agent on or before the Voting Deadline and the deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan.**

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan. You may wish to seek legal advice concerning the Plan and classification and treatment of your Interest under the Plan. Your Interest has been placed in Class 11 under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Existing CURO Interests.** For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 13, 2024, the undersigned holds Existing CURO Interests in the number set forth below.

| |
|---|
| **Number of Shares Held:** _____ |

**Item 2. Vote on the Plan.** The undersigned owner of Existing CURO Interests in the amount set forth in Item 1 above hereby votes to:

| | |
|---|---|
| ☐ **ACCEPT** (vote FOR) the Plan | ☐ **REJECT** (vote AGAINST) the Plan |

**Item 3. Important Information Regarding Releases under the Plan.**[3]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule,

---

[3]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. You should read the Plan before completing this, Ballot.

4

statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.  For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other

5

**Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "Third-Party Releases").**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.**

**Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO

6

GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

<u>**IMPORTANT INFORMATION REGARDING THE RELEASES:**</u>

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF:  (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES; AND (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

☐ **By checking this box, the Holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "<u>**Exculpation**</u>"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other**

7

**releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:   (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.**

**The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.**

*[Remainder of page intentionally left blank.]*

**Item 4.  Certification as to Existing CURO Interests.**

By completing and returning this Ballot, the Registered Owner of the Interests identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Interests in the Voting Class identified in Item 1 owned by such Registered Owner as indicated in Item 1, except for the Interests identified in the following table.  **To be clear, if any Registered Owner holds Interests in a Voting Class through one or more Nominees, such Registered Owner must identify all Interests in the Voting Class held through its own name and/or each Nominee in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.**

ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF
THE SAME VOTING CLASS

| Name of Master Ballot Agent (if you voted additional Existing CURO Interests as a Beneficial Owner) | Account Number (if applicable) | Number of Shares Voted |
|---|---|---|
| 1. | | |
| 2 | | |
| 3. | | |
| 4. | | |

**CUSIP 23131L107 / ISIN US23131L1070**

**Item 5.  Certifications and Acknowledgments.**

Upon execution of this Ballot, the undersigned certifies that:

a.     as of the Voting Record Date, the undersigned was the Registered Owner (or authorized signatory for a Registered Owner) of the Interests in the Voting Class set forth in Item 1;

b.     the Registered Owner or authorized signatory for a Registered Owner) has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.     the Registered Owner has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.     the Registered Owner has cast the same vote with respect to all of the Registered Owner's Interests in the Voting Class;

e.     the Registered Owner understands and acknowledges that if multiple Ballots are submitted voting the Interest set forth in Item 1, only the last properly completed Ballot voting the Interest and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

f.     the Registered Owner understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Registered Owner hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Registered Owner and shall not be affected by, and shall survive, the death or incapacity of the Registered Owner.


Name of Registered Owner:_____
                                          *(print or type)*

Signature:_____


Name of Signatory:_____
                                   *(if other than Registered Owner)*

Title: _____

Address:_____

        _____

        _____

Date Completed:_____

Email Address:_____

2

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT (EPIQ CORPORATE RESTRUCTURING, LLC) BY THE VOTING DEADLINE.**

| By first class mail to:<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | Via overnight courier or hand delivery to:<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>10300 SW Allen Blvd.<br>Beaverton, OR 97005 |
| --- | --- |

**OR**

**By electronic, online submission:**

Please visit https://dm.epiq11.com/CURO. Click on the "E-Ballot" section of the Debtors' website and follow the directions to submit your E-Ballot.  If you choose to submit your Ballot via Epiq's E-Ballot system, you should not also return a hard copy of your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

    **Unique E-Ballot ID#: _____**

"E-Balloting" is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted by facsimile or email will not be counted.

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (877) 354-3909 (DOMESTIC TOLL-FREE) OR +1 (971) 290-1442 (INTERNATIONAL TOLL/LOCAL) OR CURO@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY THE E-BALLOT PORTAL).**

**THE BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.   The Debtors are soliciting the votes of Holders of Claims and Interests with respect to the Plan attached as **Exhibit A** to the Disclosure Statement. Capitalized terms used in the Ballot or in these instructions (the "Ballot Instructions") but not otherwise defined therein or herein shall have the meanings set forth in the Plan or Disclosure Statement (as applicable).   **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.   The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3.   To ensure that your Ballot is counted, you **must either** complete and submit this Ballot or (b) vote through the Debtors' online balloting portal accessible through the Debtors' case website http://dm.epiq11.com/Curo.

4.   **Use of Hard Copy Ballot**.  To ensure that your hard copy Ballot is counted, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and return your original Ballot in the enclosed pre-addressed, pre-paid envelope or via first class mail, overnight courier, or hand delivery to one of the following addresses or in accordance with paragraph 5 below.

| **By first class mail to:** | **Via overnight courier or hand delivery to:** |
|---|---|
| **CURO Group Holdings Corp** | **CURO Group Holdings Corp** |
| c/o Epiq Ballot Processing Center | c/o Epiq Ballot Processing Center |
| P.O. Box 4422 | 10300 SW Allen Blvd. |
| Beaverton, OR 97076-4422 | Beaverton, OR 97005 |

5.   **Use of Online Ballot Portal (E-Ballot)**.  To ensure that your electronic Ballot is counted, please follow the instructions of the Debtors' case website at: https://dm.epiq11.com/Curo.  You will need to enter your unique E-Ballot identification number indicated herein.  The E-Ballot portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  **Ballots will not be accepted by facsimile or electronic means (other than the online balloting portal).**

6.   Your Ballot **must** be returned to the Claims and Noticing Agent so as to be **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.  **The Voting Deadline is April 19, 2024 at 4:00 p.m., prevailing Central Time**.

7.   If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the discretion of the Debtors.  Additionally, **the following Ballots will *not* be counted**:

   (a)  any Ballot that is completed, executed, and timely returned to the Claims and Noticing Agent, but does not indicate either an acceptance or rejection of the Plan;

   (b)  any Ballot that is completed, executed, and timely returned to the Claims and Noticing Agent, but indicates both an acceptance and rejection of the Plan;

   (c)  any Ballot received after the Voting Deadline unless the Debtors shall have granted an extension of the Voting Deadline in writing as to such Ballot;

   (d)  any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

   (e)  any Ballot cast by an Entity that does not hold Interests in Class 11;

   (f)  any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

4

 

(g) any unsigned Ballot;

(h) any Ballot not bearing an original signature (for the avoidance of doubt, Ballots submitted online shall be deemed to bear an original signature); and/or

(i) any Ballot transmitted to the Claims and Noticing Agent by facsimile or other means not specifically approved herein.

8. The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each Holder of a Class 11 Interests.  Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent ***actually receives*** the originally executed Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

9. If multiple Ballots are received from the same Holder of Class 11 Interests with respect to the same Interests, prior to the Voting Deadline, the latest, timely received, and properly completed Ballot will supersede and revoke any earlier received Ballots.

10. You must vote all of your Interests within Class 11 either to accept or reject the Plan and may **not** split your vote.

11. This Ballot does ***not*** constitute, and shall not be deemed to be, (a) a Proof of Claim or Proof of Interests.

12. **Please be sure to sign and date your Ballot**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Ballot.

13. If you hold Claims or Interests in more than one Class under the Plan you may receive more than one Ballot coded for each different Class.  Each Ballot votes ***only*** your Claims or Interests indicated on that Ballot, so please complete and return each Ballot that you receive.

<center>**PLEASE SUBMIT YOUR BALLOT PROMPTLY.**</center>

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT TOLL FREE AT (877) 354-3909 (DOMESTIC TOLL-FREE) OR +1 (971) 290-1442 (INTERNATIONAL TOLL/LOCAL) OR CURO@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

5

## Exhibit 4G

**Class 11 Interests (Master Ballot)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*,[1] | ) | Case No. 24-90164 (MI) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**MASTER BALLOT FOR VOTING ON THE JOINT PREPACKAGED**
**PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND**
**ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 11 – EXISTING CURO INTERESTS**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR CURO GROUP HOLDINGS CORP., ET AL. INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE ABOVE-CAPTIONED DEBTORS (THE "DEBTORS") FROM CHAPTER 11.

- THIS MASTER BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE, OR CALL (646) 362-6336.

- IF THE BANKRUPTCY COURT CONFIRMS THE PLAN, IT WILL BIND HOLDERS REGARDLESS OF WHETHER THEY HAVE VOTED.

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville SC 29601.

[2]   Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

**CUSIP 23131L107 / ISIN US23131L1070**

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 2 OF THIS BALLOT.

The Debtors are soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  On March 25, 2024, the Debtors filed for protection under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); the Debtors seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

You are receiving this master ballot (this "Master Ballot") because you are the Nominee (as defined below) for one or more beneficial owners (the "Beneficial Owners") of an Existing CURO Interest in Class 11 (the "Voting Class") as of **March 13, 2024** (the "Voting Record Date").

**This Master Ballot is to be used by you as a broker, bank, or other nominee; or as the agent of a broker, bank, or other nominee (each of the foregoing, a "Nominee"); or as the proxy holder of a Nominee for certain Beneficial Owners' Class 11 Interests to transmit to the Claims and Noticing Agent the votes of such Beneficial Owners in respect of their Class 11 Interests to accept or reject the Plan.**

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials (the "Solicitation Package") have been distributed under separate cover from this Master Ballot.  This Master Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto.  Once completed and returned in accordance with the attached instructions, the votes on the Plan will be counted as set forth herein.

You are authorized to disseminate information and materials pertaining to the solicitation of Plan votes, and to collect votes to accept or to reject the Plan from Beneficial Owners in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Owner Ballot, and collecting votes from Beneficial Owners through online voting, by phone, facsimile, or other electronic means.

The Bankruptcy Court may confirm the Plan and thereby bind all Beneficial Owners of Claims and Interests.  To have the votes of your Beneficial Owners count as either an acceptance or rejection of the Plan, you must complete and return this Master Ballot so that the Notice and Claims Agent **actually receives** it on or before the Voting Deadline.

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

2

CUSIP 23131L107 / ISIN US23131L1070

**Item 1.  Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐ is a broker, bank, or other nominee for the Beneficial Owners of the amount of the Existing CURO Interests listed in Item 2 below, and is the record holder of such securities; or

☐ is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a broker, bank, or other nominee, or a Beneficial Owner that is the registered holder of the aggregate number of the Existing CURO Interests listed in Item 2 below; or

☐ has been granted a proxy (an original of which is attached hereto) from a broker, bank, or other nominee, or a Beneficial Owner, that is the registered holder of the aggregate number of the Existing CURO Interests listed in Item 2 below, and accordingly, has full power and authority to vote to accept or reject the Plan, on behalf of the Existing CURO Interests held by the Beneficial Owners described in Item 2.

CUSIP 23131L107 / ISIN US23131L1070

**Item 2. Class 11 Interests Votes on the Plan and Item 3. Release**

The undersigned transmits the following votes and release elections of Beneficial Owners, and certifies that the following Beneficial Owners, as identified by their respective customer account numbers set forth below, are beneficial owners of such securities as of the Record Date, and have delivered to the undersigned, as Master Ballot Agent, Beneficial Owner Ballots casting such votes and release elections.

Indicate in the appropriate column below the aggregate number voted for each account or attach such information to this Master Ballot in the form of the following table.  Please note that each Beneficial Owner must vote all of their Claims or Interests in the Voting Class either to accept or reject the Plan and may not split such vote.  Any Ballot executed by the Beneficial Owner that does not indicate an acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan in the Voting Class will not be counted.  If the Beneficial Owner has checked the box on Item 3 of the Beneficial Owner Ballot pertaining to the releases by Holders of Claims or Interests, as detailed in Article VIII.D of the Plan, please place an X in the Item 3 column of the Voting Class below.  The full text of Article VIII.D is duplicated in the Master Ballot Instructions.

### CLASS 11 – EXISTING CURO INTERESTS (CUSIP 23131L107 / ISIN US23131L1070)

| Your Customer Account Number for Each Beneficial Owner Voted on this Master Ballot | Number of Shares Held as of the Record Date | Transcribe from Item 2 of the Beneficial Owner Ballot<br><br>Indicate the vote cast on the Beneficial Owner Ballot by placing an "X" in the appropriate column below. | | | Transcribe from Item 3 of the Beneficial Owner Ballot.<br><br>If the box in Item 3 of the Beneficial Owner Ballot was completed, place an "X" in the column below. |
|---|---|---|---|---|---|
| | | Accept the Plan | or | Reject the Plan | |
| 1. | | ☐ | | ☐ | ☐ |
| 2. | | ☐ | | ☐ | ☐ |
| 3. | | ☐ | | ☐ | ☐ |
| 4. | | ☐ | | ☐ | ☐ |
| 5. | | ☐ | | ☐ | ☐ |
| 6. | | ☐ | | ☐ | ☐ |
| **TOTALS** | | | | | |

CUSIP 23131L107 / ISIN US23131L1070

**Item 4.  Certification as to Transcription of Information from Item 4 of the Ballots as to Interests in Class 11 Voted Through Other Ballots.**

The undersigned certifies that the following information is a true and accurate schedule on which the undersigned has transcribed the information, if any, provided in Item 4 of each Ballot received from a Beneficial Holder.  Please use additional sheets of paper if necessary.

| Your Customer Account Number for Each Beneficial Holder Who Completed Item 4 of the Ballots. | TRANSCRIBE FROM ITEM 3 OF THE CLASS 11 BENEFICIAL HOLDER BALLOTS: | | |
|---|---|---|---|
| | Account Number of Other Class 11 Interests  Voted | Name of Beneficial Owner or Name of Nominee if Interests are held through a Nominee | Number of Shares of Voted on other Ballots in Class 11 |
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

5

CUSIP 23131L107 / ISIN US23131L1070

**Item 5.  Certifications.**

Upon execution of this Master Ballot, the undersigned certifies that:

1.      it has received a copy of the Disclosure Statement, the Plan, the Ballots, and the remainder of the Solicitation Package and has delivered the same to the Beneficial Owners of the Interests in the Voting Class listed in Item 2 above or delivered materials via other customary communications used to solicit or collect votes;

2.      it has received appropriate voting instructions from each Beneficial Owner listed in Item 2 of this Master Ballot; or

3.      it is the registered Beneficial Owner of the securities being voted;

4.      it has been authorized by each such Beneficial Owner to vote on the Plan;

5.      it has properly disclosed:  (a) the respective amounts of the Interests in the Voting Class as set forth in Item 2, as the case may be, by each Beneficial Owner who completed a Ballot; (b) each such Beneficial Owner's respective vote concerning the Plan; (c)  ) each such Beneficial Owner's certification as to other Interests voted and; (d) the customer account or other identification number for each such Beneficial Owner; and

6.      it will maintain Ballots and evidence of separate transactions returned by Beneficial Owners (whether properly completed or defective) for at least one year after the Effective Date and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.


Name of Nominee:      _____
                                              (Print or type)

DTC Participant Number: _____

Name of Proxy Holder or Agent
for Nominee (if applicable):
                                _____
                                              (Print or type)

Signature:                  _____

Name of Signatory:      _____

Title:                          _____

Address:                    _____

                                _____

                                _____

Date Completed:        _____


Telephone Number and Email Address:  _____

CUSIP 23131L107 / ISIN US23131L1070

**THIS MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE VOTING DEADLINE, WHICH IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY WITH AN ORIGINAL SIGNED COPY IN THE ENVELOPE PROVIDED, OR BY REGULAR MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO THE ADDRESS BELOW, OR BY EMAIL (INSTRUCTIONS BELOW) SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT EPIQ CORPORATE RESTRUCTURING, LLC) BY THE VOTING DEADLINE.**

| | |
|---|---|
| **By first class mail to:**<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>P.O. Box 4422<br>Beaverton, OR 97076-4422 | **Via overnight courier or hand delivery to:**<br>**CURO Group Holdings Corp**<br>c/o Epiq Ballot Processing Center<br>10300 SW Allen Blvd.<br>Beaverton, OR 97005 |

**OR**

| |
|---|
| **Via email to: tabulation@epiqglobal.com with a reference to: "CURO – Master Ballot" in the subject line** |

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (646) 362-6336 OR VIA EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE.**

**ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

**MASTER BALLOTS WILL NOT BE ACCEPTED BY TELECOPY, FACSIMILE, OR OTHER ELECTRONIC MEANS OF TRANSMISSION (OTHER THAN BY E-MAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO MASTER BALLOT" IN THE SUBJECT LINE).**

**THE MASTER BALLOT SHOULD NOT BE SENT TO THE DEBTORS, THE BANKRUPTCY COURT, OR THE DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

7

**CUSIP 23131L107 / ISIN US23131L1070**

## <u>VOTING INSTRUCTIONS</u>

1.   As described in the Disclosure Statement, the Debtors are soliciting the votes of Beneficial Owners of Class 11 Interests with respect to the Plan referred to in the Disclosure Statement.  The Plan and the Disclosure Statement are included in the Solicitation Package.  Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan.

2.   The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3.   You should immediately distribute the Ballots (or other customary material used to collect votes in lieu of the Ballots) and the Solicitation Package to all Beneficial Owners of Class 11 Interests and take any action required to enable each such Beneficial Owner to timely vote the Interests that it holds.  You may distribute the Solicitation Packages to Beneficial Owners, as appropriate, in accordance with your customary practices.  You are authorized to collect votes to accept or to reject the Plan from Beneficial Owners in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Ballot, and collecting votes from Beneficial Owners through online voting, by phone, facsimile, or other electronic means.  Any Ballot returned to you by a Beneficial Owner of an Interest shall not be counted for purposes of accepting or rejecting the Plan until you properly complete and deliver, to the Claims and Noticing Agent, a Master Ballot that reflects the vote of such Beneficial Owners by 4:00 p.m., prevailing Central Time, on April 19, 2024, or otherwise validate the Ballot in a manner acceptable to the Claims and Noticing Agent.

   If you are transmitting the votes of any Beneficial Owners of Interests in Voting Classes, you may <u>either</u>:

   (a)   "Pre-validate" the individual Beneficial Owner Ballot contained in the Solicitation Package and then forward the Solicitation Package to the Beneficial Owner of the Class 11 Interest for voting within five (5) Business Days after the receipt by such Nominee of the Solicitation Package, with the Beneficial Owner then returning the individual Beneficial Owner Ballot directly to the Claims and Noticing Agent in the return envelope to be provided in the Solicitation Package.  A Nominee "pre-validates" a Beneficial Owner Ballot by signing the Ballot and including their DTC participant name and DTC participant number; indicating the account number of the Beneficial Owner and the principal amount of the Class 11 Interest held by the Nominee for such Beneficial Owner, applying a medallion guarantee stamp to the ballot to certify the number of shares of the Class 11 Interest held by the Beneficial Owner as of the Voting Record Date and then forwarding the Ballot together with the Solicitation Package to the Beneficial Owner.  The Beneficial Owner then completes the information requested on the Ballot and returns the Ballot directly to the Claims and Noticing Agent.  A list of the Beneficial Owners to whom "pre-validated" Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Effective Date; OR

   (b)   Within five (5) Business Days after receipt by such Nominee of the Solicitation Package, forward the Solicitation Package to the Beneficial Owner of the Class 11 Interest for voting (along with a return envelope provided by and addressed to the Nominee, if applicable), with the beneficial owner then returning the individual Beneficial Owner Ballot to the Nominee.  In such case, the Nominee will tabulate the votes of its respective Beneficial Owners on a Master Ballot that will be provided to the Nominee separately by the Claims and Noticing Agent, in accordance with any instructions set forth in the instructions to the Master Ballot, and then return the Master Ballot to the Claims and Noticing Agent.  The Nominee should advise the Beneficial Owners to return their individual Beneficial Owner Ballots to the Nominee by a date calculated by the Nominee to allow it to prepare and return the Master Ballot to the Claims and Noticing Agent so that the Master Ballot is **actually received** by the Claims and Noticing Agent on or before the Voting Deadline.

CUSIP 23131L107 / ISIN US23131L1070

4.  With regard to any Ballots returned to you by a Beneficial Owner, you must:  (a) compile and validate the votes and other relevant information of each such Beneficial Owner on the Master Ballot using the customer name or account number assigned by you to each such Beneficial Owner; (b) execute the Master Ballot; (c) transmit such Master Ballot to the Claims and Noticing Agent by the Voting Deadline; and (d) retain such Ballots from Beneficial Owners, whether in hard copy or by electronic direction, in your files for a period of one year after the Effective Date.  You may be ordered to produce the Ballots to the Debtors or the Bankruptcy Court.

5.  The time by which a Ballot is **actually received** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline.  **The Voting Deadline is April 19, 2024, at 4:00 p.m., prevailing Central Time**.

6.  If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order.  In all cases, Nominees should allow sufficient time to ensure timely delivery.  No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors.  A Ballot will not be counted unless received by the Claims and Noticing Agent.

7.  If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Owner of an Interest, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Owner on any earlier received Master Ballot.

8.  If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

9.  If a voter simultaneously casts inconsistent duplicate Ballots, with respect to the same Interest, such Ballots shall not be counted.

10.  The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto.  Accordingly, at this time, holders should not surrender certificates or instruments representing or evidencing their securities, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

11.  The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim or Interest; or (b) an assertion or admission with respect to any Interest in the Debtors' chapter 11 cases.

12.  Please be sure to sign and date your Master Ballot.  You should indicate that you are signing a Master Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Beneficial Owner.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the Master Ballot.

13.  If you are both the Nominee and the Beneficial Owner of any of the Interests in the Voting Class and you wish to vote such Interests in the Voting Class, you may return a Master Ballot for such Interests in the Voting Class and you must vote your entire Interest in the Voting Class to either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot, other than a Master Ballot with the votes of multiple Holders, that partially rejects and partially accepts the Plan will not be counted.

14.  The following Ballots and Master Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot or Master Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner of the Interest; (b) any Ballot or Master Ballot cast by a Party that does not hold an Interest in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot or Master Ballot; (d)

any Ballot or Master Ballot not marked to accept or reject the Plan; and (e) any Ballot or Master Ballot submitted by any party not entitled to cast a vote with respect to the Plan.

<u>The following additional rules shall apply to Master Ballots:</u>

15.    Votes cast by Beneficial Owners through a Nominee will be applied against the positions held by such entities in the Interests in the Voting Class as of the Record Date, as evidenced by the record and depository listings;

16.    Votes submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Owner Ballots, will not be counted in excess of the record amount of the Interests in the Voting Class held by such Nominee;

17.    To the extent that conflicting votes or "overvotes" are submitted by a Nominee, whether pursuant to a Master Ballot or pre-validated Beneficial Owner Ballots, the Claims and Noticing Agent will attempt to reconcile discrepancies with the Nominee; and

18.    To the extent that overvotes on a Master Ballot or pre-validated Beneficial Owner Ballots are not reconcilable prior to the preparation of the vote certification, the Claims and Noticing Agent will apply the votes to accept and reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot or pre-validated Beneficial Owner Ballots that contained the overvote, but only to the extent of the Nominee's position in the relevant Claims in the Voting Classes.

**Important Information Regarding Releases under the Plan**:[3]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "**Debtor Release**"):

**As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance**

---

[3]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Master Ballot.

**CUSIP 23131L107 / ISIN US23131L1070**

Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence. For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization

11

Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) EACH DEBTOR; (B) EACH REORGANIZED DEBTOR; (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Article VIII.F of the Plan establishes an injunction (the "**Injunction**"):

**Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.**

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.

IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT AT (646) 362-6336, OR VIA EMAIL TO TABULATION@EPIQGLOBAL.COM WITH A REFERENCE TO "CURO" IN THE SUBJECT LINE.

ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.

<u>PLEASE SUBMIT YOUR MASTER BALLOT PROMPTLY</u>

14

**CUSIP 23131L107 / ISIN US23131L1070**

**Exhibit 4H**

**Class 11 Interests (Beneficial Owner Ballot)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CURO Group Holdings Corp., *et al.*,[1] | ) | Case No. 24-90164 (MI) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) |  |

**BENEFICIAL OWNER BALLOT FOR VOTING ON THE JOINT**
**PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP.**
**AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**CLASS 11 – EXISTING CURO INTERESTS**

---

**PLEASE READ - YOUR RESPONSE IS REQUIRED BY APRIL 19, 2024**

- PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT RELATING TO THE JOINT PREPACKAGED PLAN OF REORGANIZATION OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS MAY BE MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN")[2] FOR CURO GROUP HOLDINGS CORP., ET AL. INCLUDED WITH THIS BALLOT BEFORE COMPLETING THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN (INCLUDING THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN), WHICH IS SUBJECT TO BANKRUPTCY COURT APPROVAL AND WHICH CONTEMPLATES A COMPREHENSIVE RESTRUCTURING TRANSACTION (THE "TRANSACTION") UPON THE EMERGENCE OF THE ABOVE-CAPTIONED DEBTORS (THE "DEBTORS") FROM CHAPTER 11.

- THIS BALLOT (OR THE MASTER BALLOT REFLECTING THE VOTE CAST ON THIS BALLOT) MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY EPIQ CORPORATE RESTRUCTURING, LLC (THE "CLAIMS AND NOTICING AGENT" OR THE "SOLICITATION AGENT") BEFORE **4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024** (THE "VOTING DEADLINE").

- IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT AT CURO@EPIQGLOBAL.COM AND REFERENCE "CURO" IN THE SUBJECT LINE, OR CALL (877) 354-3909 (USA OR CANADA) OR +1 (971) 290-1442 (INTERNATIONAL) AND REQUEST TO SPEAK WITH A MEMBER OF THE SOLICITATION TEAM.  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES OR VOTING INSTRUCTIONS, INCLUDING ANY QUESTIONS ABOUT HOW TO SUBMIT YOUR VOTE, PLEASE CONTACT YOUR NOMINEE (AS DEFINED BELOW).

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Plan.

- IF A BENEFICIAL OWNER (AS DEFINED BELOW) HOLDS CLASS 11 INTERESTS THROUGH ONE OR MORE NOMINEES,[3] SUCH BENEFICIAL OWNER MUST IDENTIFY ALL CLASS 11 INTERESTS HELD IN ACCORDANCE WITH ITEM 4 OF THIS BALLOT, AND MUST INDICATE THE SAME VOTE TO ACCEPT OR REJECT THE PLAN ON ALL BALLOTS SUBMITTED.

- IF THE COURT CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

- NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS INCLUDED IN THE MATERIALS MAILED WITH THIS BALLOT.

- CONFIRMATION OF THE PLAN IS EXPRESSLY CONDITIONED UPON BANKRUPTCY COURT APPROVAL OF THE RELEASES BY RELEASING PARTIES (AS DESCRIBED BELOW AND LOCATED IN ARTICLE VIII OF THE PLAN), WHICH, IF APPROVED BY THE BANKRUPTCY COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY RELEASING PARTIES, IF APPROVED, WILL BIND AFFECTED HOLDERS OF CLAIMS AND INTERESTS IN THE MANNER DESCRIBED IN ITEM 3 OF THIS BALLOT.

The Debtors are soliciting votes with respect to the Plan as set forth in the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* and all exhibits related thereto (collectively, and as each may be modified, amended, or supplemented from time to time, the "Disclosure Statement").  On March 25, 2024, the Debtors filed for protection under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"); the Debtors seek to consummate the Transaction through the chapter 11 bankruptcy process and the Plan.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.  A Voting Class will accept the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in that Voting Class votes to accept the Plan.  The Bankruptcy Court may confirm the Plan, which contemplates effectuating the Restructuring Transactions, if the Plan otherwise satisfies the requirements of Bankruptcy Code section 1129, and the Plan then would be binding on all Holders of Allowed Claims and Interests in the Voting Classes, among others.

You are receiving this ballot (the "Ballot") because your Nominee has identified you as a beneficial owner (the "Beneficial Owner") of an Existing CURO Interest in Class 11 (the "Voting Class") as of **March 13, 2024** (the "Voting Record Date").  Accordingly, you have the right to vote to accept or reject the Plan.

The Disclosure Statement describes the rights and treatment for each Class.  The Disclosure Statement, the Plan, and certain other materials are also included in the packet you are receiving with this Ballot (the "Solicitation Package"). This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect thereto, including with respect to releases by Holders of Claims and Interests.  Once completed and returned in accordance with the attached instructions, your vote on the Plan will be counted as set forth herein.

*You should carefully and thoroughly review the Disclosure Statement and Plan before you vote to accept or reject the Plan.  You may wish to seek legal advice concerning the Plan and classification and treatment of your Interest under the Plan.  Your Interest has been placed in Class 11 under the Plan.*

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

---

[3]   "Nominee" means a broker, dealer, commercial bank, trust company, or other nominee who holds Class 11 Interests, or such firm's agent, on behalf of a Beneficial Owner.

3

**PLEASE COMPLETE THE FOLLOWING:**

**Item 1. Amount of Existing CURO Interests.**  For purposes of voting to accept or reject the Plan, the undersigned certifies that as of March 13, 2024, the undersigned holds Existing CURO Interests in the number set forth below.

| | |
|---|---|
| **Number of Shares Held:** | _____ |

**Item 2. Vote on the Plan.**  The undersigned owner of Existing CURO Interests in the amount set forth in Item 1 above hereby votes to:

☐   **ACCEPT** (vote FOR) the Plan               ☐   **REJECT** (vote AGAINST) the Plan

**Item 3.  Important Information Regarding Releases under the Plan.**[4]

The Plan includes the following release provisions:

Article VIII.C of the Plan provides for a release by the Debtors (the "Debtor Release"):

> **As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors and the Estates, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, the Estates, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the**

---

[4]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  You should read the Plan before completing this Ballot.

4

restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Securitization Facilities Amendments, the Securitization Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement, and all other Definitive Documents, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Debtor Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence. For the avoidance of doubt, the "Debtor Releases" set forth above do not release (1) any post-Effective Date obligations of any Entity under the Plan or any document, instrument or agreement executed in connection with the Plan with respect to the Debtors, the Reorganized Debtors or the Estates; or (2) the Causes of Action set forth in the List of Retained Causes of Action.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

Article VIII.D of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):

As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Plan, the Definitive Documents, the Securitization Facilities Amendments, and the obligations contemplated by the Restructuring Transactions or as otherwise provided in any order of the Bankruptcy Court or the Canadian Court, on and after the Effective Date, the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action derivatively, by or through the foregoing Persons, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Canadian Recognition Proceeding, the Restructuring Transactions, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between the Debtors and any Released Party, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the negotiation, formulation, preparation, or consummation of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian

5

Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the Securitization Facilities Amendments, the Securitization Orders, the New Warrants, the CVR Agreement and all other Definitive Documents, or any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing (the "**Third-Party Releases**").

Notwithstanding anything to the contrary in the foregoing, the releases set forth in the preceding paragraph shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct or gross negligence.

Entry of the Combined Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*RELEASED PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) EACH DEBTOR;  (B) EACH REORGANIZED DEBTOR;  (C) EACH CONSENTING STAKEHOLDER; (D) EACH AGENT/TRUSTEE; (E) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (F) THE INFORMATION OFFICER; (G) THE SECURITIZATION FACILITIES PARTIES; (H) WITH RESPECT TO EACH OF THE FOREGOING ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASED PARTY IF IT:  (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

UNDER THE PLAN, "*RELEASING PARTY*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE REORGANIZED DEBTORS; (C) EACH COMPANY PARTY; (D) EACH DIP BACKSTOP PARTY AND EACH DIP LENDER; (E) EACH AGENT/TRUSTEE; (F) THE SECURITIZATION FACILITIES PARTIES; (G) EACH CONSENTING STAKEHOLDER; (H) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (I) ALL HOLDERS OF CLAIMS THAT ARE DEEMED TO ACCEPT THE PLAN WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (J) ALL HOLDERS OF CLAIMS OR INTERESTS THAT ABSTAIN FROM VOTING ON THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (K) ALL HOLDERS OF CLAIMS OR INTERESTS THAT VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED BY THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED IN THE PLAN; (L) WITH RESPECT TO EACH OF THE ENTITIES IN CLAUSES (A) THROUGH (G), SUCH ENTITIES' RELATED PARTIES, IN EACH CASE SOLELY IN THEIR CAPACITY AS SUCH; *PROVIDED* THAT IN EACH CASE, AN ENTITY SHALL NOT BE A RELEASING PARTY IF IT: (X) ELECTS TO OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE

6

PLAN; OR (Y) TIMELY OBJECTS TO THE RELEASES CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE CONFIRMATION.

**<u>IMPORTANT INFORMATION REGARDING THE RELEASES:</u>**

AS A HOLDER OF THE CLAIMS IN THE VOTING CLASS IDENTIFIED IN ITEM 1, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND, SUBJECT TO THE APPROVAL OF THE BANKRUPTCY COURT, ARE DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH ABOVE.  YOU MAY CHECK THE BOX BELOW TO ELECT NOT TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.  YOU WILL NOT BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN IF:  (I) THE BANKRUPTCY COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE RELEASES; <u>AND</u> (II) YOU CHECK THE BOX BELOW AND SUBMIT THE OPT OUT BY THE VOTING DEADLINE.  YOU MAY ALSO VALIDLY OPT OUT OF THE RELEASES BY FILING AN OBJECTION TO THE RELEASES CONTAINED IN THE PLAN WITH THE BANKRUPTCY COURT PRIOR TO THE PLAN OBJECTION DEADLINE.  THE ELECTION TO WITHHOLD CONSENT TO GRANT SUCH RELEASE IS AT YOUR OPTION, SUBJECT TO ANY OBLIGATION YOU MAY HAVE UNDER THE RESTRUCTURING SUPPORT AGREEMENT.  BY OPTING OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.

☐   **By checking this box, the Holder of the Claims identified in Item 1 elects to opt out of the Third-Party Releases.**

Article VIII.E of the Plan provides for an exculpation of certain parties (the "**<u>Exculpation</u>**"):

**To the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases, the Canadian Recognition Proceeding, the negotiation and pursuit of the RSA, the Restructuring Transactions, the Governance Documents, the DIP Facility, the DIP Orders, the Canadian Recognition Order or other orders granted in the Canadian Recognition Proceeding, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, the solicitation of votes with respect to the Plan, the Exit Facility Documents, the New Warrants, the CVR Agreement and all other Definitive Documents, the solicitation of votes for, or confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing, other than Claims or Causes of Action in each case arising out of or related to any act or omission of an Exculpated Party that is a criminal act or constitutes actual fraud, willful misconduct, or gross negligence as determined by a Final Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation and distribution of securities pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of securities thereunder.  The exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.**

Article VIII.F of the Plan establishes an injunction (the "**<u>Injunction</u>**"):

**Except as otherwise expressly provided in the Plan or the Combined Order or for obligations issued or required to be paid pursuant to the Plan or the Combined Order, all Entities who have held, hold, or may**

7

hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, provided however, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Causes of Action other than with respect to the Information Officer.

**Item 4.  Certification of Interests in the Class 11 Held in Additional Accounts.**

By completing and returning this Ballot, the Beneficial Holder of the Interests identified in Item 1 certifies that this Ballot is the only Ballot submitted for the Class 11 Interests identified in Item 1, except for the Interests identified in the following table.  To be clear, if any Beneficial Holder holds Interests in a Voting Class through one or more Nominees, such Beneficial Holder must identify all Interests in the Voting Class held through its own name and/or each Nominee in the following table, and must indicate the same vote to accept or reject the Plan on all Ballots submitted.

**ONLY COMPLETE ITEM 4 IF YOU HAVE SUBMITTED OTHER BALLOTS ON ACCOUNT OF OTHER CLASS 11 – EXISTING CURO INTERESTS**

| Account Number of Other Class 11 Interests Voted | Name of Owner[5] | Number of Shares of Voted on other Ballots in Class 11 |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

---

[5]   **Insert your name if the Interests in the respective Voting Class are held by you in your own name or, if held in a street name through a Nominee, insert the name of your broker or bank.**

CUSIP 23131L107 / ISIN US23131L1070

**Item 5.  Certifications.**

Upon execution of this Ballot, the undersigned certifies that:

a.      as of the Voting Record Date, the undersigned was the Beneficial Owner (or authorized signatory for a Beneficial Owner) of the Interests in the Voting Class set forth in Item 1;

b.      the Beneficial Owner has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

c.      the Beneficial Owner has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

d.      the Beneficial Owner has cast the same vote with respect to all of the Beneficial Owner's Interests in the Voting Class;

e.      the Beneficial Owner understands and acknowledges that if multiple Ballots are submitted voting the Interest set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Interest and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

f.      the Beneficial Owner understands and acknowledges that the Claims and Noticing Agent may verify the amount of the Interests in the Voting Class set forth in Item 1 held by the Beneficial Owner as of the Voting Record Date with any Nominee through which the Beneficial Owner holds its the Interests in the Voting Classes set forth in Item 1 and by returning an executed Ballot the Beneficial Owner directs any such Nominee to provide any information or comply with any actions requested by the Claims and Noticing Agent to verify the amount set forth in Item 1 hereof.  In the event of a discrepancy regarding such amount that cannot be timely reconciled without undue effort on the part of the Claims and Noticing Agent, the amount shown on the records of the Nominee, if applicable, or the Debtors' records shall control; and

g.      the Beneficial Owner understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Beneficial Owner hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Beneficial Owner and shall not be affected by, and shall survive, the death or incapacity of the Beneficial Owner.

2

**Item 6.  Beneficial Owner Information and Signature.**

Name of Beneficial Owner:_____
                                                    (*print or type*)

Signature:_____

Name of Signatory:_____
                                              (*if other than Beneficial Owner*)

Title: _____

Address:_____

_____

_____

Date Completed:_____

Email Address:_____

**THE VOTING DEADLINE IS 4:00 P.M., PREVAILING CENTRAL TIME, ON APRIL 19, 2024.**

**IF YOU RECEIVED A PRE-VALIDATED BALLOT AND A RETURN ENVELOPE ADDRESSED TO THE CLAIMS AND NOTICING AGENT (EPIQ CORPORATE RESTRUCTURING, LLC), PLEASE COMPLETE AND DATE THE BALLOT AND RETURN IT PROMPTLY IN THE ENVELOPE PROVIDED SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE VOTING DEADLINE.**

**IF YOU RECEIVED A RETURN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE COMPLETE, SIGN, AND DATE THE BALLOT AND RETURN IT IN THE ENVELOPE PROVIDED OR OTHERWISE IN ACCORDANCE WITH THE INSTRUCTIONS PROVIDED BY YOUR NOMINEE. PLEASE ALLOW SUFFICIENT TIME FOR YOUR BALLOT TO BE INCLUDED ON A MASTER BALLOT COMPLETED BY YOUR NOMINEE.  THE MASTER BALLOT MUST BE ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT ON OR BEFORE THE VOTING DEADLINE.**

**IF YOU HAVE ANY QUESTIONS ABOUT THIS BALLOT OR THE PLAN SOLICITATION OR YOU NEED ADDITIONAL VOTING MATERIALS, PLEASE CONTACT THE SOLICITATION AGENT AT CURO@EPIQGLOBAL.COM AND REFERENCE "CURO" IN THE SUBJECT LINE OR CALL (877) 354-3909 (USA OR CANADA) OR +1 (971) 290-1442 (INTERNATIONAL).  IF YOU HAVE QUESTIONS ABOUT THE VOTING PROCEDURES, PLEASE CONTACT YOUR NOMINEE.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE DISCLOSURE STATEMENT ORDER WILL NOT BE COUNTED.**

3

## <u>VOTING INSTRUCTIONS</u>

1. As described in the Disclosure Statement, the Debtors are soliciting the votes of Beneficial Owners of Class 11 Interests with respect to the Plan referred to in the Disclosure Statement. The Plan and the Disclosure Statement are included in the Solicitation Package you received with the Ballot. Capitalized terms used but not defined herein shall have the meanings assigned to them in the Plan. **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BENEFICIAL OWNER BALLOT.** You may wish to seek legal advice concerning the Plan and the treatment of your Interest under the Plan.

2. The Plan may be confirmed by the Bankruptcy Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation set forth in Bankruptcy Code section 1129(a).

3. To ensure that your vote is counted, you must: (a) complete the Ballot; (b) indicate your decision either to accept or reject the Plan in Item 1 of the Ballot; and (c) **<u>sign and return the Ballot</u> in accordance with the instructions received, <u>so that this Ballot (if "pre-validated" by your Nominee) or a Master Ballot cast on your behalf is actually received by the Claims and Noticing Agent by the Voting Deadline</u>.** If you are returning your Ballot to the Nominee that provided you with this Ballot, your completed Ballot must be sent to your Nominee, allowing sufficient time for your Nominee to receive your Ballot, complete a Master Ballot, and transmit the Master Ballot to the Claims and Noticing Agent so that it is <u>actually received</u> by the Voting Deadline. Your Nominee is authorized to disseminate the Solicitation Packages and voting instructions to, and collect voting information from, Beneficial Owners according to its customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Owner Ballot, and collecting votes from Beneficial Owners through online voting, by phone, facsimile, or other electronic means.

   If you are directed by your Nominee to submit the Beneficial Owner Ballot to the Nominee via electronic means, such instructions to your Nominee shall have the same effect as if you had completed and returned a physical Beneficial Owner Ballot to your Nominee, including all certifications.

4. The time by which a Ballot or Master Ballot including your vote is **<u>actually received</u>** by the Claims and Noticing Agent shall be the time used to determine whether a Ballot has been submitted by the Voting Deadline. **The Voting Deadline is April 19, 2024, at 4:00 p.m., prevailing Central Time.**

5. If a Ballot is received after the Voting Deadline, it will not be counted unless the Debtors determine otherwise or as permitted by applicable law or court order. In all cases, Beneficial Owners should allow sufficient time to ensure timely delivery. No Ballot should be sent to the Debtors or the Debtors' financial or legal advisors. A Ballot will not be counted unless received by the Claims and Noticing Agent.

6. The Beneficial Owner understands and acknowledges that if multiple Ballots are submitted voting the Interest set forth in Item 1, only the last properly completed Ballot or Master Ballot voting the Interest and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent.

7. If a Holder holds a Claim or Interest, as applicable, in a Voting Class against multiple Debtors, a vote on their Ballot will apply to all Debtors against whom such Holder or Nominee has a Claim or Interest, as applicable, in that Voting Class.

8. If a Beneficial Owner simultaneously casts inconsistent duplicate Ballots, with respect to the same Interest, such Ballots will not be counted.

9. The Ballot is not a letter of transmittal and may not be used for any purpose other than to vote to accept or reject the Plan and to make certain certifications with respect thereto. Accordingly, at this time, creditors should not

surrender certificates or instruments representing or evidencing their securities, and the Debtors will not accept delivery of any such certificates or instruments surrendered together with a Ballot.

10. The Ballot does not constitute, and shall not be deemed to be:  (a) a Proof of Claim; or (b) an assertion or admission with respect to any Claim.

11. Please be sure to sign and date your Ballot.  If you are completing the Ballot on behalf of an Entity, indicate your relationship with that Entity and the capacity in which you are signing.

12. You must vote your entire Interest in the Voting Class either to accept or reject the Plan and may not split your vote.  Accordingly, a Ballot that partially rejects and partially accepts the Plan as to the Voting Class will not be counted as a vote to accept or reject the Plan as to that Class.

13. Any Ballot that is properly completed, executed, and timely returned that fails to indicate acceptance or rejection of the Plan or that indicates both an acceptance and a rejection of the Plan will not be counted.

14. The following Ballots will not be counted in determining the acceptance or rejection of the Plan:  (a) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Owner; (b) any Ballot cast by a Person or Entity that does not hold a Claim or Interest in a Class that is entitled to vote on the Plan; (c) any unsigned Ballot; (d) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan; and/or (e) any Ballot submitted by a party not entitled to cast a vote with respect to the Plan.

15. If you hold Claims or Interests in more than one Class under the Plan or for different Claims or Interests within a Class you may receive more than one Ballot.  Each Ballot votes only your Claims or Interests indicated on that Ballot.  Please complete and return each Ballot you receive.

_____

**If you have any questions regarding this Ballot, or if you did not receive a copy of the Disclosure Statement or Plan, or if you need additional copies of the enclosed materials, please contact the Claims and Noticing Agent at <u>CURO@epiqglobal.com</u> OR call (877) 354-3909 (USA Or Canada) OR +1 (971) 290-1442 (International).**

**<u>PLEASE SUBMIT YOUR BALLOT PROMPTLY</u>**