United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 16, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CURO Group Holdings Corp., *et al.*, | ) | Case No. 24-90165 (MI) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING, THE JOINT PREPACKAGED PLAN OF CURO GROUP HOLDINGS CORP. AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtors (collectively, the "Debtors") having:[2]

a.    entered into that certain restructuring support agreement dated as of March 22, 2024 (as may be modified, amended, or supplemented from time to time, and together with all term sheets, schedules, annexes, and exhibits appended thereto, the "RSA") by and among the Company Parties, Consenting 1L Lenders, Consenting 1.5L Noteholders, and the Consenting 2L Noteholders (collectively, the "Parties");

b.    commenced distribution, on March 24, 2024, of (i) the *Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 50, as modified by Docket Nos. 119 and 325] (as may be amended, supplemented, or otherwise modified from time to time, including by virtue of the Plan Modifications (as defined below), the "Plan"), (ii) the *Disclosure Statement Relating to the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 51, as modified by Docket No. 120] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"), and (iii) ballots for voting on the Plan  (collectively, the "Solicitation Packages") to certain Holders of Claims—namely Holders of the Prepetition 1L Term Loan Claims in Class 3, Prepetition 1.5L Notes Claims in Class 4, Prepetition 2L Notes Claims in Class 5 as of March 13, 2024, in accordance with the terms of title 11 of the United States Code (the "Bankruptcy Code"), the

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/Curo. The location of the Debtors' service address for purposes of these chapter 11 cases is 101 N. Main Street, Suite 600, Greenville, SC 29601.

[2]    Capitalized terms used but not otherwise defined in these findings of fact, conclusions of law, and order (collectively, the "Combined Order") have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Bankruptcy Code (each as defined herein), as applicable.  The rules of interpretation set forth in Article I.B of the Plan apply.

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Local Rules");

c.   subsequent to commencing distribution of the Solicitation Packages, commenced, on March 25, 2024 (the "Petition Date"), these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

d.   filed, on March 25, 2024, the *Declaration of Douglas Clark, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 8] (the "First Day Declaration");

e.   filed, on March 25, 2024, the *Debtors' Emergency Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement, (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (IV) Approving the Solicitation Procedures, (V) Approving the Combined Notice, (VI) Extending the Time by Which the U.S. Trustee Convenes a Meeting of Creditors, and (VII) Granting Related Relief* [Docket No. 46] (the "Disclosure Statement Motion");

f.   filed, on March 25, 2024, the Plan [Docket No. 50] and Disclosure Statement [Docket No. 51];

g.   filed, on March 28, 2024, modified versions of the Plan [Docket No. 119] and Disclosure Statement [Docket No. 120];

h.   obtained, on April 1, 2024, entry of the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Conditionally Approving the Disclosure Statement, (III) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (IV) Approving the Solicitation Procedures, (V) Approving the Combined Notice, (VI) Extending the Time by Which the U.S. Trustee Convenes a Meeting of Creditors and the Debtors, and (VII) Granting Related Relief* [Docket No. 152] (the "Disclosure Statement Order"), conditionally approving the Disclosure Statement and approving:

   i.   the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Objection Deadlines and Summary of the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 152, Ex. 1] (the "Combined Notice"), which contained notice of the commencement of these Chapter 11 Cases, the date and time set for the hearing to consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing"), and the deadline for filing objections to the Plan and the Disclosure Statement;

   ii.   the *Notice of Commencement of Prepackaged Chapter 11 Bankruptcy Cases and Hearing on the Disclosure Statement and Confirmation of the*

2

*Joint Prepackaged Chapter 11 Plan* [Docket No. 152, Ex. 2] (the "Publication Notice"), which contained notice of the commencement of these Chapter 11 Cases, the date and time set for the Combined Hearing, and the deadline for filing objections to the Plan and the Disclosure Statement;

iii.     the *Notice of Non-Voting Status to Holders or Potential Holders of Unimpaired Claims Conclusively Presumed to Accept the Plan and Holders or Potential Holders of Impaired Claims Conclusively Presumed to Reject the Plan* [Docket No. 152, Exs. 3, 3A, 3B, and 3C] (each an "Opt-Out Form" and collectively, the "Opt-Out Forms"); and

iv.     the form of the ballots [Docket No. 152, Exs. 4A, 4B, 4C, 4D, 4E, 4F, 4G, and 4H] (each a "Ballot" and collectively, the "Ballots").

i.     served, or caused to be served, on April 1, 2024, the Combined Notice and the Opt-Out Forms;

j.     commenced, on April 1, 2024, distribution of the Solicitation Packages to Holders of Existing CURO Interests in Class 11;

k.     published, or caused to be published, on April 3, 2024, the Publication Notice in *The New York Times*, as evidenced by the *Proof of Publication* [Docket No. 166] (the "Publication Notice Certificate"), consistent with the Disclosure Statement Order;

l.     filed, on April 8, 2024, the *Certificate of Service* of the Combined Notice [Docket No. 190] (the "Combined Notice Certificate" and together with the Publication Notice Certificate, the "Certificates");

m.     filed, on April 11, 2024, the *Notice of Extension of Voting Deadline and Opt-Out Deadline to May 7, 2024 at 4:00 P.M. (Prevailing Central Time)* [Docket No. 198], extending the deadline for voting to accept or reject the Plan, as well as the deadline to submit the Opt-Out Forms (respectively, the "Voting Deadline" and the "Opt-Out Deadline") to May 7, 2024 at 4:00 prevailing Central Time;

n.     filed, on April 30, 2024, the *Plan Supplement for the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Modified)* [Docket No. 283] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan Supplement");

o.     filed, on May 10, 2024, a further modified version of the Plan [Docket No. 325], attached hereto as **Exhibit A**;

p.     filed, on May 10, 2024, the *Declaration of Stephenie Kjontvedt Regarding the Solicitation and Tabulation of Votes on the Joint Prepackaged Plan of*

3

*Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 327] (the "<u>Voting Report</u>");

q.    filed, on May 12, 2024, the *Notice of Filing of First Amended Plan Supplement for the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 331];

r.    filed, on May 13, 2024, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Disclosure Statement on a Final Basis and  (II) Confirming the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 332] (the "<u>Confirmation Brief</u>");

s.    filed, on May 13, 2024, the *Declaration of Douglas Clark in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 333] (the "<u>Clark Declaration</u>");

t.    filed, on May 13, 2024, the *Declaration of Joe Stone in Support of Confirmation of the Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 334] (the "<u>Stone Declaration</u>" and, together with the Clark Declaration, the "<u>Confirmation Declarations</u>"); and

u.    operated their businesses and managed their properties during these Chapter 11 Cases as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

The Court having:

a.    entered, on April 1, 2024, the Disclosure Statement Order;

b.    set May 7, 2024, at 4:00 p.m. prevailing Central Time as the deadline to file objections to the Disclosure Statement and the Plan (the "<u>Objection Deadline</u>");

c.    set May 14, 2024, at 1:30 p.m. prevailing Central Time as the date and time for the Combined Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and Bankruptcy Code sections 1126, 1128, and 1129, as continued to May 16, 2024, at 3:00 p.m. prevailing Central Time;

d.    reviewed the Plan, including but not limited to the discharge, compromises, settlements, releases, exculpations, and injunctions set forth in Article VIII of the Plan, the Disclosure Statement, the Disclosure Statement Motion, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Voting Report, the Combined Notice, the Certificates, and all filed pleadings, declarations, affidavits, certificates, exhibits, statements, and comments regarding final approval of the Disclosure Statement and Confirmation of the Plan, including all objections,

statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Case;

e.     considered the Restructuring Transactions incorporated and described in the Plan or Plan Supplement, as applicable;

f.     held the Combined Hearing;

g.     heard the statements and arguments made by counsel with respect to the Confirmation of the Plan and approval of the requested relief in the Disclosure Statement Motion, including the approval of the solicitation procedures (the "Solicitation Procedures") and the schedule (the "Confirmation Schedule") set forth therein;

h.     considered all oral representations, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan;

i.     overruled (i) any and all objections to final approval of the Disclosure Statement and Confirmation, except as otherwise stated or indicated on the record, and/or (ii) all statements and reservations of rights not consensually resolved, agreed to, or withdrawn, unless otherwise indicated; and

j.     taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in these Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and other evidence presented at the Combined Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

<u>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**</u>

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.**     **Findings and Conclusions**.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

**B.**     **Jurisdiction, Venue, and Core Proceeding**.  The Court has jurisdiction over these Chapter 11 Cases pursuant to section 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper in this district pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Approval of the Disclosure Statement, including the associated Solicitation Procedures, and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code.  This Court may enter a final order consistent with Article III of the United States Constitution.

**C.**     **Eligibility for Relief**.  The Debtors were and are Entities eligible for relief under Bankruptcy Code section 109.  The Debtors are proper plan proponents under Bankruptcy Code section 1121(a).

**D.**     **Commencement and Joint Administration of these Chapter 11 Cases**.  On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  In accordance with the *Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 15], these Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.

Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in these Chapter 11 Cases. No statutory committee of unsecured creditors or equity security holders has been appointed pursuant to Bankruptcy Code section 1102 in these Chapter 11 Cases.

E. **Judicial Notice.** The Court takes judicial notice of the docket of the Chapter 11 Cases, including all pleadings and other documents filed, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

F. **Modifications to the Plan**. Pursuant to Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Debtors proposed certain modifications to the solicitation version of the Plan, as reflected herein, in the Plan Supplement, and/or in the Plan filed with the Court prior to entry of this Confirmation Order. The Plan Modifications constitute technical or clarifying changes, changes made at the request of the Court, or modifications that do not otherwise materially and adversely affect or change the treatment of any Claim or Interest under the Plan. The Plan Modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement, and notice of these modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, these modifications do not require additional disclosure under Bankruptcy Code section 1125 or the resolicitation of votes on the Plan under Bankruptcy Code section 1126, and they do not require that Holders of Claims or Interests be afforded an opportunity to change previously cast votes accepting or rejecting the Plan. Accordingly, the Plan is properly before this Court and all votes

cast with respect to the Plan prior to such modification shall be binding and shall apply with respect to the Plan.

G. **Disclosure Statement Order**.  On April 1, 2024, the Court entered the Disclosure Statement Order, conditionally approving the Disclosure Statement and approving the Confirmation Schedule (subject to modifications as necessary), including setting May 7, 2024, at 4:00 p.m. prevailing Central Time as the Objection Deadline.  On April 11, 2024, in accordance with paragraph 9 of the Disclosure Statement Order, the Debtors filed the *Notice of Extension of Voting Deadline and Opt-Out Deadline to May 7, 2024 at 4:00 P.M. (Prevailing Central Time)* [Docket No. 198], extending both the Voting Deadline and the Opt-Out Deadline to May 7, 2024 at 4:00 prevailing Central Time.

H. **Burden of Proof—Confirmation of the Plan**.  The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of Bankruptcy Code sections 1129(a) and 1129(b) by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  In addition, and to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

I. **Notice**.  As evidenced by the Certificates and the Voting Report, the Debtors provided due, adequate, and sufficient notice of the commencement of these Chapter 11 Cases, the Plan (and the opportunity to opt out of the Third-Party Releases), the Disclosure Statement, the Combined Hearing, the Objection Deadline, any applicable bar dates and hearings described in the Disclosure Statement Order or the Plan, the Plan Supplement, and all of the other materials distributed by the Debtors in connection with Confirmation of the Plan in compliance with the Bankruptcy Code, including Bankruptcy Code sections 1125, 1126(b), and 1128, the Bankruptcy Rules, including Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), the Bankruptcy Local Rules,

and the procedures set forth in the Disclosure Statement Order.  No other or further notice is or shall be required.

       **J.**     **Disclosure Statement**.  The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, rules, and regulations, including the Securities Act, and (b) "adequate information" (as such term is defined in Bankruptcy Code section 1125(a) and used in Bankruptcy Code section 1126(b)(2)) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b), and the Disclosure Statement, the Plan, the Solicitation Packages, and the Opt-Out Forms provided all parties in interest with sufficient notice regarding the settlement, release, exculpation, and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c).

       **K.**     **Ballots**.

     a.     The Classes of Claims and Interests entitled to vote to accept or reject the Plan (the "<u>Voting Classes</u>") are set forth below:

| Class | Designation |
|-------|-------------|
| Class 3 | Prepetition 1L Term Loan Claims |
| Class 4 | Prepetition 1.5L Notes Claims |
| Class 5 | Prepetition 2L Notes Claims |
| Class 11 | Existing CURO Interests |

     b.     The Ballots the Debtors used to solicit votes to accept or reject the Plan from Holders in the Voting Classes adequately addressed the particular needs of these Chapter 11 Cases and were appropriate and satisfactory for Holders in the Voting Classes to vote to accept or reject the Plan.  As evidenced by the Voting Report, Classes 3, 4, 5, and 11 have voted to accept the Plan in accordance with the requirements of Bankruptcy Code sections 1126 and 1129.

       **L.**     **Solicitation**.

     a.     As described in the Voting Report, the solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any other applicable rules, laws, and regulations, including the Securities Act.

b.      As described in the Voting Report and the Confirmation Declarations, as applicable, prior to commencing these Chapter 11 Cases, the Debtors caused the Solicitation Packages, and on or before April 1, 2024, the Combined Notice, to be transmitted and served to all Holders in the Voting Classes, in compliance with the Bankruptcy Code, including Bankruptcy Code sections 1125 and 1126, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Bankruptcy Local Rules, the Disclosure Statement Order, and any applicable non-bankruptcy law. Transmission and service of the Solicitation Packages and the Combined Notice were timely, adequate, and sufficient under the facts and circumstances of these Chapter 11 Cases. No further notice is required.

c.      As set forth in the Voting Report, the Solicitation Packages were distributed to Holders in the Voting Classes that held a Claim or Interest as of March 13, 2024 (the "Voting Record Date"). The establishment and notice of the Voting Record Date were reasonable and sufficient.

d.      The period during which the Debtors solicited votes to accept or reject the Plan was a reasonable and sufficient period of time for Holders in the Voting Classes to make an informed decision to accept or reject the Plan.

e.      Under Bankruptcy Code section 1126(f), Holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 6 (Securitization Facilities Claims), and Class 7 (General Unsecured Claims) (collectively, the "Deemed Accepting Classes") are Unimpaired and conclusively presumed to have accepted the Plan. The Debtors were therefore not required to solicit votes from the Deemed Accepting Classes. Further, the Debtors were not required to solicit votes from the Holders of Claims in Class 9 (Section 510(b) Claims), which were deemed to reject the Plan (the "Deemed Rejecting Class"). Holders of Claims in Class 8 (Intercompany Claims) and Holders of Interests in Class 10 (Intercompany Interests) are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan. Nevertheless, the Debtors served, or caused to be served, Holders in the non-voting Classes with the Combined Notice and the Opt-Out Forms.

**M.**      **Voting**. As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, the Disclosure Statement, and any applicable non-bankruptcy law, rule, or regulation.

**N.**      **Plan Supplement**. The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents are good and proper in

accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and no other or further notice is required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan and the RSA (including, for the avoidance of doubt, any consent or consultation rights set forth or incorporated therein), and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify, in each case in whole or in part, the Plan Supplement before the Effective Date.  All parties were provided due, adequate, and sufficient notice of the Plan Supplement and no further notice is required.

   **O.**  **Valuation**.  The Debtors' Valuation Analysis included as <u>Exhibit D</u> to the Disclosure Statement and the estimated enterprise value, as described therein, is reasonable, proposed in good faith, and supported by the Confirmation Declarations and the evidence presented at or prior to the Combined Hearing.  The Valuation Analysis (i) is reasonable, persuasive, and credible as of the date such analysis was prepared, presented, or proffered, and (ii) uses reasonable and appropriate methodologies and assumptions.

   **P.**  **Compliance with Bankruptcy Code Requirements—Section 1129(a)(1)**.  The Plan complies with all applicable provisions of the Bankruptcy Code as required by Bankruptcy Code section 1129(a)(1).  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

   a. <u>Proper Classification—Sections 1122 and 1123</u>.  The classification of Claims under the Plan is proper and satisfies the requirements of Bankruptcy Code sections 1122(a) and 1123(a)(1).  Article III of the Plan provides for the separate classification of Claims and Interests into 11 Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, Holders of Claims or Interests.  Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.

b.   <u>Specified Unimpaired Classes—Section 1123(a)(2)</u>.   The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(2).  Article III of the Plan specifies that Claims in the following Classes (the "<u>Unimpaired Classes</u>") are Unimpaired under the Plan within the meaning of Bankruptcy Code section 1124:

| Class | Designation |
|-------|-------------|
| Class 1 | Other Secured Claims |
| Class 2 | Other Priority Claims |
| Class 6 | Securitization Facilities Claims |
| Class 7 | General Unsecured Claims |

i.   Additionally, Article II of the Plan specifies that Allowed Administrative Claims, Professional Fee Claims, DIP Claims, Priority Tax Claims, Restructuring Expenses and Trustee Fees, and Postpetition Securitization Facilities Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

c.   <u>Specified Treatment of Impaired Classes—Section 1123(a)(3)</u>.  The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(3).  Article III of the Plan specifies that Claims and Interests, as applicable, in the following Classes (the "Impaired Classes") are Impaired under the Plan within the meaning of Bankruptcy Code section 1124, and describes the treatment of such Classes:

| Class | Designation |
|-------|-------------|
| Class 3 | Prepetition 1L Term Loan Claims |
| Class 4 | Prepetition 1.5L Notes Claims |
| Class 5 | Prepetition 2L Notes Claims |
| Class 11 | Existing CURO Interests |

d.   <u>No Discrimination—Section 1123(a)(4)</u>.  The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(4).  The Plan provides for the same treatment by the Debtors of each Claim or Interest in each respective Class, unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

e.   <u>Adequate Means for Plan Implementation—Section 1123(a)(5)</u>.  The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(5).  The provisions in Article IV and elsewhere in the Plan, and in the exhibits and attachments to the Plan, the Plan Supplement, and the Disclosure Statement, provide, in detail, adequate and proper means for the Plan's implementation, including, among other provisions: (a) the good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan; (b) authorization for the Debtors and the Reorganized Debtors, as applicable, to take all actions necessary to effectuate the Plan, including those actions necessary to effectuate the Restructuring Transactions and any restructuring transaction steps set forth in the Plan Supplement, as the same may be modified or amended (in accordance with the terms of the Plan and the RSA, subject, in each case, to any consent rights set forth

or incorporated therein) from time to time prior to the Effective Date; (c) the funding and sources of consideration for the Plan distributions, including the Exit Facility, the New Equity Interests, the New Warrants, the CVRs, the Cash on hand from the utilization of the Securitization Facilities, and the Cash on hand from operations and the proceeds of borrowings under the DIP Facility; (d) preservation of the Debtors' corporate existence following the Effective Date (except as otherwise provided in the Plan); (e) the vesting of the Estates' assets in the respective Reorganized Debtors; (f) the preservation of Causes of Action not released pursuant to the Plan; (g) the cancellation of existing agreements evidencing Claims or Interests pursuant to Article IV.G of the Plan, except with respect to the Securitization Facilities Amendments, or to the extent otherwise provided in the Plan; (h) the authorization and approval of corporate actions under the Plan; (i) the adoption of the Governance Documents; (j) the appointment of the New Board; (k) the effectuation and implementation of other documents and agreements contemplated by, or necessary to effectuate, the transactions contemplated by the Plan; (l) the entry into the CVR Agreement and the distribution of the CVRs as specified in the Plan; (m) the entry into the New Warrant Agreement and the distribution of the New Warrants as specified in the Plan; (n) the entry into the Exit Facility and the Exit Facility Documents as specified in the Plan; (o) the assumption of certain employment obligations; (p) the adoption and implementation of the Management Incentive Plan; and (q) the closing of certain of the Chapter 11 Cases.

f.   <u>Voting Power of Equity Securities—Section 1123(a)(6)</u>.  The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(6).  Article IV.I of the Plan provides that the Governance Documents will comply with Bankruptcy Code section 1123(a)(6).  The Governance Documents prohibit the issuance of non-voting Equity Securities to the extent prohibited by Bankruptcy Code section 1123(a)(6) and provide for an appropriate distribution of voting power among the classes of securities possessing voting power.

g.   <u>Disclosure of New Directors and Officers—Section 1123(a)(7)</u>.  The Plan satisfies the requirements of Bankruptcy Code section 1123(a)(7).  Article IV.J of the Plan sets forth the structure of the New Board, which shall consist of members as designated in accordance with the Governance Term Sheet.

h.   <u>Impairment / Unimpairment of Classes—Section 1123(b)(1)</u>.  The Plan is consistent with Bankruptcy Code section 1123(b)(1).  Article III of the Plan impairs or leaves unimpaired each Class of Claims and Interests.

i.   <u>Assumption—Section 1123(b)(2)</u>.  The Plan is consistent with Bankruptcy Code section 1123(b)(2).  Article V of the Plan provides for the assumption of all of the Debtors' Executory Contracts and Unexpired Leases, other than the Unexpired Leases and Executory Contracts identified on the Rejected Executory Contract and Unexpired Lease List and as otherwise provided in Article V.A of the Plan, and the payment of Cures, if any, related thereto, not previously assumed, assumed and assigned, or rejected during these Chapter 11 Cases under Bankruptcy Code section 365.  The assumption of Executory Contracts and Unexpired Leases may include

the assignment of certain of such contracts to Affiliates. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, the Debtors' Estates, Holders of Claims, and other parties in interest in the Chapter 11 Cases. Entry of this Combined Order by the Court shall constitute approval of such assumptions, assumptions and assignments, and/or rejections, as applicable, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement pursuant to Bankruptcy Code sections 365(a) and 1123.

j.   <u>Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3)</u>.

   i.   <u>Compromise and Settlement</u>. The Plan is consistent with Bankruptcy Code section 1123(b)(3). In accordance with Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan and reinstatement and unimpairment of other Classes identified in the Plan are in the best interests of the Debtors, the Estates, and all Holders of Claims and Interests, and are fair, equitable, and reasonable.

   ii.   <u>Debtor Releases</u>. Article VIII.C of the Plan describes certain releases granted by the Debtors (the "<u>Debtor Releases</u>"). The Debtors have satisfied the business judgment standard under Bankruptcy Rule 9019 with respect to the propriety of the Debtor Releases. The Debtor Releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests. The Debtor Releases are: (a) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (b) a good faith settlement and compromise of the Claims released by the Debtor Releases; (c) in the best interests of the Debtors and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) narrowly tailored to the circumstances of the Chapter 11 Cases, and (g) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Releases. The Debtor Releases for the Related Parties of the Debtors are appropriate because the Related Parties of the Debtors share an identity of interest with the Debtors, supported the Plan and these Chapter 11 Cases, and actively participated in

meetings, negotiations, and implementation during these Chapter 11 Cases, and have provided other valuable consideration to the Debtors to facilitate the Debtors' reorganization.

iii.   <u>Third Party Release</u>.  Article VIII.D of the Plan describes certain releases granted by the Releasing Parties (the "<u>Third-Party Release</u>").  The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors.  The Combined Notice sent to Holders of Claims and Interests, the Publication Notice published in *The New York Times* on April 3, 2024, and the Ballots sent to all Holders of Claims and Interests entitled to vote on the Plan, in each case, unambiguously stated that the Plan contains the Third-Party Release.  Such release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests.   Also, the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; (h) narrowly tailored to the circumstances of the Chapter 11 Cases; and (i) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

1.   Notwithstanding anything to the contrary in the foregoing, the Third-Party Release shall not release any Released Party from any claim or Cause of Action arising from an act or omission that is determined by a Final Order to have constituted actual fraud, willful misconduct, criminal conduct, or gross negligence.

2.   The releases of the Related Parties of the Debtors are an integral component of the compromises and settlements contained in the Plan.  The Related Parties of the Debtors:  (a) made a substantial and valuable contribution to the Debtors' restructuring and the estates; (b) invested significant time and effort to make the restructuring a success and preserve the value of the Debtors' estates in a challenging environment; (c) attended numerous meetings related to the restructuring; and (d) met frequently and directed the restructuring negotiations that led to the RSA and the Plan. Litigation by the Debtors against the Related Parties of the Debtors would be a distraction to the Debtors' business and restructuring and would decrease rather than increase the value of the estates.

3.   The releases of the Agents/Trustees and Consenting Stakeholders are integral components of the compromises and settlements

contained in the Plan. The Agents/Trustees and the Consenting Stakeholders, as applicable: (a) negotiated the RSA and Plan; (b) supported the Debtors' businesses through consensual debtor in possession financing; and (c) invested significant time and effort to make the restructuring a success and preserve the value of the Debtors' estates. The releases of the Agents/Trustees and the Consenting Stakeholders contained in the Plan have the consent of the Debtors and the Releasing Parties and are in the best interests of the estates.

iv.     Exculpation. The exculpation, described in Article VIII.E of the Plan (the "Exculpation"), is appropriate under applicable law, including *In re Highland Capital Mgmt., L.P.*, 48 F. 4th 419 (5th Cir. 2022), because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope. Without limiting anything in the Exculpation, each Exculpated Party has participated in these Chapter 11 Cases in good faith and is appropriately released and exculpated from any obligation, Cause of Action, or liability for any prepetition or postpetition act taken or omitted to be taken in connection with, relating to, or arising out of the Debtors' restructuring efforts, the RSA, these Chapter 11 Cases, the Canadian Recognition Proceedings, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into, in connection with, or pursuant to the RSA, the Disclosure Statement or the Plan, the filing of these Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan. The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding the foregoing, the Exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan. The Exculpation, including its carveout for criminal acts, actual fraud, willful misconduct, and gross negligence as determined by a Final Order, is consistent with applicable law in this jurisdiction.

1.     Solely with respect to the exculpation provisions, notwithstanding anything to the contrary in the Plan or Plan Supplement, each of the 1125(e) Covered Parties shall not incur liability for any Cause of Action or Claim related to any act or omission in connection with,

relating to, or arising out of, in whole or in part, (a) the solicitation of acceptance or rejection of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code or (b) the participation, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, in the offer, issuance, sale, or purchase of a security offered or sold under the Plan.  No Entity or Person may commence or pursue a Claim or Cause of Action of any kind against any of the 1125(e) Covered Parties that arose or arises from, in whole or in part, a Claim or Cause of Action subject to this paragraph without this Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim or Cause of Action for actual fraud, gross negligence, or willful misconduct against any such 1125(e) Covered Party and such party is not exculpated pursuant to this provision; and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against such 1125(e) Covered Party.  The Bankruptcy Court will have sole and exclusive jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

v.    <u>Injunction</u>.  The injunction provision set forth in Article VIII.F of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Releases, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose.

1.    Notwithstanding anything to the contrary in this Combined Order and subject to paragraphs 40 and 41, no Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E, of the Plan, without the Court (a) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim or Cause of Action of any kind, and (b) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party; *provided*, *however*, that no Claim or Cause of Action of any kind may be asserted, commenced or pursued against the Information Officer without leave of the Canadian Court.

2.    Pursuant to Article IV.F of the Plan and in accordance with Bankruptcy Code section 1123(b)(3)(B), but subject to Article VIII of the Plan, each Reorganized Debtor, as applicable, shall retain and may enforce all Causes of Action of the Debtors, whether arising before or after the Petition Date, and the Reorganized Debtors'

rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or waived by the Debtors pursuant to the Debtor Releases or Exculpation, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date. The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

3. The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Article VIII.B of the Plan (the "Lien Release") is necessary to implement the Plan. The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.

4. Notwithstanding anything to the contrary herein, nothing in the Plan or the Combined Order shall modify the rights if any, of any current or former counterparty to a non-residential real property lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or nonbankruptcy law, including, but not limited to: (a) the ability, if any, of such counterparty to setoff or recoup a security deposit held pursuant to the terms of its lease with the Debtors, or any successors to the Debtors, under the Plan; (b) assertion of rights of setoff or recoupment, if any, in connection with the reconciliation of Claims; or (c) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or any successors to the Debtors.

k.   Additional Plan Provisions—Section 1123(b)(6). The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code section 1123(b)(6).

**Q.    Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2).** The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of Bankruptcy Code section 1129(a)(2). Specifically, each Debtor:

a.   is eligible to be a debtor under Bankruptcy Code section 109 and a proper proponent of the Plan under Bankruptcy Code section 1121(a);

b.   has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

18

      c.        complied with the applicable provisions of the Bankruptcy Code, including Bankruptcy Code sections 1125 and 1126, the Bankruptcy Rules, the Bankruptcy Local Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure Statement Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan

      **R.**      **Plan Proposed in Good Faith—Section 1129(a)(3)**.  The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(3).  The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan, the RSA, the process leading to Confirmation, including the overwhelming support of Holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  The Debtors' good faith is evident from the facts and the record of the Chapter 11 Cases, the Plan, the Disclosure Statement, the hearing on conditional approval of the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in the Chapter 11 Cases.  These Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.  The Plan (including the Plan Supplement and all other documents necessary to effectuate the Plan) was negotiated in good faith and at arm's-length among the Parties, and the compromises and settlements embodied in the Plan are reasonable given the facts and circumstances surrounding the Debtors and these Chapter 11 Cases.  Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with Bankruptcy

Code sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142, and are each integral to the Plan, and necessary for the Debtors' successful reorganization.

**S.** **Payment for Services or Costs and Expenses—Section 1129(a)(4)**.   The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, Bankruptcy Code section 1129(a)(4).

**T.** **Directors, Officers, and Insiders—Section 1129(a)(5)**.  Article IV.J of the Plan sets forth the structure of the New Board, which shall consist of initial members as disclosed in the Plan Supplement.  Accordingly, the Debtors have satisfied the requirements of Bankruptcy Code section 1129(a)(5).

**U.** **No Rate Changes—Section 1129(a)(6)**.  Bankruptcy Code section 1129(a)(6) is not applicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**V.** **Best Interest of Creditors—Section 1129(a)(7)**.   The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(7).  The Liquidation Analysis attached to the Disclosure Statement as Exhibit E, the Stone Declaration, and the other evidence related thereto in support of the Plan that was proffered or adduced at, prior to, or in connection with the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that Holders of Allowed Claims and Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder

would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**W.**       **Acceptance by Certain Classes—Section 1129(a)(8)**.  The Plan does not satisfy the requirements of Bankruptcy Code section 1129(a)(8).   Classes 1, 2, 6 and 7 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with Bankruptcy Code section 1126(f).  The Voting Classes voted to accept the Plan. Holders of Intercompany Claims and Interests in Classes 8 and 10 are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan.  Holders of Claims in Class 9, however, receive no recovery on account of their Claims or Interests pursuant to the Plan and are deemed to have rejected the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies Bankruptcy Code sections 1129(a)(10) and 1129(b).

**X.**       **Treatment of Claims Entitled to Priority Under Bankruptcy Code Section 507(a)—Section 1129(a)(9)**.  The treatment of Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, Restructuring Expenses and Trustee Fees, and Postpetition Securitization Facilities Claims under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, Bankruptcy Code section 1129(a)(9).

**Y.**       **Acceptance by at Least One Impaired Class—Section 1129(a)(10)**.  The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(10).  As evidenced by the Voting Report, Classes 3, 4, 5 and 11, which are Impaired, voted to accept the Plan by the requisite number and amount of Claims or Interests, determined without including any acceptance of the Plan by

any insider (as that term is defined in Bankruptcy Code section 101(31)), specified under the Bankruptcy Code.

> Z. **Feasibility—Section 1129(a)(11)**.   The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(11).   The financial projections attached to the Disclosure Statement and the other evidence supporting Confirmation of the Plan proffered or adduced by the Debtors at, or prior to, or in the Confirmation Declarations filed in connection with, the Combined Hearing:  (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

> AA. **Payment of Fees—Section 1129(a)(12)**.  The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(12).  Article XII.C of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

> BB. **Continuation of Retiree Benefits—Section 1129(a)(13)**.  The Plan satisfies the requirements of Bankruptcy Code section 1129(a)(13).  Except as otherwise specified in the Plan, and subject to Article V of the Plan,  Article IV.O of the Plan provides that all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans as of the Effective Date.  From and after the Effective Date, all retiree benefits (as defined in

Bankruptcy Code section 1114), if any, shall continue to be paid in accordance with applicable law.

**CC.** **Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16)**. Bankruptcy Code sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) do not apply to these Chapter 11 Cases. The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

**DD.** **"Cram Down" Requirements—Section 1129(b)**. The Plan satisfies the requirements of Bankruptcy Code section 1129(b). Notwithstanding the fact that the Deemed Rejecting Classes have been deemed to reject the Plan, the Plan may be confirmed pursuant to Bankruptcy Code section 1129(b)(1). *First*, all of the applicable requirements of Bankruptcy Code section 1129(a) other than Bankruptcy Code section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Classes. The Plan has been proposed in good faith, is reasonable, and meets the requirements that (a) no Holder of any Claim or Interest that is junior to such Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no Holder of a Claim or Interest in a Class senior to such Class is receiving more than 100 percent recovery on account of its Claim or Interest. Accordingly, the Plan is fair and equitable to all Holders of Claims and Interests in the Deemed Rejecting Class. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Class because similarly situated creditors will receive substantially similar treatment on account of their Claim or Interest irrespective of Class. Holders of Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims, Prepetition 2L Notes Claims, and Existing CURO Interests voted to accept the Plan in sufficient number and in sufficient amount to constitute accepting classes under the Bankruptcy Code. Therefore, the Plan satisfies Bankruptcy Code section 1129(b)(1) and can be confirmed.

**EE.     Only One Plan—Section 1129(c)**.   The Plan satisfies the requirements of Bankruptcy Code section 1129(c).  The Plan is the only chapter 11 plan filed in each of these Chapter 11 Cases.

**FF.     Principal Purpose of the Plan—Section 1129(d)**.   The Plan satisfies the requirements of Bankruptcy Code section 1129(d).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**GG.     Small Business Case—Section 1129(e)**.  None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, Bankruptcy Code section 1129(e) is inapplicable.

**HH.     Good Faith Solicitation—Section 1125(e)**.

a.     Each of the 1125(e) Covered Parties and each of their respective Related Parties, have acted fairly, in "good faith" within the meaning of Bankruptcy Code section 1125(e), and in a manner consistent with the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Plan, including the execution, delivery, and performance of the RSA, the solicitation and tabulation of votes on the Plan, and the activities described in Bankruptcy Code section 1125, as applicable, and are entitled to the protections afforded by Bankruptcy Code section 1125(e).

b.     The Debtors and their Related Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Bankruptcy Code section 1125(g), with regard to the offering, issuance, and distribution of recoveries under the Plan and therefore are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan, so long as such distributions are made consistent with and pursuant to the Plan.

**II.     Satisfaction of Confirmation Requirements**.  Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in Bankruptcy Code section 1129.

**JJ.**  **Likelihood of Satisfaction of Conditions Precedent to the Effective Date**.  Each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**KK.**  **Implementation**.  All documents and agreements necessary to implement the Plan, including the Definitive Documents, and all other relevant and necessary documents have been or will be negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  Consummation of the transactions contemplated by each such document or agreement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  The Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**LL.**  **Disclosure of Facts**.  The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Restructuring Transactions, and the fact that each Debtor will emerge from its Chapter 11 Case as a validly existing separate corporate entity, limited liability company, partnership, or other form, as applicable.

**MM.**  **Good Faith**.  The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith within the meaning of Bankruptcy Code section 1125(e) if they proceed to:  (a) consummate the Plan, the Restructuring Transactions, and the agreements, settlements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, settlements, transactions,

transfers, and other actions are expressly authorized by this Combined Order; and (b) take any actions authorized and directed or contemplated by this Combined Order.

NN.     **Essential Element of the Plan**.  The terms and conditions of each of the Exit Facility, the New Warrants, the CVRs, and the Securitization Facilities and the Debtors' entry into the Exit Facility Documents, New Warrant Agreement, CVR Agreement, and Securitization Facilities Amendments, including all actions, undertakings, and transactions contemplated thereby, and payment of all fees, indemnities, and expenses provided for thereunder, are essential elements of the Plan, necessary for the consummation thereof, and in the best interests of the Debtors, the Estates, and Holders of Claims and Interests.  The Exit Facility, New Warrants, CVRs, and Securitization Facilities Amendments are critical to the overall success and feasibility of the Plan, and the Debtors have exercised reasonable business judgment consistent with their fiduciary duties in determining to enter into the Exit Facility Documents, New Warrant Agreement, CVR Agreement, and Securitization Facilities Amendments, each of which have been negotiated in good faith and at arm's-length.  The execution, delivery, or performance by the Debtors or the Reorganized Debtors, as applicable, of any of the Exit Facility Documents, New Warrant Agreement, CVR Agreement, and Securitization Facilities Amendments, and any other document and transaction contemplated by the Plan and any agreements related thereto and compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Combined Order.

## **ORDER**

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

1.      **Disclosure Statement**.  The Disclosure Statement is approved in all respects on a final basis.

2.     **Solicitation**.  The Solicitation complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and complied with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.     **Confirmation of the Plan**.  The Plan is approved in its entirety and **CONFIRMED** under Bankruptcy Code section 1129.  The terms of the Plan, including the Plan Supplement (including any supplements, amendments, or modifications thereof in accordance with this Combined Order and the Plan), are incorporated by reference into and are an integral part of this Combined Order.

4.     **Objections**.  All parties have had a full and fair opportunity to be heard on all issues raised by the objections to Confirmation of the Plan or approval of the Disclosure Statement.  All objections and all reservations of rights pertaining to Confirmation or final approval of the Disclosure Statement, whether formal or informal, that have not been withdrawn, waived, or settled are hereby **OVERRULED** on the merits and **DENIED**.  All objections to Confirmation not filed and served prior to the Objection Deadline, if any, are deemed waived and shall not be considered by the Court.  All parties have had a full and fair opportunity to litigate all issues raised or that might have been raised in the objections to final approval of the Disclosure Statement and Confirmation of the Plan, and the objections have been fully and fairly litigated or resolved, including by agreed-upon provisions as set forth in this Combined Order.

5.     **Plan Modifications**.  Subsequent to the filing of the solicitation version of the Plan on March 25, 2024, the Debtors made certain technical modifications to the Plan (the "Plan Modifications").  The Plan Modifications, which were clarifying changes or changes made at the request of the Court and/or the U.S. Trustee, do not materially adversely affect the treatment of any Claim or Interest under the Plan.  After giving effect to the Plan Modifications, the Plan

27

continues to satisfy the requirements of Bankruptcy Code sections 1122 and 1123. The Debtors provided due and sufficient notice of the Plan Modifications under the circumstances. Accordingly, pursuant to Bankruptcy Code section 1127(a) and Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under Bankruptcy Code section 1125 or resolicitation of votes under Bankruptcy Code section 1126, nor do they require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

6. **Deemed Acceptance of Plan**. In accordance with Bankruptcy Code section 1126 and Bankruptcy Rule 3019, over two-thirds in dollar amount and one-half in number of Holders of Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims, Prepetition 2L Notes Claims, and Existing CURO Interests voted to accept the Plan and all Holders of Claims and Interests, as applicable, or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

7. **No Action Required**. Under the provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, Bankruptcy Code section 1142(b), and any other comparable provisions under applicable law, no action of the respective directors, equity holders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the Restructuring Transactions (subject, in each case, to any consent rights set forth or incorporated in the RSA and the Plan), and any contract, assignment, certificate, instrument, or other document to be executed, delivered,

adopted, or amended in connection with the implementation of the Plan, including the Plan Supplement, and the RSA.

8.      **Binding Effect**.  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (regardless of whether such Holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

9.      **Incorporation by Reference**.  The terms and provisions of the Plan, the Definitive Documents, all other relevant and necessary documents, and each of the foregoing's schedules and exhibits are, on and after the Effective Date, incorporated herein by reference and are an integral part of this Combined Order.

10.     **Vesting of Assets in the Reorganized Debtors**.  Except as otherwise provided in the Plan, this Combined Order, or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, this Combined Order, or any agreement, instrument, or other document incorporated herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

11. **Cancellation of Existing Agreements and Interests**. On the Effective Date, except with respect to the Exit Facility, the Securitization Facilities Amendments, or to the extent otherwise provided in the Plan (including any consent rights set forth or incorporated therein), including in Article V.A therein, all notes, instruments, certificates, and other documents evidencing Claims or Interests (other than Intercompany Interests), including credit agreements and indentures, shall be cancelled and the obligations of all parties thereto, including the Debtors and any non-Debtor Affiliate thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect; *provided, however*, that notwithstanding anything to the contrary contained herein, any agreement that governs the rights of the DIP Agent shall continue in effect solely for purposes of allowing the DIP Agent to (i) enforce its rights against any Person other than any of the Released Parties, pursuant and subject to the terms of the Plan, DIP Orders, and the DIP Facility Documents, (ii) receive distributions under the Plan and to distribute them to the Holders of the Allowed DIP Claims, in accordance with the terms of the Plan, the DIP Orders, and the DIP Facility Documents, (iii) enforce its rights to payment of fees, expenses, and indemnification obligations as against any money or property distributable to Holders of Allowed DIP Claims, in accordance with the terms of the DIP Orders and the DIP Facility Documents, and (iv) appear and be heard in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court, including to enforce any obligation owed to either of the DIP Agent or Holders of the DIP Claims under the Plan, as applicable. Holders of or parties to such cancelled instruments, securities, and other documentation will have no rights arising from or relating to such instruments, securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan. Any credit agreement, indenture, or other instrument that governs the rights, claims, and remedies of the Holder of a Claim shall continue in full force and

effect for purposes of allowing Holders of Allowed Claims to receive distributions under the Plan and to allow Agents/Trustees, as applicable, to enforce any of its rights to payment of fees, expenses, and indemnification obligations, including preservation of any charging liens, as against any money or property distributable to such Holders.

12.     **Effectiveness of All Actions**.  All actions contemplated by the Plan, the RSA, and the Definitive Documents, as the same may be modified from time to time prior to the Effective Date subject, in each case, to the consent rights set forth or incorporated therein (including, for the avoidance of doubt, the Description of Transaction Steps), are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Combined Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by the unanimous action, consent, approval and vote each of such officers, directors, managers, members, or equity holders (other than an order of the Canadian Court recognizing this Combined Order (the "Confirmation Recognition Order") with respect to property of the Canadian Debtors in Canada).

13.     **Restructuring Transactions**.  After the Confirmation Date (subject only to entry of the Confirmation Recognition Order with respect to property of the Canadian Debtors in Canada), the Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the RSA, the Plan, and/or the Definitive Documents (including, for the avoidance of doubt, the Plan Supplement, Exit Facility Documents, and the Securitization Facilities Amendments), as the same may be modified from time to time prior to the Effective Date (including, for the avoidance of doubt, the Description of Transaction Steps), subject, in each case,

to the consent rights set forth or incorporated therein, and authorized to enter into any transactions necessary or desirable to effectuate the Restructuring Transactions and the corporate structure of the Reorganized Debtors, in each case pursuant to this Combined Order and applicable bankruptcy law.  All initial Holders of New Equity Interests shall be deemed party to the New Stockholders' Agreement, in privity of contract with the other parties to the New Stockholders' Agreement and be bound thereby, whether their ownership is recorded in a register maintained with Reorganized CURO's transfer agent or through the facilities of DTC, without the need to execute signature pages thereto.  Any transfers of assets or equity interests effected, or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance.

14.    **Distributions**.  The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.

15.    **Claims Register**.  Any Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors without the Debtors or the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest without any further notice to or action, order, or approval of the Court.

16.    **Exit Facility**.  On the Effective Date, the applicable Reorganized Debtors shall enter into the Exit Facility, the terms of which will be set forth in the Exit Facility Documents and which terms shall be in all respects consistent with the RSA and the Plan (including any consent rights set forth therein).  Confirmation of the Plan shall be deemed (a) approval of the Exit Facility (including the Exit Facility Documents and the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors

or the Reorganized Debtors, as applicable, in connection therewith), subject to the terms and conditions of the RSA and the Plan (including any consent rights set forth therein) and (b) authorization for the Debtors or the Reorganized Debtors, as applicable, to, without further notice to or order of the Court, and subject to the terms and conditions of the RSA and Plan (including any consent rights set forth therein) (i) execute and deliver those documents necessary or appropriate to obtain the Exit Facility, (ii) act or take action under applicable law, regulation, order, rule, or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or the Reorganized Debtors may deem to be necessary to consummate the Exit Facility, (iii) grant the Liens and security interests in accordance with the Exit Facility Documents, and (iv) pay of all fees and expenses contemplated by the Exit Facility Documents.   On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder, in accordance with the terms of the Exit Facility Documents, (c) shall be deemed automatically perfected as of the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents, without the necessity of filing or recording any financing statement, assignment, pledge, notice of lien or any similar document or instrument or taking any action, and (d) shall not be subject to avoidance, recharacterization, or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.   The Exit Facility Credit Agreement shall be binding on all parties receiving, and all Holders of, the loans under the Exit Facility.   Execution of the Exit Facility Credit Agreement by the Exit Facility Agent shall be deemed to bind all Holders of the DIP Claims and the Prepetition 1L Term Loan Claims

as if each such Holder had executed the Exit Facility Credit Agreement with appropriate authorization. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests are hereby authorized to make, or cause their applicable non-Debtor Affiliates to make, all filings and recordings, and to obtain, or cause their applicable non-Debtor Affiliates to obtain, all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Combined Order, and shall cooperate, or cause their applicable non-Debtor Affiliates to cooperate, to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

17.     **Securitization Facilities**.  To the extent not already approved, the Securitization Facilities (as amended by the Securitization Facilities Amendments to continue following the Effective Date) and the Securitization Facilities Amendments applicable to continuation of the Securitization Facilities following the Effective Date, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtors or the Reorganized Debtors, as applicable, in connection therewith, including the payment of all fees, indemnities, expenses, and other payments provided for therein, are hereby approved.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Securitization Facilities Amendments, (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Securitization Facilities Amendments, (c) shall be deemed automatically perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Securitization Facilities Amendments, without the necessity of filing or

recording any financing statement, assignment, pledge, notice of lien or any similar document or instrument or taking any action, and (d) shall not be subject to avoidance, recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the Persons and Entities granted such Liens and security interests are hereby authorized to make, or cause their applicable non-Debtor Affiliates to make, all filings and recordings, and to obtain, or cause their applicable non-Debtor Affiliates to obtain, all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Combined Order, and shall cooperate, or cause their applicable non-Debtor Affiliates to cooperate, to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

18.     **New Equity Interests**.  On the Effective Date, subject to the terms and conditions of the Plan and the Restructuring Transactions, Reorganized CURO shall issue the New Equity Interests, which distribution and issuance shall be governed by the terms and conditions of the instruments evidencing or relating to such distribution, issuance, and/or dilution, as applicable, including the Governance Documents (including the New Stockholders' Agreement), which terms and conditions shall be deemed valid, binding, and enforceable against each Entity receiving such distribution of the New Equity Interests without the need for execution by any party thereto other than the applicable Reorganized Debtor(s).  Holders of New Equity Interests shall be deemed to agree to the Governance Documents (including the New Stockholders' Agreement), as the same

may be amended or modified from time to time following the Effective Date in accordance with their terms.

19.    **New Warrant Agreement**.   On the Effective Date, subject to the terms and conditions of the Plan and the Restructuring Transactions, Reorganized CURO is authorized to issue and distribute the New Warrants pursuant to the Plan and in accordance with the New Warrant Agreement to Holders of Prepetition 2L Notes Claims.   The entry into the New Warrant Agreement and the issuance and distribution of New Warrants pursuant to the Plan shall be duly authorized and approved without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, as applicable.   Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan and the New Warrant Agreement applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other that the applicable Reorganized Debtor(s).   For the avoidance of doubt, from and after the Effective Date, the New Warrants shall be governed by and in accordance with the New Warrant Agreement, as may be amended or modified in accordance with its terms.

20.    **CVR Agreement**.   On the Effective Date, subject to the terms and conditions of the Plan and the Restructuring Transactions, Reorganized CURO is authorized to enter into the CVR Agreement with the CVR Agent.   The entry into the CVR Agreement and the issuance and distribution of the CVRs pursuant to the Plan shall be duly authorized and approved without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, as applicable.   After the Effective Date, the CVRs shall either be distributed through

DTC, or, if the Debtors, upon consultation with the Ad Hoc Group, determine that distribution through DTC is not reasonably practicable, according to the CVR Distribution Framework, as specified in the Plan.  No later than five (5) days after the Effective Date, Reorganized CURO will mail a CVR Notice to Potential CVR Recipients notifying them of their potential right to receive one CVR per share of Existing CURO Interest and each such CVR Notice shall contain (i) information as to the process for a Potential CVR Recipient to receive their CVR (or Cash in lieu of CVR); and (ii) notification that the Potential CVR Recipient will lose the right to obtain any interest in the CVRs (or to obtain Cash in lieu of a CVR distribution) if the CVR Recipient Certification is not received by the CVR Submission Deadline.  The CVRs will be subject to any restrictions in the CVR Agreement to the extent applicable and, pursuant to the CVR Agreement, will be non-transferable (subject to certain permitted transfers).  For the avoidance of doubt, from and after the Effective Date, the CVRs shall be governed by and in accordance with the CVR Agreement, as may be amended or modified in accordance with its terms.

21.     **Certain Securities Law Matters**.  The Debtors' solicitation of (a) Holders of the Prepetition 1L Term Loan Claims in Class 3 and (b) Nominees of Beneficial Holders as of the Voting Record Date of the (i) Prepetition 1.5L Notes Claims in Class 4 and (ii) Prepetition 2L Notes Claims in Class 5 prior to the Petition Date was subject to the United States Securities Act of 1933 (as amended, the "Securities Act") and the regulatory authority of various states under state securities laws ("Blue Sky Laws").  The offering of New Equity Interests (including the DIP Commitment Shares) before the Petition Date to Holders of Prepetition 1L Term Loan Claims, Prepetition 1.5L Notes Claims, and Prepetition 2L Notes Claims was exempt from the registration requirements of the Securities Act in reliance upon section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or in reliance on Regulation S under the Securities Act.  The New

Equity Interests will be "securities," as defined in section 2(a)(1) of the Securities Act, Bankruptcy Code section 101, and any applicable Blue Sky Law, and the issuance of the New Equity Interests (other than the DIP Commitment Shares and the New Equity Interests underlying the Management Incentive Plan) pursuant to the Plan shall be exempt from, among other things, the registration requirements of the Securities Act and any other applicable U.S., state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, Bankruptcy Code section 1145, and to the extent such exemption is not available, then such New Equity Interests will be offered, issued, and distributed under the Plan pursuant to other applicable exemptions from registration under the Securities Act and any other applicable U.S., state, or local law requiring registration.

22.     The CVRs will not constitute "securities" under applicable U.S. securities law. However, to the extent the CVRs do constitute a "security" under applicable U.S. securities laws, the issuance of the CVRs shall be exempt from the registration requirements of the Securities Act and any other applicable U.S., state, or local law requiring registration prior to the offering, issuance, distribution, or sale of securities in accordance with, and pursuant to, Bankruptcy Code section 1145.  Such New Equity Interests and CVRs (to the extent such CVRs constitute a "security") as a result of being offered, issued, and distributed pursuant to Bankruptcy Code section 1145 (a) will not be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) (i) will be freely tradeable and transferable without registration under the Securities Act in the United States by any recipient thereof that is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, subject to the provisions of Bankruptcy Code section 1145(b)(1) relating to the definition of an underwriter in Bankruptcy Code section 1145(b) and any restrictions in the Governance Documents and CVR Agreement, as applicable, and (ii) may

not be transferred by any recipient thereof that is an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom (including by complying with the conditions of Rule 144 under the Securities Act with respect to "control securities").

23.     The DIP Commitment Shares will be offered, issued, and distributed in reliance upon Section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, and/or reliance on Regulation S under the Securities Act, will be considered "restricted securities," and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom.  The New Equity Interests underlying the Management Incentive Plan will be offered, issued, and distributed in reliance upon Section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder, Regulation S under the Securities Act, and/or other exemptions from registration under the Securities Act and any other applicable U.S., state, or local law requiring registration, and will be considered "restricted securities."  The offering, issuance, and distribution of New Equity Interests (other than any New Equity Interests underlying the Management Incentive Plan but including any CVRs to the extent the CVRs constitute securities) pursuant to or in connection with the Plan to persons in Canada will be exempt from the prospectus and registration requirements of applicable Canadian Securities Laws pursuant to Section 2.11 of National Instrument 45-106 "Prospectus Exemptions." New Equity Interests (including New Equity Interests distributed outside of Canada) will not be freely tradable in Canada and may only be resold to persons in Canada: (a) pursuant to an available exemption from the prospectus and registration requirements of Canadian Securities Laws; (b) pursuant to a final prospectus qualified under applicable Canadian Securities Laws; or (c) if each of the following conditions are satisfied: (i) the issuer of the New Equity Interests has been a reporting issuer in a jurisdiction of Canada of

the four months immediately preceding the trade; (ii) the trade is not a "control distribution" within the meaning of Canadian Securities Laws; (iii) no unusual effort is made to prepare the market or create a demand for the security that is the subject of the trade; and (iv) no extraordinary commission or consideration is paid to a person or company in respect of the trade. "Canadian Securities Laws" means, as applicable, the securities laws, regulations, rules, rulings and orders in each of the Provinces and Territories of Canada, and the applicable policy statements, notices, blanket rulings, orders and all other regulatory instruments of the securities regulators in each of such jurisdictions.

24.     Each of DTC, any transfer agent for the New Equity Interests, any warrants agent for the New Warrants, or any rights agent for the CVRs, as applicable, shall be required to accept and conclusively rely upon the Plan and Combined Order in lieu of a legal opinion regarding the validity of any transaction contemplated by the Plan and/or the exemption(s) from registration pursuant to which the New Equity Interests, the CVRs and the New Warrants will be issued under the Plan and/or eligible for DTC book-entry delivery, settlement, and depository services. Additionally, on or about the Effective Date, FINRA shall take down the symbol for the existing common stock of the Debtors and remove such equity from trading, including through the OTC Markets or a similar exchange. Furthermore, the New Equity Interests, the CVRs, and the New Warrants may be distributed through DTC pursuant to the Plan in accordance with DTC's customary procedures, or such other means through (i) DTC that the Reorganized Debtors shall request of DTC or (ii) any transfer agent for the New Equity Interests, any warrants agent for the New Warrants, or any rights agent for the CVRs, as applicable.

25.     **Compromise of Controversies**.  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good

faith compromise and settlement of all Claims, Interests, and controversies resolved under the Plan and the entry of this Combined Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019.

26.     **Employment Obligations**.  Subject to Article V of the Plan, all employee wages, compensation, and benefit programs in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans as of the Effective Date.  For the avoidance of doubt, pursuant to Bankruptcy Code section 1129(a)(13), as of the Effective Date, all retiree benefits (as such term is defined in Bankruptcy Code section 1114), if any, shall continue to be paid in accordance with applicable law.

27.     **Assumption and Assignment of Contracts and Leases**.  On the Effective Date, each Executory Contract and Unexpired Lease shall be deemed assumed, unless such Executory Contract and Unexpired Lease:   (1) was assumed or rejected previously by the Debtors; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to reject Filed on or before the Effective Date; or (4) is identified on the Rejected Executory Contract and Unexpired Lease List, without the need for any further notice to or action, order, or approval of the Court, under Bankruptcy Code section 365 and the payment of Cures, if any, shall be paid in accordance with Article V.E of the Plan.  The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates.  Each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements

to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

28.     The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption and assignment, as applicable, of such Executory Contracts and Unexpired Leases as set forth in Article V.E of the Plan) shall be, and hereby are, approved in their entirety.

29.     Nothing in this Combined Order or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Contract is an executory contract or unexpired lease under Bankruptcy Code section 365.

30.     Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to Article V.E of the Plan shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to this Combined Order, and for which any Cure has been fully paid pursuant to Article V.E of the Plan, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Court.

31.     For the avoidance of doubt, upon assumption of an Unexpired Lease, the Debtors or the Reorganized Debtors, as applicable, shall be obligated to pay or perform, unless waived or otherwise modified by any amendment to such Unexpired Lease mutually agreed to by the applicable landlord and Debtor(s), any accrued, but unbilled and not yet due to be paid or performed, obligations as of the applicable deadline to File objections or disputes to the Cure for such Unexpired Lease under such assumed Unexpired Lease, including, but not limited to, common area maintenance charges, taxes, year-end adjustments, indemnity obligations, and repair and maintenance obligations, under the Unexpired Lease, regardless of whether such obligations arose before or after the Effective Date, when such obligations become due in the ordinary course; provided that all rights of the parties to any such assumed Unexpired Lease to dispute amounts asserted thereunder are fully preserved.

32.     For the avoidance of doubt, to the extent an Executory Contract or an Unexpired Lease is assumed pursuant to Bankruptcy Code section 365, any agreement with a Debtor guaranteeing performance under such Executory Contract or Unexpired Lease shall also be assumed in connection with the assumption of such Executory Contract or Unexpired Lease.

33.     All Claims for damages resulting from the rejection of an Executory Contract or Unexpired Lease shall be asserted in accordance with Article V.D of the Plan and shall be treated as General Unsecured Claims, as applicable, pursuant to Article III.B of the Plan and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  Notwithstanding anything to the contrary herein or in the Plan, the deadline for NNN REIT LP and/or its affiliates to file any Claim resulting from the rejection of the sublease at its leased premises shall be thirty (30) days after entry of the Combined Order.  If the Debtors or Reorganized Debtors, as applicable, seek to

43

disallow any Claim filed by NNN REIT LP and/or its affiliates, then the Debtors or Reorganized Debtors, as applicable, shall provide notice and an opportunity to object as required by the Bankruptcy Code and the Bankruptcy Rules.

34. **Exemption from Transfer Tax and Recording Fees**. To the fullest extent permitted by Bankruptcy Code section 1146(a), any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Reorganized Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the grant of collateral as security for the Exit Facility or the Securitization Facilities; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Combined Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever

located and by whomever appointed, shall comply with the requirements of Bankruptcy Code section 1146(c), shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

35.     **Authorization to Consummate**.  The Debtors are authorized to consummate the Plan, solely in accordance with the terms thereof (including any consent rights set forth or incorporated therein) after the entry of this Combined Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

36.     **Professional Compensation**.  All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  The Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Court.  The Reorganized Debtors shall pay Professional Fee Claims in Cash in the amount the Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date.  No funds in the Professional Fee Escrow Account shall be considered property of the Estates of the Debtors or the Reorganized Debtors.  When all Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further action or order of the Court.  Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331, 363, and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the

Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

37.      **Release, Exculpation, Discharge, and Injunction Provisions**.   The release, exculpation, discharge, and injunction provisions embodied in the Plan, including those contained in Article VIII.A-F. of the Plan, are hereby approved and authorized in their entirety and shall be effective and binding on all Persons and Entities, to the extent provided in the Plan, without further order or action by this Court.  Notwithstanding anything to the contrary herein, nothing in the Plan or the Combined Order shall modify the rights if any, of any current or former counterparty to a non-residential real property lease, to assert any right of setoff or recoupment that such party may have under applicable bankruptcy or nonbankruptcy law, including, but not limited to: (i) the ability, if any, of such counterparty to setoff or recoup a security deposit held pursuant to the terms of its lease with the Debtors, or any successors to the Debtors, under the Plan; (ii) assertion of rights of setoff or recoupment, if any, in connection with the reconciliation of Claims; or (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors or any successors to the Debtors.

38.      **Conditions Precedent to Effective Date**.  The Plan shall not become effective unless and until all conditions set forth in Article IX.B of the Plan have been satisfied or waived in accordance with Article IX.C of the Plan.

39.      **Restructuring Expenses.**  The Debtors' payment of the Restructuring Expenses and Trustee Fees incurred, or estimated to be incurred, up to and including the Effective Date, in accordance with the terms of the Plan, is hereby approved.  All Restructuring Expenses and Trustee Fees to be paid on the Effective Date, or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases), shall be estimated prior to and as

of the Effective Date and such estimates shall be delivered to the Debtors at least three (3) Business Days before the anticipated Effective Date; *provided, however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Expenses or Trustee Fees. On the Effective Date, invoices for all Restructuring Expenses and Trustee Fees incurred prior to and as of the Effective Date shall be submitted to the Debtors.  In addition, the Debtors and the Reorganized Debtors (as applicable) shall continue to pay, when due and payable in the ordinary course, Restructuring Expenses and Trustee Fees related to implementation, consummation, and defense of the Plan, whether incurred before, on, or after the Effective Date.

40.     **Preservation of SEC Police and Regulatory Powers**.  Notwithstanding any provision to the contrary, nothing in the Plan, Plan Supplement, Disclosure Statement or this Combined Order shall (i) release, enjoin, or discharge any monetary or non-monetary claim, right or cause of action of the United States Securities and Exchange Commission ("SEC"), acting in its police and regulatory capacity, against any Released Party (including any Debtor or Reorganized Debtor) or any other non-debtor Person or non-debtor Entity, or (ii) prevent, restrict, limit, enjoin, or impair the SEC from commencing or continuing any investigation, action or proceeding, in its police and regulatory capacity, against any Released Party (including any Debtor or Reorganized Debtor) or any other non-debtor Person or non-debtor Entity in any non-bankruptcy forum; *provided* that nothing in the Plan, Plan Supplement, Disclosure Statement, or this Combined Order shall alter any legal or equitable rights of the Debtors, the Reorganized Debtors, Released Party, or other non-debtor Person or non-debtor Entity with respect to any such claim, liability, cause of action, investigation, action, or proceeding.  For the avoidance of doubt, the SEC shall not be a Released Party or Releasing Party under the Plan.

41.     **Governmental Claims**.  Nothing in the Combined Order or the Plan shall effect a release of any claim by the United States or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person, nor shall anything in the Combined Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action, or other proceedings against any party or person for any liability of such persons whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against such persons, nor shall anything in the Combined Order or the Plan exculpate any party or person from any liability to the United States or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any party or person.

42.     **Compliance with Tax Requirements**.  In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the

right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

43.     **Texas Taxing Authorities**. For purposes of this Combined Order only, notwithstanding anything to the contrary in the Plan or this Combined Order, the prepetition Allowed Claims of the Texas Taxing Authorities[3] with respect to ad valorem taxes secured by valid, senior, perfected, enforceable, and nonavoidable liens as of the Petition Date (the "Texas Taxing Authority Claims"), if any, shall be classified on the Effective Date as Class 1 – Other Secured Claims.  The Texas Taxing Authority Claims will be paid, or otherwise satisfied as Class 1 – Other Secured Claims in accordance with the terms of the Plan, on the later of the Effective Date or when due pursuant to applicable non- bankruptcy law.  The Texas Taxing Authority Claims shall include all accrued interest required to be paid under Bankruptcy Code section 506(b) through the date of payment.  To the extent valid, senior, perfected, enforceable, and nonavoidable as of the Petition Date, the prepetition tax liens of the Texas Taxing Authorities, if any, shall be expressly retained in accordance with applicable non-bankruptcy law until the applicable Texas Taxing Authority Claims are paid in full.  The Texas Taxing Authorities' lien priority shall not be primed or subordinated by any exit financing entered into in conjunction with the confirmation of

---

[3]     "Texas Taxing Authorities" are defined as Bee County, Bexar County, Cameron County, Dallas County, Ellis County, Grayson County, Greenville Independent School District, Hidalgo County, Hopkins County, City of Houston, Houston Community College System, Houston Independent School District, Irving Independent School District, Kaufman County, Kleberg County, Lamar CAD, City of McAllen, McLennan County, Nueces County, City of Pasadena, San Marcos CISD, Smith County, City of Sulphur Springs, Sulphur Springs Inde-pendent School District, Tarrant County, Texas City Independent School District, Victoria County, Bell County Tax Appraisal District, Bowie Central Appraisal District, Brazos County, Calhoun County Appraisal District, Comal County, Denton County, Guadalupe County, Harri-son County, Harrison CAD, Hays County, Hill County, Hill CAD, City of Waco et al, Wharton County, Brazoria County Et al, City of Rosenberg, Spring Independent School District, Pasadena Independent School District, Alief Independent School District, Mission Bend Municipal Utility District 2, Walker County Appraisal District, Cooke County, et al, City of Garland, Gar-land Independent School District, Cleburne Independent School District, City of Cleburne, Johnson County, City of Haltom City, Crowley Independent School District, Nacogdoches County, et al., Tyler Independent School District, Titus County Appraisal District, et al., Hunt County, et al., Brownsville Independent School District, Weslaco Independent School District, City of Weslaco, City of McKinney, City of Paris, City of Sherman, Collin County, Collin College, McKinney Independent School District, Paris Junior College.

the Plan or otherwise.  In the event that collateral that secures a Texas Taxing Authority Claim is returned pursuant to the Plan to a creditor holding a lien that is junior to that of the Texas Taxing Authorities, the Debtors shall first pay all ad valorem property taxes that are secured by such collateral.  All rights and defenses of the Debtors and the Reorganized Debtors under applicable law are reserved and preserved with respect to such Texas Taxing Authority Claims. The Debtors and the Reorganized Debtors, as applicable, reserve all their defenses and rights, if any, to dispute or object to any Claims, Causes of Action, Proofs of Claim, or pleadings filed by the Texas Taxing Authorities.

44.    **The TGI Parties Rejection Damages Claim.**  Leon's Furniture Limited ("LFL"), Trans Global Insurance Company ("TGI"), and Trans Global Life Insurance Company ("TGLI" and, together with LFL and TGI, the "TGI Parties") have filed *Leon's Furniture Limited's, Trans Global Insurance Company's, and Trans Global Life Insurance Company's Objection to: (I) Debtors' Rejected Executory Contract and Unexpired Lease List and Proposed Rejection of the Letter Agreement; and (II) Confirmation of Joint Prepackaged Plan of Reorganization of CURO Group Holdings Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (Modified)* [Dkt. No. 293] (the "Objection").  Among other things, in the Objection, the TGI Parties asserted a claim in the amount of not less than $70,180,800 (US) against the Debtors or the Reorganized Debtors resulting from the Debtors' rejection of that certain Letter Agreement by and between CURO Group Holdings Corp., LendDirect Corp., CURO Canada Corp. f/k/a Cash Money Cheque Cashing, Inc. and Leon's Furniture Limited dated May 26, 2021 (as subsequently modified, amended, or amended and restated, including as amended by that certain Letter Agreement dated July 29, 2023, the "Letter Agreement"), that certain unexecuted Program Agreement dated January 23, 2024, by and between CURO Canada Corp. f/k/a Cash Money

50

Cheque Cashing, Inc., LendDirect Corp., Trans Global Insurance Company, and Trans Global Life Insurance Company (the "Program Agreement") and any other agreements, to the extent any such agreements exist or are enforceable, including any agreements contained within the Program Agreement (the "TGI Parties Rejection Damages Claim").  The Debtors contest the validity and the amount, if any, of the TGI Parties Rejection Damages Claim.  The TGI Parties agree that they shall file a Proof of Claim asserting the TGI Parties Rejection Damages Claim in accordance with Article V.D of the Plan.  The Reorganized Debtors intend to object to such Proof of Claim in the Bankruptcy Court.  Each of the TGI Parties, the Debtors and the Reorganized Debtors reserve and preserve all of their rights, claims, objections, and defenses with respect to the TGI Parties Rejection Damages Claim, TGI Parties' Proof of Claim and any other claims that the TGI Parties may have (if any), including, but not limited to, a determination that the Letter Agreement, Program Agreement or any agreements contained within the Program Agreement are enforceable contracts and with respect to all arguments made and evidence presented at the Combined Hearing.  If Allowed, the TGI Parties Rejection Damages Claim, if any, shall be treated as a General Unsecured Claim as set forth in Article III.B.7 of the Plan.

45.    **Documents, Mortgages, and Instruments**.  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions and this Combined Order.

46.    **Continued Effect of Stays and Injunction**.  Unless otherwise provided in the Plan or in this Combined Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Bankruptcy Code sections 105 or 362 or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Combined Order) shall remain

in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Combined Order shall remain in full force and effect in accordance with their terms.

47. **Nonseverability of Plan Provisions Upon Confirmation**.  Each provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

48. **Post-Confirmation Modifications**.  Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors, as applicable, are authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to the consent rights contained in each of the Plan and the RSA).  Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan and the RSA, the Debtors and the Reorganized Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan with respect to such Debtor, one or more times after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Combined Order, in such manner as may be necessary to carry out the purposes and intent of the Plan (subject to the consent rights contained or incorporated in each of the Plan and the RSA).  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.A of the Plan.

49. **Applicable Non-bankruptcy Law**.  The provisions of this Combined Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

50.     **Waiver of Filings**.   Any requirement under Bankruptcy Code section 521 or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

51.     **Waiver of Section 341 Meeting of Creditors or Equity Holders; Waiver of Schedules and Statements and 2015.3 Reports**.   Any requirement under Bankruptcy Code section 341(e) for the U.S. Trustee to convene a meeting of creditors or equity holders is permanently waived as of the Confirmation Date.   Any requirements for the Debtors to file the following are permanently waived as of the Confirmation Date:   (A) schedules of assets and liabilities and statements of financial affairs and (B) their initial reports of financial information with respect to entities in which the Debtors hold a controlling or substantial interest as set forth in Bankruptcy Rule 2015.3.

52.     **Notices of Confirmation and Effective Date**.   The Reorganized Debtors shall serve notice of entry of this Combined Order in accordance with Bankruptcy Rules 2002 and 3020(c) on all Holders of Claims and Interests within ten Business Days after the date of entry of this Combined Order.   As soon as reasonably practicable after the Effective Date, the Reorganized Debtors shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.   The above-referenced notices are adequate under the particular circumstances of these Chapter 11 Cases and no other or further notice is necessary.

53.     **Failure of Consummation**.   Notwithstanding the entry of this Combined Order, if Consummation does not occur, (a) the Plan shall be null and void in all respects; (b) any assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant to the Plan will be null and void in all respects; and (c)

nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by the Debtors, Claims, or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

54.     **Substantial Consummation**.  On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code sections 1101 and 1127.

55.     **Waiver of Stay**.  For good cause shown, the stay of this Combined Order provided by any Bankruptcy Rule or Bankruptcy Local Rule is waived, and this Combined Order shall be effective and enforceable immediately upon its entry by the Court.

56.     **References to and Omissions of Plan Provisions**.  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure specifically to include or to refer to any particular article, section, or provision of the Plan or the Plan Supplement in this Combined Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan and any related documents be confirmed and approved in their entirety, except as expressly modified herein, and incorporated herein by this reference.

57.     **Plan Supplement**.  Notwithstanding anything to the contrary herein, (a) the Plan Supplement that has been filed as of the date of entry of this Combined Order includes certain documents that have not been determined to be acceptable or reasonably acceptable, as the case may be, to the Debtors, the Required Consenting Stakeholders, or other parties with applicable consent rights under the Plan or the RSA, (b) certain documents included in the Plan Supplement remain subject to further negotiation and are subject to the consent rights set forth in the Plan or

the RSA, and (c) as a requirement for satisfaction of the condition precedent in Article IX.B.7 of the Plan, the Plan Supplement will be amended and supplemented with documents that meet the consent rights set forth in the Plan or the RSA prior to the occurrence of the Effective Date and subject to the milestones in the RSA.

58.     **Canadian Matters**.  Notwithstanding anything to the contrary in this Combined Order, the terms of this Combined Order affecting the property of the Canadian Debtors located in Canada shall be subject to entry of the Confirmation Recognition Order. This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the U.S. to give effect to this Combined Order and to assist the Foreign Representative, the Debtors, the Reorganized Debtors, and the Information Officer appointed in the Canadian Recognition Proceeding, and their respective counsel and agents in carrying out the terms of this Combined Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Foreign Representative, the Debtors, the Reorganized Debtors, and the Information Officer as may be necessary or desirable to give effect to this Combined Order, or to assist the Foreign Representative, the Debtors, the Reorganized Debtors, and the Information Officer, and their respective counsel and agents in carrying out the terms of this Combined Order.

59.     **Debtors' Actions Post-Confirmation Through the Effective Date**.  During the period from entry of this Combined Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of the Court as provided under the Bankruptcy Code, the Bankruptcy Rules, this Combined Order, and any Final Order of the Court and in accordance with the terms of the Plan, the RSA, and other applicable Definitive Documents.

60.     **Headings**.  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Combined Order for any other purpose.

61.     **Effect of Conflict**.  This Combined Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Combined Order.  If there is any inconsistency between the terms of the Plan (other than with respect to any consent rights set forth or incorporated therein) and the terms of this Combined Order, the terms of this Combined Order govern and control.

62.     **Final Order**.  This Combined Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

63.     **Retention of Jurisdiction**.  The Court may properly, and upon the Effective Date shall, to the full extent set forth in the Plan, retain jurisdiction over all matters arising out of, and related to, these Chapter 11 Cases, including the matters set forth in Article XI of the Plan and Bankruptcy Code section 1142.

 Signed: May 16, 2024

Marvin Isgur
United States Bankruptcy Judge

**Exhibit A**

**Plan**

[*Intentionally omitted*]